IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Keith Snyder**, on behalf of himself and all others similarly situated, | Case No. 1:14-cv-8461 |
| Plaintiffs, | **Complaint** |
| v. | Class Action |
| **Ocwen Loan Servicing, LLC**, | Jury Trial Demanded |
| Defendant. | |

Plaintiff Keith Snyder ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations and claims against Ocwen Loan Servicing LLC ("Ocwen" or "Defendant"), upon personal knowledge, investigation of her counsel, and on information and belief.

1.     This action seeks redress for business practices that violate the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") as well as the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

2.     This Court has jurisdiction to grant the relief sought by Plaintiff pursuant to 47 U.S.C. § 227(b), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3.     Venue is proper in this district as Defendant resides within the district and does business here.

## Parties

4.     Plaintiff Keith Snyder is a natural person who resides in San Diego, California.  Plaintiff is the account holder of a cellular telephone number and pursuant to the terms of his contract is charged for each call within the meaning of 47 U.S.C. §

227(b)(1)(A)(iii). He is also a "consumer" as defined by 15 U.S.C. § 1692a(3) and allegedly obligated to pay a "debt" as defined by 15 U.S.C. § 1692a(4), specifically a residential home loan incurred primarily for personal, family, and household purposes.

5.     Defendant Ocwen Loan Servicing LLC is one of the largest non-bank mortgage servicers in the United States. Defendant services mortgage loans in all 50 states, including Illinois. A significant part of Ocwen's business operations are conducted in this district, most importantly its office for receipt of payments, which is located in Carol Stream, Illinois.

6.     Ocwen is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it uses instrumentalities of interstate commerce including the mails in its business, the principal purpose of which is the collection of debts owed or due or asserted to be owed or due to another. Many of the debts its attempts to collect upon were in default at the time they were obtained by Ocwen.


**Facts**

7.     In 2001, Plaintiff purchased a home in Las Vegas, Nevada located on Lido Isle Court (the "Las Vegas Home"). In 2006, he refinanced his mortgage and took out two loans, the first with Countrywide Home Loans and a junior-position Home Equity Line of Credit (the "HELOC" loan) with Greenpoint Mortgage Funding. Both loans were secured by deeds of trust. The HELOC had an approximate principal balance of $100,000. He made timely payments in full for several months, but due to a significant and unexpected drop in his income could not afford to continue to make payments on either mortgage.

8.      In April 2007, Plaintiff made his last payment on both loans and the senior creditor began the process of non-judicial foreclosure as permitted under Nevada law.

9.      On or about January 18, 2008, the Las Vegas Home was sold at a trustee's sale for $625,727.34, fully satisfying the first mortgage obligation of $585,504.56 and leaving at least forty thousand dollars (specifically $40,222.78) to pay towards the HELOC. The outstanding debt on the HELOC at the time of foreclosure was $99,968.08 inclusive of late fees and other charges.

10.     Plaintiff received no communication from any creditor regarding the HELOC for more than eighteen months after the foreclosure. In early August 2009, he received a notice from a new servicer informing him that the right to collect payments on the HELOC had been transferred from Greenpoint to the new servicer and stating that the payoff balance on the debt was $126,049.08 — far in excess of the principal amount at the time of foreclosure and reflecting no credit at all for funds received from the foreclosure sale.

11.     By letter dated July 11, 2014, Defendant Ocwen notified Plaintiff that the servicing rights had been transferred to it. A copy of that letter is attached here as Exhibit "A", and has been redacted to preserve Plaintiff's personal identifying information. Plaintiff received this letter on or about July 14, 2014.

12.     The letter is styled as a notice of servicing transfer as required by federal law and tells Plaintiff that Defendant Ocwen Loan Servicing, LLC, "will collect the payments going forward." The letter further asks Plaintiff to "contact Ocwen Loan Servicing, LLC for information about enrolling in an automatic payment program."

Complaint—3

13.     Ocwen also sent Plaintiff another demand for payment; a letter also dated July 11, 2014. A copy of that letter is attached as Exhibit "B" and has also been redacted to preserve Plaintiff's personal identifying information. Plaintiff received this letter on or about July 14, 2014.

14.     This letter states that the principal balance on the alleged debt is $99,968.08 — exactly to the penny the balance as of the time of foreclosure in January 2008. However, Defendant also added nearly $80,000 in interest together with $2,560.90 in late charges for a total demand of $181,673.67. However, even this figure was not an accurate payoff amount, which Ocwen said could be obtained upon request.

15.     Neither of these two written demands for payment indicated that the debt was well beyond the statute of limitations or advised Plaintiff that the debt was legally unenforceable because the creditor failed to obtain a deficiency judgment or seek a hearing to determine the amount of indebtedness as required by the law of the State of Nevada.

**TCPA Allegations**

16.     Directly as well as through its subsidiaries, contractors and agents, Defendant employs hundreds of persons at various call centers throughout the country. These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the hundreds of thousands of debts collected by Defendant.

17.     A significant portion, if not a majority, of Defendant's business operations are dedicated to servicing consumer loans that are in default, foreclosure, have been charged off by the original lender, or are subject to discharge in bankruptcy

18.     Defendant's regular business practices include making repeated phone calls, as well as sending notices, statements, bills, and other written correspondence to persons it believes responsible for paying past-due accounts.

19.     In mid-July of 2014, almost immediately after it acquired the servicing rights to the HELOC, Ocwen began calling Plaintiff on his cell phone. Plaintiff is the account holder with AT&T Mobility for cellular service and has a phone number assigned to that account ending in 7690 (the "7690 Number").

20.     At no time did Plaintiff list the 7690 Number on an application for credit with Countrywide or Greenpoint for the simple reason that he did not have it at the time. Plaintiff was assigned the 7690 Number in 2012, so it would have been impossible in 2006 to have listed that number on his original application for credit.

21.     Plaintiff is informed and believes and on that basis alleges that Ocwen makes a regular business practice of using "skip tracing" methods such as pulling credit histories and searching publicly available databases to obtain contact information for persons it believes are obligated for consumer debts it services. Plaintiff believes that Ocwen obtained the 7690 Number via skip tracing and included it in its automated telephone dialing system's database.

22.     At no time did Ocwen or any predecessor in interest have Plaintiff's express consent to use an automatic telephone dialing system to call him at the 7690 Number. At no time did Ocwen or any predecessor in interest have Plaintiff's express consent to use an artificial or prerecorded voice to call him at the 7690 Number.

23.     Many of the calls Ocwen placed to Plaintiff at the 7690 Number were made using an artificial or pre-recorded voice. When Plaintiff answered the phone, he heard a message stating that the call was intended to reach Keith Snyder about "an

important business matter" and inviting him to press one of an enumerated list of digits to reach a particular department. He tried to connect with a live staffer but the call terminated. When he called back using the Caller ID as listed (877-746-2936, the same as listed on the written communications from Ocwen), again he was confronted with a telephone voice message tree, which again had the same result of terminating his call before he could connect with a live staffer. Plaintiff also sent email messages to the address listed on the written communications disputing the debt and asking the calls to stop.

24.     Ocwen made at least three more calls to Plaintiff at the 7690 Number using an identical artificial or prerecorded message. Plaintiff believes that there were additional calls placed by Defendant to the 7690 Number were not preserved and seeks discovery to identify those additional calls.

25.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA regulates, *inter alia*, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an automatic telephone dialing system includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-9 (7th Cir. 2012).

26.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also

recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or pre-recorded message to a wireless number by a creditor or on behalf of a creditor are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

28. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶10).

29. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff gave her express consent to Defendant to use an autodialer to call her cell phone within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

30. Plaintiff never listed his cellular telephone number in or on any documents during a transaction with Defendant (or any creditor), nor did he subsequently give his express consent to receive calls at the 7690 Number. At no time did he consent to receiving calls using an artificial voice.

31.     In calling Plaintiff on his cellular telephone line multiple times at various times per day using an ATDS and without his consent, Defendant violated 47 U.S.C. § 227(b).

## FDCPA Allegations

32.     Using illegal conduct to collect a consumer debt, including placing calls in violation of the TCPA, is unfair and unconscionable and therefore violates the FDCPA, including but not limited to 15 U.S.C. § 1692f.

33.     Ocwen in its communications with Plaintiff also falsely represented the legal status of the HELOC loan by failing to inform Plaintiff that the debt was, in fact, not legally owed by him. This failure to disclose the true legal status of the HELOC loan was false, deceptive, and misleading and therefore violates 15 U.S.C. §§ 1692e(2)(A) and 1692e(10), among other provisions of the FDCPA.

34.     Ocwen also attempted to collect interest, fees, charges, and expenses that were not expressly authorized by the agreement creating the debt or permitted by law, further violating 15 U.S.C. § 1692f in at least three ways.

35.     **First**, Ocwen calculated interest charge improperly after the date of default and continued to assess interest well after the debt had been charged off by the original creditor.

36.     **Second**, Ocwen failed to comply with Nevada law relating to deficiency judgments and is barred from collecting or attempting to collect any amount on that debt. Nevada law requires that a creditor bring a judicial action in order to collect on a mortgage debt that is not wholly satisfied by a trustee's sale, which must be brought within six months of the sale. Nev.Rev.Stat. § 40.455. Assuming such an action is

timely filed, the court will hold a hearing and take evidence to determine the amount of the deficiency, which is either the difference between the debt owed and the sale price or the difference between the debt owed and the fair market value of the property, whichever is less. Nev.Rev.Stat. § 40.459.

37.     At no time did any creditor bring an action against Plaintiff to determine the amount of a deficiency remaining after the trustee's sale. As noted above, the fair market value of the property at the time of the sale was $625,727.34 and the amount of indebtedness on the first mortgage was $585,504.56, leaving a surplus of $40,222.78 to apply towards the HELOC. With a total indebtedness of $99,968.08, the maximum possible deficiency that a creditor could have obtained was $59,745.30 — assuming a deficiency action had been commenced.

38.     Ocwen is presently demanding more than three times this amount, without reference to any legal basis for asserting liability by Plaintiff for this debt. This violates the FCPA, including but not limited to 15 U.S.C. § 1692f(1).

39.     **Third**, the debt is now well past the statute of limitations for an action founded upon a debt created in a written instrument, which is six years under Nevada law. Nev.Rev.Stat. § 11.190.

40.     Plaintiff is informed and believes and on that basis alleges that Ocwen tracks the date that it believes any given mortgage loan it services will go past the statute of limitations. Ocwen trains its servicing agents to seek a payment on those accounts, however small, because some state's laws will revive the legal obligation and restart the statute of limitations if a consumer makes a partial payment. Ocwen regularly enters into payment plans with consumers to encourage just this sort of partial payment.

41.     Many consumers do not know if the loans that Ocwen is attempting to collect are beyond the statute of limitations. Consumers also do not realize that making a partial payment on a debt or making a written promise to pay in some states will, in many instances, revive the debt. When Ocwen contacts consumers to collect on a debt, it encourages those consumers to believe that they could experience serious negative consequences, including being sued in a collection action, if they fail to pay or make a partial payment. Similarly, many consumers believe (and Ocwen encourages this belief by the statements it makes and does not make) that making a partial payment on a debt in response to Ocwen's collection efforts is a positive action that can avert the negative consequences of nonpayment.

42.     If consumers knew, in connection with a past-statute debt, that Ocwen had no legal means to enforce collection or understood that making a partial payment or written promise to pay would revive it, many consumers would choose not to make a payment or a written promise to pay.

43.     In the above-detailed ways, and others as may be further developed via discovery, Ocwen violated the FDCPA and is responsible for damages and attorneys' fees to Plaintiff and all others similarly situated. Ocwen should similarly be enjoined from further such business practices.

## Class Action Allegations

44.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and on behalf of all others similarly situated.

45.     The proposed TCPA Class that Plaintiff seeks to represent is defined as follows:

> All persons who had or have a number assigned to a cellular
> telephone service, which number was called by Defendant using an
> automatic telephone dialing system and/or an artificial or
> prerecorded voice from four years prior to the date of filing
> through the date of trial. Excluded from the class are persons who
> Defendant called for emergency purposes and persons who
> voluntarily provided their cellular telephone numbers to their
> original creditor during the transaction that resulted in the debt
> owed.

46.     The proposed FDCPA Class that Plaintiff seeks to represent is defined as

follows:

> All persons from whom Defendant has collected or attempted to
> collect on a consumer debt that is no longer enforceable in a court
> action because it is past the statute of limitations under the
> applicable law of the state where the obligation was incurred, from
> one year prior to the date of filing through the date of trial.

47.     Collectively, these persons will be referred to as "Class members."

Plaintiff represents, and is a member of, the proposed TCPA Class and FDCPA Class.

Excluded from the Classes are Defendant and any entities in which Defendant or their

subsidiaries or affiliates have a controlling interest, Defendant's agents and employees,

the judicial officer to whom this action is assigned and any member of the court staff

and immediate family, and claims for personal injury, wrongful death, and emotional

distress.

48.     Plaintiff does not know the exact number of members in the Classes, but

based upon Defendant's public statements regarding their business in the United States

and investigation of his counsel, Plaintiff reasonably believes that Class members for

both proposed classes number in the tens of thousands, if not more. The estimated

Class size includes consumers who are obligated on debts serviced by or placed with

Defendant, as well as persons who co-signed for those debts, and all other persons

whom Defendant or their affiliates, agents, contractors, or employees dialed (or mis-dialed).

49.    There are questions of law and fact common to the members of the TCPA Class that predominate over any questions affecting only individual members, including, whether Defendant made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system and/or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service in violation of the TCPA.

50.    There are similarly questions of law and fact common to the members of the FDCPA Class that predominate over any questions affecting only individual members, including whether Defendant has a common practice of tracking statutes of limitations, maintains a database or list of debts it believes to be unenforceable, has policies and procedures in place to prevent collection on out-of-statute debts, has policies and procedures to make (or avoid making) disclosures to consumer regarding whether the debts may not be legally payable because the statute of limitations has expired, and whether Defendant encourages consumers to make partial payments in order to restart an already expired statutory period.

51.    Plaintiff's claims are typical of the claims of the members of both Classes. Plaintiff has no interests antagonistic to those of either class, and Defendant has no defenses unique to Plaintiff.

52.    Plaintiff will fairly and adequately protect the interests of the Classes, and has retained attorneys experienced in class and complex litigation.

53.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversy for the following reasons:

Complaint—12

a. It is economically impractical for members of the Class to prosecute individual actions;

b. The Class is readily definable; and

c. Prosecution as a class action will eliminate the possibility of repetitious litigation.

54.     A class action will cause an orderly and expeditious administration of the claims of the Classes.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

55.     Class wide relief is essential to compel Defendant to comply with the TCPA and FDCPA.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA and the FDCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

56.     Defendant has acted on grounds generally applicable to the members of both Classes, thereby making final injunctive relief and corresponding declaratory relief with the respect to the Class as a whole appropriate.  Moreover, the TCPA and FDCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## First Claim for Relief

57.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

Complaint—13

58. The foregoing act and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

59. As a result of Defendant's negligent violations of the TCPA, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such negligent conduct that violates the TCPA by Defendant in the future.

## Second Claim for Relief

61. Plaintiff re-alleges and incorporate by reference the above paragraphs as though set forth fully herein.

62. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing or willful, or both, violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

63. As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

64. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such willful conduct that violates the TCPA by Defendant in the future.

## Third Claim for Relief

65. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

66.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including but not limited to each of the above-referenced provisions of 15 U.S.C. § 1692 *et seq.*

67.     As a result of Defendant's knowing and willful violations of the FDCPA, Plaintiff and each member of the Class are entitled to statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k.

68.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such conduct that violates the FDCPA by Defendant in the future.

## **Jury Trial Demand**

69.     Plaintiff demands a jury trial on each of the causes of action set forth above, including the amount of statutory damages.

///

## Prayers for Relief

Wherefore, Plaintiff respectfully prays that judgment be entered against Defendant Ocwen Loan Servicing, LLC, for the following:

1. An injunction against further violations;

2. Damages pursuant to 47 U.S.C. § 227(b)(3) and 15 U.S.C. § 1692k;

3. Costs of suit reasonable attorneys' fees pursuant to statute and as part of a common fund, if any; and

4. Such other and further relief as the Court may deem just and proper.

Dated:    October 27, 2014

ANKCORN LAW FIRM, PC

*/s/ Mark Ankcorn*

N.D. Illinois General Bar No. 1159690
California Bar No. 166871

*mark@ankcorn.com*
11622 El Camino Real, Suite 100
San Diego, California 92130
(619) 870-0600 phone
(619) 684-3541 fax

Local Office:
Ankcorn Law Firm, PC
1608 S. Ashland Ave. #92015
Chicago, Illinois 60608-2013

Guillermo Cabrera
(to be admitted pro hac vice)
*gil@cabrerafirm.com*
Jared Quient
(to be admitted pro hac vice)
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
(619) 500-4880
(619) 785-3380 fax

Attorneys for Plaintiffs

Complaint—16

# Exhibit A



**Ocwen Loan Servicing, LLC**
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

July 11,2014

Loan Number: ███1670

Keith R Snyder
████████████
████████████

Property Address: 3135 Lido Isle Ct
Las Vegas, NV89117

## NOTICE OF SERVICING TRANSFER

The servicing of the above referenced mortgage loan has been transferred, effective July 10,2014. This means that after this date, a new servicer is collecting the mortgage loan payments. Nothing else about the mortgage loan will change.

████████████ was collecting the payments.███████████stopped accepting payments received after July 9,2014.

Ocwen Loan Servicing, LLC will collect the payments going forward. Ocwen Loan Servicing, LLC started accepting payments received on July 10,2014.

**All payments due on or after July 10,2014 should be sent to Ocwen Loan Servicing, LLC at this address: P.O. Box 6440, Carol Stream, IL 60197-6440.**

If the monthly payment was being drafted by Real Time Resolution from a designated financial institution, this service has been discontinued. Please contact Ocwen Loan Servicing, LLC for information about enrolling in an automatic payment program.

If you have any questions for either the prior servicer, Real Time Resolution or the new servicer Ocwen Loan Servicing, LLC, about the mortgage loan or this transfer, please contact them using the information below:

Prior Servicer:
Real Time Resolution
Customer Service
877-469-7325
Real Time Resolutions, Inc, PO Box 36655, Dallas, TX 75235-1655

New Servicer:
Ocwen Loan Servicing, LLC
Customer Care Center
800 746 2936
P.O. Box 24737, West Palm Beach, FL 33416-4737

NMLS # 1852                                                                                                    WELMV0520
This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



**Ocwen Loan Servicing, LLC**
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: <u>This service has been discontinued.</u>

You should do the following to maintain coverage: <u>Contact your insurance carrier to inquire about direct billing</u>.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by the old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed.

If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of this debt, this notice is being provided for informational purpose only. It is not an attempt to hold you personally responsible for the debt and applies only to the lien on your property and not to you personally.

Ocwen Loan Servicing, LLC

July 11, 2014

NMLS # 1852                                                                                         WELMV0520

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



**O C W E N**

**Ocwen Loan Servicing, LLC**
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

# Welcome Information:

## Website Registration
## Frequently Asked Questions

NMLS # 1852                                                                                      WELMV0520

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



**Ocwen Loan Servicing, LLC**
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

**OCWENCUSTOMERS.COM**

At Ocwen Loan Servicing, LLC we understand the importance of homeownership. We're dedicated to providing you with assistance and information you need about your mortgage loan, as well as additional products you may need as a homeowner. To get started, visit **OcwenCustomers.com**, select "New Customers" and sign up as a new user with your new Ocwen loan number.



**It's easy to manage your account online anytime at OcwenCustomers.com.**
**Once registered, you will be able to:**

View details of your mortgage account
Update or remove Registered Users
Update your address, email, and phone number
Review your monthly statement detail and history
Confirm receipt of your last payment
Examine your year-end statement
Check your escrow summary
Check your year-to-date interest and taxes paid
Select communication preferences to meet your needs
Explore homeowner programs available to you such as the Equity Accelerator® program
Communicate via a secure messaging center

*On the following page you may find answers to common questions. These are a sample exerted from the Frequently Asked Questions pages online at ocwencustomers.com*

NMLS # 1852      WELMV0520

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



O C W E N

## Ocwen Loan Servicing, LLC
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

### General Account & Loan Payments

**What if I made a payment to my Prior Servicer, but it has not posted yet?**
Your previous Servicer will forward your payment to us within 15 business days. It may take a few days for us to receive and apply the payments, but this will not negatively impact your account or your credit report. To check on the status of your account, you may go to www.ocwencustomers.com.

**How can I get information about my account?**
You can access Ocwen's website and/or automated telephone system which will provide you with information regarding your account 24 hours a day. These systems have been designed to provide you with the most frequently requested services or information. This includes, but is not limited to, options to obtain payment histories, a payoff or reinstatement quote, status of your credit reporting, payment options, status of tax and insurance payments, financial hardship options and frequently asked questions (FAQ). Website: www.ocwencustomers.com. Telephone Number: (800) 746-2936.

**If my account is past due and I have not made a payment arrangement with my Prior Servicer, how can I make payment arrangements or get assistance due to financial difficulties?**
We offer a number of specialized programs designed to assist borrowers who are past due. Please go to www.ocwencustomers.com, click on "Mortgage Customers" and then log in with your User ID and Password. If you need to create a User ID and Password, select the "New Customers icon". Once you log in, select the "Financial Difficulties" icon. This will allow you to download an application package.

**If my account is current, where do I send my payments?**

Payment Processing Address
Ocwen Loan Servicing, LLC
P.O. Box 6440
Carol Stream, IL 60197-6440

For Overnight Express Payments
Ocwen Loan Servicing, LLC Attn: Cashiering
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Are there any special requirements for hazard insurance?**
It is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance on your property (with flood and/or windstorm coverage, as applicable) and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

**INSURANCE**
Ocwen Loan Servicing, LLC
ISAOA
P. O. Box 6723
Springfield, OH 45501-6723
Phone: (866) 825-9265
updateinsuranceinfo@ocwencustomers.com

**PROPERTY TAXES**
Ocwen Loan Servicing, LLC
Attn: Tax Department
P.O. Box 24665
West Palm Beach, FL 33416-4665
Phone: (800)746-2936

NMLS # 1852                                                                                                    WELMV0520

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



**Ocwen Loan Servicing, LLC**
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

## Mortgage Modifications

**I am currently on a trial modification plan and still have payments remaining before it becomes a final/permanent modification. What do I do?**
You should continue making your monthly payments as required in the modification plan. Your Prior Servicer will be providing Ocwen the status of your modification. Please allow 30 days to review and process your information. It is not necessary to call for a status prior to 30 days, as the agent will not have any additional information to provide you. If your trial plan is scheduled to end within 60 days of your loan transfer date, your trial plan will not expire until the later of (i) the last day of the month your modification becomes effective as noted in your final modification agreement or (ii) the due date your final modification agreement must be returned as noted in your final modification agreement.

**I am currently on a trial modification. Do I need to provide any additional information for my loan to be permanently modified?**
No. You do not need to send any additional documentation for Ocwen to send you a final modification agreement. Once you return the executed final modification agreement and have made all required monthly trial plan payments, we will permanently modify your mortgage loan.

**How do I contact my relationship manager?**
To contact your relationship manager contact our Customer Care Center at (800) 746-2936 and request an appointment with your Relationship Manager.

**I just submitted my modification application to the Prior Servicer. Should I send this to Ocwen again?**
Your Prior Servicer will provide Ocwen with the status of your modification application and copies of your documentation. It is not necessary to re-send the documents to Ocwen at this time. Please allow up to 30 days from the date of the account transfer for Ocwen to process your application documentation and determine your eligibility. It is not necessary to call prior to 30 days as the agent will not have any additional information to provide to you.

**I received a notice from my Prior Servicer that I was denied for the Making Home Affordable Program. I am still having financial difficulty; what can I do?**
We may still be able to help you. We offer a number of specialized programs designed to assist borrowers who are past due. Please go to www.ocwencustomers.com for more information and to download an application for assistance.

**I received a notice from my Prior Servicer that they were missing documents for my modification but I have not sent them yet; do I send these documents to Ocwen now?**
Yes, please send the documents to Ocwen via e-mail at mod@ocwencustomers.com or fax the documents to (407) 737-6174. Your Prior Servicer will be providing Ocwen with the status of your modification (trial plan or initial application), copies of your initial application and information identifying the missing documentation. Please allow up to 30 days from the date you send the documentation for Ocwen to process your documentation.

## Short Sale & Deed In Lieu

**I have a Short Sale or Deed in Lieu application pending with my Prior Servicer. Do I have to resend all the documentation to Ocwen now and re-apply?**
If you have a pending foreclosure sale date or closing scheduled in the next 60 days, please resend the documentation by fax to (407) 737-5071 for Short Sale and 1-407-737-5070 for DIL or e-mail them to ss@ocwen.com for Short Sale and dil@ocwen.com for DIL to expedite processing. If you do not have a foreclosure sale or scheduled closing in the next 60 days, your Prior Servicer will provide Ocwen the status of your pending resolution. Ocwen will be contacting you with a final approval or denial. Please allow Ocwen 30 days to process your Short Sale or Deed in Lieu application.

---

NMLS # 1852

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

WELMV0520



**Ocwen Loan Servicing, LLC**
WWW.OCWENCUSTOMERS.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

**I received approval from my Prior Servicer for a Short Sale or Deed in Lieu; will this approval be honored by Ocwen?**
Yes, it will be honored as long as you meet the original requirements or contingencies for approval provided by your Prior Servicer. With respect to Short Sales, please note that the original expiration date of your Prior Servicer's approval (the "good through" date) still applies; if it has expired, the approval is no longer valid. Your Prior Servicer will be providing these approval requirements to Ocwen.

**I received approval from my Prior Servicer for a Short Sale or Deed in Lieu, but the approval will expire shortly (or just expired) and my closing is after this day. What do I do?**
You should fax your original approval documents and an updated net sheet or HUD1 with the projected closing date to (407) 737-5071 for Short Sale and 1-407-737-5070 for DIL or e-mail them to ss@ocwen.com for Short Sale and dil@ocwen.com for DIL. With respect to Short Sales, please note the original expiration date of your Prior Servicer's approval (the "good through" date) still applies. If there is a Foreclosure Sale scheduled on your account, **we will not postpone the foreclosure sale**.

NMLS # 1852                                                                                                          WELMV0520
This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

**Exhibit B**



**O C W E N**

WWW.OCWEN.COM

July 11, 2014

Keith R Snyder
████████████████

Loan Number:        ████1670
Property Address:   3135 Lido Isle Ct, Las Vegas, NV 89117

Dear Borrower(s):

Ocwen Loan Servicing, LLC ("Ocwen") is the servicer of the above-referenced loan (hereinafter referred to as "the Debt") for ("Creditor") GPMF 2005 HE2.

As of July 11, 2014, our records reflect that the current unpaid debt is:

| | |
|---|---:|
| Principal | $99,968.08 |
| Interest | $79,144.69 |
| Late Charges | $2,560.90 |
| Collection Costs | $ 0.00 |
| Escrow Advances | $ 0.00 |
| Suspense Balance | $ 0.00 |
| NSF Fees | $ 0.00 |
| Securitized Interest Balance | $ 0.00 |
| Deferred Interest Balance | $ 0.00 |
| Total Due | $181,673.67 |

Please be advised that accrued interest, fees, corporate and escrow advances, and other charges (including prepayment charges if applicable) may be assessed to your account during the period prior to receipt of your payment. Therefore, the total amount due on the day your payment is received by Ocwen may have increased. This letter is in no way intended as a payoff statement for your mortgage. It merely states the amount of the debt as of the date of this letter. In the event you wish to payoff your debt please contact us at (800) 746-2936 to request a payoff statement. Ocwen prefers that all payments be made in certified funds, cashier's check or money order(s) payable to Ocwen Loan Servicing, LLC. Please always include the "Loan Number" with your payment.

Unless, within thirty (30) days after receipt of this notice, you dispute the validity of this debt or any portion thereof, we will assume the debt to be valid. If, within thirty (30) days of your receipt of this notice, you notify us in writing that the debt, or any portion thereof, is disputed, we will:

1.  Obtain verification of the debt or, if the debt is founded upon a judgment, we will mail to you a copy of such verification or judgment.
2.  If the original creditor is different from the creditor named above, then upon your written request within thirty (30) days of the receipt of this notice we will provide you with the name and address of the original creditor.

If you are experiencing a financial hardship, please contact our Customer Care Center immediately. Our Customer Care Coordinators can assist you or help you set up an appointment with an Ocwen Relationship Manager to discuss mortgage assistance options and explore options to avoid foreclosure. If you have been previously denied a modification, short sale or other resolution by your prior servicer, we may still be able to help you.

For your convenience, you can set up an appointment with a Relationship Manager at any time. To set up an appointment with a Relationship Manager, simply call our Customer Care Center at (800) 746-2936, Monday to Friday, 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET or Sunday 9:00 am to 9:00 pm ET. Once a Relationship Manager is assigned to you, she/he will be responsible for monitoring your account, making sure that we have all of your critical information and carefully reviewing your situation.

DEBVALTR 001

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



**O C W E N**

WWW.OCWEN.COM

Yours truly,

**CORRESPONDENCE ADDRESS:**
Ocwen Loan Servicing, LLC
ATTN: Customer Care Center
P.O. Box 24738
West Palm Beach, FL 33416-4738

Customer Care Center
Toll Free Phone: 1 (800) 746-2936

NMLS # 1852

DEBVALTR 001

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.
However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does
not constitute an attempt to collect a debt.*



June 20, 2014

KEITH R SNYDER
████████████████
████████████████

Re: Notice of Transfer of Collection Rights of ████████████████ Loan No. ██████ for the property located at 3135 LIDO ISLE CT , LAS VEGAS, NV 89117.

Dear Customer:

You are hereby notified that the collection obligations associated with your mortgage loan, that is, the right to collect payments from you, is being transferred by ████████████████ to Ocwen Loan Servicing, LLC effective 7/7/2014. The last date that ████████████████ will accept a payment from you is 7/6/2014. The date that your new servicer or collection agent will start accepting payments from you is 7/7/2014. The transfer of the collection rights associated with your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms related directly to the collection obligations associated with your loan.

Except in limited circumstances, the law requires that ████████████████ send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer or collection agent must also send you this notice no later than 15 days after the effective date or at closing.

If your payments are automatically deducted from your bank account, this service will be discontinued. Premiums for mortgage life, accidental death, or disability insurance will not be transferred to your new servicer. However, you may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact ████████ ████████ if you are unsure of your carrier's name. By January 31 of each year, you will receive an Annual Tax and Interest Statement from each company that has serviced your loan during the previous year. Each statement will contain IRS reporting information related to the time your loan was serviced by ████████████████ or another servicer.

Your present collection agent is ████████████████ If you have any questions for ████████████████ relating to the transfer of collection rights associated with your mortgage loan, please call ████████████████ on or before 7/6/2014 at (877) 469-7325 between 8:30am and 5:30pm (Central) Monday through Friday. Through 7/6/2014, you may also write ████████████████ at the address below.

████████████████
████████████████
████████████████

████████████████

Hours of Operation: Mon - Fri 8:30am - 5:30pm Central

████████████████