IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 14-cv-8461 ) |
| OCWEN LOAN SERVICING, LLC, | ) Judge Kennelly ) |
| Defendant. | ) |

**Defendant's Rule 12(b)(6) Motion To Dismiss And
Incorporated Memorandum Of Law**

Defendant, Ocwen Loan Servicing, LLC ("Ocwen"), moves to dismiss with prejudice the Third Claim for Relief in Plaintiff Keith Snyder's Complaint under Federal Rule of Civil Procedure 12(b)(6).[1]

## Introduction

This case relates to a home equity line of credit ("HELOC") loan that Snyder received in 2006. Snyder alleges that he stopped making payments on the loan in April 2007, that the property securing the loan was foreclosed upon by the senior lienholder in January 2008, and that the original creditor has since charged off the HELOC loan. Ocwen just recently became the servicer for the HELOC loan. Snyder alleges that Ocwen's first two letters to him violated two separate provisions the Fair Debt Collection Practices Act ("the Act"). One letter said that servicing of Snyder's loan had been transferred to Ocwen, and the other gave Snyder information that a debt collector is required to provide a consumer under section 1692g(a) of the Act.

---

[1] Pursuant to Federal Rule of Civil Procedure 12(a)(4), Ocwen will file its answer to the remaining counts within 14 days after this Court's ruling on this motion.

Snyder fails to state a claim based on these two letters for several reasons. First, Snyder relies on a provision of the Act (15 U.S.C. §1692e) that applies only when a communication is sent "in connection with the collection of any debt." But the notice of servicing transfer sent by Ocwen was not sent in connection with the collection of a debt. As courts in the Seventh Circuit and elsewhere have recognized, letters that simply provide information do not qualify as being in connection with the collection of any debt, particularly when they are simply providing information about how the relationship between the debtor and creditor will be handled in the future and do not demand a payment.

In addition, Snyder's claims under 15 U.S.C. §§1692e-f should be dismissed in their entirety because under the unsophisticated consumer standard, no unsophisticated but reasonable consumer would conclude that Ocwen's letters were an "unfair or unconscionable means to collect or attempt to collect a debt" or contained a false representation in connection with the collection of a debt, especially when the debt was already charged off and the property securing that debt had been foreclosed. The Seventh Circuit has noted that this would be particularly true where, as here, a purported debt collection letter tracks the statutory language required under the Act.

## Factual Background[2]

In 2006 Snyder obtained two loans secured by real property located in Nevada: (1) a first-position mortgage from Countywide Home Loans, and (2) a HELOC loan from Greenpoint Mortgage Funding with an approximate balance of $100,000. (Compl., ¶ 7). Snyder stopped making payments on both loans in April 2007, and the senior lender at that time initiated a non-judicial foreclosure, which resulted in a trustee's sale on January 18, 2008. (*Id.* ¶ 9). Snyder alleges that the trustee's sale satisfied his obligations under the first-

---

[2] Snyder's allegations are presumed to be true for the purposes of this motion only.

position mortgage and resulted in a $40,222.78 surplus that should have been applied to the HELOC loan. (*Id.*).

On July 11, 2014, Ocwen sent Snyder a letter telling him that servicing of the HELOC loan had been transferred to Ocwen. (Compl. ¶ 11, Ex. A). Because the HELOC loan had been transferred from another servicer, Ocwen had no choice but to send this servicing transfer notice pursuant to the express requirements of the federal Real Estate Settlement Procedures Act. *See* 12 U.S.C. § 2605(c)(1) ("Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer."). The servicing transfer notice told Snyder that Ocwen would be his new servicer effective July 10, 2014 and provided contact information for Ocwen. (Compl., Ex. A). Ocwen sent another letter to Snyder on July 11, 2014 containing information regarding Snyder's right to dispute the validity of the HELOC loan. (Compl. ¶ 12, Ex. B). The language in this letter tracks the debt validation notice language in 1692g(a) of the Act. *See* 15 U.S.C. 1692g(a).

The exhibits attached to Snyder's complaint show that neither the servicing transfer notice nor the validation notice demanded that Snyder make a payment, did ***not*** contain any payment coupons, did ***not*** tell Snyder he was delinquent, did ***not*** offer to "settle" a debt, and did ***not*** threaten any consequences against Snyder if he failed to make a payment. (Compl. Exs. A-B).

Snyder further alleges that beginning in mid-July 2014, Ocwen called his cell phone using an automated telephone dialing system and an artificial or pre-recorded voice. (Compl. ¶ 19, 21, 23). Ocwen allegedly lacked express consent to call Snyder's cell phone using an automated telephone dialing system. (*Id.* ¶ 22). When Snyder received these automated calls, "he heard a message stating the call was intended to reach Keith Snyder about 'an important

3

business matter' and inviting him to press one of an enumerated list of digits to reach a particular department." (*Id.* ¶ 23). He does not allege that anyone made any demand for payment or threat of litigation at any time over the phone.

In his complaint, Snyder claims that Ocwen's servicing transfer notice and validation notice were demands for payment that falsely represented the legal status of the debt (§1692e(2)(A)), were false or deceptive means to collect the debt (§1692e(10)), and were unfair or unconscionable means to collect the debt because Ocwen attempted to collect an amount not authorized by the HELOC loan documents or by law (§1692f(1)). (Compl., ¶¶ 33, 34-39). He further alleges that the automated phone calls made without his consent were illegal under the Telephone Consumer Protection Act of 1991 ("TCPA") and therefore violated §1692f of the FDCPA. (*Id.* ¶ 32).

## Motion to Dismiss Standards

The Seventh Circuit imposes two hurdles that a plaintiff must clear in order to survive a motion to dismiss under Rule 12(b)(6): "[f]irst, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and, "[s]econd, its allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Thus, Rule 12(b)(6) requires dismissal of any claim where the underlying allegations of that claim are merely "consistent with" liability, "too vague to provide notice to defendants," or "merely a formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

# Argument

I. **Snyder's claims under section 1692e of the Act based on the notice of servicing transfer fail because the notice was not sent in connection with the collection of a debt.**

The plain language of section 1692e of the Act states that this section applies only to communications sent "in connection with the collection of any debt." *See* 15 U.S.C. §1692e. The FDCPA does not define the phrase "in connection with the collection of any debt," but the Seventh Circuit has made clear that not all communications sent to borrowers about a debt are "in connection with the collection of a debt." *Bailey v. Security National Servicing Co.*, 154 F.3d 384, 388 (7th Cir. 1998). Where a communication is not sent in connection with the collection of a debt, this section does not apply. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010).

Communications that merely provide information about the current status of a debt but that do not demand any payment do not trigger §1692e. *Bailey*, 154 F.3d at 388–89 (affirming dismissal of FDCPA claim; holding letter that "does not 'demand' any payment whatsoever, but merely informs [plaintiffs] about 'the current status' of their account," was not sent in connection with the collection of debt); *McCready v. Jacobsen*, No. 06-2443, 2007 U.S. App. LEXIS 9651 (7th Cir. Apr. 25, 2007) (holding that letter that did not demand payment but simply provided "an accounting how [plaintiff's] security deposit had been applied toward unpaid rent and repairs" was not a collection letter subject to the FDCPA).

The notice of servicing transfer attached to the Complaint as Exhibit A contains no language that conceivably could be construed as demanding payment on a debt. The notice's first page explains that servicing of the loan was transferred from Real Time Resolution ("RTR") to Ocwen effective July 10, 2014 and that Ocwen "will collect the payments going forward." (Compl. Ex. A). It lists a payment address for Ocwen, and also provides RTR's

5

and Ocwen's contact information in case Snyder has any questions. (*Id.*). The second page includes information regarding insurance coverage and states that if Snyder is involved in a bankruptcy or had received a bankruptcy discharge, the notice of servicing transfer was being sent for informational purposes only. (*Id.*). The remainder of the notice—entitled "Welcome Information: Website Registration / Frequently Asked Questions"—includes information about creating an online account and answers to questions grouped under headings such as *General Account & Loan Payments*, *Mortgage Modifications*, and *Short Sale & Deed in Lieu*. (*Id.*).

Exhibit A is precisely the type of letter that courts in this Circuit have held are not are not sent "in connection with the collection of a debt" when they merely advise a borrower that a debt is being transferred from one party to another. For instance, in *Thompson v. BAC Home Loans Servicing, L.P.*, No. 2:09-CV-311-TS, 2010 WL 1286747 (N.D. Ind. Mar. 26, 2010), the court held that a similar RESPA servicing transfer letter was not sent in connection with the collection of a debt. *Thompson*, 2010 WL 1286747 at *5. Like Exhibit A here, the notice in *Thompson* says that servicing of plaintiff's mortgage is being transferred to defendant. *Id.* at 3. Likewise, the notice provides payment instructions and the new servicer's payment address. *Id.* And, similar to Exhibit A, the notice states that if the debtor is currently in bankruptcy, the notice is intended for informational purposes only and is not an attempt to recover or enforce a claim. *Id.* The notice also contains a payment coupon listing the amount due for the next regular payment. *Id.* at *4. Additionally, the notice indicated that if the previous servicer was automatically deducting monthly payments from plaintiff's bank account, the new servicer would continue that service without interruption. *Id.* Exhibit A, on the other hand, states that if "the monthly payment was being drafted by Real Time Resolution from a designated financial institution, this service has been discontinued."

6

(Compl. Ex. A). The *Thompson* court found the notice was not sent in connection with collection of a debt because it was purely informational and no attempt was made to collect the debt:

> There is no indication that the Defendants are undertaking collection efforts for missing or late payments. Rather, they are providing information about the new servicer, including its payment remittance address, so that the consumer can avoid missing payments or making late payments, which might necessitate the sending of a real dun.

*Thompson*, 2010 WL 1286747 at *4. The court found it significant that "[t]here is no mention of default, delinquency, or foreclosure." *Id.* Exhibit A makes no mention of these, either. (Compl. Ex. A).

Similarly, in *Shelley v. Ocwen Loan Servicing, LLC*, No. 1:13-cv-506-RLY-DKL, 2013 WL 4584649, at *7 (S.D. Ind. Aug. 28, 2013), a notice of servicing transfer was held not to be sent in connection with the collection of a debt because "[o]n its face, it is clearly informational—it alerts Plaintiffs that their account has been transferred to Ocwen and provides Ocwen's contact information." Like Exhibit A and the *Thompson* notice, the *Shelley* notice states that servicing of plaintiffs' loan was being transferred, provides the new servicer's contact information, and includes a similar bankruptcy notice. *Shelley*, 2013 WL 4584649 at *1. And, like the *Thompson* notice, it contains a payment coupon. *Id.* Additionally, the *Shelley* notice lists the plaintiffs' principal balance, loan rate, and due date for the next payment. *Id.* The *Shelley* court determined that Ocwen was simply "introducing itself and providing information of how the relationship should be handled *in the future*, not about how the mortgage was handled in the past." *Id.* at *6. And, the court found it significant that the notice "did not demand a specific payment or discuss the delinquency of the underlying debt." *Id.* at *7.

7

Courts in other jurisdictions have reached the same conclusion about similar servicing transfer letters. *Parker v. Midland Credit Management, Inc.*, 874 F.Supp.2d 1353, 1358 (M.D. Fla. 2012) (granting motion to dismiss; letter advising that debt had been transferred was not in connection with collection of debt); *Mabbit v. Midwestern Audit Service, Inc.*, 2008 WL 723507, at *4 (E.D. Mich. Mar. 17, 2008) (letter that "simply informs Ms. Perry that a previous balance for which she was responsible has been transferred to her current account" was not sent in connection with the collection of a debt); *Hart v. FCI Lender Services, Inc.*, No. 13-CV-6076 CJS, 2014 WL 198337, at *6 (W.D. N.Y. Jan. 15, 2014) (a servicing transfer notice was not a communication in connection with collection of a debt because the "notice is informational in nature, and does not reference an amount owed or threaten to take any action if payment is not made").

Like the notices of servicing transfer in these cases that were not found to be sent in connection with the collection of a debt, Exhibit A is purely informational. The notice of servicing transfer simply explains that servicing of the HELOC was being transferred to Ocwen, provides payment instructions and Ocwen's payment address and contact information, and provides an FAQ touching on common mortgage loan topics. Exhibit A does *not* say any amounts are currently due and does *not* contain a payment coupon. Accordingly, since notices of servicing transfers that *do* list loan figures and contain payment coupons—but are otherwise substantially similar to Exhibit A (*e.g.*, *Thompson* and *Shelley*)— are not sent in connection with collection of a debt, nor can Exhibit A be found to trigger §1692e. Dismissal is warranted for this threshold reason.

**II. Snyder's FDCPA claims fail under the unsophisticated consumer standard.**

Section 1692e of the FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of a debt. 15 U.S.C. §1692e. And, section 1692f forbids a

8

debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. Snyder alleges that Ocwen's letters falsely represented the status of the debt under §1692e. (Compl. ¶ 33). And, the letters allegedly triggered §1692f(1)—which relates to the collection of a debt that is not "expressly authorized by the agreement creating the debt or permitted by law"—because they improperly calculated interest, the amount owed, and because the debt was purportedly time-barred. *Id.* at ¶¶ 34-39; 15 U.S.C. §1692f.

Claims under sections 1692e and 1692f are assessed through the eyes of an unsophisticated consumer. *Turner v. J.V.D.B. & Assoc.*, 330 F.3d 991, 997 (7th Cir. 2003). The unsophisticated consumer "is uninformed, naïve, and trusting, but is also assumed to possess rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Ruth v. Triumph P'ship*, 577 F.3d 790, 801 n.5 (7th Cir. 2009). The unsophisticated consumer standard "admits an objective element of reasonableness" which protects debt collectors from "unrealistic or peculiar interpretations of collection letters." *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994). Under this standard, Snyder's claims should be dismissed because an unsophisticated consumer would not believe the validation notice or notice of servicing transfer were unfair or unconscionable debt collection means (§1692f) or contained false representations in connection with the collection of a debt (§1692e).

A.  **The validation notice tracks the language of 15 U.S.C. §1692g(a) and therefore cannot serve as the basis for additional liability under the FDCPA.**

The validation notice attached to the Complaint as Exhibit B was sent pursuant to §1692g(a) and cannot establish a plausible claim for an unfair or unconscionable means of debt collection or a false representation in connection with the collection of a debt.

The Seventh Circuit has expressly held that a letter containing the notices required by §1692g(a) cannot trigger additional liability under §1692f. *See Turner*, 330 F.3d at 998

("[W]e hold that a letter simply providing the information required by §1692g(a) is not an unfair or unconscionable means of debt collection under §1692f, even when the debt collector may have violated some other provision of the FDCPA."); *Yang v. A.M. Miller and Assoc.*, 122 F.3d 480, 484 (7th Cir. 1997) ("[A] debt collector who strictly complies with the provisions of the FDCPA cannot be said to have used unfair or unconscionable means to collect a debt under section 1692f."); *see also Harrer v. RJM Acquisitions, LLC*, No. 10-cv-7922, 2012 WL 162281, at *5 (N.D. Ill. Jan. 19, 2012) ("Regardless of whether a collection letter falsely implies that a consumer owes a debt that he does not actually owe, if the letter simply provides to the consumer the information required under §1692g(a)—the amount of the debt, the name of the creditor, and the required statements regarding a verification request—it is not 'unfair' for purposes of §1692f."). Nor would an unsophisticated consumer consider a validation notice a false representation in connection with the collection of a debt when it tracks the statutory requirements in §1692g(a). *See Yang*, 122 F.3d at 484 (validation letters were not false, misleading, or deceptive when they tracked §1692g nearly verbatim and did not contain additional, contradictory language).

Exhibit B demonstrates that Ocwen's validation notice lists the amount of the debt, names the creditor, and tracks the statutory language of §1692g(a) regarding a debt validation request. (Compl. Ex. B). And, Snyder does not allege that the notice fails to track §1692g(a) or contains any language contradicting the statute's requirements. Accordingly, pursuant to well-established case law in this Circuit, Snyder's §1692e and §1692f claims based on the validation notice must be dismissed. *See Harrer*, 2012 WL 162281 at *5 ("No reasonable unsophisticated consumer who received a letter like the letter Plaintiff received would conclude that the letter is an 'unfair or unconscionable' means of debt collection.").

10

**B.     The notice of servicing transfer is not actionable under the reasonable unsophisticated consumer standard.**

Nor would a reasonable unsophisticated consumer consider the notice of servicing transfer an unfair or unconscionable means of collecting a debt or a false representation in connection with collecting a debt.  First, the notice of servicing transfer makes no mention of interest, fees, charges, or expenses—the alleged bases for Snyder's §1692f claims—so it could not be an unfair or unconscionable means to collect the debt.  (*See* Compl. ¶34 ("Ocwen also attempted to collect interest, fees, charges, and expenses that were not expressly authorized … or permitted by law."), Ex. A); *Turner*, 330 F.3d at 996 ("Whether the collection of a debt violates §1692(f)(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the *charge*; or (2) whether the *charge* is permitted by law.") (emphasis added).  And, because the notice of servicing transfer is purely informational and was not sent in connection with the collection of a debt—as discussed above—it is axiomatic that it could not be a means of collecting or attempting to collect a debt, let alone be an unfair or unconscionable means.  *See Turner*, 330 F.3d at 996 (stating that the focus of §1692(f) "is on the means used to *collect* …") (emphasis added).

Moreover, an unsophisticated consumer would not think the notice of servicing transfer—or the validation notice—is an unfair or unconscionable means of debt collection or contains any false representations about the status of the debt because he would know that the HELOC loan had already been charged off and the property securing the loan foreclosed.  *See Harrer*, 2012 WL 162281 at *4 ("the unsophisticated consumer knows his account history …"); *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) ("The 'unsophisticated consumer' isn't a dimwit.").  For instance, where a consumer whose debt was discharged in bankruptcy received a letter stating he owed a certain amount to a creditor and containing the disclosures required under §1692g(a), the Seventh Circuit could "not see how a reasonable jury could

11

conclude that furnishing this information would, in any sense, be an 'unfair or unconscionable means' of debt collection when directed toward an unsophisticated but reasonable consumer whose debt had been discharged in bankruptcy." *Turner*, 330 F.3d at 998.

There is no meaningful distinction between the facts in Turner, involving a discharge in bankruptcy, and Snyder's claims, because in both scenarios a reasonable unsophisticated consumer is presumed under the law to have a basic understanding of his account history— whether that history includes a bankruptcy or a foreclosure. So, here, sending the servicing transfer notice or validation notice to a reasonable unsophisticated consumer who, under the law would be presumed to be aware that his property had been foreclosed upon six years prior earlier (and whose debt was charged off) could not be an unfair or unconscionable means of debt collection or a false representation in connection with collecting a debt. Snyder's §1692e and §1692f claims should be dismissed on these additional grounds.

### III. Snyder's FDCPA claim based on alleged TCPA violations is insufficiently pled.

Finally, Snyder also asserts that automated phone calls he allegedly received from Ocwen and which purportedly violated the TCPA are *per se* violations of §1692f. Section §1692f deals with "unfair and unconscionable means to collect or attempt to collect a debt." 15 U.S.C. §1692f. The FDCPA defines "debt" as an "obligation of a consumer to pay money arising out of a transaction in which the money … [is] primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §1692a(5).

Snyder never alleges that any of Ocwen's calls were made in connection with a *debt* as defined by the FDCPA. Snyder alleges that he began receiving phone calls from Ocwen in mid-July 2014 (Compl. ¶ 19), that he believes Ocwen obtained his phone number through

12

skip tracing (*id.* ¶ 21), that Ocwen did not have express consent to use an automated dialing system to call him on his cell phone (*id.* ¶ 22), and that he received messages stating that the call was intended to reach him regarding "an important business matter." (*Id.* ¶ 23). Apart from indicating that the calls concerned "an important business matter," Snyder has not alleged what the content of the calls was, and certainly has not pled that the calls concerned a debt. *See* 15 U.S.C. §§1692a(5).

But Snyder must assert facts to suggest the calls concerned a debt in order to trigger the protections of §1692f, which applies to the means of collecting a debt. *See* 15 U.S.C. §§1692f; *Evangelista v. Regent Asset Mgt. Solutions, Inc.*, No. 5:11-cv-34-Oc-37TBS, 2011 WL 4531340, at *3 (M.D. Fla. Sept. 29, 2011) (denying plaintiff's motion for entry of default judgment on FDCPA claims based on autodialed calls where plaintiff's allegations about the content of the voicemails left by the defendant lacked sufficient factual specificity); *Horkey v. J.V.D.B. & Assoc.*, 179 F. Supp. 2d 861, 868 (N.D. Ill. 2002) (debt collector's phone call did not implicate the FDCPA where the call did not concern plaintiff's debt). Accordingly, Snyder's conclusory allegation that "[u]sing illegal conduct to collect a consumer debt, including placing calls in violation of the TCPA, is unfair and unconscionable and therefore violates" 15 U.S.C. §1692f is insufficient to state a claim. To satisfy the plausibility standard, Snyder must provide more than allegations that are merely "consistent with liability;" rather, the allegations must raise that possibility "above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Absent any specific allegations showing that Ocwen's calls were "unfair or unconscionable means to collect or attempt to collect any debt," Snyder's purported Third Claim for Relief fails to survive scrutiny under Rule 12(b)(6).

13

## Conclusion

For these reasons, Ocwen Loan Servicing, LLC, respectfully requests that the Court grant its Motion to Dismiss, issue an order dismissing the Third Claim for Relief with prejudice, and award to Ocwen any additional relief that it deems just and proper.

DATED: December 22, 2014                OCWEN LOAN SERVICING, LLC

                                        By:   /s/ Simon Fleischmann

Thomas J. Cunningham (6215928)
*tcunningham@lockelord.com*
Simon Fleischmann (6274929)
*sfleischmann@lockelord.com*
Chethan Shetty (6300848)
*cshetty@lockelord.com*
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606
Phone: 312-443-0700

**CERTIFICATE OF SERVICE**

      I, Simon Fleischmann, an attorney, certify that I caused the foregoing Motion to Dismiss to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on December 22, 2014.

                                                    /s/ Simon Fleischmann