IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER, | ) |
| Plaintiff, | ) |
| vs. | ) No. 14 C 8461 |
| OCWEN LOAN SERVICING, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Keith Snyder has sued Ocwen Loan Servicing, LLC for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e-f. Snyder alleges that Ocwen called his cellular phone without his consent, falsely represented that his mortgage was legally enforceable, and calculated interest on his mortgage improperly. Ocwen has moved to dismiss Snyder's FDCPA claim. For the reasons stated below, the Court denies Ocwen's motion.

## Background

For purposes of the motion to dismiss, the Court accepts as true the following facts alleged in the complaint. In 2001, Keith Snyder purchased a home in Las Vegas, Nevada. Compl. ¶ 7. He refinanced the mortgage in 2006 with two loans. *Id.* One loan was from Countrywide Home Loans; the other, a home equity line of credit, was from Greenpoint Mortgage Funding. *Id.* Snyder stopped making payments on the loans

in 2007 and, on January 18, 2008, the home was sold in foreclosure. *Id.* ¶¶ 8-9. He alleges that the foreclosure sale fully satisfied the Countrywide loan, leaving $40,222.78 to apply to the home equity loan, on which the outstanding balance was $99,968.08. *Id.* ¶ 9.

Snyder alleges that he received two letters from Ocwen on July 14, 2014, both of which were dated July 11, 2014. *Id.* ¶ 11, 13. The first letter, titled "Notice of Servicing Transfer," informed Snyder that "Ocwen Loan Servicing, LLC will collect the [loan] payments going forward," and it provided an address to which payments should be sent. *Id.*, Ex. A. The second letter stated that Ocwen "is the servicer of the above-referenced loan," and it listed the amount of the debt, advised how Snyder would go about paying off the loan, and said that unless he disputed the validity of the debt within thirty days, Ocwen would assume the debt was valid. *Id.*, Ex. B. The letter also stated, "If you are experiencing a financial hardship, please contact our Customer Care Center immediately. Our Customer Care Coordinators can assist you or help you set up an appointment with an Ocwen Relationship Manager to discuss mortgage assistance options and explore options to avoid foreclosure." *Id.* Each page of both letters included the following disclaimer: "This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose." *Id.*, Exs. A & B.

Snyder alleges that Ocwen began calling his cellular phone around the time he received the two letters. *Id.* ¶ 19. He claims that he heard a pre-recorded message "stating that the call was intended to reach Keith Snyder about 'an important business matter' and inviting him to press one of an enumerated list of digits to reach a particular

department." *Id.* ¶ 23. Snyder alleges that he received at least four such calls. *Id.* ¶ 23-24.

Snyder contends that the letters and telephone calls violated the FDCPA, for two reasons. First, he alleges that "Ocwen calculated [the] interest charge improperly after the date of default . . . ." *Id.* ¶ 35. Second, he claims that Ocwen "falsely represented the legal status of the [home equity] loan by failing to inform him that the debt was, in fact, not legally owed by him." *Id.* ¶ 33. The debt was not legally owed, he argues, because Ocwen failed to obtain a deficiency judgment and because the statute of limitations had run. *Id.* ¶ 36-43. Ocwen has moved to dismiss Snyder's FDCPA claim.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), Snyder must provide "enough facts to state a claim to relief that is viable on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which in turn means that he must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts Snyder's allegations as true and draws reasonable inferences in his favor. *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014).

**A.     In connection with the collection of a debt**

"For the FDCPA to apply, [ ] two threshold criteria must be met." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). "First, the defendant must qualify as a 'debt collector,'" and "[s]econd, the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Id.* (quoting 15 U.S.C. §§ 1692a(6), 1692c(a)-(b), 1692e, 1692g). There is no

"bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Id.* The debt collector need not demand payment of the debt; a demand is "just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Id.* 385. Other factors include whether payments were past due; whether the purpose of the communication was to induce the debtor to settle the debt; and the relationship between the parties. *Id.* at 385-86.

Ocwen does not dispute that the validation letter—the second letter described above—was sent in connection with the collection of Snyder's debt. Snyder's payments were past due, and the relationship between Ocwen and Snyder arose out of the defaulted debt. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 799 (7th Cir. 2009). In addition, Snyder's allegations are sufficient to support an inference that Ocwen sent the letter to induce Snyder to settle his debt. The letter lists late charges, thus implying that further delay will come at a cost. Compl., Ex. B. And although the letter does not expressly demand payment, it invites Snyder "to discuss mortgage assistance options and explore options to avoid foreclosure." *Id.* That can reasonably be interpreted as inducement to settle the debt. *See Gburek*, 614 F.3d at 382 (letter that included an "offer to participate in loan-workout negotiations" was "sent to induce [the plaintiff] to settle her mortgage-loan debt in order to avoid foreclosure").

Ocwen disputes that the transfer letter was sent in connection with the collection of Snyder's debt. It is true that, in isolation, the transfer letter does not appear to be

4

connected to debt collection.[1]  But the "context of the communications—viewed objectively—are important factors as well."  *Gburek*, 614 F.3d at 385.  Snyder alleges that the validation letter and the transfer letter were sent on the same day.  This allegation is sufficient to support an inference that the transfer letter was sent in connection with the collection of Snyder's debt.  *See Ruth*, 577 F.3d at 798-99 (holding that privacy notice enclosed with collection letter was sent in connection with the collection of a debt).

Ocwen also contends that Snyder failed to allege that the telephone calls were made in connection with the collection of his debt.  It is true that Snyder only alleges "hear[ing] a message stating that the call was . . . about 'an important business matter.'" Compl. ¶ 23.  But like the transfer letter, this communication must be interpreted in context.  Snyder alleges that he began receiving the telephone calls around the same time that he received the letters (mid-July 2014).  At this stage, one may reasonably infer that the "business matter" referenced in the calls was the same matter the letters concerned—the only business matter alleged to exist between Ocwen and Snyder.  Snyder has thus adequately alleged that the telephone calls were made in connection with the collection of his debt.

## B.     False, deceptive, or misleading representation

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15

---

[1] Snyder notes that the letter includes the following disclaimer:  "This communication is from a debt collector attempting to collect a debt . . . ."  Compl., Ex. A.  But such disclaimers do not "automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance."  *Gburek*, 614 F.3d at 386 n.3.

5

U.S.C. § 1692e. That includes the "false representation of . . . the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). In deciding whether a representation is misleading, "the court views the letter through the perspective of an 'unsophisticated consumer.'" *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). That is, "the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived." *Id.*

Snyder alleges that Ocwen violated section 1692e by failing to disclose that the debt was not legally enforceable. Compl. ¶ 33. The debt was unenforceable, he alleges, because Ocwen failed to obtain a deficiency judgment within six months of foreclosure and because the statute of limitations had run. *Id.* ¶ 36, 39.

In *McMahon*, the Seventh Circuit held that "if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable . . . the collector has violated the FDCPA." *McMahon*, 744 F.3d at 1020. The language at issue in *McMahon* was an offer to settle the debt. That language violated the FDCPA, the court explained, "[b]ecause it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable . . . ." *Id.*; *see also Buchanan v. Northland Grp., Inc.*, 776 F.3d 393 (6th Cir. 2015) (holding that plaintiff who received dunning letter for time-barred debt "offer[ed] a plausible theory of consumer deception and confusion"). As in *McMahon*, the validation letter invites Snyder "to discuss mortgage assistance options and explore options to avoid foreclosure," but it does not mention the legal status of the debt. Compl., Ex. B. Although the settlement offers in *McMahon* were more definitive than the invitation to discuss mortgage assistance in the validation letter (the

defendants in *McMahon* offered to deduct a specific percentage from the balance), both communications may be read to imply that the debt is legally enforceable. "If unsophisticated consumers believe . . . that the debt is legally enforceable at all, they have been misled, and the debt collector has violated the FDCPA." *McMahon*, 744 F.3d at 1022.[2]

Ocwen argues that the statute of limitations had not run because the mortgage was an installment contract. Ocwen did not raise this argument until its reply brief, however. The point is therefore forfeited for the purposes of the motion to dismiss. The Court concludes that Snyder has stated an FDCPA claim under section 1692e.

**C.     Unfair or unconscionable means to collect or attempt to collect a debt**

The FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. That includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). Snyder alleges that Ocwen violated this provision by calculating interest improperly and by attempting to collect a debt that was legally unenforceable. Compl. ¶¶ 34-42.

Because the validation letter tracks section 1692g, Ocwen argues that it cannot violate section 1692f. In *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003), the Seventh Circuit held that "a letter simply providing the information required by

---

[2] Ocwen notes that the Seventh Circuit cautioned, "We do not hold that it is automatically improper for a debt collector to seek re-payment of time-barred debts; some people might consider full debt re-payment a moral obligation, even though the legal remedy for the debt has been extinguished." *Id.* But this qualification does not apply here. To repay a legally unenforceable debt out of moral obligation, the debtor must know that the debt is legally unenforceable.

7

§ 1692g(a) is not an unfair or unconscionable means of debt collection under § 1692f, even when the debt collector may have violated some other provision of the FDCPA [i.e., section 1692e]." *Id.* at 998. Unlike the plaintiff in *Turner*, however, Snyder alleges that the validation letter calculated interest improperly. Compl. ¶ 34-35. And, in any event, *Turner* does not apply to the telephone communications. Snyder thus states an FDCPA claim under section 1692f as well.

**Conclusion**

For the foregoing reasons, the Court denies Ocwen's motion to dismiss [dkt. no. 20].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 27, 2015