IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated, | NO. 1:14-cv-08461 |
| Plaintiffs, | Class Action |
| v. | Jury Trial Demand |
| OCWEN LOAN SERVICING, LLC, | Honorable Matthew F. Kennelly |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION AND
<u>LIMITED CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II. FACTUAL SUMMARY ............................................................................................2

    A. Throughout the Class Period, Ocwen Has Used Its Automatic Dialer to Place Calls to the Cellular Telephones of Individuals that Have Not Provided Consent, or Who Have Revoked Consent ............................................2

    B. Ocwen Continues to Use Its Dialer to Call Cellular Telephones of Consumers Without Permission, Continues to Refuse Revocation Requests, and Engages in Harassing "Reminder" Call Campaigns ....................................4

III. ARGUMENT .............................................................................................................7

    A. Plaintiffs Satisfy the Standard for a Preliminary Injunction .............................7

        1. Ocwen Has Violated the TCPA by Using an Autodialer to Call Consumers' Cellular Telephones Without Prior Express Consent, or after Consent was Revoked, Often Pursuant to a Harassing "Reminder" Call Campaign ....................................................................9

        2. Absent Injunctive Relief, Ocwen Will Likely Continue to Use an Autodialer to Call Consumers' Cellular Telephone Without Their Consent ........................................................................................13

        3. The Court Should Order a Nominal Bond ............................................15

    B. Plaintiffs Satisfy the Requirements for Class Certification .............................16

        1. Plaintiffs Satisfy the Requirements for Class Certification Under Rule 23(a).............................................................................................16

            a. Plaintiffs Satisfy the Numerosity Requirement .......................17

            b. There are Numerous Common Questions of Law and Fact......17

            c. Plaintiffs' Claims Are Typical of the Claims of the Injunctive Class........................................................................20

            d. The Class is Adequately Represented.......................................21

i

2.      Plaintiffs Meet the Requirements for Certification
        Under Rule 23(b)(2)..............................................................................22

3.      The Injunctive Class Members Are Easily Identified...........................23

IV.     CONCLUSION...............................................................................................24

# TABLE OF AUTHORITIES

**Page**

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
    747 F.3d 489 (7th Cir. 2014) ...................................................................17

*Barker v. Int'l Union of Operating Eng'rs, Local 150*,
    641 F. Supp. 2d 698 (N.D. Ill. 2009) .......................................................16

*Beal v. Wyndham Vacation Resorts, Inc.*,
    956 F. Supp. 2d 962 (W.D. Wis. 2013) ...................................................12

*Bell v. PNC Bank Nat. Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ...................................................................18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014)...........................................17, 20, 23, 24

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
    280 F.R.D. 408 (N.D.Ill.2012)..................................................................23

*Bridgeview Heath Care Ctr. Ltd. v. Clark*,
    No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011)....................18

*CE Design v. Beaty Const., Inc.*,
    No. 07–C–3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ....................20

*Chavez v. Ill. State Police*,
    251 F.3d 612 (7th Cir. 2001) ...................................................................16

*Commodity Futures Trading Comm'n v. Hunt*,
    591 F.2d 1211 (7th Cir. 1979) ............................................................8, 13

*Davis v. Hutchins*,
    321 F.3d 641 (7th Cir. 2003) ...................................................................16

*Drew v. Ocwen Loan Servicing, Inc.*,
    No. 8:14-cv-369-RAL-TGW (M.D. Fl.) .....................................................1

*D.U. v. Rhoades*,
    825 F.3d 331 (7th Cir. 2016) .....................................................................7

*Fed. Trade Comm'n v. Lifewatch Inc.*,
    No. 15–C–5781, 2016 WL 1315063 (N.D. Ill. Mar. 31, 2016) ...............7, 13

*Gaspar v. Linvatec Corp.*,
    167 F.R.D. 51 (N.D. Ill. 1996) ................................................................17

*Griffith v. Consumer Portfolio Serv.*,
    838 F. Supp. 2d 723 (N.D. Ill. 2011) ....................................................10

*Hinman v. M & M Rental Ctr., Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ....................................................21

*J2 Glob. Commc'ns, Inc. v. Blue Jay Inc.*,
    No. C 08-4254-PJH, 2009 WL 4572726 (N.D. Cal. Dec. 1, 2009) ...........8, 14

*Jamie S. v. Milwaukee Pub. Sch.*,
    668 F.3d 481 (7th Cir. 2012) ................................................................17

*Lynn v. Monarch Recovery Mgmt., Inc.*,
    No. CIV. WDQ-11-2824, 2013 WL 1247815 (D. Md. Mar. 25, 2013) ..........9

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ................................................................19

*Meyer v. Portfolio Recovery Associates, LLC*,
    707 F.3d 1036 (9th Cir. 2012) ................................................................8

*Meyer v. Portfolio Recovery Associates, LLC*,
    No. 11-CV-1008-AJB, 2011 WL 11712610 (S.D. Cal. Sept. 14, 2011) ......16

*Minnesota ex rel. Hatch v. Sunbelt Commc'ns & Mktg.*,
    282 F. Supp. 2d 976 (D. Minn. 2002) .....................................................8

*Modica v. Green Tree Servicing, LLC.*,
    No. 14 C 3308, 2015 WL 1943222 (N.D. Ill. Apr. 29, 2015) ...................10

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ................................................................23

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ................................................................20

*Pietrzycki v. Heights Tower Serv. Inc.*,
    No. 14-CV-6546, 2016 WL 3766344 (N.D. Ill. July 11, 2016) ............18, 20

*Reliable Money Order, Inc., v McKnight Sales Co., Inc.*,
    281 F.R.D. 327 (E.D. Wis. 2012) ..........................................................18

*Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp.*,
   627 F.2d 44 (7th Cir. 1980) ...................................................................15

*Ringswald v. Cnty. of DuPage*,
   196 F.R.D. 509 (N.D. Ill. 2000)............................................................17

*Roylance v. ALG Real Estate Servs., Inc.*,
   No. 5:14-CV-02445-PSG, 2015 WL 1522244 (N.D. Cal. Mar. 16, 2015)..................14

*Scherr v. Volpe*,
   466 F.2d 1027 (7th Cir. 1972) ...............................................................15

*Sec. & Exch. Comm'n v. Yang*,
   No. 12 C 2473, 2014 WL 2198323 (N.D. Ill. May 27, 2014) ..................................8, 14

*Sengenberger v. Credit Control Servs., Inc.*,
   No. 09C2796, 2010 WL 1791270 (N.D. Ill. May 5, 2010) ..........................................19

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ..................................................................18

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
   861 F. Supp. 2d 898 (N.D. Ill. 2012) ........................................................11

*Univ. of Tex. V. Camenisch*,
   451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)...............................................7

*U.S. Commodity Futures Trading Comm'n v. Oystacher*,
   No. 15-CV-9196, 2016 WL 3693429 (N.D. Ill. July 12, 2016)...............................8, 13

*United States v. Dish Network, L.L.C.*,
   No. 09-3073, 2016 WL 29244 (C.D. Ill. Jan. 4, 2016) .......................................8, 9, 13

*United States v. Kaun*,
   827 F.2d 1144 (7th Cir. 1987) ..................................................................8

*Wagner v. Duffy*,
   700 F. Supp. 935 (N.D. Ill. 1988) ............................................................16

*Walker v. Pierce*,
   665 F. Supp. 831 (N.D. Cal. 1987) ...........................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).......................................17, 18

*Whitten v. ARS Nat. Serv's, Inc.*,
No. 00–C–6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001)....................................21

**FEDERAL RULES**

Fed. R. Civ. P. 23..........................................................................................*passim*

Fed. R. Civ. P. 65(c) ...........................................................................................15

**FEDERAL REGULATIONS**

47 CFR § 64.1200(a)(1)(iii)......................................................................................9

**FEDERAL STATUTES**

15 U.S.C. § 1642......................................................................................................3

47 U.S.C. § 227..........................................................................................*passim*

**OTHER AUTHORITIES**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
18 FCC Rcd. 14014 (July 3, 2003) ................................................................4

*In re  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
30 FCC Rcd. 7961 (2015)....................................................................10, 11

# I. INTRODUCTION

Although Ocwen Loan Servicing, LLC ("Ocwen") has been defending these actions for two years,[1] and lost a jury trial more than a year ago as to whether its TCPA violations were willful,[2] it continues to use an Aspect Software, Inc. autodialer to make calls to consumers' cell phones without their permission. For example, Ocwen has continued to call nonparties Steve Bartolone and Jonathan Cody on their cellular telephones, despite both consumers repeatedly demanding that Ocwen stop calling them. Ocwen obtained and called their cell phone numbers without permission, including harassing "payment reminder" calls that occur regardless of whether they have timely paid their mortgages. And when they demand that the calls stop, Ocwen employees insist they cannot control the "computer." Mr. Cody even changed his cell phone number to prevent Ocwen's harassing calls, without success. Ocwen has continued to illegally robocall Mr. Cody and Mr. Bartolone as recently as September 21, 2016. In addition, it has become clear that Ocwen continues to engage in a widespread pattern of illegally obtaining consumers' cellular telephone numbers, including using skip tracing and "capturing" numbers on which consumers call Ocwen, as well as generally robocalling consumers without the required express consent or after consent has been revoked.

Plaintiffs seek an order that enjoins Ocwen, or any third party vendor on Ocwen's behalf, from using its Aspect Software, Inc. dialer to place calls to: (1) cellular telephone numbers obtained via skip-tracing; (2) cellular telephone numbers obtained via ANI capture; and (3) cellular telephone numbers after verbal or written requests that calls to that number, account, or consumer stop, including but not limited to payment reminder calls. ("Injunctive Relief"). In

---

[1] On September 28, 2016, this Court granted the parties' joint motion to reassign Plaintiff Beecroft's case to this District from the District of Minnesota. Dkt. No. 93. Plaintiff Beecroft's case is scheduled to be consolidated with this case upon transfer. *Id.*
[2] *Drew v. Ocwen Loan Servicing, Inc.*, 8:14-cv-369-RAL-TGW (M.D. Fl.); jury verdict at Document 102 (Sept. 23, 2015). Ocwen has also been defending TCPA claims in other jurisdictions.

addition, Plaintiffs request that the Court order Ocwen to suspend its reminder call program. As explained herein, Ocwen has demonstrated no ability to limit its reminder calls to consumers that have provided consent or to remove consumers that have revoked consent from its reminder call campaigns. To ensure compliance, Plaintiffs request that the Court appoint a special master chosen by Plaintiffs and approved by the Court, at Ocwen's expense, to monitor and audit Ocwen's compliance for no shorter than five years. Non-compliance should be under pains of contempt, including the possibility of an order of complete prohibition against using any automatic dialing system to make any calls at all: if Ocwen can't get consent right, then it should not be allowed to use its dialing equipment.

Plaintiffs also request that the Court certify an injunctive class under Federal Rule of Civil Procedure 23(b)(2) for the limited purpose of effectuating the proposed injunction (the "Injunctive Class"). The Injunctive Class is defined as:

> All persons called on a cellular telephone number by Ocwen, or a third party on its behalf, through the use of an autodialer, that Ocwen obtained via skip tracing or ANI capture, and/or after having provided a verbal or written request that calls to that number, account, or consumer stop, and/or who received a reminder call.

## II. FACTUAL SUMMARY

### A. Throughout the Class Period, Ocwen Has Used Its Automatic Dialer to Place Calls to the Cellular Telephones of Individuals that Have Not Provided Consent, or Who Have Revoked Consent

Ocwen is one of the largest non-bank mortgage servicers in the United States. Ocwen places calls to consumers using an ATDS called the Aspect dialer, which has the capacity to store or produce telephone numbers to be called. Declaration of Mark Ankcorn ("Ankcorn Decl.") ¶ 3; Ankcorn Decl., Exh. 1 (Deposition of Marc Trees ("Trees Dep.")) at 70:18–20, 134:6–11, 135:21–136:13. On October 27, 2014, Plaintiffs Keith Snyder and Susan Mansanarez

brought suit against Defendant Ocwen Loan Servicing, LLC ("Ocwen") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Fair Debt Collections Practices Act, 15 U.S.C. § 1642 ("FDCPA"). Dkt. No. 1. Plaintiffs allege that Ocwen uses its Aspect autodialer to call the cellular telephones of themselves and a class of consumers without consent. Ocwen used the Aspect dialer to place a dozen or so debt-collection calls to Mr. Snyder in July and August of 2014 on his cellular telephone. First Amended Complaint, Dkt. No. 29 ("FAC") ¶ 10. Mr. Snyder never provided this number to Ocwen or any of its predecessor loan servicers, and repeatedly requested not to receive calls on his cell. *Id.* ¶¶ 32–35. Ocwen also used the Aspect dialer to make hundreds of calls to Plaintiff Mansanarez's cell phone between 2014 and 2015. Ankcorn Decl., Exh. 2 (Deposition of Susan Mansanarez ("Mansanarez Dep.")) at 71:23–72:5; 72:6–73:6. While Ocwen initially had permission to call Ms. Mansanarez on her cell phone, it continued to make the calls after Ms. Mansanarez repeatedly asked that the calls stop. *Id.* at 71:23–73:6; 46:5–47:6; 47:14–49:24; 75:14–77:14. Similarly, Ms. Beecroft did not provide her telephone number to Ocwen or any of its predecessors, and did not consent to these calls. Rather, Ocwen obtained her cellular telephone through a skip trace and subsequently made approximately 58 calls to the number using the Aspect dialer. Trees Dep. at 154:15–169:10; Ankcorn Decl., Exh. 3 (Exhibit 24 to the Deposition of Mark Trees, Bates No. 6552–55))*;* Ankcorn Decl., Exh. 4 (Second Amended Complaint in *Beecroft v. Ocwen Loan Servicing, LLC* ("Beecroft Complaint")) ¶ 19. Ms. Beecroft told Ocwen's employees to stop calling her on at least two occasions, to no avail. Beecroft Complaint ¶ 20.

Although Ocwen sometimes calls telephone numbers provided by prior loan servicers, it often obtains customers' phone numbers without their knowledge or consent. It admits to using "skip tracing" to locate phone numbers using public directories, such as Switchboard.com or

WhitePages.com, or paid websites that obtain information from credit bureaus. Trees Dep. at 43:11–45:8. Ocwen also uses "ANI capture" to save the phone numbers that individuals have used to call Ocwen without obtaining the individuals' consent. Trees Dep. at 55:18–58:2.

Ocwen's outbound calls are automatic. Representatives do not need to press a button to receive or make calls. Ankcorn Decl., Exh. 5 (Deposition of Diksha Dutt ("Dutt Dep.")) at 32:6–14. Scripting automatically appears on the representative's computer screen depending on the type of call. *Id.* at 29:9–30:9. Sometimes a customer hears a pause between "hello" and the agent response, a phenomenon the FCC describes as "dead air," the result of overly-aggressive predictive dialing. *Id.* at 32:6–34:17. Dead air calls, according to the FCC, make consumers feel "harassed or aggravated," impose a particular burden upon certain individuals with disabilities who struggle to answer telephone calls in the first place, and can be frightening to the elderly. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14101-02, ¶ 146–47 (July 3, 2003).

Ocwen has produced data that it represents constitutes all outbound calls made by its Aspect dialer during the class period. Ankcorn Decl. ¶ 3. Plaintiffs engaged an expert who determined that Ocwen made <u>146,399,026</u> calls to <u>1,450,413</u> unique telephone numbers assigned to cellular service between January 2011 and December 2015. *Id.* This means Ocwen used its Aspect dialer to make approximately 2.48 million calls per month (assuming 30 day months), 83,000 calls per day, 10,800 calls per hour (assuming eight hours of calling per day), and 172 calls per *minute*, seven days a week (not excluding holidays). *Id.* The average number of calls per unique cellular telephone during that period is nearly 100. *Id.*

**B.    Ocwen Continues to Use Its Dialer to Call Cellular Telephones of Consumers Without Permission, Continues to Refuse Revocation Requests, and Engages in Harassing "Reminder" Call Campaigns**

Ocwen admits that it had no written policies or procedures to ensure that it did not autodial cellular telephones without consent prior to December 2014.  Dutt Dep. at 21:16–22:4.  According to Ocwen, during that time, the unwritten practice was to use the Aspect dialer to call telephone numbers that were labeled "home," "home other," or "work" only.  Trees Dep. at 39:7–17.  If a cellular phone number was saved in the "home" or "work" database fields, that number would be called by the dialer even if the number was a cell.  Dutt Dep. at 47:13–48:16.

In December 2014, Ocwen implemented a policy that was designed to keep track of cell phone consent by designating telephone numbers as "no," "yes," and "pending."  *Id.* at 84:18–85:4.  Ocwen asserts that after this date, it has only used the Aspect dialer to call the cellular phones of consumers that have provided consent and that its agents manually dial calls to the cellular phones of consumers that have not provided or have revoked consent.  *Id.* at 85:16–25.  However, Ocwen is unable to provide evidence that it only places autodialed calls to cell phones where the owner has provided consent.  Indeed, Ocwen has strenuously resisted any attempt by Plaintiffs to obtain documents or witnesses supporting its consent defense in discovery.  *See, e.g.*, Plaintiffs' Motion to Compel, Dkt. No. 74 (detailing objections to Plaintiffs' notice of deposition under Rule 30(b)(1)); Defendant's Motion to Extend Deadlines, Dkt. No. 88 ¶ 3 (describing discovery into electronically stored information regarding parameters of dialing campaign).

Ocwen's claim that it no longer uses the Aspect dialer to call the cell phones of individuals who have not consented is belied by recent reports of non-parties (and proposed class members), Steve Bartolone and Jonathan Cody, both of whom received multiple, harassing

"reminder" calls from Ocwen. Steve Bartolone's home loan is serviced by Ocwen. Declaration of Steve Bartolone ("Bartolone Decl.") ¶ 4. Although Mr. Bartolone did not give Ocwen his cell phone number or give anyone else permission to call the number, Ocwen obtained and started calling the number. *Id.* at ¶ 4. Despite repeated requests to stop calling, Ocwen continues to use its autodialer to place payment "reminder" calls to Mr. Bartolone. *Id.* at ¶¶ 5–6. Ocwen claims that it makes these reminder calls when Mr. Bartolone is late on his mortgage payment, but Mr. Bartolone often receives the calls even after he has made a payment. *Id.* ¶ 7. On one occasion, Ocwen placed a reminder call to Mr. Bartolone one hour after he had already spoken with an Ocwen agent and explained that they had received and cashed his check for the payment. *Id.* Another time, Mr. Bartolone received a call just days after he explained to an Ocwen agent that he had already made a payment. *Id.* at ¶ 8. When asked the purpose of the call, the Ocwen agent replied that he saw in the notes of Mr. Bartolone's account that he had already paid, but that the computer dialed his number and made the call. *Id.* On several other occasions, the Ocwen agent blamed "the computer" for making the reminder calls even though Mr. Bartolone had already paid the amount due. *Id.* at ¶ 9. These agents stated that they could not stop the calls because they were already set up in the computerized dialing system. *Id.* Additionally, when Mr. Bartolone picks up calls from Ocwen, he often hears long pauses of several seconds and then a popping or clicking sound like the call is being transferred. *Id.* at ¶ 11. When the agent picks up the line, they often have no idea why Ocwen was calling Mr. Bartolone, and sometimes even think that he has called Ocwen. *Id.*

Jonathan Cody also continues to receive unlawful autodialed calls from Ocwen regarding his mortgage. Mr. Cody repeatedly made verbal and written requests that Ocwen stop calling his old cell phone number, and even changed his number to escape the harassment. Declaration of

Jonathan Cody ("Cody Decl.") ¶ 2. Although Mr. Cody never disclosed his new cell phone number to Ocwen, Ocwen found it and now places payment reminder calls to that number. *Id.* ¶¶ 3–4. Ocwen frequently calls when Mr. Cody is one day past due on paying his mortgage, even though according to the terms of the promissory note the payment is not late or past due for two more weeks. *Id.* ¶ 4. Mr. Cody has asked Ocwen to stop calling, but the calls continue. *Id.* ¶ 4. In fact, Ocwen most recently called Mr. Cody on September 21, 2016. *Id.* ¶ 9. When asked the purpose of the calls and why they won't stop, Ocwen agents tell Mr. Cody that the computer system makes the calls and there is nothing they can do to take his phone number off the list. *Id.* ¶ 5. Often, Mr. Cody receives calls even after he has made his mortgage payment. *Id.* ¶ 7. When he explains that he has already paid and requests that they stop calling, Ocwen agents say that it's impossible to stop the reminder calls because they are automated but that the computer will catch up in a day or two. *Id.* ¶ 7. In the "day or two" that it takes the computer to catch up, Mr. Cody often receives several more reminder calls. *Id.* Multiple times, Ocwen agents have been confused about whether Ocwen placed the call or Mr. Cody had called Ocwen. *Id.* ¶ 6. Mr. Cody typically hears a long silence and a click or beep-tone after he picks up Ocwen's calls and before an Ocwen agent begins speaking. *Id.* ¶ 5.

## III. ARGUMENT

### A. Plaintiffs Satisfy the Standard for a Preliminary Injunction

The TCPA authorizes a plaintiff to seek injunctive relief to stop violations of the Act and its corresponding regulations. 47 U.S.C. § 227(b)(3).[3] "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."

---

[3] The statute permits a plaintiff to seek "both" monetary damages and injunctive relief. 47 U.S.C. §227(b)(3)(C). Plaintiffs still plan to request Fed. R. Civ. P. 23(b)(3) certification of a money-damages class in January 2017; they file this motion now requesting prospective relief, because of evidence that has come to light, which demonstrates that monetary damages, on their own, are insufficient to ensure compliance, and because the class members continue to be damaged daily by Ocwen's violations.

*Fed. Trade Comm'n v. Lifewatch Inc.*, No. 15–C–5781, 2016 WL 1315063, at *2 (N.D. Ill. Mar. 31, 2016) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).  This Court is vested with broad discretion to enjoin Ocwen.  *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016) (reviewing the district court's balancing of the factors for a preliminary injunction for abuse of discretion); *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012) (reviewing the district court's grant of a preliminary injunction for abuse of discretion).

Courts in the Seventh Circuit have applied a two-prong standard in actions seeking a statutory injunction that requires the moving party to show (1) that the defendant has committed a statutory violation and (2) that there is a reasonable likelihood of future violations.  *See U.S. Commodity Futures Trading Comm'n v. Oystacher*, No. 15-CV-9196, 2016 WL 3693429, at *6 (N.D. Ill. July 12, 2016) (granting preliminary injunction under the statutory injunction standard); *United States v. Dish Network, L.L.C.*, No. 09-3073, 2016 WL 29244 (C.D. Ill. Jan. 4, 2016) (confirming the use of statutory injunction standard under the TCPA); *Sec. & Exch. Comm'n v. Yang*, No. 12 C 2473, 2014 WL 2198323, at *1–2 (N.D. Ill. May 27, 2014), *aff'd sub nom. S.E.C. v. Yang*, 795 F.3d 674 (7th Cir. 2015) (Kennelly, J.) (granting permanent injunction after bench trial after finding a reasonable likelihood of future violations by the defendant); *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) ("Once a violation is demonstrated, the moving party need show only that there is some reasonable likelihood of future violations."); *United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir. 1987) (applying statutory injunction standard under the Internal Revenue Code).

Similarly, courts in other jurisdictions have applied a statutory injunction standard in TCPA cases.  *See Meyer*, 707 F.3d at 1043–44 (upholding preliminary injunction in TCPA class

action); *Minnesota ex rel. Hatch v. Sunbelt Commc'ns & Mktg.*, 282 F. Supp. 2d 976, 979 (D. Minn. 2002) (granting preliminary injunction under TCPA and noting that the traditional requirements for injunctive relief need not be satisfied for statutory injunctions); *J2 Glob. Commc'ns, Inc. v. Blue Jay Inc.*, No. C 08-4254-PJH, 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009) (holding that irreparable harm need not be shown to obtain injunctive relief under the TCPA); *Lynn v. Monarch Recovery Mgmt., Inc.*, No. CIV. WDQ-11-2824, 2013 WL 1247815, at *7 (D. Md. Mar. 25, 2013), *on reconsideration in part*, 953 F. Supp. 2d 612 (D. Md. 2013), *and aff'd*, 586 F. App'x 103 (4th Cir. 2014), *as amended* (Oct. 17, 2014) ("[A] complainant [in a TCPA case] need not allege or prove irreparable harm when it invokes a statute that authorizes injunctive relief.  All that need be proved is a violation of the statute.").

Plaintiffs present more than sufficient evidence to meet the requirements of the injunctive relief standard.

> 1.  <u>Ocwen Has Violated the TCPA by Using an Autodialer to Call Consumers' Cellular Telephones Without Prior Express Consent, or after Consent was Revoked, Often Pursuant to a Harassing "Reminder" Call Campaign</u>

The party seeking statutory injunctive relief must first demonstrate that a statutory violation has occurred.  *Dish Network*, 2016 WL 29244, at *1.  The TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(A)(iii).  To prevail on their TCPA claim, Plaintiffs must show that Ocwen (1) called Plaintiffs' respective cellular telephone numbers; (2) using an "ATDS;" and (3) without Plaintiffs' express prior consent.  *See* 47 U.S.C. § 227(b)(i)(A)(iii); 47 CFR § 64.1200(a)(1)(iii).

The first element of Plaintiffs' TCPA claim is easily met because Ocwen admits that it used an autodialer to make calls to Plaintiffs' cellular telephone numbers, as well 1.4 million

other unique cell phone numbers. Ankcorn Decl. ¶ 3. Plaintiff Snyder received several calls from Ocwen in 2014. FAC ¶ 31. Plaintiff Mansanarez received hundreds of calls to her cell phone in 2014 and 2015. Mansanarez Dep. at 71:24–73:6. Likewise, Ocwen placed approximately 58 autodialed calls to Plaintiff Beecroft's cell phone in 2013 and 2014. Beecroft Complaint ¶ 19. Similarly, Mr. Bartolone and Mr. Cody testify that Ocwen has made repeated calls to their cell phones. Bartolone Decl. ¶¶ 4–5; Cody Decl. ¶ 3. Ocwen has produced call data that shows that each of these witnesses received hundreds of calls from Ocwen to their cell phones. Ankcorn Decl. ¶ 3.

The second element of Plaintiffs' TCPA claim is met because Ocwen admits that it places calls to consumers' cellular phones using a predictive dialing system called Aspect. Dutt Dep. at 20:14–17; Ankcorn Decl. ¶ 3. This system is unquestionably an automatic telephone dialing system within the meaning of the TCPA. The TCPA expressly defines an ATDS as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Predictive dialers with the "capacity to dial numbers 'without human intervention'" fall into this category. *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011). The FCC recently affirmed that it is the capacity of the system, not simply its present configuration, that determines whether a dialer is an ATDS or not. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2015 Omnibus Report and Order, CG Docket No. 02-278, ¶ 16, 30 FCC Rcd. 7961, 7971–72 (2015). *See also Modica v. Green Tree Servicing*, *LLC.,* No. 14 C 3308, 2015 WL 1943222, at *2 (N.D. Ill. Apr. 29, 2015) (noting that the FCC has "recognized the capacity to dial numbers without human intervention as an essential requirement for an ATDS").

10

Ocwen's corporate designees testified that the Aspect dialer used to make these calls is a predictive dialer.  Trees Dep. at 70:18–20, 134:6–11, 135:21–136:13; Dutt Dep. at 20:14–17. Another hallmark of an ATDS is the capability to make lots of calls in a short amount of time. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2015 Omnibus Report and Order, CG Docket No. 02-278, ¶ 16, 30 FCC Rcd. 7961 (2015) ("[T]he Commission has also long held that the basic functions of an autodialer are to "dial numbers without human intervention" and to "dial thousands of numbers in a short period of time.").  By Ocwen's own admissions, it has used the Aspect dialer to make hundreds of millions of calls to cellular telephones between January 2011 and December 2015.  Ankcorn Decl. ¶ 3. Furthermore, the testimony of members of the Injunctive Class demonstrates that Ocwen continues to use the Aspect dialer to call cellular telephones.  Cody Decl. ¶¶ 5–9 (agents state that it is impossible to stop the reminder calls because they are automated); Bartolone Decl. ¶¶ 8–9 (multiple agents stated that the computer dialed the number).  The calls that Mr. Bartolone and Mr. Cody receive from Ocwen are characteristic of calls dialed with an autodialer: they both testify to hearing "dead air" upon answering Ocwen's calls and to Ocwen agents' confusion about the purpose and origin of the call.  Cody Decl. ¶5; Bartolone Decl. ¶ 10.

Third, Plaintiffs have established that Ocwen made the calls to consumers' cellular telephones without their prior express consent.[4]  Ocwen obtains cell phone numbers without consumers' knowledge or consent through skip tracing and ANI capture.  Plaintiff Snyder received numerous calls to his cell phone, even though he never provided the number to Ocwen

---

[4] Ocwen has the burden to produce evidence that it has consent prior to making a call to a cell phone number because consent is an affirmative defense. *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) ("[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.").  Ocwen cannot meet that burden.  Ocwen has yet to produce evidence, either anecdotally or systematically, that it obtains consent prior to making calls to known cell phone numbers and resisted any attempt by Plaintiffs to obtain documents or witnesses supporting its consent defense in discovery.  *See, e.g.*, Plaintiff's Motion to Compel, Dkt. No. 74; Defendant's Motion to Extend Deadlines, Dkt. No. 88 ¶ 3.

or any of its predecessor loan servicers and repeatedly requested not to receive calls on his cell. FAC ¶¶ 31–37. Similarly, Ocwen never obtained Plaintiff Beecroft's consent to call her cell phone using its autodialer, but rather has confirmed that it obtained the number through skip tracing without her permission. Trees Dep. at 154:15–169:10; Ankcorn Decl., Exh. 3. While she asked that Ocwen stop calling her cell phone multiple times, Ocwen continued to place calls with the Aspect dialer. Beecroft Complaint ¶¶ 19–20. Ocwen's violations continue. Mr. Bartolone never provided Ocwen with his cell phone number, yet Ocwen has called him repeatedly over the last twelve months. Bartolone Decl. ¶¶ 5–6, 12 (describing repeated "reminder" calls). The only way Ocwen could have obtained his cell phone number was through skip trace or ANI capture.

Ocwen also uses the Aspect dialer to call cell phones after consumers have revoked consent to be called on that number. *See Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 979–80 (W.D. Wis. 2013) (creditor violated TCPA by continuing to make autodialed calls after consumer orally revoked her consent to receive such calls). Although Ocwen initially obtained permission to call Plaintiff Mansanarez on her cell phone, she made repeated requests that the calls stop. Despite this, Ocwen continued to place hundreds of calls to Plaintiff Mansanarez's cell phone in 2014 and 2015. Mansanarez Dep. at 72:6–73:6; 75:14–77:14. Ocwen also continues to use the Aspect dialer to call Mr. Bartolone, despite repeated requests that Ocwen stop calling. Bartolone Decl. ¶¶ 5–6, 12. In response to Ocwen's harassment, Mr. Cody actually changed his cell phone number when Ocwen ignored his repeated requests to stop calling. But Ocwen found his new cell phone number and continued calling him. In fact, Mr. Cody received an illegal call from Ocwen on September 21, 2016. Cody Decl. ¶¶ 4–9.

Finally, Ocwen's unrestrained practice of placing payment reminder call to consumers disregards the TCPA's consent requirement. Ocwen regularly makes payment reminder calls to

12

Mr. Bartolone and Mr. Cody even after they have paid what is due. Both receive repeated calls even after speaking with Ocwen agents and confirming that Ocwen has already received their payment. Bartolone Decl. at ¶ 7; Cody Decl. at ¶ 7. In conversations with Mr. Bartolone, Ocwen agents have blamed the computer for making the calls asking for payment even though he had already paid. Bartolone Decl. at ¶ 9. Likewise, Ocwen agents have told Mr. Cody that it is impossible to stop the reminder calls because they are automated. Cody Decl. at ¶ 7.

As the declarations of Mr. Bartolone and Mr. Cody establish, Ocwen's unlawful practices impact individual lives across the country and should be stopped immediately. Plaintiffs seek Injunctive Relief that prevents Ocwen, or any third party vendor on Ocwen's behalf, from using its Aspect Software, Inc. dialer to place calls to: (1) cellular telephone numbers obtained via skip-tracing; (2) cellular telephone numbers obtained via ANI capture; and (3) cellular telephone numbers after verbal or written requests that calls to that number, account, or consumer stop, including but not limited to payment reminder calls. In addition, Plaintiffs request that the Court order Ocwen to suspend its reminder call program. To ensure compliance, Plaintiffs request that the Court appoint a special master chosen by Plaintiffs and approved by the Court, at Ocwen's expense, to monitor and audit Ocwen's compliance for no shorter than five years.

> 2. Absent Injunctive Relief, Ocwen Will Likely Continue to Use an Autodialer to Call Consumers' Cellular Telephones Without Their Consent

"In an action for a statutory injunction, once a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of future violations in order to obtain relief." *Lifewatch Inc.*, 2016 WL 1315063, at *23 (quoting *United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir. 1987)). "While past misconduct does not lead necessarily to the conclusion that there is a likelihood of future misconduct, it is 'highly suggestive of the likelihood of future violations.'" *Dish Network*, 2016 WL 29244, at *1 (quoting *Hunt*, 591 F.2d

at 1220). "[T]he court should look to the 'totality of the circumstances'" to determine whether such a likelihood exists." *Oystacher*, 2016 WL 3693429, at *6 (quoting *Hunt*, 591 F.2d at 1220). In determining the likelihood of future violations in the context of a permanent injunction, this Court considered "all the circumstances involving the defendant and the violations," including the gravity of harm caused by the violations, the extent of the defendant's participation and his degree of scienter, whether the violations were isolated or recurrent, the defendant's recognition of culpability, and the sincerity assurances against future violations. *Yang*, 2014 WL 2198323, at *1. Courts regularly find this element satisfied where the defendant has committed ongoing TCPA violations. *See J2 Glob. Commc'ns, Inc. v. Blue Jay Inc.*, No. C 08-4254 PJH, 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009) (granting injunction upon finding that defendant "is a repeat offender of the TCPA and has admitted to engaging in bulk faxing."); *Roylance v. ALG Real Estate Servs., Inc.*, No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *12 (N.D. Cal. Mar. 16, 2015), *report and recommendation adopted as modified*, No. 14-CV-02445-BLF, 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015) (granting injunction under the TCPA and California Fair Advertising Law where the defendant allegedly continued to use prerecorded calls and violate do-not-call requests).

To this day, Ocwen continues to use the Aspect dialer to call the cellular phones of Injunctive Class members that have either never provided or revoked consent. Mr. Bartolone and Mr. Cody report receiving calls in the past months in which the Ocwen agent plainly stated that the computer had dialed the call and that the agent had no control over making the call. Bartolone Decl. ¶¶ 7–8; Cody Decl. ¶¶ 5–7. Through its payment reminder program, Ocwen continues to commit blatant TCPA violations. These reminder calls harass consumers like Mr. Bartolone and Mr. Cody, who receive calls as frequently as every hour even though they have

14

already paid their monthly payment. Cody Decl. at ¶ 7. Ocwen agents have explicitly told Mr. Cody and Mr. Bartolone that they could not take their phone numbers off of the payment reminder call list because the computer system makes the calls. Cody Decl. at ¶ 5; Bartolone Decl. at ¶ 9. Thus, by Ocwen's own admission, there is not only a likelihood but a certainty that it will use the Aspect dialer to place reminder calls to customers that have revoked consent.

These experiences show that Ocwen's violations of the TCPA have continued well after Plaintiffs filed suit. Ocwen has failed to ensure that it only uses its Aspect dialer to place calls to cell phones for which it has consent. Rather, Ocwen makes autodialed calls, including reminder calls, to cell phone numbers that it has obtained through skip trace or ANI capture, and to the cell phones of consumers that have explicitly revoked consent.

      3.    <u>The Court Should Order a Nominal Bond</u>

Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary injunction give "security . . . in such sum as the court deems proper" before any preliminary injunction issues. Fed. R. Civ. P. 65(c). The Seventh Circuit has weakened this requirement, permitting the courts to exercise discretion to determine whether or not a bond should be posted. *See Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 54 (7th Cir. 1980) ([T]he case law has somewhat weakened the force of the "no order shall issue' language of [Rule 65(c)].")); *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (the district court retains discretion to determine if a bond must be posted despite the mandatory language in Rule 65(c)); *Berg v. Teamsters*, No. 10–C–5334, 2010 WL 3701316, at *6 (N.D. Ill. Sep. 9, 2010) (declining to require a bond where defendants would not suffer monetary damages due to the delay); *Walker v. Pierce*, 665 F. Supp. 831, 843–44 (N.D. Cal. 1987) (waiving bond requirement for class representative).

Here, Plaintiffs Snyder, Mansanarez, and Beecroft are consumers of modest means: they obtained representation on a contingency basis and cannot responsibly devote more than $2,000 toward a bond that will serve to protect their interests and the interests of other recipients of Ocwen's calls. Plaintiffs' status as class representatives, their inability to absorb the expenses of large commercial enterprises like Ocwen, the minimal costs of complying with the proposed injunction, and the public interest features of the relief sought all weigh in favor of a minimal bond, or no bond at all.

B.   **Plaintiffs Satisfy the Requirements for Class Certification**

Injunctive relief cannot be afforded to a class prior to class certification. *Davis v. Hutchins,* 321 F.3d 641, 648 (7th Cir. 2003); *Wagner v. Duffy*, 700 F. Supp. 935, 947 (N.D. Ill. 1988); *Meyer v. Portfolio Recovery Associates, LLC*, No. 11-CV-1008-AJB, 2011 WL 11712610, at *1 (S.D. Cal. Sept. 14, 2011). District courts have broad discretion to determine whether certification of a class is appropriate under Federal Rule of Civil Procedure 23. *Barker v. Int'l Union of Operating Eng'rs, Local 150*, 641 F. Supp. 2d 698, 705 (N.D. Ill. 2009) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001)). Rule 23 provides the Court with sufficient flexibility to certify the Injunctive Class. Fed. R. Civ. P. 23(c)(4) ("[A]n action may be brought or maintained as a class action with respect to particular issues.").

Plaintiffs request that the Court certify an Injunctive Class for the limited purpose of effectuating the proposed injunction. The Injunctive Class is defined as:

> All persons called on a cellular telephone number by Ocwen, or a third party on its behalf, through the use of an autodialer, that Ocwen obtained via skip tracing or ANI capture, and/or after having provided a verbal or written request that calls to that number, account, or consumer stop, and/or who received a reminder call.

16

1.    <u>Plaintiffs Satisfy the Requirements for Class Certification Under Rule 23(a)</u>

A party seeking class certification must demonstrate the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 244 (N.D. Ill. 2014).  Here, all four requirements are met.

a.    *Plaintiffs Satisfy the Numerosity Requirement*

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996); *see also Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) ("[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit.").  There is no magic number of potential class members that make a case sufficiently numerous, but "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes."  *Ringswald v. Cnty. of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000).

Here, Ocwen has produced records showing that more than 1.4 million unique cellular telephone numbers were called from January 2011 through December 2015 using its Aspect dialer.  Ankcorn Decl. ¶ 3.  To be sure, not all of the 146 million calls placed by Ocwen to these cell phone numbers violated the TCPA.  However, it is reasonable to assume that at least forty class members will fit the proposed definition, making joinder impractical and satisfying Rule 23(a)'s numerosity requirement.

b. *There are Numerous Common Questions of Law and Fact*

Rule 23(a)(2) requires that the class claims involve "questions of law or fact common to the class." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting Fed. Rule. Civ. P. 23(a)(2)). Even a single common question is enough to satisfy this commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 376, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). To meet this element, Plaintiffs must demonstrate that "the class claims 'depend on a common contention' that 'is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Pietrzycki v. Heights Tower Serv. Inc.*, No. 14-CV-6546, 2016 WL 3766344, at *8 (N.D. Ill. July 11, 2016) (quoting *Dukes*, 564 U.S. at 349–50). *See also Bell v. PNC Bank Nat. Ass'n,* 800 F.3d 360, 374 (7th Cir. 2015) ("In this context, class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim.").

Courts routinely find commonality where the class's claims arise from a uniform course of conduct on the part of the defendant. *See Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (finding commonality satisfied in TCPA class where the same evidence concerning the defendant's advertising campaign applied to plaintiffs' and class members' claims); *Reliable Money Order, Inc., v McKnight Sales Co.*, Inc., 281 F.R.D. 327, 332–33 (E.D. Wis. 2012) (finding commonality requirement satisfied where class members all alleged they received faxes in violation of the TCPA and the events surrounding the transmission of each fax were identical); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.").

18

Ocwen has engaged in a common course of using its Aspect dialer, an ATDS, to make calls to consumers' cellular telephone calls without their permission.  The TCPA provision at issue, 47 U.S.C. § 227(b)(1)(A)(iii), has three elements: calls (1) from an ATDS (2) to cellular telephone numbers, (3) without the recipient's express prior consent.  Each of these elements is amenable to class certification.  The claims of Plaintiffs and the Injunctive Class members that arise from this common course of conduct generate several common questions of fact and law, including (1) whether Ocwen and/or its affiliates, agents, and/or other persons or entities acting on Ocwen's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by making any call, except for emergency purposes, using an ATDS to a cellular telephone number obtained via skip tracing; (2) whether Ocwen and/or its affiliates, agents, and/or other persons or entities acting on Ocwen's behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, using an ATDS to a cellular telephone obtained via ANI capture; (3) whether Ocwen and/or its affiliates, agents, and/or other persons or entities acting on Ocwen's behalf violated 47 U.S.C. § 227(b)(1)(A)(iii) by making any call, except for emergency purposes, using an ATDS to a cellular telephone after the consumer has revoked consent to be called on that number.

These common legal and factual issues can be addressed with common proof.  Plaintiffs need only demonstrate that resolving the merits of this action "is capable of proof at trial through evidence that is common to the class rather than individual to its members."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012).  Here, the relevant capabilities of the Aspect dialer will be the same for Plaintiffs and each member of the Injunctive Class.  Ocwen's records can identify when it has called a cellular telephone number and how Ocwen obtained the cellular telephone number, including when it obtained a telephone number from a source other than the original loan application or directly from the borrower.  Its records

can also identify whether a consumer revoked consent to be called on their cellular telephone. However, it is Ocwen, not Plaintiffs, that "bears the burden of proof with respect to [proving] 'prior express consent.'" *Sengenberger v. Credit Control Servs., Inc.*, No. 09C2796, 2010 WL 1791270, at *3 (N.D. Ill. May 5, 2010).

Hence, these common legal and factual issues that are capable of proof through common evidence are more than sufficient to satisfy the commonality requirement.

### c. *Plaintiffs' Claims Are Typical of the Claims of the Injunctive Class*

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. Rule. Civ. P. 23(a)(3). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *Pietrzycki*, 2016 WL 3766344, at *10 (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)). This requirement focuses on the "essential characteristics" of the named plaintiffs as compared to the rest of the class. *Birchmeier*, 302 F.R.D. at 251. Where such "essential characteristics" are substantially identical, typicality exists. *Id.* Typicality has been found where a defendant's practice is uniform and the proposed Class claims are all "based upon the same legal theory, *i.e.* violation of the TCPA." *CE Design v. Beaty Const., Inc.*, No. 07–C–3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009).

Plaintiffs' claims mirror those of the Injunctive Class Plaintiffs seek to represent. All of the claims arise from the same course of conduct: Ocwen's use of an autodialer to call cellular telephones without having obtained prior express consent, whether obtained through skip trace or ANI capture, or after a request that calls cease. Although Ocwen has not placed calls to Plaintiffs since the commencement of this action, it has continued to make millions of calls to

members of the Injunctive Class despite their repeated requests to stop.  Plaintiffs' claim under the TCPA arises out of the same course of conduct, is based on the same legal theory, and resulted in the same injury as the proposed Injunctive Class's claims.

d.      *The Class is Adequately Represented*

The fourth prerequisite for certification is a finding that the representative parties will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4) & (g)(1).  This factor has two components.  "Representation is adequate where the plaintiff (1) has a sufficient stake in the outcome to ensure zealous advocacy, and has no claims antagonistic to or conflicting with the claims of other class members, and (2) is represented by qualified, experienced counsel." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).  With respect to the adequacy of counsel, the Court considers the work counsel has done to investigate the claims of the Injunctive Class, counsel's experience in handling complex cases, counsel's knowledge of applicable law, and the resources counsel will commit to representing the Class. Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs will fairly and adequately protect the interests of the Injunctive Class they seek to represent.  There are no conflicts of interest between Plaintiffs and the members of the Class. Indeed, Plaintiffs share the precise same claims as the Class and have an acute interest in stopping Ocwen's violations of the TCPA.  Likewise, Plaintiffs' counsel are well qualified and highly experienced in class action litigation and have been appointed as class counsel in several complex consumer cases, including numerous TCPA cases.  Ankcorn Decl. ¶¶ 10–13; Burke Decl. ¶¶ 2–12; Terrell Decl. ¶¶ 2–14.  "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again." *Whitten v. ARS Nat. Serv's, Inc.*, No. 00–C–6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) (citation and quotation

21

omitted).  Plaintiff's counsel have worked extensively to investigate the claims, are dedicated to prosecuting those claims, and have the resources to do so.

For these reasons, Plaintiffs and their counsel satisfy the adequacy requirement.

2.      Plaintiffs Meet the Requirements for Certification Under Rule 23(b)(2).

In addition to the four requirements of Rule 23(a), Plaintiffs must satisfy one of the three conditions of Rule 23(b).  Plaintiffs seek certification of the Injunctive Class under Rule 23(b)(2).  Class certification under Rule 23(b)(2) requires that the defendant acts "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  A defendant's conduct is directed towards the class, within the meaning of Rule 23(b)(2), "even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."  Fed. R. Civ. P. 23(b)(2) advisory committee notes on 1966 amendments.

Certification is appropriate given the limited purpose of the Injunctive Class: to enforce the proposed injunction and protect class members from Ocwen's ongoing TCPA violations. Ocwen's ongoing TCPA violations harm the members of the Injunctive Class.  Plaintiffs request that the Court restrain Ocwen, or any third party vendor on Ocwen's behalf, from using its Aspect Software, Inc. dialer to place calls to: (1) cellular telephone numbers obtained via skip-tracing; (2) cellular telephone numbers obtained via ANI capture; and (3) cellular telephone numbers after verbal or written requests that calls to that number, account, or consumer stop, including but not limited to payment reminder calls.  In addition, Plaintiffs request that the Court order Ocwen to suspend its reminder call program.  Ocwen's common course of conduct, including its systematic use of the Aspect dialer to call cell phones without consent, policy of

obtaining cell phone numbers through skip tracing and ANI capture, and failure to respect consumers' revocation of consent to be called on their cell phone, affects the entire Injunctive Class. Likewise, Ocwen's use of the Aspect dialer to carry out its payment reminder call program harasses customers that have never provided or revoked consent to be called on their cell phone. Ocwen's TCPA violations are not isolated events, but rather the result of policies and practices that ignore the legal protections that the TCPA provides to consumers. As such, the Injunctive Relief is appropriate to protect the Injunctive Class as a whole.

3. The Injunctive Class Members Are Easily Identified

Although not required under Rule 23, some courts have also evaluated whether the membership of the class is sufficiently definite or ascertainable. *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) ("In addition to the four requirements listed in Rule 23(a), courts have consistently evaluated a fifth, implied requirement: that the membership of the class be sufficiently definite or ascertainable."). The Seventh Circuit has rejected attempts to impose a heightened ascertainability requirement, and emphasized that a class need only be defined clearly and by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161, 194 L. Ed. 2d 175 (2016). This Court has recognized that "a court need not ascertain absent class members' actual identities . . . before a class can be certified . . . . Rather [i]t is enough that the class be ascertainable, with class members to be identified during a claims administration process if the class prevails." *Birchmeier*, 302 F.R.D. at 245 (quoting *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D.Ill.2012) (internal quotation omitted). *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("Due process simply does not require the ability to identify all members of the class at the certification stage."). In *Birchmeier*, this Court ruled that the

members of a TCPA class were sufficiently ascertainable where the plaintiffs proposed

identifying class members through several methods, including "phone numbers in Defendants'

records, the records of third-party phone carriers and third-party database providers."

*Birchmeier*, 302 F.R.D. at 256.

Here, the class definition is sufficiently definite. Members of the Injunctive Class can be

readily identified by their cellular telephone numbers or residential addresses within Ocwen's

records. Ankcorn Decl. ¶ 2. To the extent Ocwen attempts to argue that the class cannot be

readily identified because Ocwen does not maintain records as to whether or not the call

recipients actually consented to having their cellular phone numbers called, the Court must

soundly reject it. Indeed, this Court has already rejected this argument in a hypothetical during

this case:

> The defendant comes in and basically says, look, we don't keep any records of
> anybody who consented. We just don't keep any records of that. . . . If one were
> to accept the defendant's position in that case, it would basically say if you are
> either a really dumb violator of the law or a really clever one who doesn't keep
> records of your violations of the law, then you win. You don't—there's never
> going to be anything but an individual case. I have to say I think that's an absurd
> proposition.

Ankcorn Decl., Exh. 6 (Transcript of Proceedings on March 3, 2016, Dkt. No. 69 at 6:3–24). If

Ocwen failed to keep any record of consent, as seems clear from its refusal to turn over such

evidence, it cannot now offer that as a basis to defeat class certification or foreclose liability. *See*

*Birchmeier*, 302 F.R.D. at 250 (certifying TCPA class of nearly 1 million class members who

received automated solicitation calls from defendants despite defendant's poor record-keeping).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion

for a Preliminary Injunction and Motion to Certify the Injunctive Class.

RESPECTFULLY SUBMITTED AND DATED this 4th day of October, 2016.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Mark Ankcorn, N.D. Illinois #1159690
    Email: mark@ankcorn.com
    ANKCORN LAW FIRM, PC
    11622 El Camino Real, Suite 100
    San Diego, California 92130
    Telephone: (619) 870-0600
    Facsimile: (619) 684-3541

    Local Office:
        1608 South Ashland Avenue. #92015
        Chicago, Illinois 60608-2013

    Guillermo Cabrera
    Email: gil@cabrerafirm.com
    Jared Quient, Admitted Pro Hac Vice
    Email: jared@cabrerafirm.com
    THE CABRERA FIRM, APC
    600 West Broadway, Suite 700
    San Diego, California 92101
    Telephone: (619) 500-4880
    Facsimile: (619) 785-3380

    Alexander H. Burke, #6281095
    Email: aburke@burkelawllc.com
    Daniel J. Marovitch, #6303897
    Email: dmarovitch@burkelawllc.com
    BURKE LAW OFFICES, LLC
    155 North Michigan Avenue, Suite 9020
    Chicago, Illinois 60601
    Telephone: (312) 729-5288
    Facsimile: (312) 729-5289

*Attorneys for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on October 4, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Chethan G. Shetty
Email:  cshetty@lockelord.com
Simon A. Fleischmann
Email:  sfleischmann@lockelord.com
Thomas J. Cunningham
Email:  tcunningham@lockelord.com
David F. Standa
Email:  dstanda@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Brian V. Otero, *Admitted Pro Hac Vice*
Email:  botero@hunton.com
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
Email:  sblacklocks@hunton.com
Ryan A. Becker, *Admitted Pro Hac Vice*
Email:  rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, Suite 52
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant*

26

DATED this 4th day of October, 2016.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email:  bterrell@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone:  (206) 816-6603
    Facsimile:  (206) 319-5450

*Attorneys for Plaintiffs*

27