# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, | ) ) ) ) Case No. 1:14-cv-08461 |
| Plaintiffs, | ) ) Honorable Matthew F. Kennelly |
| v. | ) ) Consolidated |
| Ocwen Loan Servicing, LLC, | ) ) |
| Defendant. | ) ) |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, | ) ) ) Case No. 1:14-cv-08461 |
| Plaintiff, | ) ) Honorable Matthew F. Kennelly |
| v. | ) ) Consolidated |
| Ocwen Loan Servicing, LLC, | ) ) |
| Defendant. | ) ) |

**OCWEN'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL**

**Table of Contents**

Introduction ..................................................................................................................................1

Summary of the Argument: Plaintiffs' Motion and Why it Should Be
Denied ..........................................................................................................................................2

The Relevant Facts: the Interrogatory and Ocwen's Records ....................................................3

    A.    The Interrogatory ............................................................................................................3

    B.    Ocwen's records of consent ...........................................................................................4

    C.    The burden of responding to the Interrogatory .............................................................5

Argument ....................................................................................................................................7

The Court Should Deny the Motion ............................................................................................7

    A.    The discovery has little or no present benefit to Plaintiffs .............................................7

    B.    The burden on Ocwen is vast and outweighs the Plaintiffs'
        present need. ..................................................................................................................8

    C.    To strip Ocwen of its consent defense even before the Court
        considers whether a class should be certified would deprive it of
        Due Process. ................................................................................................................11

Conclusion ................................................................................................................................14

## Table of Authorities

**Cases**                                                                                                                                 **Page(s)**

Amchem Prod., Inc. v. Windsor,
    521 U.S. 591 (1997) ..........................................................................................................13

Birchmeier v. Caribbean Cruise Line, Inc.,
    302 F.R.D. 240 (N.D. Ill. 2014) ........................................................................................12

In re Bridgestone/Firestone, Inc.,
    288 F.3d 1012 (7th Cir. 2002) ..........................................................................................13

Clark v. Experian Info., Inc.,
    233 F.R.D. 508 (N.D. Ill. 2005), aff'd sub nom. Clark v. Experian Info.
    Sols., Inc., 256 F. App'x 818 (7th Cir. 2007) ...................................................................13

Donnelly v. NCO Fin. Sys., Inc.,
    263 F.R.D. 500 (N.D. Ill. 2009), objections overruled 2010 WL 308975
    (N.D. Ill. Jan. 13, 2010) ........................................................................................10, 11 n.10

Eubank v. Pella Corp.,
    753 F.3d 718 (7th Cir. 2014) ..........................................................................................8 n.8

Fike v. The Bureaus, Inc.,
    Minute Entry, No. 1:09-CV-2558 (N.D. Ill.) (ECF 52) (referencing
    transcript available at ECF 81-2) ...................................................................................11 n.10

Kane v. Nat'l Action Fin. Servs., Inc.,
    2012 WL 1658643 (E.D. Mich. May 11, 2012) ................................................................10

Kohen v. Pac. Inv. Mgmt. Co. LLC,
    571 F.3d 672 (7th Cir. 2009) ..........................................................................................8 n.8

Martin v. Bureau of Collection Recovery, LLC,
    2011 WL 2311869 (N.D. Ill. June 13, 2011) ....................................................................10

Meredith v. United Collection Bureau, Inc.,
    2016 WL 6649279 (N.D. Ohio Nov. 11, 2016) .................................................................11

Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,
    262 F. Supp. 2d 923 (N.D. Ill. 2003) ..............................................................................8 n.9

Olivieri v. Rodriguez,
    122 F.3d 406 (7th Cir. 1997) ..........................................................................................8 n.9

Vulcan Golf, LLC v. Google Inc.,
    254 F.R.D. 521 (N.D. Ill. 2008) ........................................................................................13

**Introduction**

Plaintiffs ask the Court to compel Ocwen to respond to an interrogatory asking for all facts evidencing 1.5 million class members' consent to being called on their cell phones. On even very conservative assumptions, it would cost Ocwen over $100 million to answer the interrogatory, and its response would take years -- not because Ocwen lacks evidence of class members' consent or because its records are disorganized, but because of the scope of the request and the vast volume of records Ocwen would have to review to find the answer. Plaintiffs' motion doesn't articulate any present need for this answer that can outweigh the vast burden on Ocwen.

Plaintiffs' request that the Court strike Ocwen's consent defense if it doesn't identify its individualized proof regarding the consent of 1.5 million people before the Court can consider class certification in effect seeks to put a $100 million plus sticker price on Ocwen's right to have the Court consider its arguments that individual issues of consent mean that a class should not be certified. It would be inequitable for the Court to impose that charge on Ocwen for its class certification arguments to be heard; it would also impair Ocwen's Due Process right to assert its consent defenses to individual class members. Ocwen respectfully submits that the Court should deny Plaintiffs' motion at the present time, without prejudice to raising it again if the Court should determine that a class should be certified notwithstanding Ocwen's arguments that individual issues of consent undermine the requirements of Rule 23 and that class adjudication would violate its Due Process rights.

**Summary of the Argument: Plaintiffs' Motion and Why it Should Be Denied**

Plaintiffs seek to compel a response to their Interrogatory 23 which asks Ocwen to "state all the facts that support the existence of [class members'] prior express consent."[1] The evidence that class members consented to being called on their cellphones is contained in Ocwen's documents and data files and in recordings of calls between borrowers and Ocwen representatives. So, to take Plaintiff Ms. Mansanarez as an example, her grant and later revocation of consent are to be found (i) in the application for the mortgage loan serviced by Ocwen and two related origination documents; (ii) in a form authorizing her to speak on her husband's behalf concerning the mortgage loan, which included her cell phone as her "daytime phone"; (iii) in several letters and forms that listed her cell phone number on them; and (iv) in an audio recording of a February 4, 2015 call in which she revoked consent.[2]

Mr. Marc Trees, Ocwen's Director of Dialer and Workforce Management, explains in his declaration that to identify Ocwen's evidence of consent for any class member, Ocwen will have to review manually that person's document files and any recordings of calls between that class member and an Ocwen representative. (Declaration of Marc Trees ("Trees Decl.") at ¶¶ 6-7). In Plaintiff Mansanarez' case, over 4,000 pages of imaged documents and over 335 minutes of audio recordings had to be reviewed. Neither the documents nor the audio recordings can be computer-searched for evidence of consent. (Id.)

---

[1] Plaintiffs also at one point (Pl. Mem. at 2) complain that Ocwen has not produced call records for the period from October 2010 through March 2011. Ocwen will be producing these records.

[2] The documents and a certified transcript of the recording are Exhibits A through O to the accompanying declaration of Ryan Becker, Esq. Plaintiffs dispute the sequence of events described in the text concerning Ms. Mansanarez' consent and revocation, but the correctness of the time-line isn't at issue on this motion: the issue is where evidence of any class member's consent is to be found, and whether that evidence can be or needs to be identified at this time for 1.5 million persons.

For Ocwen to respond to Plaintiffs' Interrogatory 23, it would have to manually review such documents, files and recordings for the approximately 1.5 million persons Plaintiffs claim are in their class. On the most conservative assumptions (explained below), it would take a team of 100 persons, working 10 hours a day, 6 days a week, over 10 years to respond to the interrogatory, and would cost Ocwen over $100 million. Ocwen can't respond to the Interrogatory before the close of discovery; nor could it have done so had the Interrogatory been propounded and compelled on the day the lawsuit began.

And Plaintiffs have no present need for this discovery -- they don't need it to litigate class certification, and if certification is denied, they will never need it. Ocwen submits that the vast burden of collecting proof of consent for 1.5 million persons means that the class cannot be certified, and will argue this point in detail in its opposition to Plaintiffs' motion for class certification. But Plaintiffs' motion demands that Ocwen produce its proof now -- in effect, that Ocwen provide its exhibit list for an adjudication of every absent class member's individual claim now, before the Court has considered whether the Rule 23 requirements for certification have been met and whether a class action will violate Due Process.

### The Relevant Facts: the Interrogatory and Ocwen's Records

**A.    The Interrogatory**

Plaintiffs' Interrogatory 23 (propounded in November, 2015) states:

> If you contend that you received prior express consent from plaintiffs or any class member(s) to whom the calls were made, state all facts that support the existence of the prior express consent, including the identify of all witnesses with knowledge of any such facts.

Ocwen's response has consistently been that the request is too burdensome. This response was most recently stated in a letter to Plaintiffs' counsel in February:

> The information you are asking us to produce cannot be located and produced without a tremendous amount of individualized inquiry. Evidence of consent is found in loan

- 3 -

origination files, in imaged documents that are not easily "searchable", in comment fields in REALServicing, in telephone recordings, and other locations. Even if we could somehow identify putative class members, producing all of the information and documents where consent evidence might be found for each one would not be proportional to the needs of the case.[3]

**B.      Ocwen's records of consent**

A person can consent to being called on her cellphone in many different ways: she can provide consent in her loan application; in an application for loan modification; in correspondence about her loan; by entering it as a contact number on an Ocwen webpage; by giving the number as a contact number in the course of a call with an Ocwen representative; by consenting to being called on her cellphone when dialed manually; and so on.

Evidence of any borrower's consent -- for example, a document in which the borrower gave her cellphone number as a contact number -- is to be found in Ocwen's records. Where in Ocwen's records this evidence of consent (and any later revocation of it) is to be found depends on how consent (and revocation) was given.[4] Mr. Trees' declaration describes these records (at ¶¶ 5-7), and we briefly summarize them here:

CIS files:  A borrower might consent to receive calls on a cell phone in a written loan application or in a modification application or in some other written communication. Ocwen keeps documents relating to borrowers' loans in a digital image format on a system known as the Vault (formerly called Customizable Imaging Solutions or CIS).

---

[3]     February 5, 2016 letter from Simon Fleischmann to Adrienne McEntee at 4.
[4]     REALServicing also has a consent-to-be-called field which is what operationally determines whether a borrower can be autodialed on her cell phone. (Trees Decl. ¶ 5.) Plaintiffs' motion doesn't concern this consent field, however, for it asks for all evidence that Ocwen possesses that indicates that it <u>in fact</u> has (or lacks) consent -- not whether operationally, for the purposes of its autodialing, Ocwen treats a borrower as having given (or denied) consent.

Call recordings: Ocwen records the great majority of its calls with borrowers. Evidence of consent provided orally during a telephone call could also be found in the recording of that call.

REALServicing: Ocwen utilizes a mortgage servicing platform known as REALServicing to perform its work as a mortgage loan servicer. The REALServicing system maintains information about the loans Ocwen services, and includes a notes field in which Ocwen representatives can describe conversations with a borrower. Consent provided by a borrower during a telephone conversation might be noted in the comments log on the REALServicing system.

As Mr. Trees explains, a borrower's CIS files and audio recordings can't be searched electronically: that is, if Ocwen wanted to determine when and how a borrower had given (or revoked) consent, it could identify the universe of that borrower's CIS files and audio recordings by electronic search, but could not type a phrase into a computer and have the computer search within the CIS file or the specific audio recordings for documents or pages or sections of recordings that relate to consent. Rather, these files and recordings have to be reviewed by a human being looking at the documents or data or listening to the call recordings. (Id. ¶ 6.) Mr. Trees explains that it is possible to electronically search the REALServicing system, on a loan-by-loan basis, to seek to identify evidence of consent. But the results of such a search would not be a simple "yes" or "no" as to whether a borrower gave or revoked consent but, rather, keyword hits, which would require human review to interpret the results and determine the status of consent. (Id. ¶ 7.)

**C.     The burden of responding to the Interrogatory**

The documents and call recordings that Ocwen would have to review to identify "facts that support the existence of consent" for any class member are voluminous and lengthy. The

following chart taken from Mr. Trees' declaration (at ¶ 8) shows the length of the CIS files and call recordings for the three named Plaintiffs and the two class members from whom Plaintiffs have submitted declarations:

| Borrower Name[5] | Size of CIS file (pages) | Number of Recordings / Total Length |
|---|---|---|
| Steve Bartolone | 2,571 | 45 / 4 hrs 2 mins |
| Tracee Beecroft | 3,739 | 56 / 16 hrs 36 mins |
| Jonathan Cody | 12,156 | 35 / 3 hrs 1 min |
| Susan Mansanarez | 4,228 | 79 / 5 hrs 35 mins |
| Keith Snyder | 96 | 7 / 39 mins |
| Average | 4558 | 44 / 5 hrs 58 mins |

In addition, Mr. Trees identified the first 20 persons to whom Ocwen made a collection

---

[5] We described on page 2 above the evidence recovered from these files concerning Ms. Mansanarez' consent and revocation. The evidence recovered from the other plaintiffs' and the two declarants' files is as follows:

Mr. Snyder: (1) a recording of a July 20, 2014 call in which Mr. Snyder provides consent to be called on his cell phone; (2) a July 26, 2014 e-mail from Mr. Snyder to Ocwen in which he confirms his cell number as his contact number; and (3) a September 21, 2014 e-mail from Mr. Snyder to Ocwen in which he revokes consent. (Becker Decl. Exhibits P-R).

Ms. Beecroft: (1) an April 10, 2014 letter to Ocwen in which the Beecrofts provide Ms. Beecroft's cell number; and (2) an undated letter to Ocwen in which the Beecrofts provide Ms. Beecroft's cell number. (Becker Decl. Exhs. S-T).

Mr. Bartolone: (1) a March 27, 2006 application for the mortgage loan serviced by Ocwen; (2) a July 22, 2014 "Request for Hardship Assistance," in which Mr. Bartolone's cell phone number is provided in response to the question "what is the best number to reach you?"; (3) REALServicing notes of a call on December 18, 2014 in which Mr. Bartolone provides consent; (4) REALServicing notes of a call on January 19, 2016 in which Mr. Bartolone revokes consent; (5) REALServicing notes of a call on February 25, 2016 in which Mrs. Bartolone provides consent; and (6) a recording of a call on April 7, 2016 in which Mr. Bartolone provides consent. (Becker Decl. Exhs. U-Z).

Mr. Cody: (1) an April 4, 2003 application for the mortgage loan serviced by Ocwen; (2) a February 5, 2009 letter from Mr. Cody in which he provides his cell phone number as his contact number; and (3) recordings of calls on March 30, April 13 and July 27 in which Mr. Cody revokes consent. (Becker Decl. Exhs. AA-CC).

- 6 -

call on November 1 (the date of Plaintiffs' motion to compel), and reviewed the size of the CIS files for each of these persons. (Trees Decl. ¶ 9.) He determined that the average size of the CIS file for each of these twenty persons was 1,742 pages. (Id.)[6]

Mr. Trees states that he believes that it would take on average at least three hours for Ocwen to review a borrower's files (CIS files, audio recording and REALServicing notes) to identify all evidence of the borrower's consent or revocation, and that the average review time is likely to be considerably greater than 3 hours. (Trees Decl. ¶ 10.)

## Argument

## The Court Should Deny the Motion

**A.     The discovery has little or no present benefit to Plaintiffs.**

Plaintiffs make no attempt to describe a present need for evidence of all class members' consent; rather, their argument comes down to the assertion that consent is an affirmative defense which Ocwen has to prove and they want that proof now.

But Plaintiffs don't need evidence of every class member's consent now. They don't need this discovery for their class certification motion, and if class certification is denied they will never need it because this action will only concern the claims of the named plaintiffs.[7] To impose on Ocwen the cost of responding at this point in the litigation (with the threat of striking its consent defense if it can't respond) when there is no present need for this evidence, and perhaps never will be, would be unjust. Many courts, including the Seventh Circuit, have noted the in terrorem character of class actions -- the pressure on the defendant after a class has been

---

[6]     Mr. Trees notes that he was unable to review these persons' call recordings in the time available to respond to Plaintiffs' motion. (Trees Decl. ¶ 9.)

[7]     Ocwen will oppose class certification by (among other things) demonstrating that a significant proportion of persons in a small random selection of class members consented to being called on their cellphones. Ocwen will of course produce the complete files for the class members in that selection.

certified to settle rather than contest liability.[8]  Here, the <u>in terrorem</u> effect comes not from class certification itself but from the burden of vastly expensive and time-consuming discovery with respect to the individual circumstances of 1.5 million borrowers.  Provide that discovery -- in effect, exhibit lists for the individual mini-trials regarding consent of all class members -- Plaintiffs threaten, or we'll have the Court strike your defense even before a class certification motion is decided.  But no class action defendant should be forced to cave in to such a threat in order to present its arguments as to why a class should not be certified, especially when the plaintiff hasn't demonstrated any present need for the discovery.

A district court has broad discretion to control discovery to ensure that a party is not unduly burdened, and should tailor the manner and scope of discovery to avoid harassment or oppression.[9]  The Court thus has the power to determine that Ocwen should not have to respond to the Interrogatory now, and to defer decision on the issues raised by this motion until the Court can determine whether a class can be certified despite the vast burden on Ocwen of having to prove its consent defense to all class members' claims in a single proceeding (and, if it is certified, the appropriate time for Ocwen to provide an exhibit list for adjudication of individual class member's claims).  Ocwen respectfully asks the Court to exercise that power.

**B.     <u>The burden on Ocwen is vast and outweighs the Plaintiffs' present need.</u>**

Because Ocwen's CIS files and audio recordings can't be computer-searched, a human being will have to review these records for evidence of consent and revocation.  Mr. Trees concludes that the average time for Ocwen to review a borrower's records (CIS files, audio

---

[8] E.g., <u>Kohen v. Pac. Inv. Mgmt. Co. LLC</u>, 571 F.3d 672, 677-78 (7th Cir. 2009); <u>see also</u> <u>Eubank v. Pella Corp.</u>, 753 F.3d 718, 720 (7th Cir. 2014) ("a study of certified class actions in federal court in a two-year period (2005-2007) found that <u>all</u> 30 such actions had been settled.").

[9] E.g., <u>Olivieri v. Rodriguez,</u> 122 F.3d 406, 409 (7th Cir. 1997); <u>Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.</u>, 262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003).

recording and REALServicing) to identify a borrower's consent or revocation is at least three hours; he also states that he think that the average time is likely to be greater than three hours, perhaps considerably so. (Trees Decl. ¶ 10.) Even on Mr. Trees' conservative estimate that the average review time for each borrower is only 3 hours, review of 1.5 million class members' records will take at least 4.5 million man-hours. A team of 100 reviewers, working 10 hours a day, 6 days a week, would therefore take 14.4 years to collect the answer to Plaintiffs' Interrogatory. Assuming again just 3 hours to review each file and an hourly cost (pay and overheads) per reviewer of $25, it will cost Ocwen $75 to review each borrower's files, so it will cost $112 million for all 1.5 million class members.

Plaintiffs contend that "[w]hether Ocwen's refusal to produce information regarding consent is the result of its inability to process its own data or a willful refusal to share such data is irrelevant." (Pl. Mem. at 5.) This contention is wrong -- the reason why Ocwen can't respond to Plaintiffs' Interrogatory now is highly relevant. Ocwen can't respond, and should not be required to respond, not because of any flaw in its record keeping or "willfulness," but because the time and cost of responding is so massive and because such discovery is premature and unnecessary before the Court has addressed whether class certification is even possible. Plaintiffs' motion entirely ignores this burden (although it has been described to them in the course of meet and confers on this and other discovery issues); it also ignores the requirement of Federal Rule 26(b)(1) that the Court assess whether the burden or expense of the proposed discovery outweighs its likely benefit, for Plaintiffs attempt no showing that the burden / benefit balancing supports the conclusion that Ocwen should respond to their Interrogatory now.

The three cases Plaintiffs cite (at pp. 4-5 of their memorandum) to support their contention that the Court should grant their motion do not remotely suggest that this balancing should come out in favor of disclosure.

In Martin v. Bureau of Collection Recovery, LLC, 2011 WL 2311869 (N.D. Ill. June 13, 2011), the Court granted a motion to compel production of all facts concerning class members' prior express consent with respect to a class of about 5,000 persons. Id. at *5. The Court rejected the defendant's burden argument because it hadn't provided any evidentiary showing of burden. Id. In addition, the Court credited the plaintiff's argument that he had a need for this information before class certification so he could "demonstrate that each class member is like Plaintiff as to this defense" in having not given consent. Id. at *4. Here, the class is about 1.5 million; Ocwen has provided a declaration specifically describing the enormous burden; and Plaintiffs are not arguing (and cannot sensibly argue) that they need an answer to their Interrogatory for their class certification motion.

In Kane v. Nat'l Action Fin. Servs., Inc., 2012 WL 1658643 (E.D. Mich. May 11, 2012), the plaintiff specifically sought precertification discovery -- discovery into matters relevant to class certification -- with respect to a class with "several hundred" members. Id. at *6-7. The plaintiff did not request evidence of class members' consent. Plaintiffs quote the court's statement that "there is no reason why [defendant] NAFS could not have answered the interrogatories or objected to them." (Pl. Mem. at 5, quoting Kane at *4.) But the court was there referring to the fact that the defendant made no response at all to the interrogatories before a motion to compel was brought. Kane has nothing to do with the issues here.

Finally, in Donnelly v. NCO Fin. Sys., Inc., 263 F.R.D. 500 (N.D. Ill. 2009), objections overruled 2010 WL 308975 (N.D. Ill. Jan. 13, 2010), the plaintiff sought to compel production of

a copy of each class member's credit application to determine whether the applicant provided his or her cellphone number in that application. Id. at 503. The defendant submitted a declaration stating that the production would require hundreds of man hours of work, but the Court held that the plaintiff's need for the discovery outweighed the burden and expense. Id. Here, by contrast, Plaintiffs are seeking all evidence of consent in class members' records, not a specific document that might bear on consent; moreover, the disclosure Plaintiffs demand here would take at least 4.5 million man hours, not hundreds.[10]

Just last week, the United States District Court for the Northern District of Ohio denied a pre-certification motion to compel evidence relating, inter alia, to TCPA consent when the defendant would have had to manually review 278,800 account files to respond. Meredith v. United Collection Bureau, Inc., 2016 WL 6649279, at * 3-4 (N.D. Ohio, Nov. 10, 2016). The defendant had "no mechanism for culling the information that plaintiff seeks," so would have to manually "comb through 278,000 accounts to find responsive information." Id. at * 3. The court thus concluded that "Defendant has met its burden of showing that it would be unduly burdensome" to respond to the discovery. Id.

**C.     To strip Ocwen of its consent defense even before the Court considers whether a class should be certified would deprive it of Due Process.**

The discussion above of the named plaintiffs and the two declarants shows that there are significant individual issues of whether any class member consented, when that consent was given, and when (if at all) it was revoked (supra at 2 and 6 n.4). On the class certification motion, Ocwen will argue that these individual issues of consent and the vast burden on Ocwen

---

[10] Donnelly cites extensively to a November 13, 2009 bench ruling on a motion to compel in Fike v. The Bureaus, Inc. No. 1:09-CV-2558 (N.D. Ill.) (ECF 52), where the Court held that the plaintiff's need for evidence of class members' consent outweighed the burden to the defendant. The defendant estimated the class in Fike had about 7,200 members and that it would take approximately 1,000 man hours to respond to the discovery request. See Oct. 23, 2009 Decl. of M. Sangalang (ECF 48-2) ¶¶ 19-21.

of proving individual consent in a class action mean that the Rule 23 requirements cannot be met and that certification will deprive Ocwen of its Due Process right to present its consent defense. But Plaintiffs would have the Court short-cut those arguments by holding now, on this motion, that Ocwen cannot offer any proof of class members' consent.

Plaintiffs support their request for the Court to strike Ocwen's consent defense by quoting the following sentence from Your Honor's decision in Birchmeier v. Caribbean Cruise Line, Inc., 302 F.R.D. 240, 250 (N.D. Ill. 2014): "declining to certify a class altogether, as defendants propose -- would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct." But Birchmeier is not on point, for Ocwen does have records of consent -- in droves. And Plaintiffs' attempt to stretch Birchmeier to cover this case is unavailing. Thus, they argue, "[l]ikewise, Ocwen should not be permitted to rest on a lack of record-keeping, or concerns over the management of its records, to argue against class certification." (Pl. Mem. at 6, emphasis added.) But what "concerns over the management of its records" are Plaintiffs referring to here? There is no suggestion that Ocwen's record management was designed to avoid production of evidence in the course of litigation -- still less to avoid production of evidence of consent in TCPA cases. The very suggestion is absurd on its face. Ocwen kept its records to satisfy its business operational needs. The fact that review and production of evidence of consent from these records would be vastly expensive and time-consuming does not amount to a "concern over the management" of these records.

We submit that Plaintiffs have turned class-action law on its head. The law, they would have it, is that a defendant can be stripped of its affirmative defenses if it is unable to produce individualized proof as to all class members -- not through negligence or willfulness but because

its documents are organized to meet the demands of its business operations, and this organization makes the production of individualized evidence of 1.5 million persons' consent vastly expensive and time consuming. But that cannot be the law: rather, in such a circumstances, the conclusion should be that a class-wide adjudication cannot proceed because it would strip the defendant of its right to prove its individual affirmative defenses.

It is axiomatic that a class action is a procedural device that can't change or impair the parties' rights. The Supreme Court has thus held that "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge or modify any substantive right." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 613 (1997) (internal quotation omitted). Accord In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1020 (7th Cir. 2002) ("Tempting as it is to alter doctrine in order to facilitate class treatment, judges must resist so that all parties' legal rights may be respected.").

In particular, class adjudication cannot be used when it will deprive a defendant of the opportunity to present its affirmative defenses to individual class members' claims. E.g., Clark v. Experian Info., Inc., 233 F.R.D. 508, 512 (N.D. Ill. 2005) ("The [class action] defendants also have the right to assert affirmative defenses [that] require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery."), aff'd sub nom. Clark v. Experian Info. Sols., Inc., 256 F. App'x 818 (7th Cir. 2007); Vulcan Golf, LLC v. Google Inc., 254 F.R.D. 521, 531 (N.D. Ill. 2008) (same). But that is just what is at issue here: Ocwen is the defendant in a number of individual TCPA cases, and in those cases it is able to gather evidence of consent from its files and present that evidence to the court. But when 1.5 million cases are consolidated in a class action, Ocwen can only gather evidence of

consent at vast cost and with many years of work. The use of the class action device thus deprives Ocwen of the ability to assert a defense it can assert in the individual cases.

## Conclusion

Ocwen cannot respond to the Interrogatory by the cut-off date. In fact, it cannot respond in full to the Interrogatory for many years and at vast cost.

Plaintiffs contend that this means that the Court should strike Ocwen's consent defense even without deciding whether a class can be certified. But that would deprive Ocwen of its Due Process right to raise its consent defense to class members' claims.

In deciding a motion to compel discovery, the Court "may fashion a ruling appropriate to the circumstances of the case." Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir. 1996). Ocwen respectfully submits that the ruling appropriate to the present circumstances -- particularly the circumstance that the Court has not yet considered whether a class can be certified -- is for the Court to deny Plaintiffs' motion at the present time without prejudice to it being raised again if the Court should determine that a class should be certified and that a process for adjudicating Ocwen's consent defense with respect to individual class members can satisfy Due Process.

Respectfully submitted,

/s/ Simon Fleischmann
Simon Fleischmann (6274929)
sfleischmann@lockelord.com
Thomas J. Cunningham (6215928)
tcunningham@lockelord.com
Chethan Shetty (6300848)
cshetty@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Phone: 312-443-0700

Brian V. Otero, Admitted Pro Hac Vice
botero@hunton.com
Stephen R. Blacklocks, Admitted Pro Hac Vice
sblacklocks@hunton.com
Ryan A. Becker, Admitted Pro Hac Vice
rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000

Attorneys for Defendant
Ocwen Loan Servicing, LLC

**CERTIFICATE OF SERVICE**

  I, Simon Fleischmann, an attorney, certify that I caused the foregoing to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on November 14, 2016.

                <u>  /s/ Simon Fleischmann  </u>

Case: 1:14-cv-08461 Document #: 107 Filed: 11/14/16 Page 19 of 19 PageID #:810