**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, | ) ) ) ) Case No. 1:14-cv-08461 ) ) ) Honorable Matthew F. Kennelly ) ) ) Consolidated ) ) |
| Ocwen Loan Servicing, LLC, | ) ) ) ) ) |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, | ) ) ) ) Case No. 1:14-cv-08461 ) ) ) Honorable Matthew F. Kennelly ) ) ) Consolidated ) ) |
| Ocwen Loan Servicing, LLC, | ) ) ) ) |

**OCWEN'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR A PRELIMINARY INJUNCTION AND CLASS CERTIFICATION**

# Table of Contents

Why Plaintiffs' Motion Should be Denied ......................................................................1

The Injunction Requested by Plaintiffs.........................................................................2

The Facts Relevant to this Motion ................................................................................4

      A.    Plaintiffs admit that they have not been called on their cell phones for over two years. .................................................................................................................4

      B.    The declarations of Messrs. Bartolone and Cody contain significant and material falsehoods. ......................................................................................................4

      C.    The injunction would result in huge burdens on Ocwen's business and would harm borrowers. ..............................................................................................6

      D.    Ocwen can't systemically determine whether cell phone numbers it has for borrowers were found by skip tracing or ANI capture. ..............................7

      E.    Ocwen is constantly striving to improve its safeguards against autodialing cell phones without borrowers' consent. ......................................................7

Argument ....................................................................................................................9

I.      Plaintiffs' motion should be denied because they lack standing to seek a preliminary injunction..........................................................................................9

II.     Plaintiffs' motion should be denied because they have not made, and cannot make, the showing required for an injunction. ...................................12

      A.    Plaintiffs wrongly contend that the Court should apply a weakened "statutory injunction" test for issuing a preliminary injunction. .............................13

      B.    Plaintiffs have offered no evidence at all with respect to success on the merits, irreparable harm, or the balance of harms .............................................18

      C.    Plaintiffs fail even their own statutory injunction test. .........................21

III.    Plaintiffs' motion should be denied because they have not met their burden of demonstrating that the class can be certified. ..............................22

      A.    Plaintiffs have not demonstrated that they satisfy the Rule 23(a) prerequisites. ...22

      B.    Plaintiffs have not demonstrated that they satisfy the requirements of Rule 23(b)(2). ......................................................................................................24

      C.    Plaintiffs' subclass of persons who have revoked consent to being called on their cell phones is a "fail-safe" class that cannot be certified.......................25

Conclusion .................................................................................................................25

**Table of Authorities**

**Cases**                                               **Page(s)**

ACA Int'l v. FCC,
    Case No. 15-1211 (D.C. Cir.) ..................................................................................5 n.4

Arreola v. Godinez,
    546 F.3d 788 (7th Cir. 2008) ................................................................11, 12 n.7, 23

Bedrossian v. Northwestern Mem'l Hosp.,
    409 F.3d 840 (7th Cir. 2005) ..............................................................14, 14 n.9, 15, 16

Burlington N. R. Co. v. United Transp. Union,
    862 F.2d 1266 (7th Cir. 1988) ..........................................................................................12

Butler v. Am. Cable & Tel., LLC,
    2011 WL 2708399 (N.D. Ill. July 12, 2011)...................................................................24

Campbell v. Miller,
    373 F.3d 834 (7th Cir. 2004) ....................................................................................11 n.6

Chicago Observer, Inc. v. City of Chicago,
    929 F.2d 325 (7th Cir. 1991) ..........................................................................................22

Christopher Phelps & Assocs., LLC v. Galloway,
    492 F.3d 532 (4th Cir. 2007) ...................................................................................16 n.12

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983)..........................................................................................10, 12, 12 n.7

Commodity Futures Trading Comm'n v. Hunt,
    591 F.2d 1211 (7th Cir. 1979) .........................................................15, 15 n.11, 16 n.11

Commodity Futures Trading Comm'n v. Oystacher,
    2016 WL 3693429 (N.D. Ill. July 12, 2016)..........................................................15 n.11

Culver v. City of Milwaukee,
    277 F.3d 908 (7th Cir. 2002) ......................................................................................3 n.2

D.U. v. Rhoades,
    825 F.3d 331 (7th Cir. 2016) ...................................................................................18, 19

Davis v. Hutchins,
    321 F.3d 641 (7th Cir. 2003) ..........................................................................................22

DH2, Inc. v. SEC,
    422 F.3d 591 (7th Cir. 2005) ............................................................................................9

eBay Inc. v. MercExchange, L.L.C,
    547 U.S. 388 (2006)................................................................ 14 n.10, 16 nn. 11-12

Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
    528 U.S. 167 (2000)............................................................................10, 12, 12 n.7

Gates v. Towery,
    430 F.3d 429 (7th Cir. 2005) ...............................................................................10

Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,
    549 F.3d 1079 (7th Cir. 2008) ..............................................................................19

Harriston v. Chicago Tribune Co.,
    992 F.2d 697 (7th Cir. 1993) .........................................................................12 n.7

Hirst v. Skywest, Inc.,
    2016 WL 2986978 (N.D. Ill. May 24, 2016).......................................................10

Holmes v. Fisher,
    854 F.2d 229 (7th Cir. 1988) ........................................................................12 n.7

Hope, Inc. v. DuPage Cty., Ill.,
    738 F.2d 797 (7th Cir. 1984) ................................................................................9

Swan ex rel. I.O. v. Bd. of Educ. of City of Chicago,
    2013 WL 4047734 (N.D. Ill. Aug. 9, 2013) ........................................................24

Imhoff Inv., LLC v. SamMichaels, Inc.,
    2014 WL 172234 (E.D. Mich. Jan. 15, 2014).....................................................19

J2 Global Comm. Inc. v. Blue Jay, Inc.,
    2009 WL 4572726 (N.D. Cal. Dec. 1, 2009)...................................................16 n.12

Johnson v. City of Chicago,
    2013 WL 3811545 (N.D. Ill. July 22, 2013)........................................................10

Kartman v. State Farm Mut. Auto. Ins. Co.,
    634 F.3d 883 (7th Cir. 2011) ...............................................................................24

Knox v. McGinnis,
    998 F.2d 1405 (7th Cir. 1993) .......................................................................11 n.6

Kopff v. Roth,
    2007 WL 1748918 (D.D.C. June 15, 2007)........................................................19

Lajim, LLC v. Gen. Elec. Co.,
    2016 WL 5792677 (N.D. Ill. Oct. 4, 2016)....................................................16 n.11

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992)..................................................................................17 n.3

Lynn v. Monarch Recovery Mgmt, Inc.,
    2013 WL 1247815 (D. Md. Mar. 25, 2013)...................................................16 n.12

Mauer v. Am. Intercontinental Univ., Inc.,
    2016 WL 4698665 (N.D. Ill. Sept. 8, 2016) .........................................................25

McDaniel v. Bd. of Educ. of City of Chicago,
    2013 WL 4047989 (N.D. Ill. Aug. 9, 2013) ....................................................22, 24

Messner v. Northshore Univ. HealthSystem,
    669 F.3d 802 (7th Cir. 2012) ...............................................................................25

Meyer v. Portfolio Recovery Assocs., LLC,
    707 F.3d 1036 (9th Cir. 2012) .....................................................................16 n.12

N.B. v. Hamos,
    26 F. Supp. 3d 756 (N.D. Ill. 2014) .....................................................................25

Nat'l Fin. Partners Corp. v. Paycom Software, Inc.,
    2015 WL 3633987 (N.D. Ill. June 10, 2015), appeal dismissed (July 7,
    2015) .................................................................................14 n.10, 18, 20

Palmer v. City of Chicago,
    755 F.2d 560 (7th Cir. 1985) ........................................................................11 n.6

Payton v. Cty. of Kane,
    308 F.3d 673 (7th Cir. 2002) .....................................................................9, 12 n.7

Porter v. Warner Holding Co.,
    328 U.S. 395 (1946)..............................................................................14 n.9

Renne v. Geary,
    501 U.S. 312 (1991).....................................................................................9

Salinger v. Colting,
    607 F.3d 68 (2d Cir. 2010)........................................................................14 n.10

Samms v. Abrams,
    2016 WL 4045473 (S.D.N.Y. July 28, 2016) ...................................................16

Sauter v. CVS Pharmacy, Inc.,
    2014 WL 1814076 (S.D. Ohio May 7, 2014) ...................................................25

SEC v. Advance Growth Capital Corp.,
    470 F.2d 40 (7th Cir. 1972) ....................................................................15 n.11

SEC v. Holschuh,
    694 F.2d 130 (7th Cir. 1982) ........................................................................15 n.11, 16 n.12

SEC v. Management Dynamics,
    515 F.2d 801 (2d Cir. 1975)........................................................................................16 n.11

SEC v. Yang,
    2014 WL 2198323 (N.D. Ill. May 27, 2014) .................................................................15 n.11

Sierakowski v. Ryan,
    223 F.3d 440 (7th Cir. 2000) ..........................................................................................11, 22

Simon v. Eastern Ky. Welfare Rights Org.,
    426 U.S. 26 (1976)....................................................................................................................9

Sprint Spectrum L.P. v. City of Carmel, Indiana,
    361 F.3d 998 (7th Cir. 2004) ....................................................................................................9

Summers v. Earth Island Inst.,
    555 U.S. 488 (2009)............................................................................................................10, 12

Ty, Inc. v. Jones Group, Inc.,
    237 F.3d 891 (7th Cir. 2001) ...................................................................................................20

United States v. Dish Network, L.L.C.,
    2016 WL 29244 (C.D. Ill. Jan. 4, 2016) ..............................................................................16 n.11

United States v. Kaun,
    827 F.2d 1144 (7th Cir. 1987) ..........................................................................................15 n.11

Walters v. Edgar,
    973 F. Supp. 793 (N.D. Ill. 1997), aff'd, 163 F.3d 430 (7th Cir. 1998)..................................10

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982)...................................................... 13, 14, 14 n.9, 15, 16, 16 nn. 11-12, 18

Winter v. Nat. Resources Def. Council, Inc.,
    555 U.S. 7 (2008)..............................................................................................................12, 18

## Statutes and Other Authorities

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...................................................................17

Fed. R. Civ. P. 23 .....................................................................................................2, 12 n. 7, 22, 24

137 Cong. Rec. S16204-01 .............................................................................................................18

Tracy A. Thomas, <u>The Prophylactic Remedy: Normative Principles and
    Definitional Parameters of Broad Injunctive Relief</u>, 52 Buff. L. Rev. 301
    (2004)....................................................................................................................................4 n.3

## Why Plaintiffs' Motion Should be Denied

Plaintiffs seek to bar Ocwen from making autodialed calls to the cell phones of large numbers of borrowers -- including many who have consented to being called on their cell phones -- on the basis of declarations from two members of the proposed class who falsely declare that they did not provide their cell phone numbers, that they are being "harassed" by "reminder calls" before they are late on their mortgage payments, and that they are being autodialed on their cell phones without having given consent.

Plaintiffs' motion should be denied because Plaintiffs (1) lack standing, (2) cannot satisfy the preliminary injunction standard, and (3) cannot represent a class.

First, Plaintiffs lack standing because they themselves aren't at risk from the actions their injunction seeks to prevent -- being autodialed on their cell phones without their consent. Plaintiffs admit that they haven't been called on their cell phones for over two years, and offer no reasons at all for concluding that they are at continuing risk of being called. Because Plaintiffs lack standing, the class cannot be certified and a class-wide preliminary injunction cannot be granted. (See Point I below.)

Second, in a class proceeding, the named plaintiffs must demonstrate their own entitlement to relief, and if they have none, no relief can be given to the class. Plaintiffs can't satisfy the elements for a preliminary injunction because they have made no showing of likely success on the merits, they can't show that they will not be made whole by money damages, and the balance of equities weighs against an injunction. Instead, they argue that the Court should adopt the so-called "statutory injunction" standard that does away with the time-honored standards for equitable relief. Clear Supreme Court and Seventh Circuit authorities show they are wrong. (See Point II below.)

<u>Third</u>, Plaintiffs have not carried their burden of demonstrating that a class should be certified. Their proposed class cannot be certified, for a number of reasons, not least that Plaintiffs are not adequate representatives of the members of their proposed class because they are not at risk of being autodialed on their cell phones. In addition, Plaintiffs' proposed class is overbroad, so class-wide relief is not "appropriate," as Rule 23(b)(2) requires. (<u>See</u> Point III below.)

Plaintiffs acknowledge, as they must, that the Court has to be able to certify a class before it can provide class-wide injunctive relief. But in any class action, the focus is on the named plaintiffs: Do they have standing? Do they have a claim for relief? Can they represent the class? If the answer to any of these question is no, the Court can't certify a class or order class-wide relief. Here, the answer to all these questions is no.

It is irrelevant that there might be other members of the proposed class who might have standing or who potentially have a claim. Plaintiffs have enlisted the help of Mr. Cody and Mr. Bartolone who complain in their declarations that they are being autodialed on their cell phones without their consent. Plaintiffs ask the court to extrapolate from this sample of two to a conclusion about their proposed class as a whole, but, even were this possible, Plaintiffs have chosen the wrong recruits, for their declarations contain material falsehoods.

<strong>The Injunction Requested by Plaintiffs</strong>

Plaintiffs state that they:

> seek an order that enjoins Ocwen, or any third party vendor on Ocwen's behalf, from using its Aspect Software, Inc. dialer to place calls to: (1) cellular telephone numbers obtained via skip-tracing; (2) cellular telephone numbers obtained via ANI capture; and (3) cellular telephone numbers after verbal or written requests that calls to that number, account, or consumer stop, including but not limited to payment reminder calls. ("Injunctive Relief.") In addition, Plaintiffs request that the Court order Ocwen to suspend its reminder call program. (Pl. Mem. at 1-2.)

2

The Aspect Software Plaintiffs are here referring to is Ocwen's autodialing program, thus Plaintiffs are asking for an Order:

1.  barring Ocwen from autodialing cell phone numbers it obtained through skip tracing;

2.  barring Ocwen from autodialing cell phone numbers it obtained through ANI capture;

3.  barring Ocwen from autodialing cell phone numbers after verbal or written requests to not call that number, account or consumer; and

4.  barring Ocwen (for some unspecified period) from continuing its "reminder call program."[1]

Plaintiffs acknowledge that "[i]njunctive relief cannot be afforded to a class prior to class certification." (Pl. Mem. at 16.) They therefore ask the Court to certify the following class "for the limited purpose of effectuating the proposed injunction":

All persons called on a cellular telephone number by Ocwen, or a third party on its behalf, through the use of an autodialer, that Ocwen obtained via skip tracing or ANI capture, and/or after having provided a verbal or written request that calls to that number, account, or consumer stop, and /or who received a reminder call. (Id. at 16.)

In effect, then, Plaintiffs are asking the Court to certify four distinct subclasses corresponding to the four forms of injunctive relief they seek:[2]

1.  **The Skip Trace Subclass**: persons called on a cell phone number that Ocwen obtained by skip tracing. **The relief sought for this subclass**: Ocwen should be barred from autodialing cell phone numbers obtained by skip tracing.

2.  **The ANI Capture Subclass**: persons called on a cell phone number that Ocwen obtained by ANI capture. **The relief sought for this subclass**: Ocwen should be barred from autodialing cell phone numbers obtained by ANI capture.

---

[1]    It's unclear why Plaintiffs separate this from what they define as the "Injunctive Relief" they seek.

[2]    We refer to these as "subclasses" for convenience, but the term is somewhat of a misnomer here because there isn't a unitary class of which they are subsets; rather, the "class" -- to the extent there is one -- is characterized by Plaintiffs simply as the sum of these subclasses. See Culver v. City of Milwaukee, 277 F.3d 908, 911 (7th Cir. 2002) ("heterogeneous" class "had to be divided into two classes") (emphasis in original).

3

3.     **The Revocation Subclass**: persons called on a cell phone after having made a verbal or written request not to be called.  **The relief sought for this subclass**: barring Ocwen from autodialing cell phone numbers after verbal or written requests to not call that number, account or consumer.

4.     **The Reminder Call Subclass**: persons who received a reminder call.  **The relief sought for this subclass**: barring Ocwen (for some unspecified period) from continuing its "reminder call program."

Plaintiffs' subclasses are examples of so-called "overbroad prophylactic classes," for they seek to safeguard against future TCPA violations by sweeping so broadly that they would bar many acts that will not themselves be TCPA violations.[3]  Thus, taking Plaintiffs' Skip Trace Subclass as the example, it is overbroad because its bar on autodialed calls to members of that subclass will prohibit Ocwen from calling those of its members who have consented to being called on their cell phones.

## The Facts Relevant to this Motion

### A.     Plaintiffs admit that they have not been called on their cell phones for over two years.

Plaintiffs state that "Ocwen has not placed calls to Plaintiffs since the commencement of this action."  (Pl. Mem. at 20.)  This action commenced over two years ago, on October 27, 2014.  (ECF 1.)

### B.     The declarations of Messrs. Bartolone and Cody contain significant and material falsehoods.

Mr. Bartolone complains about calls to his 2827 cell phone number.  (Bartolone Decl. ¶ 4.)  He says he didn't give Ocwen that number (id.) -- but he did, in a July 22, 2014 Request for Hardship Assistance.  (Decl. of Marc Trees, Ocwen Director of Dialer and Workforce Management, ¶ 14.)  He says he repeatedly asked Ocwen to stop calling that number (Bartolone

---

[3]     On prophylactic injunctions, see generally Tracy A. Thomas, The Prophylactic Remedy: Normative Principles and Definitional Parameters of Broad Injunctive Relief, 52 Buff. L. Rev. 301 (2004).

Decl. ¶ 5) -- but there is evidence of just one such request, and Ocwen did not autodial that number after that revocation until his wife gave renewed consent to call that number a few weeks later. (Trees Decl. ¶¶ 16-20; Elgie Decl. ¶ Exh. A.) And he states that he was not late on his loan payments (Bartolone Decl. ¶ 6) and gets four or five calls a day (id. ¶ 10), but these statements too are false, for he has been consistently late paying, and on no occasion has he been called four or five times a day. (Trees Decl. ¶ 21 Exh. J.)

Mr. Cody states that he didn't give his cell phone number to Ocwen (Cody Decl. ¶ 3), but, again, this is misleading -- he gave it to Ocwen's predecessor servicer as a contact number in a February 5, 2009 letter. (Trees Decl. ¶ 25.) And Mr. Cody states in his declaration that the calls from Ocwen are "particularly frustrating" because he is "current on both mortgages." (Cody Decl. ¶ 10.) However, at his deposition Mr. Cody admitted that this statement was false ("that's not a statement I honestly I would've… Q: So do you believe that you're not current on both mortgages? A: Oh, no. I'm behind on both." (Cody Dep. Tr. (Elgie Decl. Exh. B) at 44:22-45:7)). He also complains that Ocwen calls him when he is "one day past due on paying the mortgages," but admitted that he hasn't made any mortgage payments in 2016. (Id. at 49:18-19).[4]

---

[4]     After Mr. Cody revoked consent to be called on his cell phone, he was called on that phone fourteen times by Ocwen by means of manual calls made through the Aspect Dialer system. (Trees Decl. ¶ 27.) There are weighty arguments, presently being considered by the D.C. Circuit Court of Appeals, as to whether such manual calls are "autodialed," as the FCC maintains they are because they are made using a system with the "capacity" for making autodialed calls. ACA Int'l v. FCC, Case No. 15-1211 (D.C. Cir.). We submit that the FCC's interpretation of "ATDS" and its treatment of revocation of consent are unlawful, and adopt the ACA petitioners' arguments on each of those points. (See Joint Brief for Petitioners, Case No. 15-1211 (Doc # 1600622).)

### C. The injunction would result in huge burdens on Ocwen's business and would harm borrowers.

Ocwen submits with this memorandum the declaration of Ms. Sherri Goodman, Senior Vice-President in charge of Ocwen's customer service operations. Ms. Goodman's declaration describes the importance to Ocwen and its borrowers of autodialing borrowers when their payments are past due to prompt them to pay and to discuss payment modifications and other steps to avoid foreclosure. We respectfully refer the Court to that declaration for Ms. Goodman's detailed description of Ocwen's call center operations and the importance of borrower contact to Ocwen's business.

Plaintiffs complain about "harassing 'payment reminder' calls that occur regardless of whether they have timely paid their mortgages," and ask for an injunction barring Ocwen's "reminder program." (Pl. Mem. at 1-2.) Ms. Goodman testifies that there is no such thing as "payment reminder" calls: Ocwen does not call borrowers in advance of the due date for their payments to "remind" them to pay. (Goodman Decl. ¶ 8.) Plaintiffs also raise the possibility that the Court should bar Ocwen from making any autodialed calls. (Pl. Mem. at 2.) Ms. Goodman testifies that if Ocwen could not autodial borrowers it would need to hire approximately 1,500 more call center representatives to make up for the lost efficiencies, and that this would require an initial $5 million investment and would cost Ocwen an additional $25 million a year. (Goodman Decl. ¶ 46.) In addition, the immediate effect of a bar on autodialing would be 80% fewer calls to borrowers, with a corresponding drop in Ocwen's ability to inform them that they are late on their payments and to assist them in avoiding the adverse consequences of delinquency. (Id. ¶ 47.) Ms. Goodman also testifies that this impact on Ocwen's ability to contact borrowers would be viewed unfavorably by investors in the trusts Ocwen services, with possible adverse consequences for Ocwen. (Id. ¶ 48.) In addition, Ms. Goodman explains how

6

Ocwen uses skip tracing and ANI capture to find borrowers' numbers, and the importance of these programs to its ability to remain in contact with borrowers. (Id. ¶¶ 35-44.)[5]

### D. Ocwen can't systemically determine whether cell phone numbers it has for borrowers were found by skip tracing or ANI capture.

Ms. Goodman explains that Ocwen is unable to determine systemically whether cell phone numbers it has for borrowers have been obtained by skip tracing or ANI capture. (Goodman Decl. ¶ 38.) As a result, to comply with an injunction barring it from autodialing cell phone numbers found through skip tracing or ANI capture, Ocwen would have to stop autodialing all cell phone numbers, even to call persons who themselves provided those numbers to Ocwen and who want to be contacted on those numbers.

### E. Ocwen is constantly striving to improve its safeguards against autodialing cell phones without borrowers' consent.

Ms. Goodman also describes the procedures Ocwen has recently adopted to help safeguard against autodialing cell phones of persons who have not provided consent to being called on those phones. Again, we respectfully refer the Court to her declaration for the details on such measures, but by way of summary, these safeguards include the following:

-- In December 2014, Ocwen stopped autodialing borrowers' cell phones until it had verified by means of a manual call to the borrower that the borrower consented to being called on that cell phone. Ocwen flags a borrower's consent, or lack thereof, in a consent field in its REALServicing system. (Goodman Decl. ¶ 18.) If that field doesn't indicate consent for a borrower, that borrower's number isn't loaded into the autodialer, so cannot be autodialed.

---

[5] Plaintiffs say that Ocwen "illegally obtain[s] consumers' cellular telephone numbers." (Pl. Mem. at 1.) The suggestion that the use of skip tracing or ANI capture is illegal is irresponsible.

--     Twice-weekly, Ocwen compares borrower contact numbers in REALServicing against Areacode.com to determine whether any numbers in REALServicing have not been properly designated as cell phone numbers. (Goodman Decl. ¶ 17.) Since July of this year, Ocwen has also made a daily comparison of its REALServicing numbers with the Neustar data files -- considered to be the most reliable source for determining whether a number is a cell phone number. (Id. ¶ 27.)

--     Ocwen has recently improved its training of call center representatives to help minimize the possibility of error with respect to borrower consent, including added classroom training, improved scripts, and revised compensation plans tying incentive compensation to proper updating of the consent field in REALServicing based on borrower contacts. (Id. ¶ 21-26.)

--     Since January 2016, Ocwen has improved its quality control procedures by doing a daily check on calls made using the autodialer to determine if any were made without REALServicing indicating borrower consent to be called; if the check reveals any such calls, a call center operations team investigates to diagnose why the error occurred. (Id. ¶ 29.)

--     Ocwen has also recently adopted technological improvements designed to prevent autodialing cell phones numbers of borrowers who haven't given consent, including flagging as non-consenting all loans that a borrower may have serviced by Ocwen when consent is denied for any one of the borrower's loans, and the ability to indicate that a borrower has asked not to be called at all with respect to a loan to prevent any future collection calls to that person on any number. (Id. ¶¶ 32-33.)

Ms. Goodman states that "[a]s result of implementing these improvements, enhancements and upgrades, Ocwen has a much more robust set of safeguards and checks than it did even two years ago." (Id. ¶ 34.)

**Argument**

**I.     Plaintiffs' motion should be denied because they lack standing to seek a preliminary injunction.**

Federal jurisdiction requires, as a threshold matter, that the plaintiff establish that he or she has Article III standing. E.g., DH2, Inc. v. SEC, 422 F.3d 591, 596 (7th Cir. 2005). It is "presume[d] that federal courts lack jurisdiction 'unless the contrary appears affirmatively from the record.'" Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004) (quoting Renne v. Geary, 501 U.S. 312, 316 (1991)). It is the plaintiff's burden "to clearly allege facts that invoke federal court jurisdiction," id., and if the plaintiff fails to make that showing, the complaint must be dismissed. Hope, Inc. v. DuPage Cty., Ill., 738 F.2d 797, 804 (7th Cir. 1984).

The burden on the plaintiff to demonstrate his standing applies whether the plaintiff is bringing a claim solely for himself or on behalf of a class:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

Id. (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) (emphasis added)).

Thus, in a class action, the named plaintiffs must show they have standing to sue -- the standing of other class members is irrelevant to the court's subject-matter jurisdiction. E.g., Payton v. Cty. of Kane, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have

afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.") (emphasis added)); Hirst v. Skywest, Inc., 2016 WL 2986978, at *14 (N.D. Ill. May 24, 2016) ("[C]ourts in [the N.D. Ill.] regularly dismiss putative [employment] class actions on standing grounds where the named plaintiffs were former employees [who therefore lack standing] seeking to obtain injunctive and equitable relief on behalf of current employees."; collecting cases). If the named plaintiffs lack standing to pursue a claim, that claim must be dismissed -- for both them and for the class. E.g., Walters v. Edgar, 973 F. Supp. 793, 799 (N.D. Ill. 1997) ("[U]nless at least one of [the named plaintiffs] has satisfied the standing requirement . . ., this case must be dismissed in its entirety."), aff'd, 163 F.3d 430 (7th Cir. 1998).

And not only must the named plaintiffs demonstrate they have standing, they must in addition "demonstrate that they have standing to pursue each form of relief sought." Johnson v. City of Chicago, 2013 WL 3811545, at *5 (N.D. Ill. July 22, 2013). Thus, plaintiffs seeking injunctive relief cannot rely on their standing to seek monetary relief, but must instead separately establish standing to claim injunctive relief. E.g., City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (rejecting argument that plaintiff's "pending damages suit affords him Article III standing to seek an injunction"); Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000) (plaintiffs must "demonstrate standing separately for each form of relief sought."); Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (same); Gates v. Towery, 430 F.3d 429, 432 (7th Cir. 2005) (holding named plaintiffs lacked standing for injunctive relief "because they do not contend that they are likely to be arrested again," but had standing to seek monetary class relief); Johnson, 2013 WL 3811545, at *5-6 (holding named

10

plaintiffs lacked standing to seek preliminary injunctive relief, but that they had standing to seek monetary relief).

To have standing to seek injunctive relief, a plaintiff must show "a significant likelihood and immediacy of sustaining some direct injury." Sierakowski v. Ryan, 223 F.3d 440, 443 (7th Cir. 2000).[6]  Plaintiffs have not made this showing.  Moreover, they cannot do so for they are not at risk of being autodialed by Ocwen on their cells phones.  They admit that they haven't been called by Ocwen in over two years.  Moreover, their denial of consent to being called is indicated in their REALServicing file, so making their cell phone numbers ineligible to be autodialed. (Trees Decl. ¶ 22.)  Because Plaintiffs do not face an imminent risk from the conduct they seek to enjoin, they do not have standing to seek injunctive relief and so their claim must be dismissed.  Because none of the Plaintiffs has standing to seek an injunction, no injunction can issue for the class.

Ocwen acknowledges that in Arreola v. Godinez, 546 F.3d 788 (7th Cir. 2008), the Seventh Circuit held that this Court erred in finding the plaintiff lacked "standing to pursue injunctive relief" when he had standing to pursue damages.  Id. at 795 (emphasis in original). But that holding is inconsistent with decisions from the Supreme Court cited above which issued both before and after Arreola and hold that "a plaintiff must demonstrate standing separately for

---

[6]     Accord Campbell v. Miller, 373 F.3d 834, 836 (7th Cir. 2004) (affirming denial of plaintiff's motion for preliminary injunction for lack of standing, holding that "[u]nless the same events are likely to happen again to him there is no controversy between him and the City about the City's future handling of other arrests"); Knox v. McGinnis, 998 F.2d 1405, 1413 (7th Cir. 1993) (affirming finding that the plaintiff lacked Article III standing to seek a preliminary injunction when he could not establish a "real and immediate threat" but alleged "only . . . the possibility that [the plaintiff] may again be transferred to the prison's segregation unit"); Palmer v. City of Chicago, 755 F.2d 560, 572 (7th Cir. 1985) (reversing preliminary injunction, holding named plaintiffs had to show he was "immediately in danger of sustaining some direct injury" but "allege[d] only a past harm," and so their standing "depends solely upon the likelihood that the plaintiffs will suffer future injury from the defendants' alleged practice").

each form of relief sought." <u>Friends of the Earth Inc.</u>, 528 U.S. at 185; <u>Summers</u>, 555 U.S. at 493; <u>Lyons</u>, 461 U.S. at 111.[7]

## II. Plaintiffs' motion should be denied because they have not made, and cannot make, the showing required for an injunction.

The injunction Plaintiffs seek is on its face overbroad, for it would bar Ocwen from autodialing the cell phones of persons who have consented to receiving calls on those phones. Plaintiffs have made no attempt to defend this overbreadth in light of the frequent admonitions that injunctions must be narrowly tailored to achieve their ends. <u>E.g.</u>, <u>Burlington N. R. Co. v. United Transp. Union</u>, 862 F.2d 1266, 1280 (7th Cir. 1988). Indeed, Plaintiffs ask the Court to employ a preliminary injunction test that <u>does away</u> with any assessment of the injunction's scope, for, they claim, they need not show the traditional elements of injunctive relief, such as irreparable harm, that the balance of harms comes out in their favor, or that the interests of non-parties are not adversely affected by the injunction. <u>See</u>, <u>e.g.</u>, <u>Winter v. Nat. Resources Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008) (stating traditional elements of injunctive relief). But Plaintiffs are wrong about what test applies here: clear Supreme Court and Seventh Circuit law

---

[7] The question of whether the plaintiff was required to show separately that he had standing to seek injunctive relief and standing to seek damages seems not to have been vigorously litigated in <u>Arreola</u>. The appellant-plaintiff's initial brief noted that it must have standing "for each type of relief sought" under Rule 23(b) (Appellant Br., 2007 WL 1943245, citing <u>Friends of the Earth</u>), the appellees-defendants didn't address that point. In addition, the Court didn't refer to governing Supreme Court precedents, such as <u>Friends of the Earth</u> or <u>Lyons</u>. The court cited <u>Payton v. Cty. of Kane</u>, 308 F.3d 673 (7th Cir. 2002), <u>Harriston v. Chicago Tribune Co.</u>, 992 F.2d 697 (7th Cir. 1993), and <u>Holmes v. Fisher</u>, 854 F.2d 229 (7th Cir. 1988), in its standing analysis (546 F.3d at 794-95), but none of those cases suggests that plaintiffs are not required to show standing for each form of relief sought. In <u>Payton</u>, the court reversed the district court's dismissal for lack of standing, but made no reference to the requirement from <u>Friends of the Earth</u> that the plaintiffs "demonstrate standing separately for each form of relief sought." (Nor is there any reason to think that that specific requirement was at issue in <u>Payton</u>, since the district court in that case had not explained why it found no standing. 308 F.3d at 676-77.) In <u>Harriston</u>, Article III standing was not at issue. 992 F.2d at 703. And in <u>Holmes</u>, the plaintiff sought injunctive and declaratory relief, but not damages, and so the court didn't address whether the plaintiff had to show standing for each form of relief sought. 854 F.2d at 230.

requires them to meet the traditional preliminary injunction standard. Plaintiffs cannot meet this standard.

### A. Plaintiffs wrongly contend that the Court should apply a weakened "statutory injunction" test for issuing a preliminary injunction.

In Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982), the Supreme Court reiterated the familiar principle that:

> [a]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable. The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.[8]

But Plaintiffs contend that they don't have to show irreparable harm or the absence of a legal remedy. Rather, they contend, the Court should apply the so-called "statutory injunction" standard under which they have only to show a statutory violation and the reasonable likelihood of future violations. (Pl. Mem. at 7-9.)

Plaintiffs are wrong. Romero-Barcelo, and the Seventh Circuit's application of Romero-Barcelo, show they are wrong.

The issue before the Supreme Court in Romero-Barcelo was whether the Federal Water Pollution Control Act allowed the district court to grant an injunction for violation of that statute without a showing by the plaintiff that the traditional standards for equitable relief -- including irreparable injury and the inadequacy of a legal remedy -- were met. The Court held that the district court properly concluded that the statute did not do away with the traditional elements of an injunction. The Court noted that Congress had the power to make an injunction available on a lesser showing than equity traditionally demanded, but held that "we do not lightly assume that Congress has intended to depart from established principles." Id. at 313. The Court continued:

---

[8]     Emphasis added, internal quotations and citations omitted.

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.[9]

The Seventh Circuit applied the holding of Romero-Barcelo in Bedrossian v. Northwestern Mem'l Hosp., 409 F.3d 840 (7th Cir. 2005).[10] In Bedrossian. the plaintiff alleged that his employer had violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the False Claims Act, and sought a preliminary injunction preventing termination of his employment. The district court denied the injunction on the ground that the plaintiff hadn't shown irreparable harm if preliminary relief were not granted.

The plaintiff argued to the Seventh Circuit that the USERRA and the False Claims Act allowed an injunction without a showing of irreparable harm, but the Seventh Circuit affirmed on the basis of Romero-Barcelo. The Court started by reiterating the fundamental principle stated in Romero-Barcelo: "An injunction is an equitable remedy that does not issue as a matter of course, but rather a remedy that courts may grant at their discretion in the extraordinary situations where legal remedies such as monetary damages are inadequate." (Id. at 842, emphasis added.) The Court then noted that Romero-Barcelo "sets forth the test" for whether a

---

[9]     Romero-Barcelo, 456 U.S. at 313 (emphasis added), quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946).

[10]    The Supreme Court returned to the issue of when federal statutes allowed deviations from the traditional test for an injunction in eBay Inc. v. MercExchange, L.L.C, 547 U.S. 388, 390 (2006), decided the year after Bedrossian, where the Court, relying on Romero-Barcelo, held that an injunction under the Patent Act required a showing of the traditional elements of injunctive relief. The Second Circuit, in Salinger v. Colting, 607 F.3d 68, 78 & n. 7 (2d Cir. 2010), stated eBay's holding thus: "unless Congress intended a major departure from the long tradition of equity practice, a court deciding whether to issue an injunction must not adopt categorical or general rules or presume that a party has met an element of the injunction standard . . . [W]e see no reason that eBay would not apply with equal force to an injunction in any type of case." (Internal quotations omitted.) See also Nat'l Fin. Partners Corp. v. Paycom Software, Inc., 2015 WL 3633987, at *11 (N.D. Ill. June 10, 2015), appeal dismissed (July 7, 2015) (discussing eBay).

14

statute "eliminat[es] the traditionally required showing of irreparable harm for preliminary injunctive relief" -- namely, that a statute must "in so many words, or by a necessary and inescapable inference" dispense with the irreparable harm element.  (Id. at 842-43, emphasis added.)  The Court then stated:  "[i]n other words, unless a statute clearly mandates injunctive relief for a particular set of circumstances, the courts are to employ traditional equitable considerations (including irreparable harm) in deciding whether to grant such relief."  (Id. at 843, emphasis added.)  The Seventh Circuit found nothing in the USERRA or the False Claims Act that gave rise to a "necessary and inescapable inference" that an injunction could be granted absent a showing of irreparable harm, and no mandate that an injunction must issue in circumstances where there was no irreparable harm.

Plaintiffs don't acknowledge the Romero-Barcelo / Bedrossian test, and none of the cases they cite applies that test, so for that reason are not good authority.  As we point out in the accompanying footnote, Plaintiffs' in-circuit cases (Pl. Mem. at 7-8) rest on the Seventh Circuit's 1979 decision in Commodity Futures Trading Comm'n v. Hunt, 591 F.2d 1211 (7th Cir. 1979), which stated quite generally that "[a]ctions for statutory injunctions need not meet the requirements for an injunction imposed by traditional equity jurisprudence. Once a violation is demonstrated, the moving party need show only that there is some reasonable likelihood of future violations."  Id. at 1220.[11]  But Romero-Barcelo and Bedrossian have overruled Hunt's

---

[11]     Hunt relied on a 1972 Seventh Circuit decision, SEC v. Advance Growth Capital Corp., 470 F.2d 40 (7th Cir. 1972), and two Second Circuit cases for the "statutory injunction" standard.  Hunt, 591 F.2d at 1220.  The Seventh Circuit relied on Hunt in employing this standard in SEC v. Holschuh, 694 F.2d 130, 144 (7th Cir. 1982), and the court cited Holschuh for the same proposition again in United States v. Kaun, 827 F.2d 1144, 1148 (7th Cir. 1987).  This Court's use of that standard in SEC v. Yang, 2014 WL 2198323, at * 1 (N.D. Ill. May 27, 2014), relied on Holschuh; the Court's use of that standard in Commodity Futures Trading Comm'n v. Oystacher, 2016 WL 3693429, at *6 (N.D. Ill. July 12, 2016), relied on Hunt.  In neither case did any party argue that the statutory injunction standard did not apply after

categorical rule that in every case where a party seeks an injunction for breach of a statute, all that the party need show is a violation of the statute and a reasonable likelihood of continuing violations. And, likewise, Plaintiffs' out-of-circuit cases (Pl. Mem. at 8-9) apply the statutory injunction standard without analyzing under Romero-Barcelo whether that standard is mandated by the TCPA.[12]

---

Romero-Barcelo or Bedrossian. The Central District's decision in United States v. Dish Network, L.L.C., 2016 WL 29244, at *1 (C.D. Ill. Jan. 4, 2016), also relies on Hunt, and, again, no party argued for a different standard. Because Hunt's categorical rule that the statutory injunction standard applies whenever a party seeks an injunction for breach of a statute is no longer good law, none of Plaintiffs' cases has any weight. Rather, as Romero-Barcelo and Bedrossian make clear, a court has to determine for each statute whether that statute mandates a departure from the traditional showing required in equity. (Of note, Hunt cited SEC v. Management Dynamics, 515 F.2d 801 (2d Cir. 1975) to support its statutory injunction standard, but the Southern District of New York has recently held that after eBay, the statutory injunction standard stated in Management Dynamics applies at most to actions brought by public entities. Samms v. Abrams, 2016 WL 4045473, at *2 (S.D.N.Y. July 28, 2016) (on appeal). See also Lajim, LLC v. Gen. Elec. Co., 2016 WL 5792677, at *4 (N.D. Ill. Oct. 4, 2016) (identifying an "important distinction between when a government agency is statutorily authorized to seek and obtain injunctive relief, in which case the elements of injunctive relief are not necessary, and when a citizen brings its own private suit seeking injunctive relief.") (internal citations omitted). All the cases from within this Circuit that Plaintiffs cite were brought by public entities.)

[12] Minnesota ex rel. v. Sunbelt Comm. & Marketing, 282 F.Supp. 2d 976 (D. Minn. 2002), was decided before Romero-Barcelo, and the only case it cites for the statutory injunction standard is the Seventh Circuit's 1982 Holschuh decision (282 F.Supp. at 980 n.2). J2 Global Comm. Inc. v. Blue Jay, Inc., 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009), cites a pre-Romero-Barcelo Ninth Circuit decision for the application of the statutory injunction standard whenever "injunctions are authorized by statute," and, as Meyer shows, the Ninth Circuit has declined to affirm that its earlier cases on this point are still good authority. Lynn v. Monarch Recovery Mgmt, Inc., 2013 WL 1247815, at *7 (D. Md. Mar. 25, 2013), cites a pre-Romero-Barcelo Fourth Circuit decision for the application of the statutory injunction standard. (The grant of an injunction was not at issue on appeal. 586 F. App'x 103 (4th Cir. 2014).) The Fourth Circuit has since held that in eBay "the Supreme Court reaffirmed the traditional showing that a plaintiff must make to obtain a permanent injunction in any type of case . . ." Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007). Plaintiffs wrongly suggest that Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036 (9th Cir. 2012), applied a statutory injunction standard. (Pl. Mem. at 8-9.) Rather, the court stated that it had not decided whether its previous decisions applying the statutory injunction standard survived eBay. 707 F.3d at 1044. Instead, the court affirmed the district court's grant of a preliminary injunction, concluding that the plaintiff had met the traditional standards for an injunction. Id. at 1044-45.

The question not addressed by Plaintiffs, then, is whether the TCPA mandates or gives rise to a "necessary and inescapable inference" that an injunction should be granted absent a showing of irreparable harm. Plaintiffs make no attempt to make such a showing. And the showing cannot be made, for there is nothing in the TCPA itself, or in its legislative history, that contains "a clear and valid legislative command," or gives rise to a "necessary and inescapable inference," that the traditional requirements for an injunction don't apply.

The language of the TCPA's injunction remedy in 47 U.S.C. § 227(b)(3) provides no such mandate. It states that:

**(3) Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

   (A)   an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation . . . .

Nothing here states, or in any way indicates, that the usual rules of equity do not apply to an action for an injunction; nothing here mandates the Court to issue an injunction without a showing of irreparable harm. There simply cannot be a "necessary and inescapable inference" from this statutory language that an injunction can issue without a showing of irreparable harm.[13]

Nor does the legislative history suggest that traditional equity standards do not apply when a plaintiff seeks an injunction. What legislative history there is on the TCPA's private right of action focuses on the damages remedy. See Nov. 7, 1991 statement of Sen. Hollings, the

---

[13]      There is no cogent argument that the phrase "based on a violation of this subsection" gives rise to a "necessary and inescapable inference" that all that needs be shown for an injunction is a "violation of this subsection." The traditional test for a statutorily-provided injunction itself requires that the injunction "be based on a violation" of the statute, for irreparable harm to the plaintiff has to arise from -- i.e., be "based on" -- the violation of the statute for the plaintiff to have standing. E.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 590 (1992) (to have standing, plaintiff must allege an injury "fairly traceable" to the challenged action; so when claiming injury from a violation of a statute, the injury caused by -- i.e., must be "based on" -- the violation of the statute).

bill's Senate sponsor, 137 Cong. Rec. S16204-01, 137 Cong. Rec. S16204-01, S16205, 1991 WL 229525, at *4 ("The . . . bill contains a private right-of-action provision <u>that will make it easier</u> <u>for consumers to recover damages</u> from receiving these computerized calls. . . . Unless Congress <u>makes it easier for consumers to obtain damages</u> from those who violate this bill, these abuses will undoubtedly continue.") (emphasis added). No mention is made of injunctive relief, and certainly no mention of making such relief "easier to recover" by dispensing with traditional equitable principles. The legislative history is silent as to when an injunction should issue, and "in the absence of a clear and valid legislative command" to replace traditional equity standards with some other, those traditional standards apply. <u>Romero-Barcelo</u>, 456 U.S. at 313.

**B.     Plaintiffs have offered no evidence at all with respect to success on the merits, irreparable harm, or the balance of harms**

A plaintiff seeking a preliminary injunction has the burden of demonstrating four elements: "[i] that he is likely to succeed on the merits; [ii] that he is likely to suffer irreparable harm in the absence of preliminary relief, [iii] that the balance of equities tips in his favor, and [iv] that an injunction is in the public interest." <u>D.U. v. Rhoades</u>, 825 F.3d 331, 335 (7th Cir. 2016) (quoting <u>Winter v. Nat. Resources Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008)). Plaintiffs have made such a demonstration. Nor can they.

(i)     <u>Likely success on the merits</u>:  Plaintiffs have attempted no showing that they are likely to succeed on the merits of their claims. Indeed, apart from reciting from their pleading (Pl. Mem. at 2), they say nothing about their own claims. But, on a motion for a preliminary injunction, a plaintiff must come forward with <u>evidence</u> to satisfy the elements of its claim. <u>E.g.</u>, <u>Nat'l Fin. Partners, Corp.</u>, 2015 WL 3633987, at *2-10 (weighing evidence

concerning success on merits). Plaintiffs' motion should therefore be denied on this ground alone.[14]

   (ii) Irreparable harm: A plaintiff does not suffer irreparable harm when his injury can be fully remedied by an award of damages. D.U. v. Rhoades, 825 F.3d at 339 ("Because money damages could make [plaintiff] whole again should she prevail in her lawsuit, she does not meet the standard for irreparable harm), citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1095 (7th Cir. 2008) ("a party seeking a preliminary injunction must demonstrate, among other things, that traditional legal remedies, such as money damages, would be inadequate"). Plaintiffs here seek TCPA statutory damages of $500 a call (and up to $1,500 a call), an amount that will adequately compensate them for any injuries they have suffered as a result of the alleged TCPA violations. E.g., Kopff v. Roth, 2007 WL 1748918, at *2 (D.D.C. June 15, 2007) (TCPA statutory damages "far exceed[] actual damages"); Imhoff Inv., LLC v. SamMichaels, Inc., 2014 WL 172234, at *9 (E.D. Mich. Jan. 15, 2014) (any injury resulting from a TCPA violation would be "compensated fully" by the $500 statutory damages, since "[t]he TCPA provides for statutory damages that exceed actual damages").

   (iii) Balance of equities: If the moving party meets the threshold requirements of success on the merits and irreparable harm, the district court must balance the harm to the

---

[14]   As we have pointed out above, the question on this motion is whether the named Plaintiffs have a claim for a preliminary injunction; if they do not, an injunction can't issue. But, if the Court were to inquire into whether claims by other members of the proposed class might succeed on the merits, such an inquiry would logically have to include an analysis of whether the 23(b)(3) class Plaintiffs propose can be certified. It cannot be: individual issues relating to whether any borrower gave consent to being called on his or her cell phone will predominate over common issues. (Ocwen described the complicated individual inquiries into the named Plaintiffs' own histories of consent and revocation (and sometimes consent again) in its opposition to Plaintiffs' motion to compel (ECF 107) at 5-7.)

movant "against the irreparable harm the moving party will suffer if relief is denied." Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001). The Court need not reach this third factor because Plaintiffs haven't made a threshold showing of success on the merits or irreparable harm. However, the declaration of Sherri Goodman describes the consequences to Ocwen if it is barred from autodialing borrowers -- namely, millions of dollars in investment to devise an alternative means of reaching borrowers and millions more dollars to pay for the 1,500 or so additional call center representatives needed, and potential adverse reactions from investors in trusts serviced by Ocwen. (Goodman Decl. ¶¶ 46-48.) Moreover, Plaintiffs state that they can't provide a more-than-nominal bond (Pl. Mem. at 15-16), but the balancing of hardships is required in order to "minimize the cost of potential error" in granting an injunction. Nat'l Fin. Partners, 2015 WL 3633987, at *15. The consequences of error are compounded when the movant can't post a sufficient bond because the non-movant would be left unprotected if the preliminary injunction were incorrectly granted. (Id.)

(iv)     Public interest:  The district court must also consider the public interest in granting or denying an injunction. E.g., Ty, Inc., 237 F.3d at 895. Borrowers will be harmed by the relief Plaintiffs seek because the Skip Trace and ANI injunctions will bar Ocwen from autodialing borrowers who consented to being called on the cell phone number Ocwen obtained through skip tracing or ANI capture because -- it is reasonable to presume -- their cell phone is for them the most efficient way of communicating with Ocwen. And to the extent that Plaintiffs seek to enjoin Ocwen from making any autodialed calls, the injunction is hugely overbroad for the same reason -- it will effectively prevent calls to borrowers who want them and would potentially suffer adverse effects (such as late fees and other consequences of delinquency) without them.

### C.    Plaintiffs fail even their own statutory injunction test.

On Plaintiffs' weakened statutory injunction standard, all they have to show is (1) a

TCPA violation, and (2) "that there is a reasonable likelihood of future violations."  (Pl. Mem. at

8.)  But they have not shown a reasonable likelihood of future violations.

Plaintiffs themselves admit that they have not received calls to their cell phones for over

two years (Pl. Mem. at 20), so their own experience weighs against future violations occurring.

Instead, they have recruited Messrs. Bartolone and Cody to make the case that there is a

likelihood of future violations.  But this attempt fails, for although both Bartolone and Cody

declare that they didn't provide their cell phone numbers (so suggesting they were skip traced or

ANI-captured), both in fact did provide their numbers.  (See pp. 4-5, above.)  Moreover, the

evidence shows that Mr. Bartolone and his wife consented to being called on his cell phone.

(Id.)  And both Mr. Bartolone and Mr. Cody greatly exaggerate the burden they claim to have

suffered from calls.  Mr. Bartolone's claim that he gets four or five calls a day is false.  (Id.)

And Mr. Cody admitted that his claim in his declaration that Ocwen's calls are "particularly

frustrating" because he is "current on both mortgages" is false; in fact, he hasn't made a

mortgage payment this entire year.  (Id.)

Plaintiffs thus rest their case that there is a likelihood of continuing TCPA violations on

the testimony of just two persons, both of whom made significantly false statements in their

declarations.  The shaky testimony of these two persons is not a sufficient basis on which to

impose the hugely burdensome constraints on Ocwen's business that Plaintiffs seek.

In addition, Ms. Goodman's testimony describes the steps Ocwen has taken to reduce the

possibility of future TCPA violations.  (Goodman Decl. ¶¶ 17-34, see also pp. 7-9 above

(summarizing declaration).)  Among other things, Ocwen runs a daily check of borrowers'

contact numbers against the industry-standard database to make sure that cell phone numbers are

properly identified as such; has improved its training and incentive programs for call center representatives to improve their awareness and treatment of consent issues; has improved its quality control procedures by forming trouble-shooting teams to address problems quickly; and has improved its software to improve its responsiveness to borrowers' requests that they not be called. Such remedial efforts are properly considered on a motion for a preliminary injunction. E.g., Chicago Observer, Inc. v. City of Chicago, 929 F.2d 325, 328 (7th Cir. 1991) (vacating preliminary injunction in part because of defendant's remedial measures).

### III. Plaintiffs' motion should be denied because they have not met their burden of demonstrating that the class can be certified.

#### A. Plaintiffs have not demonstrated that they satisfy the Rule 23(a) prerequisites.

Plaintiffs have the burden of showing that they meet all the elements of Rule 23, including the Rule 23(a) prerequisites, and the Court must conduct a "rigorous analysis" to determine whether their showing is sufficient. E.g., Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003). But Plaintiffs cannot meet the 23(a) prerequisites for class certification because their claims are not typical of the members of the class they seek to certify, and they are not adequate representatives of that class.

Preliminary injunctive relief is intended to safeguard against injury until trial on the merits, but the grant of such relief requires a showing of a significant likelihood of injury before trial can take place. E.g., Sierakowski, 223 F.3d at 443 (injunction requires the plaintiff to show "a significant likelihood and immediacy of sustaining some direct injury"). As we explained above, Plaintiffs can't make this showing of likely injury because they haven't been called on their cell phones by Ocwen in over two years, and their REALServicing accounts indicate that they don't consent to being called. But the claims of a plaintiff who is not at risk from a defendant's acts are not typical of claims of class members who are at risk. E.g., McDaniel v.

22

Bd. of Educ. of City of Chicago, 2013 WL 4047989, at *16 (N.D. Ill. Aug. 9, 2013) (no typicality when plaintiff was not at risk of injury injunction was intended to prevent).

Plaintiffs seek to avoid this problem by stating that "[a]though Ocwen has not placed calls to Plaintiffs since the commencement of this action, it has continued to make millions of calls to members of the injunctive class despite their repeated requests to stop."  (Pl. Mem. at 20-21.)  But Plaintiffs miss the point: even if it were true that Ocwen had made "millions of calls" to borrowers who have asked not to be called -- an allegation not supported anywhere by Plaintiffs -- in order to show typicality with other members of their proposed class Plaintiffs must establish that they themselves were at risk of the harm alleged to threaten their class.  They cannot, so the class cannot be certified.

In addition, Plaintiffs are not adequate representatives of the class they seek to certify. Arreola is directly on point.  Although the Seventh Circuit held that the lack of imminent harm to the named plaintiff did not undermine his standing, it held that "his interest in prospective relief is too tenuous . . . to permit an award of injunctive relief on his individual claims."  546 F.3d at 799.  The court thus held he was an inadequate representative of the class.  Id.  The same result should follow here:  Plaintiffs do not themselves have a claim for a preliminary injunction because they do not face a significant risk of harm, so they cannot represent a class of persons who are alleged to face such a risk.

Separately, when the actual class structure is reviewed, it appears that, lack of imminent injury to one side, Plaintiffs are not members of at least some of these subclasses.  They provided their cell phone numbers to Ocwen, and do not allege that Ocwen received their cell phone numbers through skip tracing or ANI capture.  It follows that they are not members of the proposed Skip Trace or ANI Capture Subclasses.  Those unrepresented subclasses cannot

therefore be certified.  E.g., Butler v. Am. Cable & Tel., LLC, 2011 WL 2708399, at *6 (N.D. Ill. July 12, 2011) ("[C]ertification of each sub-class would require an independent determination that any representative Plaintiff is a member of the sub-class . . . .").

### B.	Plaintiffs have not demonstrated that they satisfy the requirements of Rule 23(b)(2).

A Rule 23(b)(2) class requires the plaintiff to show that the defendant has acted "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  An overbroad class imposes injunctive relief with respect to persons who do not need the relief and may not want the relief, so such relief is not "appropriate respecting the class as whole."  E.g., Swan ex rel. I.O. v. Bd. of Educ. of City of Chicago, 2013 WL 4047734, at *9 & 13 (N.D. Ill. Aug. 9, 2013) (injunction not appropriate when "a significant number of putative class members may benefit" if injunction was denied) (emphasis in original).  The class here -- the sum of the subclasses -- is facially overbroad.  The Skip Trace and ANI Capture Subclasses will contain persons who have consented to being called on their cell phones.  Ms. Goodman testifies that when a number is found through skip tracing or ANI capture, Ocwen calls that number manually to ask for consent to call the borrower's cell phone.  (Goodman Decl. ¶¶ 35-44.)  If consent is given, there is no TCPA violation and the borrower does not need the relief sought (a ban on autodialing his or her number because it was found by skip tracing or ANI capture).  Because these subclasses are overbroad, Plaintiffs can't make a case that certification of these subclasses is "appropriate respecting the [sub]class as a whole."  E.g., Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 892-93 & n.8 (7th Cir. 2011) (23(b)(2) certification inappropriate when, inter alia, compliance would be "administratively challenging," and many class members would not benefit); McDaniel, 2013 WL 4047989, at *17-18 (certification inappropriate when

24

determining if relief would benefit or harm class members requires individualized determinations). Certification should therefore be denied.

The same is true to the extent that Plaintiffs might ask the Court to enjoin Ocwen's use of an autodialer entirely: such an injunction would be hugely overboard because it would ban vast numbers of calls that do not violate the TCPA and which very many borrowers can reasonably be assumed to want to receive. Such relief could not conceivably be deemed "appropriate." Certainly, Plaintiffs suggest no reasons for deeming it so.

**C.** **Plaintiffs' subclass of persons who have revoked consent to being called on their cell phones is a "fail-safe" class that cannot be certified.**

Plaintiffs' subclass of persons who have revoked consent is defined to include those who would suffer a TCPA violation if autodialed, and to exclude those that would not. It is, therefore, a "fail-safe" class, which the Seventh Circuit has held improperly shields members from an adverse judgment -- each "either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment." N.B. v. Hamos, 26 F. Supp. 3d 756, 767 (N.D. Ill. 2014) (holding "fail-safe" class seeking preliminary injunction improper) (quoting Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012)); see also Mauer v. Am. Intercontinental Univ., Inc., 2016 WL 4698665, at *1 (N.D. Ill. Sept. 8, 2016) (TCPA class of persons who did not consent was an fail-safe class); Sauter v. CVS Pharmacy, Inc., 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014) (same for subclass of persons who revoked consent). Moreover, as the facts about Plaintiffs and their two declarants demonstrate, consent and its revocation are individual issues requiring examination of the circumstances of each class member that bar certification of the Revocation Subclass. N.B., 26 F. Supp. 3d at 767.

## Conclusion

For the reasons stated herein, Plaintiffs' motion should be denied.

Respectfully submitted,

/s/Simon Fleischmann
Simon Fleischmann (6274929)
sfleischmann@lockelord.com
Thomas J. Cunningham (6215928)
tcunningham@lockelord.com
Chethan Shetty (6300848)
cshetty@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Phone: 312-443-0700

Brian V. Otero, Admitted Pro Hac Vice
botero@hunton.com
Stephen R. Blacklocks, Admitted Pro Hac Vice
sblacklocks@hunton.com
Ryan A. Becker, Admitted Pro Hac Vice
rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000

Attorneys for Defendant
Ocwen Loan Servicing, LLC

**CERTIFICATE OF SERVICE**

I, Simon Fleischmann, an attorney, certify that I caused the foregoing to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on December 21, 2016.


/s/ Simon Fleischmann
Simon Fleischmann