IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated, | CONSOLIDATED NO. 1:14-cv-08461 |
| | Class Action |
| Plaintiffs, | |
| v. | Jury Trial Demand |
| | Honorable Matthew F. Kennelly |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |
| TRACEE A. BEECROFT, | |
| | Case No.: 1:16−cv−08677 |
| Plaintiff, | |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND LIMITED CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................................1

II.     FACTS .......................................................................................................................2

III.    ARGUMENT .............................................................................................................4

      A.     Plaintiffs Have Standing to Bring Their Motion....................................................4

      B.     Plaintiffs Meet All of the Requirements for Obtaining Injunctive Relief ..............5

            1.     The Statutory Injunction Standard Applies Because the TCPA
                  By Necessary Inference Restricts the Court's Jurisdiction in Equity .........5

            2.     Plaintiffs Meet the Requirements of the Statutory Injunction Standard .....8

            3.     Plaintiffs Also Meet the Requirements of the Traditional Injunction
                  Standard .....................................................................................................9

                 a.     Plaintiffs Are Likely to Prevail on the Merits...............................10

                 b.     Absent an Injunction, Plaintiffs and the Class Will Be
                    Irreparably Harmed........................................................................11

                 c.     Money Damages Are Not an Adequate Remedy...........................12

                 d.     The Balance of Harms Favors the Proposed Injunction ...............13

                 e.     Issuance of a Preliminary Injunction is in the Public Interest .......13

      C.     Plaintiffs Met Their Burden to Show the Class Should be Certified....................15

            1.     Plaintiffs Meet Rule 23(a)'s Adequacy and Typicality Requirements ......15

            2.     Plaintiffs Meet the Requirements of Rule 23(b)(2) ..................................15

IV.    CONCLUSION.......................................................................................................17

# TABLE OF AUTHORITIES

**Page**

*A.D. v. Credit One Bank, N.A.*,
    No. 14 C 10106, 2016 WL 4417077 (N.D. Ill. Aug. 19, 2016)............................................4

*Aranda v. Caribbean Cruise Line, Inc.*,
    ___ F. Supp. 3 ____, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016)..................................4

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ......................................................................................4, 15

*Bedrossian v. Northwestern Memorial Hosp.*,
    409 F.3d 840 (7th Cir. 2005) ........................................................................................6, 7

*Burlington N. R. Co. v. United Transp. Union*,
    862 F.2d 1266 (7th Cir. 1988) ........................................................................................14

*Cadence Design Sys., Inc. v. Avant! Corp.*,
    125 F.3d 824 (9th Cir. 1997) ..........................................................................................13

*Centerline Equipment Corp. v. Banner Personnel Serv., Inc.*,
    545 F. Supp. 2d 768 (N.D. Ill. 2008) .............................................................................12

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)............................................................................................................5

*Commodity Futures Trading Comm'n v. Hunt*,
    591 F.2d 1211 (7th Cir. 1979) ..........................................................................................8

*Commodity Futures Trading Commission v. Oystacher et ano.*,
    No. 12-cv-9196, 2016 WL 3693429 (N.D. Ill June 12, 2016)..........................................8

*D.U. v. Rhoades*,
    825 F.3d 331 (7th Cir. 2016) ..........................................................................................10

*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)......................................................................................................7, 8

*EPA v. Environmental Waste Control*,
    917 F.2d 327 (7th Cir. 1990) ..........................................................................................13

*Friends of the Earth Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000)..........................................................................................................5

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*,
    549 F.3d 1079 (7th Cir. 2008) ...................................................................9

*Johnson v. City of Chicago*,
    No. 12-CV-8594, 2013 WL 3811545 (N.D. Ill. July 22, 2013).........................5

*Lineback v. Spurlino Materials, LLC*,
    546 F.3d 491 (7th Cir. 2008)....................................................................14

*Lozano v. Twentieth Century Fox Film Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010) ........................................................11

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) .................................................................11

*Michigan v. United States Army Corps of Engineers*,
    667 F.3d 765 (7th Cir. 2011) ...................................................................10

*Minnesota ex rel. Hatch v. Sunbelt Commc'ns. & Mktg.*,
    282 F. Supp. 2d 976 (D. Minn. 2002)........................................................13

*Roland Machine Co. v. Dresser Indus., Inc.*,
    749 F.2d 380 (7th Cir. 1984) ...................................................................11

*Satterfield v Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...................................................................11

*Soppet v. Enhanced Recovery Co., LLC*,
    679 F.3d 637 (7th Cir. 2012) .....................................................................6

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016)...............................................................................4

*Tennessee Valley Authority v. Hill*,
    437 U.S. 153 (1978)..................................................................................7

*Turnell v. Centimark Corp.*,
    796 F.3d 656 (7th Cir. 2015) .............................................................10, 13

*United States v. Bethlehem Steel Corp.*,
    38 F.3d 862 (7th Cir. 1994) ...................................................................9, 13

*United Steelworkers of America v United States*,
    361 U.S. 39 (1959).....................................................................................7

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*,
    401 F.3d 876 (8th Cir. 2005) ............................................................. 12

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305, 102 S.Ct. 1798 (1982) ..................................... 6, 7, 8

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7, 129 S. Ct. 365 (2008) ........................................... 7, 8, 9

## FEDERAL RULES

Fed. R. Civ. P. 23 ................................................................ 15, 16

## STATUTES

29 U.S.C. § 178 ............................................................................ 7

47 U.S.C. § 227 .................................................................. *passim*

## OTHER AUTHORITIES

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    30 FCC Rcd. 7961 (2015) ............................................................. 13

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    23 FCC Rcd. 559 (2008) ............................................................... 13

137 Cong. Rec. 30 (1991) (Statement of Sen. Hollings) ................. 6

S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968 ...................... 1, 11

S. Rep. No. 102-178, 102d Cong., 2d Sess. (1991) ....................... 11

# I. INTRODUCTION

The TCPA was enacted to provide consumers a mechanism to "prevent [illegal and unwanted] calls." S. REP. 102-178, 1, 1991 U.S.C.C.A.N. 1968, 1969.  Plaintiffs seek an injunction here to effectuate Congress' intent by empowering consumers to wrench compliance from recalcitrant defendants like Ocwen.  As a matter of policy and practice, Ocwen continues to make nonconsensual calls to cellular telephones using its Aspect dialer *to this day* despite Plaintiffs' lawsuit and this motion.

Given that the TCPA provides for statutory monetary damages for each violation, motions for injunctive relief under the TCPA are relatively rare.  Ocwen's intentional, flagrant, and ongoing violations of the TCPA make this an ideal case for injunctive relief.  And Ocwen's admission to this Court that it "has never had the ability to pay even a small fraction" of its exposure to statutory damages provides further justification for this Court to do the extraordinary and enjoin Ocwen.  Dkt. No. 117 at 4.  Because Ocwen engages in a common course of conduct toward Plaintiffs and the Class by using uniform and admitted *noncompliant* policies and procedures and the same dialer, a classwide injunction is appropriate.

Not wishing to lose the efficiencies gained by using its dialer, Ocwen launches a number of attacks on the named Plaintiffs and declarants.  These attacks have no substance.  For example, although Ocwen argues it did not make any nonconsensual Aspect dialer calls to Ms. Mansanarez, it produced records in discovery a month ago that show it called her cell phone nearly 200 times *after* October 27, 2014 (when this lawsuit began), despite her repeated requests that Ocwen stop.  Frustrated, Ms. Mansanarez joined this lawsuit in April 2015.

As explained below, Plaintiffs easily meet both the statutory and injunctive relief standards and are more than adequate representatives of the narrowly-defined Injunctive Class.  Nonetheless, Ocwen argues it should get a pass because nearly *two years* after this lawsuit began, Ocwen claims to have implemented "safeguards."  Ocwen's safeguards offer too little (they do not address skip-related or ANI-captured Aspect calls made without consent), and come too late (changes to the revocation and scrubbing procedures arose only within the last few

months).  The only way to protect the public from Ocwen's continuous bad behavior is to certify an injunctive relief class, and enjoin Ocwen's non-consensual Aspect calls to cell phones once and for all.  If Ocwen is sincere in its intent to comply with the TCPA, then Plaintiffs suggest that Ocwen stipulate to those portions of the injunctive relief it claims to have "mooted" through its recent policy changes.  Without an Order from this Court Ocwen could immediately revert to its illegal—and apparently lucrative—illegal calling practices.

## II.  FACTS

Ocwen used the Aspect dialer to make hundreds of calls to Plaintiff Mansanarez's cell phone between 2014 and 2015.  Dkt. No. 97-3, Exh. 2 (Deposition of Susan Mansanarez ("Mansanarez Dep.")) at 71:23–72:5; 72:6–73:6.  While Ocwen initially had permission to call Ms. Mansanarez on her cell phone, it continued to make the calls after Ms. Mansanarez repeatedly asked that the calls stop.  *Id.* at 71:23–73:6; 46:5–47:6; 47:14–49:24; 75:14–77:14.  Ocwen produced records that show Ocwen called Ms. Mansanarez's cell phone nearly 200 times *after* this lawsuit was filed on October 27, 2014.  *See* Exh. 2; *see also* Dkt. No. 29 at ¶ 43.  Frustrated, Ms. Mansanarez joined the lawsuit in April 2015.  Only then did the calls stop.  Plaintiff Mansanarez is not alone.  Not including the calls to Mr. Cody and Mr. Bartolone, between March 30, 2011 and November 30, 2014, Ocwen made 288,829,707 calls to 1,169,257 unique cell phone numbers using its Aspect Unified IP dialer ("Aspect dialer").  *See* Expert Report of Jeffrey A. Hansen ("Hansen Report"), Exh. 1 at ¶ 55.

An automatic telephone dialing system is equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.  Hansen Report at ¶ 17.  The Aspect dialer Ocwen uses has these characteristics.  *Id.* at ¶¶ 24-27.  Because the dialer has the capacity to generate and store numbers in a list and dial them without human intervention, it is an ATDS.  *Id.*  In addition to an automated mode, the Aspect dialer includes manual and preview modes, which present the calling agent with information about the to-be-called party before the number is actually dialed.  *Id.* at ¶¶ 30-31.  The agent then has the ability to accept that lead based on the information

presented, or reject it and await the dialer to present a new lead to be called.  *Id.*  As Ocwen concedes, calls that are made in manual or preview modes do not alter the Aspect dialer's status as an ATDS.  *See* Response at 5, fn. 4.

After Ocwen filed its response claiming to have incorporated new safeguards against TCPA violations, Plaintiffs deposed the head of Ocwen's Customer Care Center, Sherri Goodman.  Ms. Goodman's testimony proves how little Ocwen has done to introduce processes and procedures to prevent continued TCPA violations.  *See* Hansen Report, Exh. AD (hereinafter "Goodman Dep.").  First and foremost, despite conceding that the FCC treats all calls made to cell phones with the Aspect dialer as "autodialed" whether made in blaster, manual, or preview modes, Ocwen continues to use Aspect to make outbound skip trace-related calls, including calls made via ANI capture, before consumers have any opportunity to provide consent.  *Id.* at 28:5-29:22.

Ocwen's use of the Aspect dialer to make these calls is particularly inexcusable because Ocwen utilizes an alternate phone system, the Cisco system, which Ocwen asserts complies with the TCPA.  Goodman Dep. at 20:13-21:9; 26:4-22.  Although Ocwen is capable of implementing this alternate system in conjunction with calls made to cell phone numbers obtained via skip trace or ANI capture, it chooses not to do so.  Indeed, Ocwen admits that it used its Aspect Unified IP dialer to make fourteen calls to Mr. Cody's cell phone after he revoked his consent to be called.  *See* Response at 5, fn. 4.

Moreover, to the degree Ocwen has made changes that comply with the TCPA, those changes came far too late.  For example, Ocwen concedes that it has historically refused to honor verbal revocation requests, and only began to do so in September 2016.  Goodman Dep. at 56:16-57:19.  Plaintiffs' counsel notified Ocwen informally that they might move for an injunction shortly after the May 2016 mediation with Judge Holderman, and formally notified defense counsel of their intention to file their motion during a conference call scheduled for this purpose on September 23, 2016.  Further, while Ocwen boasts of having used AreaCode.com to scrub for cell phones in 2014, Plaintiffs' expert explains that database is ineffective.  Goodman

Dep. at 21:25-24:7; Hansen Report at ¶¶ 34-35. Ocwen appears to know this because it finally started using the industry-approved database, Neustar, in July 2016. Goodman Dep. at 22:7-21; *see also* Dkt. No. 128-3 (Declaration of Sherri Goodman ("Goodman Decl.")).

Because Ocwen admits that it continues to call the cell phones of individuals for whom Ocwen has not obtained consent, Plaintiffs are entitled to an injunction.

## III. ARGUMENT

### A. Plaintiffs Have Standing to Bring their Motion

In arguing that Plaintiffs do not have Article III standing, Ocwen confuses the requirements for Article III standing with Plaintiffs' entitlement to a preliminary injunction. "Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to *filing suit*, while the underlying merits of a claim…determine whether the plaintiff is *entitled to relief*." *Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008) (emphasis in original). To establish Article III standing, Plaintiffs need only show they have suffered a particularized, concrete injury. *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1549-50 (2016). Plaintiffs who allege violations of the TCPA have standing to assert their claims because the TCPA "establishes substantive, not procedural rights to be free from [] calls consumers have not consented to receive." *Aranda v. Caribbean Cruise Line, Inc.*,___ F. Supp. 3 ____, 2016 WL 4439935, *6 (N.D. Ill. Aug. 23, 2016) (Kennelly, J.) (denying motion for summary judgment for lack of standing); *see also A.D. v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 4417077, at *5-*6 (N.D. Ill. Aug 19, 2016) (Kennelly, J.) (denying motion to dismiss for lack of standing). Here, where Plaintiffs plainly allege they received calls from Ocwen for which they provided no consent, they have established Article III standing.

Nonetheless, Ocwen argues that Plaintiffs are not entitled to an injunction, incorrectly stating that Ocwen has not made unlawful calls to any Plaintiff in two years. While Ocwen ceased calling Plaintiff Snyder after he initiated this lawsuit, it did not extend the same courtesy to other class members, including Susan Mansanarez. Between Mr. Snyder's filing of this lawsuit in October 2014 and Ms. Mansanarez's entry in April 2015, Ocwen records show it

robocalled Ms. Mansanarez nearly 200 times. *See* Exh. 2. Almost half of these calls came after she clearly and unequivocally directed Ocwen to cease calling. *See* Dkt. No. 29 at ¶ 43. Ms. Mansanarez had to join the lawsuit in order for the calls to stop.

Even if Ocwen had ceased making unlawful calls to Plaintiffs' cell phones in October 2014 after this action commenced, Plaintiffs would have standing because the answer to "the primary inquiry [] whether the threat of harm is premised upon more than hypothetical speculation and conjecture that harm will occur in the future" is yes. *Johnson v. City of Chicago*, No. 12-CV-8594, 2013 WL 3811545, at *5–6 (N.D. Ill. July 22, 2013) (internal citations omitted).[1] Ocwen concedes that it calls the cell phones of borrowers found by skip tracing or ANI capture with its Aspect dialer, and that it does not "systematically determine whether cell phone numbers it has for borrowers were found by skip tracing or ANI capture." *See* Response at 7-9. Moreover, while Ocwen has incorporated certain "safeguards" against calling people without consent, including the use of a Cisco phone system to call cell phones for which Ocwen knows it does not have consent, Ocwen has failed to utilize the Cisco system to call numbers obtained by skip tracing or ANI capture. In other words, despite believing it has the capability to bring its practices into compliance with the statute, Ocwen has been unwilling to do so. Because the threat of injury is not conjectural or hypothetical, but real and imminent, Plaintiffs have established standing.

**B.    Plaintiffs Meet All of the Requirements for Obtaining Injunctive Relief**

Whether under a statutory or "traditional" standard, Plaintiffs made every showing required.

1.    The Statutory Injunction Standard Applies Because the TCPA By Necessary Inference Restricts the Court's Jurisdiction in Equity

When a statute "in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity," the party seeking injunctive relief is not required to show

---

[1] *Johnson* applied the same test for standing to seek a preliminary injunction articulated in *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) and *Friends of the Earth Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000), which Ocwen relies upon.

irreparable harm. *See Bedrossian v. Northwestern Memorial Hosp.*, 409 F.3d 840, 842-32 (7th Cir. 2005) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)). In deciding whether irreparable harm is required, Courts must look to both the purpose and language of the statute under consideration. *Romero-Barcelo*, 456 U.S. at 314. Here, the TCPA's language, purpose, and legislative history necessarily imply that the statutory injunction standard should apply.

The TCPA prohibits calls using an automatic telephone dialing system, artificial voice, or prerecorded voice to any cell phone number unless the recipient has given express consent or the call is for emergency purposes. 47 U.S.C. § 227(b). When Congress established the TCPA in 1991, it did so to protect consumers from the "nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." Rules & Regulations Implementing the Telephone Consumer Protection Act, 30 F.C.C.R. 7961, 7979 (2015). Robocalls are, as the Act's sponsor put it, "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821–30,822 (1991) (Statement of Sen. Hollings). And, "like the buckets enchanted by the Sorcerer's Apprentice, [they] continue until stopped by their true master." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012).

In enacting the TCPA, Congress created a private right of action to seek injunctive relief as a stand-alone remedy for TCPA violations, and afforded the federal courts with original jurisdiction to enforce such actions. 47 U.S.C. § 227(b)(3)(A) and (C). The right to seek injunctive relief is separate from and in addition to an action for monetary damages. 47 U.S.C. § 227(b)(3)(A)-(C) (providing a private right to seek only an injunction, only damages, or both an injunction and damages). The statute does not qualify the availability of injunctive relief. Rather, in simple, direct, and unambiguous terms it provides that the remedy for a statutory violation under 47 U.S.C. § 227(b)(3)(A) *is* an injunction. This is an unequivocal declaration by Congress that regardless of the equities, a violation of this statute merits injunctive relief. If

- 6 -

courts could decline to issue injunctions after a statutory violation was shown under this provision, it would be rendered meaningless.

The TCPA is analogous to those statutes to which the Supreme Court has applied the statutory injunction test. For example, in *Tennessee Valley Authority v. Hill*, the Supreme Court found the Endangered Species Act required courts to issue injunctions for violations. 437 U.S. 153, 184-87 (1978). The Court reasoned that "the plain intent of Congress [was] to halt and reverse the trend toward species extinction, whatever the cost," and found courts have no authority to make "fine utilitarian calculations" where "the plain language of the Act, buttressed by its legislative history, shows clearly that Congress viewed the value of endangered species as "incalculable," thus striking the balance in favor of prioritizing endangered species. *Id*. Likewise, in *United Steelworkers of America v United States*, 361 U.S 39, 56 (1959), the Supreme Court held that the Labor Management Relations Act, 29 U.S.C. § 178, which gives courts "jurisdiction ... to enjoin [any] such strike" that imperils national security, does not allow courts to exercise equitable discretion over whether to award injunctive relief.[2] Here, the plain language of the TCPA and its legislative history show Congress struck the balance in favor of consumers' right to privacy, evincing Congress' plain intent to protect consumers from worthless calls which Congress considered a nuisance, an invasion of privacy, and the scourge of modern civilization, and its charge to courts to issue injunctions for such violations.

Contrary to Ocwen's assertion, the United States Supreme Court has never determined the precise language needed to establish when the statutory injunction standard should apply

---

[2] *Romero-Barcelo*, *Winter*, *eBay*, *Bedrossian,* where the Supreme Court and Seventh Circuit applied the "traditional" test to statutory violations based on statutory language that either expressly preserved the Court's equitable discretion or expressly incorporated the irreparable harm standard—neither of which are present in the TCPA—are distinguishable. *See Romero-Barcelo*, 456 U.S. at 320 (holding statute preserves judicial discretion because it allowed courts to award "appropriate relief, including a preliminary injunction"); *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 33 (2008) (overturning preliminary injunction issued under APA, which expressly incorporates the irreparable harm standard); *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (applying traditional injunction standard because the Patent Act merely provides injunctions "may" issue, and then only "in accordance with the principles of equity"); *Bedrossian*, 409 F.3d at 843 (2005) (applying traditional injunction standard where the Uniformed Service Employment and Reemployment Rights Act expressly preserves courts' "full equity powers").

over the traditional equitable test. It did not do so in *Winter* or *eBay*,[3] and in *Romero-Barcelo* it devised a test that asks whether the statute "in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity," but without guidance regarding specific language. Moreover, Ocwen's contention that this Court should disregard *Commodity Futures Trading Commission v. Oystacher et ano.*, No. 12-CV-9196, 2016 WL 3693429 (N.D. Ill June 12, 2016) and *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211 (7th Cir. 1979) is misplaced. Far from ignoring Supreme Court precedent, these courts appropriately applied the statutory injunctive standard where, as here, Congress explicitly authorized injunctive relief. *Oystacher*, 2016 WL 3693429 at \*6; *Hunt*, 591 F.2d at 1219-20.[4] Accordingly, this Court can and should issue an injunction without a showing of irreparable harm.

      2.    <u>Plaintiffs Meet the Requirements of the Statutory Injunction Standard</u>

Ocwen does not dispute that Plaintiffs have established the first element of the statutory injunction standard: that Ocwen committed a TCPA violation. Nor could it. Ocwen's own testimony proves that it failed to scrub for cell phones using an industry-approved method until July 2016, routinely refused to honor revocation requests until September 2016, and continues to use its Aspect dialer to call cell numbers obtained via skip-tracing and ANI capture, even though Ocwen has not obtained the recipients' consent to do so. *See* Goodman Decl. at ¶ 27; *see also* Goodman Dep. at 56:16-57:19; 28:5-29:22. Plaintiffs have therefore established the first element.

---

[3] In *Winter*, the parties did not dispute which standard for injunctions applied; consequently, the Court applied the "traditional" test without explaining why. 555 U.S. at 20. In *eBay*, the Court acknowledged the statutory injunction test, but determined it was inapplicable, because "[n]othing in the Act indicates such a departure [from the long tradition of equity practice]," and the act expressly provided injunctions "may" issue "in accordance with the principles of equity." 547 U.S. at 392.

[4] Also, Defendant misstates the law when it argues the statutory injunction standard applies only to government plaintiffs. The rule in the Seventh Circuit is that *if* the traditional equitable test applies, *then* courts will not necessarily require a government plaintiff to meet all four factors. *See, e.g., United States v. Bethlehem Steel Corp.*, 38 F.3d 862, 867–68 (7th Cir. 1994) (despite presence of government plaintiff, court acknowledged it would normally conduct an equitable balancing of harms under RCRA, because "the statute does not evidence a congressional intent to deny courts their traditional equitable discretion[.]" The court declined to weigh the equities not because of the plaintiff's identity, but because the defendant's conduct was willful).

Regarding the second element—the reasonable likelihood of future violations—Ocwen argues unpersuasively that future violations are not likely based on Sherri Goodman's testimony describing the steps Ocwen has taken to reduce the possibility of future TCPA violations.  To the degree those steps ameliorated discrete elements of Ocwen's bad behavior, they came directly in response to this lawsuit, and they came too late.  For Plaintiff Mansanarez and similarly situated class members, it's cold comfort to know that Ocwen finally decided to honor revocation requests *nearly two years after joining this lawsuit.*  Likewise, Ocwen's recent decision to subscribe to an industry-recognized database to determine whether the numbers it calls are cell phones rather than landlines means nothing to those class members who Ocwen illegally called.

Most concerning, however, are the steps Ocwen has not taken, and has no intention of taking.  Ocwen openly acknowledges that it does not "systematically determine whether cell phone numbers it has for borrowers were found by skip tracing or ANI capture."  Response at 7.  Ocwen also willfully continues using the Aspect dialer to contact cell phone numbers it has obtained via skip-trace efforts or ANI capture despite knowing that doing so violates the TCPA (Goodman Dep. at 28:5-29:22), and openly acknowledges that it engages in this practice because it is financially beneficial.  *See* Response at 6-9, 19-20.  When a defendant maintains their conduct is blameless and "persists in its illegal activities right up to the day of the hearing in the district court…the likelihood of future violations, if not restrained, is clear."  *Hunt*, 591 F.2d at 1220 (internal quotation omitted).  Similarly, when a violation is founded on systematic wrongdoing rather than an isolated occurrence, courts are more willing to enjoin future misconduct.  *Id.*  Because Ocwen intends to continue using the Aspect dialer to reach borrowers found through skip-tracing and ANI capture, the second element for a statutory injunction is met.

3.    Plaintiffs Also Meet the Requirements of the Traditional Injunction Standard

Under the traditional injunction standard, which Plaintiffs satisfy, the Court proceeds in two stages.  *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008).  First, "the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, they will suffer irreparable harm

in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) they have a reasonable likelihood of success on the merits." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661–62 (7th Cir. 2015).

Second, upon finding the required threshold showing was made, the Court proceeds to the "balancing phase" and considers: "(4) the irreparable harm Plaintiffs will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to Defendant if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the "public interest")." *Turnell*, 796 F.3d at 662. Under the balancing test, the Court must weigh the "potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id.*

If the Court declines to find Plaintiffs have established the elements of the statutory injunction standard, it can and should find that Plaintiffs have established all of the elements of the traditional injunction standard.

a. *Plaintiffs Are Likely to Prevail on the Merits*

To prevail on a TCPA claim, Plaintiffs must show that Ocwen (1) called Plaintiffs' respective cellular telephone numbers (2) using an "ATDS"; (3) without Plaintiffs' express prior consent. *See* 47 U.S.C. § 227(b)(i)(A)(iii). "The threshold for demonstrating a likelihood of success on the merits is low." *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016) (citing *Michigan v. United States Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011)). In the Seventh Circuit, "the plaintiff's chances of prevailing need only be better than negligible." *Id.* Plaintiffs presented substantial evidence in their opening brief to prove each of the three elements of the traditional test, including that Ocwen made 1,450,413 Aspect calls to cell phones between January 2011 and December 2015, and Plaintiffs' estimate that Ocwen makes 83,000 Aspect calls per day, facts that Ocwen does not contest. *See* Motion at 2-7, 9-13. Moreover, Ocwen concedes that its Aspect dialer is an "autodialer," and brags about how the dialer permits each agent to make 150-175 calls per hour. *See* Goodman Decl. at ¶¶ 13-14. And Ms. Goodman

testified in her deposition, that even today, Ocwen uses Aspect to call cell phone numbers obtained through skip-trace company CBC Innovis to confirm the identity of the owners. *See* Goodman Dep. at 28:5-29:22. Given this evidence, it is highly likely this Court will find that Ocwen used an autodialer.[5]

        b.     *Absent an Injunction, Plaintiffs and the Class Will Be Irreparably Harmed*

Ocwen's calls in violation of the TCPA constitute invasions of privacy and support a finding of irreparable injury. The Seventh Circuit defines "irreparable harm" as "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). With the TCPA, "Congress sought to 'protect the privacy interests of telephone subscribers.'" *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008 (N.D. Ill. 2010) (quoting *Satterfield v Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). The legislative history shows that the TCPA was designed not only to compensate those whose rights were violated, but also to prevent more calls. In enacting the TCPA, including its injunctive relief provisions, Congress expressly found that other methods "that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11; *see also* S. Rep. No. 102-178, 102d Cong., 2d Sess. (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1969-1970 (finding as a justification for the law that "Consumers are especially frustrated because there appears to be no way to prevent these calls").

Ocwen's ongoing TCPA violations pose irreparable harm to Plaintiffs and proposed class members because the violations keep coming despite this lawsuit. The Ninth Circuit considered this precise situation in the context of a TCPA debt collection case in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1044 (9th Cir. 2012). After suggesting in dicta that a plaintiff probably need not show "irreparable harm" in order to obtain a statutory injunction under the TCPA, the Ninth Circuit declined to decide that issue. Instead, the Court found that

---

[5] Plaintiffs' expert, Jeffrey Hansen, confirms Ocwen's Aspect dialer is an ATDS. *See* Hansen Report at ¶¶ 24-27.

the plaintiff and "other class members will suffer irreparable harm from [the debt collector's] continuing violations of the TCPA, which violate the class members' right to privacy, and because the district court found in its written order that [the debt collector] would continue to violate the TCPA if an injunction was not issued." *Id.* at 1044. Here, ongoing violations are not a mere possibility, they have already occurred and will continue to occur. Plaintiffs have *proven* that Ocwen violated the TCPA after it was sued, and Ocwen's current policies show that it will continue to violate the TCPA by using its Aspect dialer to call nonconsensual cell phone numbers absent an injunction.

c.     *Money Damages Are Not an Adequate Remedy*

The TCPA authorizes actual damages or statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). The TCPA anticipates scenarios where both monetary and injunctive relief is necessary. *See* 47 U.S.C. §227(b)(3)(C). These statutory damages are an acknowledgment that proving actual monetary loss from the invasion of privacy caused by a TCPA violation is difficult. *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (noting TCPA statutory damages represent "a liquidated sum for uncertain and hard-to-quantify actual damages" and provide "an incentive for private parties to enforce the Act.").

Ocwen has made clear to this Court that "Ocwen has never had the ability to pay even a small fraction" of its exposure in this case. Dkt. No. 117 at 4. If Ocwen cannot pay, the next best remedy is to prohibit it from making nonconsensual Aspect dialer calls to cell phones.

Finally, money damages are inadequate because Ocwen views the risk of statutory damages as merely the price of a license to violate the TCPA. The damages provision was intended to both "deter[] unwanted solicitation while […] encouraging plaintiffs to bring suit." *Centerline Equipment Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 777–78 (N.D. Ill. 2008). Because Ocwen's continuing violations show it is not deterred by the risk of statutory damages, injunctive relief is necessary.

- 12 -

d.    *The Balance of Harms Favors the Proposed Injunction*

The injunction is drafted as narrowly as possible.  It requires Ocwen to refrain from doing only what the TCPA prohibits: calling cellular telephones with an ATDS without prior express consent.  Ocwen's refusal to bring its system into compliance with the statute, despite its capability to do so, shows an injunction is necessary to protect Plaintiffs and the Class members. Contrary to Ocwen's assertion, profits derived from TCPA violations do not justify denying an injunction.  "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to [violate the law], such an argument in defense merits little equitable consideration on an appeal from a preliminary injunction." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (citation omitted); *see also Minnesota ex rel. Hatch v. Sunbelt Commc'ns. & Mktg*., 282 F. Supp. 2d 976, 980 (D. Minn. 2002) (finding "no justification for why [Defendants] are entitled to profit in the interim, unencumbered by competition that is now undoubtedly suppressed due to the existence of a clear federal statute prohibiting their business practices.").  Further, "courts will not balance the equities […] where the defendant's conduct has been willful."  *See Bethlehem Steel Corp.*, 38 F.3d at 867-68 (quoting *EPA v. Environmental Waste Control*, 917 F.2d 327, 332 (7th Cir. 1990), *cert. denied*, 499 U.S. 975 (1991)).  Here, Ocwen willfully violates the law for financial benefit.  *See* Response at 6-7 and 19-20.  Thus, the court need not balance the equities, but if it does, the equities favor an injunction.

e.    *Issuance of a Preliminary Injunction is in the Public Interest*

The public interest factor concerns "the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties." *Turnell*, 796 F.3d at 662.  No third parties will be harmed by this proposed injunction, which protects a wide range of consumers from Ocwen's continuing TCPA violations that "threaten public safety and inappropriately shift costs to consumers."  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 566 (2008).  Defendant's argument that this injunction is overbroad and will harm consumers who consented to calls is unpersuasive.  An injunction is not overbroad

if it "prohibits only those actions similar to the violations already committed." *Lineback v. Spurlino Materials, LLC,* 546 F.3d 491, 506 (7th Cir. 2008). Ocwen admits that it does not identify numbers obtained via ANI and skip-tracing, and concedes that it continues to call borrowers found through those methods with its Aspect dialer before obtaining consent. Because Plaintiffs seek to prevent the very violations alleged in their complaint—autodialed calls to cell phones made without consent—the injunction is not overbroad.

Ocwen spends much time in its Response arguing about how its customers would suffer if it were prohibited from making nonconsensual autodialed calls. Ocwen implies it should be given a pass because its calls are so important. However, the FCC recently rejected these arguments when it denied the Mortgage Bankers' Association's petition to permit nonconsensual autodialed calls.[6] Plaintiffs respectfully submit that Ocwen's legally-compliant mortgage servicing competitors would line up to take over servicing for Ocwen if it cannot make ends meet when forced to comply with the TCPA.

Further, courts evaluate whether an injunction is overbroad to ascertain "whether the proposed injunction will disserve the public interest." *Burlington N. R. Co. v. United Transp. Union*, 862 F.2d 1266, 1280 n. 11 (7th Cir. 1988). Ocwen argues that the injunction will harm the efficiency of its communication with borrowers who have provided consent. Ocwen's argument is disingenuous at best. Ocwen's asserts that its Cisco phone system is capable of calling the very same cell phones without violating the TCPA, but Ocwen chooses instead to utilize its Aspect dialer. *See* Goodman Dep. at 20:13-21:9, 26:4-22. Requiring Ocwen to comply with the TCPA in all instances is hardly a public disservice, and Ocwen's arguments to the contrary are merely new ways of saying that Ocwen should be allowed to violate the TCPA because it is financially beneficial to Ocwen and its investors. Obviously, the public interest in

---

[6] Available at https://www.fcc.gov/document/mortgage-bankers-association-petition-exemption. "MBA argues that mortgage servicing calls are required under both federal and state laws and, given the volume of mortgage borrowers and the loan term of a typical mortgage, an exemption is necessary for mortgage servicers to effectively communicate with their customers. While these calls may indeed be beneficial and desired by some consumers, mortgage servicers are free to autodial consumers without an exemption by simply relying on the prior express consent a consumer provides when including their wireless phone number on a mortgage application." Id. at ¶15.

protecting consumers from Ocwen's TCPA violations far outweighs any concern for Ocwen's bottom line.

**C.      Plaintiffs Met Their Burden to Show that the Class Should be Certified**

1.      Plaintiffs Meet Rule 23(a)'s Adequacy and Typicality Requirements

Ocwen does not challenge numerosity or commonality, but instead argues that Plaintiffs fail to establish typicality and adequacy.  Ocwen is wrong on both counts.  "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory.  Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Arreola*, 546 F.3d at 798 (citation omitted).  In *Arreola,* the Seventh Circuit rejected the defendant's argument that Arreola's claims were not typical of the rest of the class where his claims arose "from the same event or practice or course of conduct."  *Id.*  Similarly, here, Plaintiffs' claims and those of the class all arise from Ocwen's uniform practice of using its Aspect dialer to call cell phones without first obtaining consent.

Ocwen's argument regarding adequacy suffers a similar fate.  Ocwen incorrectly argues that *Arreola* stands for the proposition that Plaintiffs are inadequate representatives because Ocwen does not currently make illegal calls to their cell phones.  In *Arreola,* which involved an injunctive relief class made up of inmates, the Seventh Circuit held that Arreola was inadequate because he was no longer in jail when he filed his lawsuit.  546 F.3d at 798.  In contrast, here, each Plaintiff received nonconsensual Aspect calls, and Ms. Mansanarez received hundreds of such calls after this lawsuit was filed.  Plaintiffs are just like everyone else this motion is designed to protect:  they have cell phones, they did not consent to receive calls from Ocwen, and given Ocwen's continuing conduct, they are at risk of receiving such calls again.

2.      Plaintiffs Meet the Requirements of Rule 23(b)(2)

Rule 23(b)(2) certification is proper if a defendant's conduct presents a situation where a single order would apply generally to the class, as to the wrong identified in the complaint.  A

defendant's conduct is directed towards the class, within the meaning of Rule 23(b)(2), "even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) advisory committee's note (1966). Here, the requested injunction is tied to the statute-violating conduct, and is designed to prevent such.

Ocwen argues that the Injunctive Class should be divided into four subclasses—Skip Trace, ANI Capture, Revocation, and Reminder Call—and goes on to assert that the Skip Trace and ANI Capture subclasses are overbroad because they include class members who provided consent. Response at 3-4. Plaintiffs did not plead these subclasses, but merely identified skip trace, ANI capture, failure to honor revocation requests, and Ocwen's reminder calls as methods that Ocwen uses in continuing to violate the TCPA even after this lawsuit. It turns out that Plaintiffs were right. Ocwen is still making non-consensual Aspect calls to cell numbers, including numbers obtained through ANI, as part of its skip trace process. Goodman Dep. at 28:5-29:22. And while Ms. Goodman's declaration gives the impression that Ocwen makes no outbound calls before a loan is more than 15 days due, when pressed, she conceded that Ocwen's policy is to call all subprime borrowers (among other categories of loans) beginning on the fifth day of delinquency. *Compare* Goodman Decl. at ¶ 8 *with* Goodman Dep. at 59.

Next, while Plaintiffs do not object if the Court finds subclasses appropriate, they submit that subclasses are unnecessary because each class member asserts that Ocwen committed the same violation: Nonconsensual calls to cell phones made with an ATDS. Even so, the Skip Trace and ANI Capture subclasses Ocwen proposes are not overbroad because Ocwen admits that it uses its Aspect dialer to make calls to borrowers located via ANI capture and CBC Innovis as part of its skip trace procedure. *See* Goodman Dep. at 28:5-29:22. Whether made in manual mode, or automated mode, such calls violate the TCPA because Ocwen made them with the same dialer without first obtaining the borrowers' consent. *See* Response at 5, fn 4 (conceding that the FCC considers manual calls made with the Aspect dialer to be autodialed calls).

- 16 -

Finally, Ocwen complains that the proposed injunction will effectively force them to cease using the Aspect dialer altogether. However, this is a problem of Ocwen's own making. Ocwen believes it has the capability, through its Cisco phone system, to call cell phones without violating the TCPA, but instead chooses to make its skip-tracing and ANI-related calls to cell phones with its Aspect dialer. *See* Goodman Dep. at 20:13-21:9, 26:4-22. Accordingly, Plaintiffs have established that the injunctive relief they request is appropriate for the class as a whole.

## IV. CONCLUSION

Based on the foregoing Plaintiffs respectfully request that this Court grant their motion for preliminary injunction, and to certify the injunctive relief class.

RESPECTFULLY SUBMITTED AND DATED this 12th day of January, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
 Beth E. Terrell, *Admitted Pro Hac Vice*
 Email: bterrell@terrellmarshall.com
 Adrienne D. McEntee, *Admitted Pro Hac Vice*
 Email: amcentee@terrellmarshall.com
 936 North 34th Street, Suite 300
 Telephone: (206) 816-6603
 Facsimile: (206) 319-5450

 Mark Ankcorn, N.D. Illinois #1159690
 Email: mark@ankcorn.com
 ANKCORN LAW FIRM, PC
 11622 El Camino Real, Suite 100
 San Diego, California 92130
 Telephone: (619) 870-0600
 Facsimile: (619) 684-3541

- 17 -

Local Office:

    1608 South Ashland Avenue. #92015
    Chicago, Illinois 60608-2013

Guillermo Cabrera
Email: gil@cabrerafirm.com
Jared Quient, Admitted Pro Hac Vice
Email: jared@cabrerafirm.com
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 500-4880
Facsimile: (619) 785-3380

Alexander H. Burke, #6281095
Email:  aburke@burkelawllc.com
Daniel J. Marovitch, #6303897
Email:  dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Mark L. Heaney
Email:  mark@heaneylaw.com
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, Minnesota 55305
Telephone: (952) 933-9655

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on January 12, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Chethan G. Shetty
Email:  cshetty@lockelord.com
Simon A. Fleischmann
Email:  sfleischmann@lockelord.com
Thomas J. Cunningham
Email:  tcunningham@lockelord.com
David F. Standa
Email:  dstanda@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Brian V. Otero, *Admitted Pro Hac Vice*
Email:  botero@hunton.com
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
Email:  sblacklocks@hunton.com
Ryan A. Becker, *Admitted Pro Hac Vice*
Email:  rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, Suite 52
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant*

DATED this 12th day of January, 2017.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    *Attorneys for Plaintiffs*