**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated, | CONSOLIDATED NO. 1:14-cv-08461 |
| Plaintiffs, | |
| v. | |
| OCWEN LOAN SERVICING, LLC, | Hon. Judge Matthew F. Kennelly |
| Defendant. | |
| TRACEE A. BEECROFT, | |
| Plaintiff, | Case No. 1:16-cv-08677 |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................... 3

    A.    The Telephone Consumer Protection Act ........................................... 3

    B.    Ocwen is a Loan Servicing Company which, Until December 2014, Used its Aspect Autodialer to Contact Borrowers on Cell Phones Without Regard to Consent ................................................................. 4

    C.    Ocwen Used the Aspect Autodialer to Place Calls to Cell Phones Obtained Via Skip Tracing Efforts, including Plaintiff Beecroft's Number ........ 5

    D.    Ocwen Used the Aspect Autodialer to Place Calls to Cell Phones of Borrowers Who Expressly Asked Not to Be Called, Including Plaintiff Mansanarez ..................................................................................... 7

    E.    Ocwen's Sample of Loan Records Does Not Support Widespread Consent ........ 8

III.   THE PROPOSED CLASSES ................................................................... 8

IV.   ARGUMENT AND AUTHORITY ......................................................... 10

    A.    Plaintiffs Meet the Requirements of Rule 23 .................................. 11

        1.    The Proposed Classes Are Sufficiently Numerous ................ 11

        2.    The Proposed Classes Involve Common Issues of Law and Fact .......... 12

        3.    Plaintiffs' Claims Are Typical of Those of the Classes ......... 13

        4.    Plaintiffs Beecroft and Mansanarez Will Be Adequate Representatives ......... 13

    B.    Plaintiffs Satisfy the Requirement of Rule 23(b)(3) ......................... 14

        1.    Common Issues Predominate ................................................. 14

        2.    A Class Action Is Superior and Manageable ......................... 17

i

      C.      The Court Should Appoint Class Counsel .......................................................... 19

V.      CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Alea London Ltd. v. Am. Home Servs., Inc.*,
638 F.3d 768 (11th Cir. 2011) ....................................................................... 3

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
747 F.3d 489 (7th Cir. 2014) ...................................................................... 16

*Bee, Denning, Inc. v. Capital All. Grp.*,
310 F.R.D. 614 (S.D. Cal. 2015) ........................................................... 11, 18

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. March 30, 2015)....................... 10

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014)......................................................*passim*

*Bridging Communities, Inc. v. Top Flite, Inc.*,
843 F.3d 1119 (6th Cir. 2016) .................................................................... 16

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .................................................................... 19

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012) ................................................................. 14, 16

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ...................................................................... 14

*Chapman v. Wagener Equities Inc.*,
747 F.3d 489 (7th Cir. 2014) ................................................................. 11, 16

*Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago*,
307 F.R.D. 475 (N.D. Ill. 2015)..................................................................... 13

*Erica P. John Fund, Inc. v. Halliburton*,
131 S. Ct. 2179 (2011).................................................................................. 14

*Gager v. Dell Fin. Servs., LLC*,
727 F.3d 265 (2013).................................................................................... 7

iii

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583 (7th Cir. 2011) ...................................................... 14

*Hill v. Colorado*,
    530 U.S. 703 (2000) ..................................................................... 3

*Hinman v. M and M Rental Center*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ......................................... 13

*Ikuseghan v. MultiCare Health Sys.*,
    No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) .................... 10, 12

*Kleen Prods. LLC v. Int'l Paper*,
    306 F.R.D. 585 (N.D. Ill. 2015) ................................................. 10

*Kristensen v. Credit Payment Serv.*,
    12 F.Supp.3d 1292 (D. Nev. 2014) ...................................... 11, 15

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ...................................................... 5

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012) ................................................................... 3

*Mitchem v. Ill. Collection Serv., Inc.*,
    271 F.R.D. 617 (N.D. Ill. 2011) .................................................. 10

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ......................................... 10, 17, 19

*Pietrzycki v. Heights Tower Serv., Inc.*,
    197 F. Supp. 3d 1007 (N.D. Ill. 2016) ..................................... 11

*Sadowski v. Med1 Online, LLC*,
    No. 07-2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) ............ 11

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*,
    No. 12-2257, 2014 WL 6750690 (N.D. Ohio Dec. 1, 2014) .......... 18

*Savanna Grp., Inc. v. Trynex, Inc.*,
    No. 10-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) ................. 13

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ...................................... 12, 16

iv

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
  861 F. Supp. 2d 898 (N.D. Ill. 2012) ............................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................... 12

*Whitaker v. Bennett Law, PLLC,*
  No. 13-cv-3145-L(NLS), 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ................. 11, 12

*Wilson v. Kiewit Pac. Co.*,
  No. C 09-03630 SI, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) ................................ 15

## FEDERAL STATUTES

47 U.S.C. § 227 ................................................................................................. 14

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................... 3, 4

47 U.S.C. § 227(b)(3) ........................................................................................ 12

## FEDERAL RULES

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 11

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 13

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 10

\

## OTHER AUTHORITIES

*In re Rules & Regs. Implementing the TCPA*,
  30 FCC Rcd. 7961 (July 10, 2015) ................................................................... 3

S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968 (1991) ............................................. 3

# I. INTRODUCTION

Defendant Ocwen Loan Servicing, LLC, ("Ocwen") systematically violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by placing calls with an autodialer to the cell phones of more than a million persons without prior express consent to do so (the "Cell Phone Class"), including to borrowers Ocwen located through skip tracing (the "Skip Trace Sub-Class"), and borrowers who had expressly asked not to be called (the "Do-No-Call Class").The classes and subclass Plaintiffs propose are:

> Cell Phone Class (Plaintiff Beecroft):  All persons whose cell phones Ocwen called using its Aspect dialer between October 27, 2010 and November 30, 2014, where the recipient had not provided the cell number called to Ocwen in connection with the loan that was the subject of the call.

> Skip Trace Sub-Class (Plaintiff Beecroft):  All persons whose cell phones Ocwen called using its Aspect dialer between October 27, 2010 and November 30, 2014, where Ocwen obtained the phone number through a non-voice locate ("NVLS") skip trace and not from the consumer. The claims relating to this subclass are limited to Ocwen's first identifying call.

> Do-Not-Call Class (Plaintiff Mansanarez):  All persons during the period of October 27, 2010 to November 30, 2014 whose cell phones Ocwen called using its Aspect dialer after a date upon which Ocwen's REALServicing database indicates the borrowers requested not to be called.

These definitions are tailored to exploit Ocwen's reckless calling policies and procedures. Prior to December 2014, Ocwen had no policies, practices, or procedures for obtaining consent before it made calls to cell phones using its Aspect dialer. Although Ocwen made a meager attempt at TCPA compliance—it abstained from using its Apsect dialer to call phone numbers that were logged in its REALServicing database as "cell" phones—Ocwen called telephone numbers logged as "home," "work," or "other" without first scrubbing to determine whether they were cell phones, and without any regard to consent. As a result, Ocwen made more than one hundred million Aspect calls to more than one million American consumers, for whom Ocwen

had no record of consent (the "Cell Phone Class"). Plaintiff Tracee Beecroft was part of this group. She is also a member of the Skip Trace Sub-Class, as she received dozens of calls from Ocwen after Ocwen used skip tracing efforts to find her cell phone number—a number that she never provided to Ocwen.

In addition, Ocwen had a practice of calling borrowers' cell phones, even after borrowers specifically asked Ocwen to stop calling. Although Ocwen has not produced data that shows the exact number of borrowers who are part of this group (the "Do-Not-Call Class"), partial records from Ocwen's REALServicing database show that Ocwen routinely called borrowers' cell phones, even after agents entered "do-not-call" codes for those loans. Plaintiff Susan Mansanarez was one of these borrowers. She initially gave Ocwen her cell phone number, but later asked Ocwen to stop calling. Despite her request, Ocwen persisted.

Plaintiffs seek to have this case certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) so that the claims of millions of class members nationwide may be resolved in one fair and efficient proceeding. Certification is appropriate because there are numerous questions of law and fact common to all proposed class members that predominate over any individualized issues. Plaintiffs' claims and the claims of the proposed class members arise out of a common nucleus of operative facts: Ocwen's unlawful calling practices in violation of the TCPA. For these reasons, Plaintiffs respectfully request that the Court certify the case as a class action; appoint Tracee Beecroft as the class representative for the Cell Phone Class; appoint Tracee Beecroft as the class representative for the Skip Trace Sub-Class; appoint Susan Mansanarez as the class representative for the Do-Not-Call Class; and appoint the law firms of Burke Law Office, LLC, Terrell Marshall Law Group PLLC ("TMLG"), and Ankcorn Law Firm PLLC as class counsel.

## II.  STATEMENT OF FACTS

**A.  The Telephone Consumer Protection Act**

The Telephone Consumer Protection Act was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Congress found that the unique, personal nature and added cost of mobile phone use mandated strong consumer protections, specifically targeting the autodialed and prerecorded calls it considered to be a greater nuisance and privacy invasion than calls from "live" persons.[1] *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8023 (2015) (highlighting enhanced privacy concerns "where the calls are received on a phone that the consumer may carry at all times," and noting that "autodialed and prerecorded calls are increasingly intrusive in the wireless context, especially where the consumer pays for the incoming call"). Indeed, as the Supreme Court held in a different context: "The unwilling listener's interest in avoiding unwanted communication is an aspect of the broader 'right to be let alone' ... the most comprehensive of rights and the right most valued by civilized men." *Hill v. Colorado*, 530 U.S. 703, 716–17 (2000) (citation omitted).

The TCPA thus broadly prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). Said another way, all autodialed calls to cell phones are illegal, unless the caller has consent of the called party. "The TCPA is essentially a strict liability statute[;] … [it] does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted).

---

[1] *See* S. Rep. No. 102-178, 6, 1991 U.S.C.C.A.N. 1968, 1974 (1991) (identifying legislative goal of "ban[ning] all autodialed calls, and artificial or prerecorded calls, to ... cellular phones").

**B.**     **Ocwen is a Loan Servicing Company which, Until December 2014, Used its Aspect Autodialer to Contact Borrowers on Cell Phones Without Regard to Consent**

The TCPA requires Ocwen and other mortgage servicers to obtain borrower consent before using an autodialer to call cell phones. 47 U.S.C. § 227(b)(1)(A)(iii). Despite this requirement, Ocwen admits that it did not begin to put procedures in place to ensure it was not using its Aspect autodialer to call cell phones until April 2014. Ex. 1 at 49:20-24[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). If a phone number was entered as a cell phone in its REALServicing database, Ocwen did not put the number into its predictive dialer. But for cell phone numbers entered as home or other, Ocwen did nothing to ensure that numbers in those fields were not cell phone numbers. *Id.* at 50:6-21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In April 2014, Ocwen began subscribing to a service called AreaCode.com that purports to scrub for cell phones. Ex. 1 at 46:11-15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 2. But AreaCode.com was not failproof. Ex. 1 at 46:21-23. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 31:17-24; Ex. 3. Moreover, AreaCode.com does not account for numbers that have been ported from landlines to cell phones, which led to the risk that landlines ported to cell phones were called. Ex. 1 at 47:7-20. Determining whether numbers have been ported is vital in this day and age, with consumers consistently using their cell phones as their sole phone number. *Id.* at 48:8-12. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 4; Ex. 5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6; Ex. 7.

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Adrienne D. McEntee in Support of Plaintiffs' Motion for Class Certification.

Ocwen also failed to have any systematic mechanism for obtaining and tracking consent.

███████████████████████████████████████████████████████████

Ex. 8 at OCWEN571579. By April 2014, Ocwen still did not know whether it had consent for 87% of the known cell phones in REALServicing, but was aware that so-called "manual" calls made from the Aspect dialer violated the TCPA. Ex. 9. For this reason, Ocwen began calling known cell numbers manually through Cisco desk phones, rather than through the Aspect dialer. Ex. 10. In December 2014, Ocwen finally added a field to its REALServicing database in which agents could keep track of consent to call certain numbers by entering P, Y, or N. Ex. 11. To make sure they addressed all loans, Ocwen populated all cell phone consent fields with P until Ocwen could manually contact borrowers with their Cisco phone system. *Id.* ████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Ex. 12 at OCWEN561334.

From October 27, 2010 to November 30, 2014 (the "Class Period"), prior to Ocwen's implementation of its December 2014 consent policy, Ocwen made 105,831,658 calls to 1,178,379 unique cell phone numbers using its Aspect dialer, including to Plaintiff Tracee Beecroft's cell phone. *See* Ex. 13, Third Expert Report of Jeffrey A. Hansen ("Hansen Report"), ¶¶ 48, 52.

**C.      Ocwen Used the Aspect Autodialer to Place Calls to Cell Phones Obtained Via Skip Tracing Efforts, including Plaintiff Beecroft's Number**

"Skip-tracing is the process of developing new telephone, address, job or asset information on a customer, or verifying the accuracy of such information." *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, fn. 1 (9th Cir. 2012). Ocwen uses skip tracing to find "good numbers at which to contact borrowers for collections purposes." Ex. 14 at OCWEN537237. Ocwen typically finds borrower numbers through third-parties such as Accurint or through the White Pages. Ex. 15 at 43:11-45:8. Ocwen confirms skip-traced numbers in two ways, either through speaking with the borrower directly, or by way of "non-voice

locating" (also known as "NVLS"), ████████████████████████████████
██████████████████████████████████████████████ Ex. 1 at 9:18-10:12.
When Ocwen uses skip tracing efforts to find cell phone numbers—e.g. Ocwen does not obtain
the numbers from the borrowers directly—Ocwen does not have consent to make initial
identifying calls with an automatic telephone dialing system.

Despite not having consent to make such calls, Ocwen's skip tracing team routinely used
the Aspect dialer to call numbers found through sources other than the borrower. ███████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

███████████████ Ex. 16. According to Ocwen, in April 2014 its skip tracers began to manually
dial identifying calls made to new numbers with its Cisco phone system, rather than with the
Aspect dialer. Ex. 1 at 9:1-3. However, data that Ocwen produced shows that Ocwen continued
to make identifying calls to cell phones with the Aspect dialer even after April 2014. Hansen
Report, *passim*.



Ocwen used skip tracing to find Plaintiff Tracee Beecroft's cell phone number in October
2013. Ex. 18. By that time, the Beecrofts' mortgage had been discharged in bankruptcy. Ex. 19 at
47:23-48:4. But that didn't stop Ocwen from trying to collect on the debt. Once Ocwen found her

cell phone number, it called her with the Aspect dialer incessantly, to the point that Plaintiff Beecroft and her husband felt they were being harassed. *Id.* at 66:10-67-11; 70:2-4; 126:2-127:4; Ex. 18. Plaintiff Beecroft is not alone. From October 31, 2010 through November 30, 2014, Ocwen's records show that, using its Aspect dialer, it made at least one identifying skip trace call to 67,282 unique cell phone numbers that had not previously been called by Ocwen. Hansen Report ¶ 60.

### D. Ocwen Used the Aspect Autodialer to Place Calls to Cell Phones of Borrowers Who Expressly Asked Not to Be Called, Including Plaintiff Mansanarez

The TCPA requires mortgage servicers to honor requests to cease and desist by borrowers who no longer wish to be called. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (2013). But until September 2016, Ocwen refused to honor revocation requests. Ex. 18. █████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ Moreover, Ocwen routinely called borrowers' cell phones even after logging do-not-call codes into REALServicing. Hansen Report ¶¶ 65, 70-72.

Plaintiff Mansanarez is one of the borrowers who asked for calls to her cell phone to stop. Ocwen used the Aspect dialer to make hundreds of calls to Plaintiff Mansanarez's cell phone. Ex. 25 at 75:14–18; Ex. 26. While Ocwen initially had permission to call Ms. Mansanarez on her cell phone, it continued to make the calls after January 2014 when Ms. Mansanarez unequivocally asked that the calls stop. Ex. 25 at 75:14–18. Plaintiff Mansanarez is not alone. During the Class Period, Ocwen's records show that it made 99,830 calls to 4,965 unique cell

phone numbers after a do-not-call code was entered into REALServicing. Hansen Report ¶¶ 65, 70-72. These partial records, found in documents Ocwen produced after the close of discovery, are likely the tip of an iceberg.

### E. Ocwen's Sample of Loan Records Does Not Support Widespread Consent

Pursuant to this Court's order, Ocwen produced documents and information regarding a sample of 200 loans randomly chosen from the Aspect data, and identified what it believed to be specific consent evidence regarding 10 loans randomly selected from that sample ("Consent Sample"). Dkt. No. 183. Of the Consent Sample, only three loan files consisted of evidence that borrowers had provided their cell phone numbers to Ocwen in connection with the loan transaction that was the subject of the calls, and in each case, Plaintiffs easily found and confirmed the numbers based on evidence from Ocwen's own files. Declaration of Adrienne D. McEntee in Support of Plaintiffs' Motion for Class Certification ("McEntee Decl.") ¶ 28.

### III. THE PROPOSED CLASSES

Plaintiffs Beecroft and Mansanarez seek to certify two National Classes, and one Sub-Class:

> Cell Phone Class (Plaintiff Beecroft): All persons whose cell phones Ocwen called using its Aspect dialer between October 27, 2010 and November 30, 2014, where the recipient had not provided the cell number called to Ocwen in connection with the loan that was the subject of the call.

Ocwen produced all calling records regarding calls made on its Aspect dialer during the Class Period. Plaintiffs retained call data expert, Jeffrey A. Hansen, to evaluate the records. Using the Neustar technology, Mr. Hansen identified 105,831,658 calls which were placed to 1,178,379 unique cell phone numbers that were wireless at the time of the calls. Hansen Report ¶¶ 48, 52, 54. This class addresses Ocwen's indiscriminate calling policies and practices between 2010 and 2014, whereby it called "home" "work" and "other" cell phone numbers without regard to consent.

> Skip Trace Sub-Class (Plaintiff Beecroft): All persons whose cell phones Ocwen called using its Aspect dialer between October 27, 2010 and November 30, 2014, where Ocwen obtained the phone number through a non-voice locate ("NVLS") skip trace and not from the consumer. The claims relating to this subclass are limited to Ocwen's first identifying call.

Ocwen also produced a subset of data regarding NVLS skip traced calls. For loan numbers that included NVLS or CEST codes at any time, or a NEWP and SKPAC code on the same date (all of which are skip tracing-related codes), Ocwen provided data for the Class Period including (1) REALServicing call logs (hereinafter called "NVLS RS Call Logs"); (2) Aspect call logs; and (3) comments logs for the dates of the NVLS, CEST or NEWP/SKPAC codes. Mr. Hansen analyzed this data in conjunction with the Aspect records and found that, using its Aspect dialer, it made at least one identifying skip trace call to 67,282 unique cell phone numbers that had not previously been called by Ocwen. Hansen Report ¶ 16

> Do-Not-Call Class (Plaintiff Mansanarez): All persons during the period of October 27, 2010 to November 30, 2014 whose cell phones Ocwen called using its Aspect dialer after a date upon which Ocwen's REALServicing database indicates the borrowers requested not to be called.

Ocwen also produced data regarding do-not-call requests, including results codes contained within the NVLS RS Call Logs (which represents a subset of Ocwen's loans), and results codes contained within specific do-not-call reports attached to some of Sherri Goodman's emails. *Id.* at ¶¶ 16-19. Mr. Hansen analyzed this data in conjunction with the Aspect records and found that Ocwen made 99,830 calls to 4,965 unique cell phone numbers after a do-not-call code was entered into REALServicing. *Id.* at ¶¶ 65, 70-72.

Excluded from the Classes is Ocwen, any entity in which Ocwen has a controlling interest or that has a controlling interest in Ocwen, and Ocwen's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Ocwen maintains sufficient information to identify the Class members. Indeed, Ocwen maintains the name, address, and telephone number for each of the consumers who are members of the class. Ocwen also maintains call records for each consumer.

## IV.  ARGUMENT AND AUTHORITY

In order to certify a class, plaintiffs must demonstrate that they meet the requirements of Rule 23. First, as a threshold matter, a representative plaintiff must show that: (1) they have standing; and (2) the proposed class is ascertainable, *i.e.*, defined clearly and based on objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015). Second, a proposed class must meet all of the requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Kleen Prods. LLC v. Int'l Paper,* 306 F.R.D. 585, 589 (N.D. Ill. 2015) (citing *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012)). Finally, the proposed class must qualify as a type described in Rule 23(b). Plaintiffs here seek certification of the proposed classes under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Courts in the Seventh Circuit and elsewhere frequently certify classes involving calls made to cell phones with an ATDS. *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) (certifying two litigation classes for automated calls made to either a cellphone or landline that advertised free cruises in exchange for participation in various surveys); *Mitchem v. Ill. Collection Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying litigation class consisting of all persons who received calls to their cell phones seeking to collect debt for medical services); *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *8 (W.D. Wash. July 29, 2015) (certifying class of individuals to whom automated debt collection calls were placed to cellular telephones); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247, at *17 (W.D. Wash. March 30, 2015) (certifying class of

individuals and small businesses to whom automated debt collection calls were placed to cellular telephones); *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc*., No. 15-CV-6314-YGR, 2017 WL 1806583, at *2 (N.D. Cal. May 5, 2017) (certifying class of consumers and a small business that received telemarketing calls to cellular telephones); *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) (same); *Kristensen v. Credit Payment Serv.*, 12 F.Supp.3d 1292 (D. Nev. 2014) (same); *Whitaker v. Bennett Law, PLLC,* No. 13-cv-3145-L(NLS), 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) (same).

**A.    Plaintiffs Meet the Requirements of Rule 23**

> **1.    The Proposed Classes Are Sufficiently Numerous**

A class is numerous if it is large enough "that joinder of all parties is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is determined prior to consideration of whether a particular class member has a valid claim. *See Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) ("[A] class can be certified without determination of its size, so long as it is reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit."). Courts regularly make "common sense" conclusions in certifying TCPA classes, *Sadowski v. Med1 Online, LLC*, No. 07-2973, 2008 WL 2224892, at *3 (N.D. Ill. May 27, 2008), but the rule of thumb is that forty or so similarly situated persons are impracticable to join into a single proceeding. *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007, 1018 (N.D. Ill. 2016).

Plaintiffs' proposed Cell Phone Class includes 1,178,379 cellular telephone numbers linked to names of individuals who received calls from Ocwen's Aspect dialer. The Skip Trace Sub-Class includes 67,282 borrowers for whom Ocwen located their cellular telephone numbers through a Non Voice Locate. The Do-Not-Call Class includes 4,965 borrowers who continued to call their cell phones after they asked Ocwen to stop. Numerosity is satisfied.

2. <u>The Proposed Classes Involve Common Issues of Law and Fact</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To establish commonality, a plaintiff must show that the class members all "suffered the same injury." *Birchmeier*, 302 F.R.D. at 250 (citations omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (the matter must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). In other words, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal marks and citation omitted; emphasis in original).

Plaintiffs contend that Ocwen used its Aspect dialer to place millions of calls to Cell Phone Class members without regard to consent, in violation of the TCPA. These claims give rise to common questions of law and fact including (1) whether the Aspect dialer constitutes an ATDS; (2) whether Ocwen made calls to Class members' cell phones with the Aspect dialer; (3) whether Class members consented to receiving the calls; and (4) whether Ocwen's violations were willful.[3] These significant and common questions are sufficient to satisfy Rule 23(a)(2)'s commonality requirement. *See Birchmeier*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (commonality satisfied where class members suffered a common injury, "resulting from receipt of the allegedly offending calls"); *Whitaker*, 2014 WL5454398 at *5 (commonality satisfied where the central issue was whether the defendant used an ATDS or prerecorded or artificial voice to make unsolicited calls); *Ikuseghan*, 2015 WL 4600818 at *6 (commonality satisfied where issue was whether standardized evidence showed prior express consent). The proposed Classes thus satisfy the requirements of Rule 23(a)(2).

---

[3] The TCPA provides for up to three times statutory damages where the defendant "willfully or knowingly" violated the statute. 47 U.S.C. § 227(b)(3).

3.      Plaintiffs' Claims Are Typical of Those of the Classes

"Typicality" requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago*, 307 F.R.D. 475, 480-81 (N.D. Ill. 2015). Put differently, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M&M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, Ocwen's standardized course of conduct is well-suited to class treatment. As to Plaintiff Beecroft and the Cell Phone Class and the Skip Trace Sub-Class, Ocwen used its Aspect dialer to make calls to each class member's cell phone, even though the person had not provided the number to Ocwen in connection with the loan that was the subject of the call. As to Plaintiff Mansanarez and the Do-Not-Call Class, Ocwen continued to make calls to cell phones of class members after they told Ocwen to stop. Because Plaintiffs' claims under the TCPA arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as the proposed Class and Sub-Class members, the typicality requirement is satisfied. *See Birchmeier*, 302 F.R.D. at 251 (typicality satisfied where "the named plaintiffs received the same type of call as the other class members"); *see also Savanna Grp., Inc. v. Trynex, Inc.,* No. 10-7995*,* 2013 WL 66181, at *11 (N.D. Ill. Jan. 4, 2013) (typicality met where plaintiff and class claims "arise from the same legal theory—that Defendants violated the TCPA by sending faxes without the express consent").

4.      Plaintiffs Beecroft and Mansanarez Will Be Adequate Representatives

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In analyzing adequacy, the Court considers "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing

and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Here, Plaintiffs Beecroft and Mansanarez have the same interests as the Class members: All

received calls to their cell phones from Ocwen's Aspect dialer without their consent. In support

of the Classes, both Plaintiffs have actively participated in the litigation by responding to

discovery, sitting for depositions, and otherwise assisting counsel in their prosecution of this

case. McEntee Decl. ¶ 29.

**B.  Plaintiffs Satisfy the Requirement of Rule 23(b)(3)**

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common

to the class members predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for fairly and efficiently adjudicating of

the controversy." *Birchmeier*, 302 F.R.D. at 255 (quoting the rule) (internal quotation marks

omitted). For the reasons set forth below, Plaintiffs satisfy these requirements.

1.  Common Issues Predominate

The touchstone for predominance analysis is efficiency. *Butler v. Sears, Roebuck & Co.,*

702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds*, 133 S. Ct. 2768 (2013),

*judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"). "[P]redominance is [not]

determined simply by counting noses: that is, determining whether there are more common

issues or more individual issues, regardless of relative importance." *Butler II*, 727 F.3d at 801.

"An issue 'central to the validity of each one of the claims' in a class action, if it can be resolved

'in one stroke,' can justify class treatment." *Id.* (*quoting Dukes*, 131 S. Ct. at 2551).

"Considering whether questions of law or fact common to class members predominate

begins, of course, with the elements of the underlying action." *Erica P. John Fund, Inc. v.

Halliburton*, 131 S. Ct. 2179, 2184 (2011). The elements of Plaintiffs' claim for violations of the

TCPA's cell phone restrictions are (1) a telephone call, (2) using an automatic telephone dialing

system, (3) to any cellular telephone service. *See* 47 U.S.C. § 227. Each of these elements can be

established using common evidence.

14

Ocwen used its Aspect dialer to make millions of calls to persons who did not consent to receiving calls to their cell phones. All of the Class members' claims will rise or fall on whether Ocwen can be held liable for these calls, and will be established solely by examining the conduct of Ocwen, not the actions of any Class members. Common evidence can be used to determine which class members received calls to their cell phones, and how many they received, because Ocwen maintains records of the calls. Such call records can be produced in electronic form for each and every class member by running a simple report. Plaintiffs' expert, Jeff Hansen, can examine the call records and identify the cell phone numbers that Ocwen called using available cell block identifiers and ported numbers lists.

Plaintiffs anticipate that Ocwen will take the flawed position that whether Cell Phone Class members provided "prior express consent" is an individualized issue. But whether potential TCPA class members consented to receive the calls will not predominate here because prior express consent (or the lack thereof) can be determined using Ocwen's own records. Prior express consent is an affirmative defense for which Ocwen bears the burden. *Thrasher-Lyon v. Illinois Farmers Ins. Co*., 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) ("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"). Thus, Plaintiffs' only job at class certification is to show that consent, or the lack thereof, can be resolved "on evidence and theories applicable to the entire class." *Kristensen v. Credit Payment Servs*., 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (citation omitted).

Plaintiffs have done their job. During the Class Period, Ocwen concedes it did not have a policy for ensuring that it was not calling cell phone numbers, and likewise, no policy for obtaining or verifying consent. Although some borrowers provided their cell phone numbers to Ocwen, such evidence does not defeat predominance. Borrowers who provided consent can be manageably identified by reviewing Ocwen's business records. *See Wilson v. Kiewit Pac. Co*., No. C 09-03630 SI, 2010 WL 5059522, at *9 (N.D. Cal. Dec. 6, 2010) (holding class was appropriate for certification and manageable where damages could be determined largely by

15

defendant's documents). "Regardless, arguments about whether someone belongs in the classes do not speak to whether common questions predominate *among class members*; those who are in the classes will be those who can document that they meet the class definitions. Rather, these arguments go to whether an individual may join the classes, which is a different question." *Birchmeier,* 302 F.R.D. at 253-54 (emphasis in original) (finding predominance where defendants could not show that "defenses can or would vary among class members"). "Any difficulty involved in this process is more appropriately addressed under the manageability factor," and as discussed below, the Court has "considerable flexibility in fashioning solutions to manageability issues that arise in class action litigation." *Id.* at 253 (citing *Kartman v. State Farm Mut. Auto Ins. Co*., 634 F.3d 883, 888 (7th Cir.2011)).

Moreover, the presence of potential consent arguments for individual members does not defeat predominance, since "[h]ow many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014). In *Chapman,* the Seventh Circuit addressed predominance in light of potential defenses under the TCPA, holding that such defenses may prevent a particular class member from sharing in damages, but do not defeat predominance. *Id.; see also Suchanek,* 764 F.3d at 759 (recognizing "the need for individual proof alone does not necessarily preclude class certification" and that it would be "straightforward" to try those issues later) (citation omitted); *Butler I,* 702 F.3d at 362 ("Sears argues that most members of the plaintiff class did not experience a mold problem. But if so that is an argument not for refusing to certify the class but for certifying it and then entering a judgment that will largely exonerate Sears—a course it should welcome, as all class members who had not opted out of the class action would be bound by the judgment."); *Bridging Communities, Inc. v. Top Flite, Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (reversing denial of class certification in TCPA case, holding that "individual issues" like consent should not preclude certification because Rule 23 "requires merely that common issues predominate, not

16

that all issues be common to the class," and that if some class members have no claims, they may be removed or separated through subclasses).

Plaintiffs do not agree that the issue of consent is material; after all, Ocwen's policy was *not to ensure it had consent* to make *any* of the Aspect dialer calls during the class period. Had Ocwen kept track of consent "in the usual course of business" as the FCC admonished it to do in 2008, 23 FCC Rcd. 559, 565, ¶10, then the alleged "individual issues" Ocwen posits preclude certification would not be present here. Had Ocwen kept track of consent, the number of calls for which Ocwen is liable would likely be much narrower. But Ocwen elected only to audio-record the calls, and not log consent. It is ironic that Ocwen's failure to keep records regarding consent is both: (1) the primary reason it violated the TCPA, and (2) its key argument as to why it should not have to defend this case as a class action. An important policy objective of class actions [is] deterring and punishing corporate wrongdoing. *Mullins*, 795 F.3d at 668. Ocwen should not be rewarded for its reckless consent recordkeeping.

Finally, while Ocwen may be able to prove consent for specific members of the Cell Phone Class, Ocwen cannot lodge any such defense with respect to members of the Do-Not-Call Class. In addition, the Skip Trace Sub-Class is limited to individuals Ocwen called with its Aspect dialer to confirm a new cell phone that Ocwen had never called previously. Moreover, the violative calls are limited to Ocwen's initial call seeking to identify the borrower, and do not extend to subsequent calls after which borrowers may or may not have provided consent. Likewise, the Do-Not-Call Class is limited to individuals Ocwen called with its Aspect dialer after Ocwen logged a do-not-call request in its borrower database.

Predominance is satisfied.

2.     <u>A Class Action Is Superior and Manageable</u>

The second prong of the Rule 23(b)(3) analysis requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. As one federal court found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…. It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015); *see also Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* No. 12-2257, 2014 WL 6750690, at *6 (N.D. Ohio Dec. 1, 2014) (finding superiority, noting that "individual class members are unlikely to litigate TCPA claims" given limited maximum recovery). The parties in this case will submit dueling expert reports on the issue of whether the Aspect dialer constitutes an ATDS under the TCPA. Such experts are highly technical, costly, and few and far between. While Ocwen would likely be content to rely upon the same expert witness over and over in dozens of individual suits, individual plaintiffs—to the extent they ever even realize their rights were violated—do not have access to such economies of scale. It is simply more efficient, and fairer to consumers, to litigate the ATDS issue on a class-wide basis. If certified, the Court will be able to decide important issues for a multitude of persons, in one fell swoop.

Finally, this case does not present manageability problems that impact superiority. Providing notice to class members is easily accomplished here because Ocwen has names and addresses for the class members, who are (or were) mortgagors. Moreover, as an alternative to searching Ocwen's business records to determine who provided their cell phone numbers to Ocwen, the Court could employ an affidavit procedure or appoint a magistrate judge or special

master to determine which Cell Phone Class members provided their cell phone number to Ocwen. *See Mullins,* 795 F.3d at 669 ("Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed."); *Birchmeier,* 302 F.R.D. at 254 (recognizing the court's "ability to fashion a solution that fits the particular circumstances of this case"); *see also Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1128 (9th Cir. 2017) (noting "the variety of procedural tools courts can use to manage the administrative burdens of class litigation"). Such efforts are particularly appropriate here, given that Ocwen knew about the TCPA's requirements, but crafted its calling policies in such a way as to permit nonconsensual calls. Superiority is satisfied.

## C.    The Court Should Appoint Class Counsel

Plaintiffs request that their counsel be appointed as class counsel in this action, pursuant to Fed. R. Civ. P. 23(g)(1). Plaintiffs' counsel are experienced class action practitioners, fully versed in the intricacies of class actions in general and TCPA class actions in particular. Dkt. 97-4, Burke Decl. ¶¶ 2–12; Dkt. 97-2, Terrell Decl. ¶¶ 2–14; Dkt. 97-3, Ankcorn Decl. ¶¶ 10–13. Plaintiffs' counsel are thus adequate, and should respectfully be designated as class counsel.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs Beecroft and Mansanarez respectfully request that the Court certify the proposed classes, designated Plaintiffs as class representatives, appoint their attorneys as class counsel, and grant such further and other relief the Court deems reasonable and just.

Respectfully submitted,

Dated: May 26, 2017

By: _/s/ Alexander H. Burke_

Alexander H. Burke
aburke@burkelawllc.com
Daniel J. Marovitch
dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

By: _/s/ Beth E. Terrell_

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email: amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Mark Ankcorn, #1159690
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM PLLC
200 West Madison Street, Suite 2143
Chicago, Illinois 60606
Telephone: (321) 422-2333
Facsimile: (619) 684-3541

Guillermo Cabrera
Email: gil@cabrerafirm.com
Jared Quient, *Admitted Pro Hac Vice*
Email: jared@cabrerafirm.com
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 500-4880
Facsimile: (619) 785-3380

20

Mark L. Heaney, *Admitted Pro Hac Vice*
Email: mark@heaneylaw.com
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
Telephone: (952) 933-9655

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on May 26, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Chethan G. Shetty
Email: cshetty@lockelord.com
Simon A. Fleischmann
Email: sfleischmann@lockelord.com
Thomas J. Cunningham
Email: tcunningham@lockelord.com
David F. Standa
Email: dstanda@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Brian V. Otero, *Admitted Pro Hac Vice*
Email: botero@hunton.com
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
Email: sblacklocks@hunton.com
Ryan A. Becker, *Admitted Pro Hac Vice*
Email: rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, Suite 52
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant*

22

DATED this 26th day of May, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*

23