IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Ocwen Loan Servicing, LLC, <br><br> Defendant. | Case No. 1:14-cv-08461 <br><br> Honorable Matthew F. Kennelly <br><br> Consolidated |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Ocwen Loan Servicing, LLC, <br><br> Defendant. | Case No. 16-cv-08677 <br><br> Honorable Matthew F. Kennelly <br><br> Consolidated |

**OCWEN'S MOTION FOR THE COURT TO HOLD A HEARING
TO DETERMINE WHETHER PLAINTIFFS' COUNSEL HAS BREACHED
HIS DUTY OF CONFIDENTIALITY AND FOR LEAVE TO TAKE
DISCOVERY INTO THE EXTENT OF PLAINTIFFS' COUNSEL'S BREACHES**

2301545v.2

**Table of Contents**

The evidence that Mr. Ankcorn has breached his duty of confidentiality ........................................1
A.     The Protective Order. ...................................................................................................1
B.     Ocwen's December 2015 call data production. ..................................................................2
C.     Mr. Ankcorn has used Ocwen's call data in the Graham case. ..........................................2
The Court should hold a hearing to determine the extent of Mr. Ankcorn's breaches of his duty of confidentiality .................................................................................................5

There is compelling evidence that Plaintiffs' counsel Mark Ankcorn has violated the Court's Protective Order and breached his duty of confidentiality by using confidential call data produced by Ocwen in *Snyder* to identify class members with potential high-value TCPA claims, to persuade them to bring their own claims against Ocwen, and to then commence litigation on their behalf -- with Mr. Ankcorn as their counsel. In essence, Mr. Ankcorn is using confidential call data to cherry-pick class members with potential high-value claims and persuade them to opt out of the class settlement he negotiated and presented to the Court as fair.

The evidence strongly indicates that Mr. Ankcorn has violated both the Protective Order and the Gramm-Leach-Bliley Act. It also strongly indicates that Mr. Ankcorn has violated his duty of good faith -- both express and implied in the settlement agreement -- by persuading class members with potential high-value claims to opt-out, thereby making the settlement less valuable to Ocwen than it could have contemplated based on the settlement negotiations and the agreement.

Ocwen respectfully submits that the Court should hold a hearing to determine the extent of Mr. Ankcorn's breaches of his duty of confidentiality and to determine the appropriate relief, and that it should give Ocwen leave to depose Mr. Ankcorn in advance of that hearing to inquire into the nature and scope of his violations.

**The evidence that Mr. Ankcorn has breached his duty of confidentiality**

A. **The Protective Order.**

The March 11, 2016 Amended Agreed Protective Order (ECF 68), orders that:

> **5(a) General Protections**. Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof. In a putative class action, Confidential Information may be disclosed only to the named plaintiff(s) and not to any other member of the putative class unless and until a class including the putative member has been certified.

The Order thus bars Mr. Ankcorn, as Plaintiffs' counsel, from using Ocwen's Confidential Information outside of this case.

**B.    Ocwen's December 2015 call data production.**

On December 22, 2015, Ocwen produced to Plaintiffs' counsel data concerning approximately 350 million calls made by Ocwen in the period from March 30, 2011 to December 16, 2015. (Declaration of Simon Fleischmann ¶ 8.) This call data contained the telephone numbers Ocwen had called but did not contain the names or addresses of the persons called. (*Id.* ¶ 9.)

Although this production was not explicitly labeled "confidential," Ocwen intended it to be treated as Confidential Information pursuant to the Protective Order: the production was made on an encrypted, password-protected hard drive and delivered in a package protected by a physical keypad lock, with security codes delivered under separate cover. (*Id.* ¶ 8.)

In August 2017, Ocwen's counsel sent a letter to Mr. Ankcorn and Plaintiffs' other counsel reaffirming that the call data was Confidential Information pursuant to the Protective Order. (Fleischmann Decl. ¶ 13 and Exh. K.) The letter asked Plaintiffs' counsel to confirm that the call data had not been shared with anyone except counsel in this case and Plaintiffs' expert Mr. Hansen. (*Id.*) Plaintiffs' counsel did not reply, even after counsel repeated his request in two further emails. (*Id.*)

**C.    Mr. Ankcorn has used Ocwen's call data in the *Graham* case.**

In May 2017, Mr. Ankcorn commenced the *Graham* case in the Southern District of Florida on behalf of five plaintiffs alleging TCPA violations by Ocwen. Mr. Ankcorn amended his *Graham* complaint on October 20, 2017 (*i.e., after* Mr. Fleischmann's August letter reaffirming the confidentiality of the call data) to add 42 more plaintiffs. (Fleischmann Decl. Exh. L.) Ocwen was able to identify records of calls made to 30 of these 42 new plaintiffs in its

2

call data production. For 28 of those 30 plaintiffs, the First Amended Complaint alleges a date range for calls received from Ocwen and the number of calls received that correspond exactly with the data in Ocwen's call data production.[1] This exact correspondence is surely not a coincidence.

Ocwen's counsel asked FTI to compare the number of calls received by each of the *Graham* plaintiffs (and so the potential value of these persons' TCPA claims) with the number of calls received by other Florida borrowers. FTI took the list of unique cellphone numbers called by Ocwen devised by Plaintiffs' expert, Jeffrey Hansen, and identified which of those cellphone numbers were associated with a Florida area code. (Witinok Decl. ¶¶ 11-12.) FTI then determined that Florida cellphone numbers received between 1 and 4,244 calls. (*Id.* ¶ 12.) FTI then analyzed the distribution of the number of calls made to these Florida cellphone numbers to determine the 99th percentile of those calls -- *i.e.*, the number of calls such that only 1% received that number or more calls. (*Id.* ¶ 13.) That number was 1,039 calls. (*Id.*) *All* of the Graham plaintiffs received more than 1,039 calls, thus all were in the top 1% of the number of calls made

---

[1] Witinok Decl. Exh. A. Exhibit A to Mr. Witinok's declaration is a chart that shows, for each of the phone numbers referred to in the First Amended Complaint identified by Ocwen, the number of calls and date ranges for those calls in Ocwen's call data production. Each plaintiff's call data can be identified by the last four digits of the phone number at which he or she was allegedly called that is provided in the First Amended Complaint. The 28 plaintiffs with exact matches (and the last four digits of their respective phone numbers) are: Baucom (2093), Bowen (0107), Brockington (7806), Cheer (6476), Cruz (0490), Curry (6547), Cutter (5361), Czapiga (1121), Diaz (9314), Duffy (7959), Edwards (6304), Foster (3584), Hurst (5155), Kondo (0348), Ledo (1456), Blackmon (1299), Maupin-Alvarez (4256), Mogg (2720), Nobles (4844), Pickens (1587), Pye (6265), Rieke (2463), Sanders (5021), Tatro (1926), Chiquita Williams (9579), Williamson (5379), Wynter (7820), and the Pruzans (4747). The two non-matches appear to be the result of typographical errors in the First Amended Complaint. Plaintiff Ramella alleges he was called at a number ending in 4886. A number in Ocwen's records for Mr. Ramella ending in 4668 exactly matches his allegations. Plaintiff Surface alleges she was called 1,252 times between April 10, 2012 and November 16, 2015 on a number ending in 5576. Ocwen's call data production shows that exact number of calls starting on that same date, but ending exactly one month later, December 16, 2015.

3

to Florida cellphones. In total, the *Graham* plaintiffs are alleging at least 65,607 calls in violation of the TCPA and are claiming at least $32 million in TCPA damages from Ocwen.

The amended *Graham* complaint added the Hyde and Swigart law firm as plaintiffs' counsel. A May 10, 2017 complaint in the Central District of California by the Hyde and Swigart law firm alleged that the plaintiff, Carson Ezati, received at least 1,192 calls from Ocwen between March 29, 2013 and December 14, 2015. This number of calls in this time period corresponds exactly with the Ocwen call data. (Witinok Decl. ¶ 15(a).) There is evidence that Mr. Ankcorn was the source of the data concerning the number of calls and time period: in an email to Ocwen's counsel about Ezati's claims, Ezati's counsel refers to the number of calls shown in "Mark's data." (The email chain is appended to this motion as Exhibit 1.) The "Mark" in question is very likely Mark Ankcorn -- frequent co-counsel with Hyde and Swigart in TCPA cases.[2] It appears that Mr. Ankcorn is collaborating with the Hyde and Swigart law firm to use Ocwen's call data to solicit plaintiffs to bring their own cases against Ocwen.[3]

---

[2] Mr. Ankcorn has been co-counsel with Joshua Swigart in at least five other TCPA cases: *Harris v. A Team Leasing LLC*, 3:17-cv-00669-MMH-JRK (M.D. Fla., complaint filed June 12, 2017); *Rodriguez v. Real Time Resolutions*, 3:13-cv-00728-JAH-BLM (S.D. Cal., complaint filed March 26, 2013); *Rose v. Bank of Am. Corp.*, 5:11-cv-02390-EJD (N.D. Cal., complaint filed May 16, 2011); *Ramirez v. Bank of Am. Corp.*, 5:14-cv-02175-EJD (N.D. Cal., complaint filed August 31, 2011); *Gehrich v. Chase Bank*, 1:12-cv-05510 (N.D. Ill., complaint filed July 12, 2012).

[3] This collaboration seems apparent in two cases filed in this Court by Hyde and Swigart, where the number of calls and time period exactly matches the calls and time period in Ocwen's call data. *Hunt v. Ocwen Mortgage Servicing, Inc.*, No. 1:17-cv-03476 (N.D. Ill., complaint filed May 9, 2017); *Verdin v. Ocwen Mortgage Servicing, Inc.*, No. 1:17-cv-03482 (N.D. Ill., complaint filed May 9, 2017) (Witinok Decl. ¶ 15(b), (c).)

### The Court should hold a hearing to determine the extent
### of Mr. Ankcorn's breaches of his duty of confidentiality

The evidence that Mr. Ankcorn has breached his duty of confidentiality is compelling, and his violations are sufficiently serious that Ocwen respectfully submits that the Court should hold a hearing to determine the extent of his violations and the appropriate sanctions.

First, Mr. Ankcorn's violations of the Protective Order are sufficiently blatant to indicate that they were knowing. The Order, in plain language, states that "Confidential Information shall not be used or disclosed by...counsel for the parties...for any purpose whatsoever other than in this litigation." Mr. Ankcorn's use of Ocwen's Confidential Information to identify and solicit class members in order to bring litigation on their behalf is an unquestionable violation of this language.

Second, Ocwen's call data undoubtedly contained confidential information. Indeed, it contained nonpublic personal information covered by the Gramm-Leach-Bliley Act ("GLBA"), and Mr. Ankcorn's use of that information is barred by the Act. 15 U.S.C. § 6802(c); 16 C.F.R. § 313.11(c)(3). The GLBA thus guards against the use and disclosure of non-public "personally identifiable financial information," which includes information a consumer provides "to obtain a loan," "[a]ny information that a consumer provides to [a financial institution] or that [the institution or its agents] otherwise obtain in connection with collecting on, or servicing" a loan, and even "[t]he fact that an individual is or has been [a] customer[] or has obtained a...service." 16 C.F.R. § 313.3(o)(2)(i). The Ocwen call data includes telephone numbers provided by borrowers in loan documents and in connection with loan servicing, and the data shows the existence of a customer/borrower relationship, so the data are personally identifiable financial information protected by the Act.

5

2301545v.2

Ocwen disclosed its call data to Plaintiffs' counsel under the GLBA's "responses to judicial process" exception to disclosure of such information. 16 C.F.R. § 313.15(a)(7)(iii). But the GLBA narrowly constrains the use the recipient of such information under "judicial process" can make of the information. Thus, such a recipient (a "third party") "may disclose and use that information" only "<u>to carry out the activity covered by the exception under which it received the information</u>." 16 C.F.R. § 313.11(c) (emphasis added). *See, e.g., Ameriquest Mortg. Co. v. Washington State Office of Atty. Gen.*, 170 Wash. 2d 418, 436 (Wash. 2010) ("[T]he 'use' restriction of 16 C.F.R. § 313.11(c) imposes tight restrictions on what third parties can do with the protected information they receive."). Thus Mr. Ankcorn, as a third-party recipient of Ocwen's protected information, could only use it to carry out the activity for which Ocwen disclosed that information -- i.e., the prosecution of the *Snyder* litigation. Ocwen didn't (and under the GLBA <u>couldn't</u>) disclose that information to Mr. Ankcorn to allow him to identify new clients and assert claims on their behalf. *See Ameriquest*, 170 Wash. 2d, at 441(holding that State Attorney General could not disclose phone numbers of Ameriquest customers received in the course of an investigation because "[n]ot only are these bits of information personal identifiers," but their disclosure would reveal the fact that the individuals associated with those phone numbers were Ameriquest customers); *id.* at 432 (holding that "the mere existence of the customer relationship is personally identifiable financial information") (citing 16 C.F.R. § 313.3(o)(2)(i)(C)); *id.* at 435-36 (holding that the GLBA barred the Attorney General's use of that information for any purpose other than conducting the investigation for which Ameriquest provided that information).[4]

---

[4] On appeal after remand, the court held that the Attorney General could not disclose even redacted documents because "simply by redacting the personal identifiers in the E-mails, the

6

2301545v.2

Third, Mr. Ankcorn's actions are in violation of his obligations of good faith and jeopardize the settlement. The Settlement Agreement recites that the settlement was "negotiated in good faith" (§ 17.3) and that counsel would "cooperate reasonably and in good faith with the goal of obtaining entry of the Final Approval Order and the Judgment" (§ 8.2). And, like any contract, the Settlement Agreement includes a covenant of good faith and fair dealing. *See, e.g., Spircoff v. Spircoff*, 392 N.E. 2d 363, 369 (Ill. App. 1979) (settlement agreements contain implied promise of good faith and fair dealing). But Ocwen was not told during the settlement negotiations that Mr. Ankcorn would be cherry-picking potential high-value claimants to persuade them to bring their own claims. Ocwen would have been much less willing to agree to the settlement had it known that Mr. Ankcorn would be acting to diminish its value to Ocwen. *See, e.g., Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 883-86 (7th Cir. 2000) (under Illinois law, implied duty of good faith means that contract party cannot act "in a manner inconsistent with the reasonable expectations of the parties").

In *CE Design Ltd. v. Cy's Crabhouse, Inc.*, 07 C 5456, 2010 WL 2365162 (N.D. Ill. June 11, 2010), the Court was similarly faced with evidence that counsel had violated their duty of confidentiality by using materials protected against disclosure to bring further TCPA lawsuits. The Court, "troubled by the conduct of [plaintiff's] counsel," ordered "a further hearing to determine how the materials...have been used and the rationale supporting such use," and to determine whether sanctions were appropriate "under the Court's inherent authority to sanction bad faith litigation conduct, 28 U.S.C. 1927, or both...." *Id.* at *7.[5] Ocwen respectfully submits

---

AGO has 'used' the information, regardless of what is left behind in the messages." *Ameriquest Mortg. Co. v. Office of Attorney Gen. of Washington*, 177 Wash. 2d 467, 484 (Wash. 2013).

[5] As the Court noted in a subsequent decision in the same case (2010 WL 3327876 at *2), it held in its June 11 decision that because plaintiffs' counsel had given good reason to believe that they would treat the documents as confidential, the protective order applied notwithstanding that the

that this same course is appropriate here: the Court should schedule a hearing to determine how Mr. Ankcorn has used Ocwen's call data and, if it finds that that use was inappropriate, what sanctions it should impose. Ocwen further requests leave to take a deposition of Mr. Ankcorn, lasting no longer than three hours, in advance of that hearing.

DATED:  November 21, 2017

Respectfully submitted,

OCWEN LOAN SERVICING, LLC


By:  /s/  Simon Fleischmann
Simon Fleischmann (6274929)
*sfleischmann@lockelord.com*
Thomas J. Cunningham (6215928)
*tcunningham@lockelord.com*
Chethan Shetty (6300848)
*cshetty@lockelord.com*
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Phone: 312-443-0700

Brian V. Otero, Admitted Pro Hac Vice
*botero@hunton.com*
Stephen R. Blacklocks, Admitted Pro Hac Vice
*sblacklocks@hunton.com*
Ryan A. Becker, Admitted Pro Hac Vice
*rbecker@hunton.com*
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
Phone: 212-309-1000

Attorneys for Defendant
Ocwen Loan Servicing, LLC

---

documents had not been designated as confidential at the time of disclosure. (The Court subsequently cancelled the hearing it had ordered to determine the scope of counsels' use of the materials on finding that they were not in fact confidential. *Id.* at \*\*1, 3. Ocwen's call data is plainly confidential though, for, as described above, it contains borrower telephone numbers that are protected against disclosure by statute (the GLBA had no application in *CE Design*).)

8

**CERTIFICATE OF SERVICE**

  I, Simon Fleischmann, an attorney, certify that I caused the foregoing to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on November 21, 2017.

                /s/ Simon Fleischmann

2301545v.2