**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated, | CONSOLIDATED NO. 1:14-cv-08461 |
| Plaintiffs, | |
| v. | |
| OCWEN LOAN SERVICING, LLC, | Hon. Judge Matthew F. Kennelly |
| Defendant. | |
| TRACEE A. BEECROFT, | Case No. 1:16-cv-08677 |
| Plaintiff, | |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................2

    A.    Counsel have obtained an excellent result for the Settlement Class.................2

    B.    The action involved considerable risk ...............................................................3

    C.    Counsel thoroughly and efficiently investigated the class claims .....................4

III.    THE SEVENTH CIRCUIT STANDARD FOR COMMON
FUND SETTLEMENTS..........................................................................................6

IV.    ARGUMENT ...........................................................................................................7

    A.    The percentage-of-the-fund approach is appropriate here ................................7

        1.    The requested fee is presumptively reasonable .....................................8

        2.    The requested fee reflects the market rate for legal
services in this Court...............................................................................9

        3.    The requested fee request is consistent with fees awarded in
similar TCPA class actions in light of the risks involved...................10

        4.    Other factors the Seventh Circuit has identified as relevant to
the market rate support the fee request .................................................13

            a.    The risk of nonpayment supports the requested fee.................14

            b.    Counsel's performance supports the requested fee..................14

            c.    The stakes of the case support the requested fee .....................15

    B.    Plaintiffs' expert expense are reasonable and appropriate...............................16

    C.    The service awards to the Class Representatives are appropriate....................16

V.    CONCLUSION.......................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page**

*ACA Int'l v. FCC,*
    No. 15-1211 (D.C. Cir.) .............................................................................4, 12

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.,*
    No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ...............................13

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.,*
    743 F.3d 243 (7th Cir. 2014) ............................................................................7

*Aranda v. Caribbean Cruise Line, Inc.,*
    No. 12-4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017)...........................7, 11

*Birchmeier v. Caribbean Cruise Line, Inc.,*
    302 F.R.D. 240 (N.D. Ill. 2014)......................................................................12

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980).........................................................................................6

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ...................................................................16, 17

*Craftwood Lumber Co. v. Interline Brands, Inc.,*
    No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) .........................7, 17

*Estrada v. iYogi, Inc.,*
    No. 13–1989, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ..............................16

*Florin v. Nationsbank of Ga., N.A.,*
    34 F.3d 560 (7th Cir. 1994) .........................................................................8, 14

*Gaskill v. Gordon,*
    942 F. Supp. 382 (N.D. Ill. 1996) ...............................................................8, 10

*Golan v. Veritas Entm't, LLC,*
    No. 4:14-cv-69-ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017)...............13

*Heekin v. Anthem, Inc.,*
    05-1908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)..................................17

*In re Capital One TCPA Litig.,*
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................... *passim*

ii

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...................................................................................8

*In re Ready-Mixed Concrete Antitrust Litig.*,
    No. 05-979, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) .................................8

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ................................................................... *passim*

*Jamison v. First Credit Servs.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ...............................................................................12

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ...................................................................................10

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ............................................................... *passim*

*Manouchehri v. Styles for Less, Inc.*,
    Case No. 14-2521, 2016 WL 3387473 (S.D. Cal. June 20, 2016) ....................15

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ...............................................................................8, 9

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...............................................................................8, 9

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
    Case No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...................10

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*,
    No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) .................................12

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) ..............................................................................9, 14

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ..............................................................................6, 13

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005). ...................................................................................9

*Wright v. Nationstar Mortg. LLC*,
    No. 14-1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016) .................................7

**FEDERAL RULES**

Fed. R. Civ. P 23 ................................................................................................................ *passim*

## I. INTRODUCTION

The Court has preliminarily approved a proposed class action settlement ("Settlement") between Plaintiffs, individually and behalf of all others similarly situated, and Defendant Ocwen Loan Servicing ("Ocwen"). The Settlement is an excellent result for the Settlement Class; it requires Ocwen to pay $17,500,000 into a common fund for the benefit of a class of persons called on 1,685,757 unique cellular telephone numbers (the "Settlement Class"). Settlement Class members have until March 5, 2018 to submit their claim forms, object, or opt out of the Class. Dkt. Nos. 266, 279, 290. As of today, the Settlement Administrator has received 232,949 claims. Only 52 Class members have opted out of the Settlement, and none have objected. If the claims period closed today, each claimant would receive approximately $45.

The Settlement is the result of the extraordinary efforts of experienced and knowledgeable attorneys. Counsel battled with Ocwen for years to obtain the evidence they needed to prove Ocwen systematically violated the TCPA. Ocwen resisted these attempts at every turn, even when it was clear from ongoing accounts of Class Members that Ocwen continued to violate the TCPA. Plaintiffs moved to enjoin Ocwen's behavior, and after taking testimony surrounding Ocwen's consent practices, the Court agreed that Plaintiffs would be entitled to injunctive relief. This was the turning point in the case. After nearly three years of hard-fought litigation, Ocwen finally agreed to resolve the litigation.

To compensate them for their efforts, Burke Law Offices, LLC, Terrell Marshall Law Group PLLC, The Cabrera Firm, APC, and Heaney Law Firm, LLC ("Counsel")[1] seek a fee award of $5,289,250, which is one-third of the net common fund after settlement administration expenses and service awards to the named Plaintiffs are deducted. The requested fee reflects the market price for contingent legal fees in complex litigation: it is consistent with fees awarded by

---

[1] Ankcorn Law Firm PLLC may file a separate fee petition.

the Court in TCPA litigation, it reflects the risks presented by this case, the quality of the work performed by Counsel, and the result achieved.

Counsel also respectfully request that the Court reimburse their out-of-pocket expenses totaling $66,780, and grant service awards of $25,000 each to named Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee Beecroft. The requested attorneys' fees and service awards are reasonable and in line with the Seventh Circuit's guidelines. For these reasons, movants respectfully request that the Court grant their motion.

## II. STATEMENT OF FACTS

### A. Counsel have obtained an excellent result for the Settlement Class.

The Settlement Agreement provides that Ocwen will pay $17,500,000 into a Settlement Fund from which all Settlement Class members will have the opportunity to make a claim. Dkt. No. 252-1 ("Agr.") § 4.5.1. The amount of each Settlement Class member's cash payment will be based on a *pro rata* distribution, for up to three cell phone numbers called, and will depend on the number of valid and timely claims. *Id*. § 4.5.4.

Settlement Class members must submit a claim form, either by mail or electronically. Agr. § 7.1. Regardless of the method, Settlement Class members need only complete and sign a single-page claim form in order to submit a claim. Class members have until March 5, 2018 to submit their claim forms, object to the Settlement or opt out of the Class. *See* Dkt. Nos. 266, 279, 290. As of today, the Settlement Administrator has received 232,949 claims, or 13.8% of the 1,685,757 cell phone numbers Ocwen called. Terrell Decl. ¶ 2. The Settlement Administrator has agreed to cap the cost of notice and claims administration at $1,600,000. *Id.* If the claims process closed today, Class Members would receive approximately $45. *Id.* ¶ 27. This amount is less than the $60 estimate provided in the notice to Class Members, which was based on a ten percent

claim filing rate. *Id*.

If administratively feasible, the Settlement Administrator will make a second distribution to valid Claimants of any amounts remaining after the initial distribution. Agr. § 4.5.6. Any residual funds remaining after the second distribution—or after the first distribution if a second is not administratively feasible—will be distributed to a non-profit charitable organization. *Id*. The parties have proposed equal *cy pres* distributions to the National Consumer Law Center and Public Justice Foundation. *Id*. Not one penny of the Fund will revert to Ocwen. Thus, the Settlement achieved provides real monetary relief to the Settlement Class.

**B.      The action involved considerable risk.**

Counsel undertook representation of this matter on a pure contingency-fee basis. Terrell Decl. ¶ 17. As a result, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment, all while devoting time to this case that otherwise could have been spent on other matters. *Id*.

First, Plaintiffs risked losing on the merits. Terrell Decl. ¶ 23. Ocwen maintains that Class members are not entitled to recover because they consented to be contacted on their cell phones by providing their numbers to Ocwen verbally or in writing. *Id*. Consent is an affirmative defense for which Ocwen carries the burden of proof, and Plaintiffs dispute that Ocwen could meet this burden at trial. *Id*. However, if the trier of fact disagreed with Plaintiffs on this legal issue, Plaintiffs and the Class would receive nothing. *Id*.

Second, Ocwen's consent defense carried the risk that Plaintiffs' motion to certify under Rule 23(b)(3) would not succeed. Terrell Decl. ¶ 24. Ocwen maintains that many class members consented to receive calls to their cell phones, but that determining who consented is an individualized issue that requires a loan-by-loan analysis. *Id*. Although Plaintiffs believe the

- 3 -

Court would reject Ocwen's defense as hypothetical, and that they would have successfully certified one or more Rule 23(b)(3) classes, there is a risk that the Court would decline to grant certification, leaving only the named Plaintiffs to pursue their individual claims. *Id.*

Finally, if Plaintiffs obtained Rule 23(b)(3) class certification and prevailed on the merits, any recovery would undoubtedly be delayed for years by an appeal. Many of the calls made by Ocwen were initiated manually. Terrell Decl. ¶ 25. In *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.), the D.C. Circuit is considering a challenge to the proscription on calls initiated from a telephone dialing system when such calls are initiated manually. *Id*. The outcome of this appeal could alter the legal landscape to the Settlement Class Members' detriment. *Id*. Moreover, the large class size means any judgment would be in the billions; Ocwen would have a strong incentive to litigate any and all appeals as far as possible, over many years. *Id.*

## C. Counsel thoroughly and efficiently investigated the class claims.

The parties engaged in three years of adversarial litigation before they reached the Settlement. Plaintiffs took extensive discovery. Terrell Decl. ¶ 18. Together, they served Ocwen with seven sets of written discovery. *Id*. In response, Ocwen produced nearly 600,000 pages of documents. *Id*. Plaintiffs also deposed four of Ocwen's representatives: Diksha Dutt, Marc Trees, Crystal Kearse, and Sherri Goodman. *Id*. Through their review of Ocwen's voluminous production, and the depositions of Ocwen's representatives, Plaintiffs learned that, prior to 2014, Ocwen had no policies, practices, or procedures for obtaining consent before using its Aspect autodialer to call cell phones. *Id*. Ocwen called phone numbers logged as "home," "work," or "other" without first scrubbing to determine whether they were cell phones, and without regard to consent. *Id*. In addition, Ocwen had a practice of not honoring borrowers' verbal requests to stop calling. *Id*. Plaintiffs hired expert Jeff Hansen to review the Aspect calling records. *Id*. His

analysis shows that Ocwen made over one hundred million Aspect calls to cell phones belonging to consumers, for whom Plaintiffs allege Ocwen had no record of consent. *Id.*

Obtaining discovery from Ocwen was no easy feat. Terrell Decl. ¶ 19. Ocwen resisted producing important discovery, including insurance policies, information about its proprietary systems and databases, discovery relating to when and how Ocwen tracked consent, evidence that Ocwen ever obtained consent, and discovery on Ocwen's handling of revocation requests. *Id.* Ocwen's resistance to complying with discovery requests forced Plaintiffs to bring multiple motions to compel production and related discovery motions. *See* Dkt. Nos. 49, 58, 74, 103, and 179. Because of the adversarial nature of the litigation, the Parties appeared before the Court telephonically or in person on a monthly, and sometimes weekly basis, and ultimately appeared for an evidentiary hearing to address whether the Court would impose a preliminary injunction. *See* Dkt. No. 61, 67, 72, 78, 84, 102, 106, 115, 119, 126, 175, 182, 193, 204, 208.

Plaintiffs, along with their expert Jeff Hansen, also responded to written discovery propounded by Ocwen. Terrell Decl. ¶ 20. Moreover, Ocwen deposed each Plaintiff, along with several of Plaintiffs' family members. *Id.* Finally, Plaintiffs served subpoenas on the Better Business Bureau, where they obtained additional consumer complaints against Ocwen and its insurance broker, in an effort to obtain information regarding insurance coverage (if any). *Id.*

In addition to discovery-related motions, the parties engaged in substantive motion practice. Terrell Decl. ¶ 21. On October 4, 2016, Plaintiffs filed a motion seeking class certification under Rule 23(b)(2) for purposes of obtaining preliminary injunctive relief. Dkt. No. 97. Although Ocwen opposed this motion (Dkt. No. 128), on June 28, 2017, the Court held that Plaintiffs had established the basis for certification of a class under Rule 23(b)(2) and were entitled to preliminary injunctive relief. Dkt. No. 223. In addition, on May 26, 2017, Plaintiffs

moved to certify damages classes under Rule 23(b)(3). Dkt. No. 216. Ocwen opposed this motion on July 24, 2017. Dkt. No. 141.

On July 20, 2017, before the Parties completed submissions on the merits of certifying damages classes, they engaged in mediation with the Honorable Morton Denlow (Ret.) of JAMS in Chicago—their third mediation. Terrell Decl. ¶ 22. The Parties held their first mediation on May 25, 2016, with the Honorable James Holderman (Ret.) of JAMS in Chicago. *Id*. The second mediation took place on October 14, 2016 in Florida, with Rodney A. Max, Esq. *Id*.

By the time the Parties mediated with Judge Denlow—nearly three years into the litigation—they understood the risks involved in the case. Terrell Decl. ¶ 23. A few days following their mediation session with Judge Denlow, the Parties executed a term sheet and subsequently finalized the Settlement Agreement. *Id*. ¶ 22.

## III. THE SEVENTH CIRCUIT STANDARD FOR COMMON FUND SETTLEMENTS

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

- 6 -

In common fund cases, unlike fee-shifting cases, courts have discretion to use one of two methods to determine whether counsel's request reflects the market rate for legal services: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. *See, e.g., Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

## IV.  ARGUMENT

### A.    The percentage-of-the-fund approach is appropriate here.

Courts in this District have routinely found the percentage-of-the-fund approach superior to the lodestar method for determining the market price for legal services in TCPA class action settlements. *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at **2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to apply lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14-1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (same). The percentage-of-the-fund approach is particularly appropriate in consumer class actions because the custom is for counsel and plaintiffs to "negotiate[] a fee arrangement based on a percentage of the recovery." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) ("*Capital One*") (applying percentage-of-the-fund method in TCPA class action). "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis," which is something that consumer class members "likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill.

2015) (using percentage-of-the-fund method in TCPA class action).

The Seventh Circuit has found that "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *see also In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-979, 2010 WL 3282591, at *2 (S.D. Ind. Aug. 17, 2010) ("the 'percentage of the fund' approach to determining reasonable attorneys' fees is favored by the Seventh Circuit is also the most accurate reflection in this case of the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

Counsel and Plaintiffs have created a $17,500,000 non-reversionary settlement fund that provides real value to the Settlement Class. The preferred and more administratively feasible percentage-of-the-fund method is appropriately used to calculate Counsel's fee for their work to attain that excellent result for the Class.

1.  The requested fee is presumptively reasonable.

"The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572. Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th

Cir. 2014)). Although there is no hard-and-fast rule, in consumer class actions in the Seventh

Circuit, attorneys' fees to counsel "should not exceed a third or at most a half of the total."

*Redman*, 768 F.3d at 631.

Here, Counsel seek fees of $5,289,250, which equals one-third of the net Settlement

Fund. If Counsel's requested fees are approved, the Settlement Class Members will receive

$10,535,750 ($17,500,000 settlement fund - $5,289,250 attorneys' fees - $75,000 class

representative awards - $1,600,000 costs of administration). Thus, the "fee plus what the class

members would receive" totals $15,825,000 ($5,289,250 + $10,535,750). Based on the ratio set

forth in *Pearson* and *Redman*—fees to fees plus the value to class members—the request for fees

constitutes one-third of the total settlement value, which is within the acceptable range of fee

awards in the Seventh Circuit. Therefore, the requested fee is presumptively reasonable under

*Pearson* and *Redman*.

> 2.    The requested fee reflects the market rate for legal services in this Circuit.

A fee award should "approximate the market rate that prevails between willing buyers

and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957

(7th Cir. 2013) (citations omitted). To determine the market rate, courts consider "actual fee

contracts that were privately negotiated for similar litigation, information from other cases, and

data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

However, in TCPA cases, data from fees determined before litigation commences or via a court-

supervised "auction" is virtually non-existent. *Capital One*, 80 F. Supp. 3d at 796–97. Thus,

courts generally consider whether the requested fee is consistent with fees awarded at the end of

similar class actions. *See Kolinek*, 311 F.R.D. at 493–94 (citing *Taubenfeld*, 415 F.3d at 600).

In this Circuit, it is customary for counsel to negotiate a contingency agreement in the range of 30–40%. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund). This factor favors approving the fee request for one-third of the net award.

3.     <u>The requested fee request is consistent with fees awarded in similar TCPA class actions in light of the risks involved.</u>

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek*, 311 F.R.D. at 493–94 (citation omitted). In 2015, the Honorable James F. Holderman (ret.) performed an extensive analysis using data compiled from seventy-two post-2010 TCPA class settlements to determine the appropriate market rate for fee awards in common-fund TCPA settlements. *Capital One*, 80 F. Supp. 3d at 798–804. Judge Holderman concluded that the market rate in a typical TCPA class action is a sliding-scale fee that is calculated based on a percentage of the common fund recovery achieved for the benefit of the settlement class. *Id.* at 804, n. 16; *see also In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003) ("*Synthroid II*") (awarding 30% of the first $10 million of recovery in a common fund and a decreasing percentage of the fund above $10 million because the market rate "likely falls as the stakes increase").

After scrutinizing data from the seventy-two TCPA cases, Judge Holderman determined that the baseline market rate (or sliding scale) for the award of fees in TCPA class actions, prior

to accounting for the risks of the particular case, is 30% for the first $10 million, 25% for the second $10 million, 22% for the band from $20 million to $45 million, and 15% for the remainder. *Capital One*, 80 F. Supp. 3d at 804, n. 13 (citing *Synthroid II*, 325 F.3d at 979). Judge Holderman then awarded a "risk premium" based, in part, on the risk consent issues posed to class recovery. *See In re Capital One*, 80 F. Supp. 3d at 805 (noting risks posed by fact that "[s]ome customers provided Capital One with their cell phone numbers as their primary contact numbers, arguably waiving any right not to receive debt-collection calls").

Likewise, the Court has recognized that the risks associated with a defendant's consent defense, along with other risks in TCPA cases, may warrant an increase in the percentage used to calculate counsel's fee. In *Kolinek*, the Court used the method adopted in *Capital One* to award 36% of the fund—a 30% baseline rate plus a 6 percentage point risk adjustment—even though the case "did not proceed past the earliest phases of formal discovery before it was settled" because the risks involved in establishing liability were "real and significant." *Kolinek*, 311 F.R.D at 502–03. In *Aranda,* the Court started with the award structure in *Capital One* and applied a six-point premium to the first band of recovery, but also applied a five-point premium to the second band of recovery. *Aranda*, 2017 WL 1369741, at * 9. Though the plaintiffs did not face the risks described in *Capital One* and *Kolinek* as to consent or establishing liability, "other difficult legal and factual issues did pose potential obstacles to plaintiffs' success." *Id*. at *7.

The risks involved here are similar to those in *Capital One*, *Kolinek*, and *Aranda*. First, the risk of further protracted litigation—and ultimately of no recovery at all—was serious in this case, given Ocwen's consent defense. Ocwen insists that many class members consented to the calls by giving their phone numbers to Ocwen. Plaintiffs dispute that Ocwen could meet this burden at trial because Ocwen admits that determining *en masse* which borrowers consented is

nearly impossible. However, if the Court agreed with Ocwen that many class members provided consent, Plaintiffs risked losing on the merits at summary judgment or trial.

Second, Ocwen's consent defense presented a hurdle to certifying one or more Rule 23(b)(3) classes. Difficult legal and factual issues posing potential obstacles to class certification are factors suggestive of non-recovery. *Aranda*, 2017 WL 1369741, at *7. Courts have reached different results depending on the circumstances of each case. *See, e.g., Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC,* No. 12-3671, 2012 WL 6106714, at *6 (N.D. Ill. Dec. 6, 2012) (certifying TCPA class and finding that no evidence supported view that issues of consent would be individualized); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 106-07 (N.D. Ill. 2013) (declining to certify because "issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone"). There was a real risk that the Court would find that the consent evidence Ocwen identified in opposing Plaintiffs' motion to certify Rule 23(b)(3) classes created individualized issues that would defeat predominance.

Third, there has been an ongoing challenge to Federal Communications Commission ("FCC") rules regarding the TCPA, including rules on what constitutes an automatic dialer. If the D.C. Circuit in *ACA Int'l v. FCC,* No. 15-1211 (D.C. Cir.) concludes that calls made manually from a telephone dialing system do not violate the TCPA, without the protection of the settlement, the claims of untold Class Members will fail.

Fourth, Plaintiffs faced challenges even if they prevailed at trial. This case involves nearly two million class members and nearly one hundred million calls, resulting in large statutory damages. Some courts view awards of aggregate, statutory damages with skepticism

and either refuse to certify a class or reduce such awards on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *Golan v. Veritas Entm't, LLC*, No. 4:14-cv-69-ERW, 2017 WL 3923162, *4 (E.D. Mo. Sept. 7, 2017) (holding TCPA damages of $1.6 billion ($500 per call) was "obviously unreasonable," and awarding damages of $32.4 million ($10 per call) instead). And even if this Court permitted such an award, a large statutory fee recovery in this case, driven by the large class size, would likely be impossible to recover, both based on Ocwen's claim that it lacked the financial resources to do so, and due to Ocwen's strong incentive to litigate appeals of any judgment as far as possible over many years.

Given the significant risk Counsel shouldered in taking this case, their request for an award of 30% of the net Settlement Fund plus a six percentage point risk adjustment on the first band ($3,600,000), and 25% of the net Settlement Fund plus a four percentage point risk adjustment on the second band ($1,689,250), is appropriate. The modest upward adjustments to the *Capital One* structure result in an award of one-third of the net Settlement Fund.

> 4.   <u>Other factors the Seventh Circuit has identified as relevant to the market rate support the fee request.</u>

The Seventh Circuit has held that the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Each factor supports the requested fee.

a.       *The risk of nonpayment supports the requested fee.*

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958. Thus, the risk of non-payment is a key consideration in assessing a fee request, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted). Prosecution of this action has involved significant financial risk. Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery. Terrell Decl. ¶ 17. Counsel litigated this case aggressively for two years before participating in mediation, and the litigation became increasingly adverse after each failed mediation, until the parties finally reached common ground on the heels of their third mediation. *Id.* ¶¶ 18-22.

b.       *Counsel's performance supports the requested fee.*

The requested fee award reasonably reflects the "market price" given the quality of Counsel's performance. *See Sutton*, 504 F.3d at 693. Counsel's efforts were extraordinary. They fought for production of hundreds of thousands of documents which exposed Ocwen's poor consent practices, deposed multiple witnesses, and labored to secure injunctive relief —nearly three years of diligent work that ultimately provided the leverage needed to reach settlement with a recalcitrant corporation that refused to change its policies and procedures even after being sued.

Despite the risks in this case, by applying their skill and experience, Counsel negotiated a Settlement that requires Ocwen to pay $17,500,000 into a Settlement Fund. With two months remaining in the claims period, the Settlement Administrator already has received 232,949 claims, representing 13.8% of the 1,685,757 cell phone numbers Ocwen called. Terrell Decl. ¶ 2. Even if the claim rate rises, Plaintiffs estimate claimants will receive awards in line with other TCPA settlements. *See Wright*, 2016 WL 4505169 at *8–9 (approving TCPA settlement with claimants receiving $45); *Capital One*, 80 F. Supp. 3d at 789 (granting final approval where each class member would be awarded $39.66); *Kolinek*, 311 F.R.D. at 493–94 ($30); *Manouchehri v. Styles for Less, Inc.*, Case No. 14-2521, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class could opt to receive either $10 cash award or $15 voucher); *Estrada v. iYogi, Inc.,* No. 13–1989, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where claimants estimated to receive $40). This excellent result supports the fee request.

      c.    *The stakes of the case support the requested fee.*

This action involves autodialed calls Ocwen made to Class Members' 1,685,757 cell phones without consent. Though the TCPA provides for statutory damages, for most Class Members, the cost and risk of individual litigation is too daunting, and the costs to successfully prosecute individually are so high, that a class action is realistically the only way to obtain relief. Those who wish to pursue individual litigation can, of course, opt out of the Settlement—though, thus far, only 52 have done so. Terrell Decl. ¶ 2. As most Class Members likely would not have received any relief without Counsel's rigorous prosecution of this action, the requested fee is reasonable.

**B.      Plaintiffs' expert expenses are reasonable and appropriate.**

The Court is also authorized to award reasonable litigation expenses. *See* Fed. R. Civ. P. 23(h) (authorizing court to "award reasonable ... nontaxable costs that are authorized by law or by the parties' agreement"); Agr. § 4.5.1 (costs to be deducted from the Fund). Here, Counsel seek $66,780 in out-of-pocket expert expenses, which is less than the $100,000 Plaintiffs anticipated at preliminary approval. Terrell Decl. ¶ 28. Expert Jeffrey Hansen has submitted an invoice to Plaintiffs for 218.80 hours spent: analyzing data produced by Ocwen, including call detail records and comment logs, identifying wireless numbers from the data, querying the data, and compiling his opinions into three expert reports that Plaintiffs used to support their motions to certify injunctive relief and damages classes. *Id.* The reports provide additional detail regarding the extensive expert services Mr. Hansen performed. *Id.* Two reports are already part of the record. *See* Dkt. Nos. 136-1, 136-2, 218-2. The third is attached as <u>Exhibit A</u> to the Declaration of Beth E. Terrell. For these services, Mr. Hansen charged $300 per hour. Terrell Decl. ¶ 28. Mr. Hansen also sat for a three-hour deposition noted by Ocwen, for which Mr. Hansen charged Plaintiffs $380 per hour. *Id.*

**C.      The service awards to the Class Representatives are appropriate.**

Service awards (sometimes called "incentive awards") compensating named plaintiffs for work done on behalf of the class are routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

- 16 -

The requested service awards of $25,000 for each named Plaintiff are reasonable. Each Plaintiff worked with Counsel to investigate the case, responded to written discovery requests, were kept abreast of the proceedings, reviewed and approved the proposed settlement, and sat for depositions. Terrell Decl. ¶ 26. In addition, Plaintiffs' family members were required to sit for depositions. *Id.* Moreover, the amount requested is consistent with awards approved in this District and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 service award); *Craftwood Lumber Co.*, 2015 WL 1399367 (awarding $25,000 service award to plaintiff in TCPA case); *Heekin v. Anthem, Inc.*, 05-1908, 2012 WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection).

## V. CONCLUSION

For the foregoing reasons, movants respectfully request that the Court grant their motion and award attorneys' fees in the amount of $5,289,250, which amounts to one-third of the Settlement Fund net notice expenses, service awards, and expert costs. Counsel further request that the Court reimburse their out-of-pocket expenses totaling $66,780, and approve service awards in the amount of $25,000 each to the named Plaintiffs.

RESPECTFULLY SUBMITTED AND DATED this 5th day of January, 2018.

TERRELL MARSHALL LAW GROUP PLLC


By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
     Beth E. Terrell, Admitted Pro Hac Vice
     Email: bterrell@terrellmarshall.com
     Adrienne D. McEntee, Admitted Pro Hac Vice
     Email:  amcentee@terrellmarshall.com
     936 North 34th Street, Suite 300
     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450

Alexander H. Burke, #6281095
Email:  aburke@burkelawllc.com
Daniel J. Marovitch, #6303897
Email:  dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

Mark L. Heaney
Email:  mark@heaneylaw.com
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, Minnesota 55305
Telephone: (952) 933-9655

Guillermo Cabrera
Email: gil@cabrerafirm.com
Jared Quient, *Admitted Pro Hac Vice*
Email: jared@cabrerafirm.com
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 500-4880
Facsimile: (619) 785-3380

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on January 5, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Chethan G. Shetty
Email:  cshetty@lockelord.com
Simon A. Fleischmann
Email:  sfleischmann@lockelord.com
Thomas J. Cunningham
Email:  tcunningham@lockelord.com
David F. Standa
Email:  dstanda@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Brian V. Otero, *Admitted Pro Hac Vice*
Email:  botero@hunton.com
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
Email:  sblacklocks@hunton.com
Ryan A. Becker, *Admitted Pro Hac Vice*
Email:  rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, Suite 52
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant*

Frank A. Hirsch, Jr., *Admitted Pro Hac Vice*
Email:  frank.hirsch@alston.com
Kelsey L. Kingsbery
Email:  Kelsey.kingsbery@alston.com
ALSTON & BIRD LLP
4721 Emperor Boulevard, Suite 400
Durham, North Carolina 27703
Telephone: (919) 862-2200

- 19 -

Kenneth M. Kliebard
Email:  Kenneth.kliebard@morganlewis.com
William J. Kraus
Email:  William.kraus@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 324-1000

*Attorneys for Movants Wilmington Trust, N.A., Deutsche Bank National Trust
Company and U.S. Bank, N.A.*

E. Lynette Stone
Email:  els@thestonelawoffice.com
THE STONE LAW OFFICE
2101 Cedar Springs Road, #1050
Dallas, Texas 75201
Telephone: (972) 383-9499

*Attorney for Intervenor-Plaintiff Zachariah C. Manning*

Mark Ankcorn, #1159690
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM PLLC
200 West Madison Street, Suite 2143
Chicago, Illinois 60606
Telephone: (321) 422-2333
Facsimile: (619) 684-3541

Ann Marie Hansen
Email: annmarie@ankcornlaw.com
80 Halston Parkway
East Amherst, New York 14051
Telephone: (702) 755-5678

DATED this 5th day of January, 2018.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*