IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Snyder**, *et al.* <br><br> v. <br><br> **Ocwen Loan Servicing, LLC** | Case No. 1:14-cv-8461 <br> (related to *Snyder v. U.S. Bank, N.A., et al.*, No. 16-cv-11675) <br><br> Hon. Matthew F. Kennelly |

**Response re Order to Show Cause (dkt. 290)**

There is no basis in law or fact to remove Ankcorn Law Firm PLLC (the "Firm") as Class Counsel from this matter. As the original filing attorneys, the Firm carried this action from pre-filing investigation through the early phases of discovery and continued to lead the case through negotiation of the settlement.

Attorneys and staff of the Firm have dedicated hundreds of hours of time and expended tens of thousands of dollars to prosecute this matter, developing crucial evidence in support of the successful motion for a preliminary injunction and effectively negotiating a favorable settlement for the class. The Firm has extensive class action and Telephone Consumer Protection Act ("TCPA") experience that has been invaluable in reaching that settlement. Ankcorn Decl., ¶¶ 30-33.

The Firm has represented the class at all times in an ethical manner and has not breached any duties to its clients, including the members of the settlement class. Ankcorn Decl., ¶ 23. Any representation to the contrary is false and is only made for personal gain.[1]

---

[1] Both Ocwen and co-counsel have personal incentives to attempt to have the Firm removed as Class Counsel that have nothing to do with concern for the class or the settlement.

I.  **Procedural History**

The Firm was the original filing counsel, identifying potential representative plaintiffs and investigating for viable causes of action. If not for the Firm's efforts, neither the action nor the settlement would exist.

Even before Plaintiff Keith Snyder contacted the Firm and related his experiences, the Firm had represented several clients with claims against Ocwen and made repeated applications for loan modifications on behalf of one former client. Ankcorn Decl., ¶ 4. Indeed, alone among Class Counsel, the undersigned has spoken on dozens of occasions with Ocwen telephone staff and was repeatedly called by Ocwen when a former client gave the Firm's office phone number as the best point of contact. *Id.* This familiarity with Ocwen and its calling practices has been invaluable to the successful prosecution of this class action. *Id.*

This lawsuit was filed on October 27, 2014, and the Firm filed two Motions for Class Certification the next day. Dkt. 1, 4, 7. On November 13, 2014, The Cabrera Firm, APC joined as co-counsel at the invitation of Mr. Ankcorn, even though that firm had never handled a TCPA case before. Dkt. 9. On December 22, 2014, Ocwen filed a motion to dismiss, which the Firm successfully opposed. Dkt. 20 (Motion), 25 (opposition), 33 (Order denying motion). In March, the Firm prepared initial discovery requests that were served on May 8, 2015. Ankcorn Decl., ¶ 5.

On April 16, 2015, approximately six months after this action was initiated, an Amended Complaint was filed adding plaintiff Susan Mansanarez to the case, and bringing the Terrell Marshall Law Group PLLC in to the lawsuit as co-counsel for the named plaintiffs. Dkt. 29. Discovery continued and on November 13, 2015, Mr. Ankcorn defended the deposition of Mr. Snyder. Ankcorn Decl., ¶ 7.

On May 25, 2016, the parties, including Mr. Ankcorn, conducted an all-day mediation session in Chicago with the Hon. James Holderman (ret.). Ankcorn Decl., ¶ 7. The parties were unable to reach a deal. *Id.* Discovery continued and on October 6, 2015, the Firm filed a motion to compel the production of documents. Dkt. 49.

On February 17, 2016, approximately one year and four months after the action was filed, Burke Law Offices, LLC made its initial appearance on behalf of the plaintiffs and putative class. Dkt. 60.

On April 15, 2016, June 21 and 23, 2016, and January 4, 2017, the depositions of various Ocwen employees were taken. Ankcorn Decl., ¶ 8.

Plaintiffs filed a second motion to compel on June 9, 2016. Dkt. 74.

On October 4, 2016, Plaintiffs moved for a class-wide preliminary injunction using witnesses that had been identified solely by the Firm and using a memorandum of law that had been initially drafted by the Firm. Dkt. 97.

On October 14, 2016, the parties, including Mr. Ankcorn, had a second all-day, in-person mediation sessions in West Palm Beach, Florida. Ankcorn Decl., ¶ 9. As before, the parties were unable to reach a deal.

On December 7, 2016, Mr. Ankcorn flew to Jacksonville, Florida to defend the deposition of Jonathan Cody, a witness who had been identified by the Firm's investigation and who offered sworn testimony in support of Plaintiffs' preliminary injunction motion. *Id.*, ¶ 10. On December 15 and 16, 2016, Mr. Ankcorn defended the depositions of Steve and Karen Bartolone in Santa Ana, California, both witnesses who had similarly been identified by the Firm's investigation. *Id.*, ¶¶ 11-12.

On April 3, 2017, an evidentiary hearing was held on the motion for preliminary injunction, and Ms. Hansen appeared on behalf of the Firm. Dkt. 204. Ms. Hansen had

contributed substantially to the preparation for that hearing by reviewing thousands of pages of documents produced by Ocwen that related to its witness' testimony. Hansen Decl., ¶ 4.

On May 19, 2017, the Firm filed a lawsuit against Ocwen in the United States District Court, Southern District of Florida, on behalf of five individuals who had been called on their cell phones by Ocwen's automatic dialer without their prior express consent in violation of the TCPA and Florida law. Ankcorn Decl. ¶ 13; *Graham, et al. v. Ocwen Loan Servicing, LLC*, No. 9:17-cv-80639 KAM ("*Graham*"). The Firm's involvement in *Graham* was minimal, and was undertaken at the request of the Hyde & Swigart law firm as they had not yet hired an attorney admitted to practice in Florida. Ankcorn Decl., ¶ 14. At the time of filing, there was no indication that Ocwen was interested in settling any litigation matter, particularly not this class action. *Id.*, ¶ 15.

Additional plaintiffs were added by an amended complaint on October 20, 2017, which also brought Hyde & Swigart into the action as counsel for all plaintiffs. *Id.*, ¶ 16. The Firm did not sign the amended complaint in *Graham*, had not participated in its drafting or preparation, and withdrew formally from the action on December 6, 2017 after having notified Ocwen weeks prior that it was no longer involved in that litigation. *Id.*, ¶ 17.

On May 26, 2017, Plaintiffs moved to certify three subclasses of persons who had been called by Ocwen on their cell phones without their consent. Dkt. 216. A few days later, counsel for Ocwen reached out to Plaintiffs' counsel to suggest that the parties meet for a third mediation session. Ankcorn Decl., ¶ 18.

On June 28, 2017, the Court found that "Plaintiffs have established the basis for certification of a limited class . . . and entitlement to at least some of the preliminary

4

injunctive relief they seek" and ordered additional briefing to determine the scope of relief that would be ordered. Dkt. 223.

On July 20, 2017, the parties, including Mr. Ankcorn, attended a mediation with the Hon. Morton Denlow (ret.) in Chicago. Dkt. 243. On July 28, 2017, the parties notified the Court that they had reached a settlement and jointly moved to stay the proceedings. Dkt. 243.

This case has been highly contested and vigorously litigated, with the active leadership of the Firm. Its attorneys have appeared at three separate mediations, at four depositions, and before this Court in person and in telephonic conferences on at least 18 occasions, including the contested evidentiary hearing where Ocwen's vice president Ms. Goodman testified. Ankcorn Decl., ¶ 19. Ms. Hansen from the Firm, along with Ms. McEntee of Terrell Marshall, led the preparation for that hearing and Ms. Hansen personally spent over 15 hours over the weekend reviewing thousands of pages of documents in preparation for the hearing. Hansen Decl., ¶ 4.

## II.   Argument

### A. The Firm Breached No Ethical Rules in Briefly Representing Individual Plaintiffs in an Unrelated Proceeding

Simultaneous representation of multiple plaintiffs against a single defendant is neither misconduct nor an ethical violation, whether before or after class certification, so long as the interests of the plaintiffs and class members are not adverse to each other. The primary example of when those interests conflict is where multiple claimants are seeking recovery from a limited fund, such as where a single common fund is used to settle claims by persons who have been injured and claims of persons

5

who will be injured in the future by the same course of conduct or by the same product. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) ("for the currently injured, the critical goal is generous immediate payments, but that goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.") (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 (1997)); *see also Smith v. Ga. Energy USA, LLC*, 2014 U.S. Dist. LEXIS 133899, *3 (S.D. Ga., Sept. 23, 2014) (representation of class and individual plaintiffs not permitted "in light of the advanced stage of this litigation and the substantially depleted pool of funds from which both of Class Counsel's clients now seek relief.").

Where those concerns are absent, simultaneous representation is entirely proper. *See, e.g., In re Sea Star Line, LLC*, 2017 WL 485700, *53-54 (M.D. Fla., Feb. 6, 2017) (estates of three passengers killed during Staten Island Ferry crash could be represented by the same law firm, at least until damages phase of litigation); *D.C. Bar Ethics Opinion* 301 (July 2000) (interpreting Rule 1.7 to permit simultaneous representation of a certified class and individual class members in litigation against government entity).

The treatise Newberg on Class Actions § 3:75 (5th ed. 2001) describes these limitations in detail, and is worth quoting in full:

> Like a lawyer in any litigation, a class action attorney may not simultaneously represent two clients if those clients' interests are directly adverse or if there is significant risk that the dual representation will materially limit the lawyer's representation of one client. Such attorney conflicts, like those of the class representative, are material to the question of whether the proposed class counsel can adequately represent the class; but as with class representatives, only client conflicts that are material and presently manifest — rather than merely trivial, speculative, or contingent on the occurrence of a future event — will affect the adequacy of class counsel.

*Id.* (internal footnotes omitted). According to Newberg, "[i[n general, class counsel may represent multiple sets of litigants—whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed." *Id.* Concurrent representation may be beneficial in some situations and courts have found counsel inadequate due to conflicts only where "the recovery of one group in one forum inherently conflicts with the recovery of the other." *Id.* Newberg gives examples such as where a limited fund means that the recovery of one claimant will cut directly into recovery by another, where substantive law permits recovery by only one or the other set of litigants, where one client is litigating an appeal to a class action settlement in which another client claimed recovery, and where counsel's actions have generated conflicts between class representatives and the class. *Id.*

> The Model Rules of Professional Conduct Rule 1.7(a) states:
>
> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

None of those concerns are present here. The interests of the settlement class and the individual plaintiffs who have excluded themselves from the settlement are directly aligned, and have been so throughout, both before and after certification of the settlement class. Unlike the subclasses in *Ortiz*, both the plaintiffs in the individual actions and the class members have identical and congruent litigation objectives, which is the opposite of the sort of conflict which can raise an issue of disqualification. *See, e.g., Andrews Farms v. Calcot, Ltd.*, 2010 WL 4010146, at *3-4 (E.D. Cal. 2010) (denying defendant's motion to disqualify class counsel when defendant could not show that the

two sets of clients were presently "taking adverse positions to one another" or that the alleged conflicts were "manifest and glaring").

Both the *Graham* plaintiffs and the Settlement Class want to prove that Ocwen used an automatic telephone dialing system to make calls to their cell phones without consent. Each alleges that the same Aspect dialer had the same characteristics and capacity to dial numbers from a stored list, and that Ocwen had few if any safeguards in place to ensure that it was only calling numbers for which it had consent.

Ocwen has never claimed that its funds are so limited that additional litigation will bankrupt it, but even the total collapse of Ocwen now would have little if any impact on the class settlement since the entire $17.5 million common fund was placed into escrow with the settlement administrator on November 3, 2017. Ankcorn Decl., ¶ 20. Class members who exclude themselves from the settlement to pursue individual relief take the risk of non-payment, not claimants, and since the net distribution is pro rata among claimants, additional exclusions (up to the 4,000 person tip-over limit) only serve to increase the per-claimant recovery.

As the Newberg treatise points out, rather than creating a conflict, simultaneous representation can often benefit both clients. *See, e.g., In re Zyprexa Products Liability Litigation*, 467 F. Supp. 2d 256, 268 (E.D.N.Y. 2006) (finding that work performed by the Plaintiffs Steering Committee (PSC) in a Federal MDL would be of substantial benefit to plaintiffs in a parallel state proceeding when attorneys from the two cases shared document discovery, noticed each other's depositions, and lawyers with clients in both cases could "use relevant knowledge gained in the federal litigation for the benefit of their state clients"). In fact, vigorously prosecuting individual actions in addition to the class can encourage the common defendant to reach a class-wide settlement. *See, e.g.,*

*White v. Nat'l Football League*, 822 F.Supp. 1389, 1405 (D. Minn. 1993) (individual actions were "likely a prerequisite to the parties' ultimate agreement to settle"). So too here, where the experience gained by members of the Firm in representing individual clients both before and after this action was filed has benefited the class members by educating Class Counsel about Ocwen's business practices and providing crucial evidence in support of Plaintiffs' successful motion for a preliminary injunction.

Further, the loud objections by Ocwen to the Firm's representation of the Settlement Class here and its former representation of individual plaintiffs in the *Graham* action show that there were no conflicts in either representation. Counsel generally cannot represent two classes against the same defendant "because defendants have an incentive to settle all claims at once, if it settles at all, thereby creating opportunities for counsel to manipulate the allocation of settlement dollars to the detriment of absent class members." *Daniels v. Aéropostale West, Inc.*, 2014 U.S. Dist. LEXIS 74081, *16 (N.D. Cal., May 29, 2014) (citing *Ortiz*). Here, the criticism by Ocwen shows that the deal was not collusive and did not prejudice absent class members. *See*, *id.* ("in a collusive deal the defense would be the last to criticize the deal or to criticize counsel for plaintiff"). Ocwen has expressed no interest in settling *Graham* and in fact has asked the district court to dismiss the action on a variety of grounds even after agreeing to settle this action on a classwide basis. *Graham*, Motion to Dismiss for Failure to State a Claim (dkt. 41) (filed Nov. 30, 2017).

Finally, the Firm has now completely withdrawn from the *Graham* litigation and retains no financial interest in any recovery. Indeed, the Firm extinguished its lien for past services rendered and has notified all of the *Graham* plaintiffs on multiple occasions that it will not seek payment for fees or costs incurred in that litigation. Ankcorn Decl.,

9

¶¶ 27-28. The Firm is wholly and completely dedicated to seeing the class action settlement through to final approval, as it has always been since it filed this action on behalf of the class in October 2014.

**B. The Firm Has Not Encouraged Class Members to Opt out of the Settlement**

Co-counsel has accused the Firm of encouraging members of the settlement class to opt out and pursue individual relief. This is false. In all communications with class members, the Firm has advocated for the settlement and carefully listened to the goals and objectives of its clients, answering their questions and outlining the potential advantages and disadvantages of each course of conduct. Ankcorn Decl., ¶ 21.

The Firm has never encouraged any client, past or present, to take or refrain from any lawful course of conduct. Attorneys are counselors only, not principals, and tread on very thin ice when they advocate that their clients to undertake a specific action. The better approach for both clients and attorneys is to identify potential risks and benefits to all options and leave the decision to the clients. *Id.*, ¶ 22.

What the Firm has told members of the settlement class who inquire about their options is no more than what is listed in the Settlement Agreement and the long-form notice posted on the settlement website. Agreement, Exh. "C" (dkt. 252-1). The notice describes the class member's options, the fact that a class member must opt out in order to pursue or maintain an individual suit, and the deadlines for making a claim or opting out of the settlement. *Id.*

This is precisely the counsel that the Firm gives to anyone who inquires, including those persons who have already indicated their strong desire to sue Ocwen individually. The Firm has an affirmative obligation to each and every member of the class to

adequately advise the members of their rights and options. The Firm takes its ethical obligations very seriously, and has upheld those obligations here. Ankcorn Decl., ¶ 23.

Co-counsel's accusations spring from their conversations with the son of a single class member who is confused about what his father's options are, and who appears to be a member of an entirely unrelated settlement class in a TCPA action where the Terrell Marshall firm has also been appointed class counsel. *Id.*, ¶ 24 Mr. Ankcorn was notified in late December 2017 that this person was confused about the two settlements and what his father's options might be with respect to both settlements. *Id.*, ¶ 25. At no time did any member of the Firm or any of its staff or contractors "encourage" that person — or anyone else — to opt out of the settlement in this matter. *Id.*, ¶ 26. And out of an abundance of caution, the Firm immediately thereafter scoured its files to find any other similarly situated former client who might possibly have also received a settlement notice in this action, and notified each of them in writing of their options with respect to this settlement. *Id.*, ¶ 27. This letter once again notified those former clients that the Firm had withdrawn from any individual lawsuit and confirmed that they owed the Firm nothing for its brief representation. *Id.*, ¶ 28.

**C. Removing the Firm as Class Counsel Would be Grossly Inequitable**

The Firm has been litigating this case for more than three years and has expended a significant amount of time, energy, and money prosecuting this action on behalf of the class. The Firm has spent hundreds of hours of attorney work and $36,000 in out-of-pocket costs. Ankcorn Decl., ¶ 2. Removing the Firm as class counsel would unfairly punish the Firm because it has not breached any obligation, ethical or otherwise, to

11

any of the members of the class and would create an undeserved windfall to the remaining law firms, allowing them to profit from the work of the Firm.

The Firm's actions throughout the course of this litigation have contributed to its success, including its initiation of the *Graham* lawsuit. It is impossible to know what finally brought Ocwen to the settlement table to reach the present class-wide agreement, but the timeline of events set out above strongly suggests that filing the *Graham* litigation was the strongest impetus towards resolution. Ocwen's counsel proposed a third mediation session in early June, several weeks before this Court ruled in Plaintiffs' favor on the preliminary injunction motion — but several weeks *after* the *Graham* lawsuit had been filed on May 19, 2017 in the federal courthouse a few blocks away from Ocwen's headquarters. By the time the order granting the classwide injunction issued on June 29, the third mediation session with Judge Denlow had already been scheduled; indeed, the parties had participated in a lengthy pre-mediation conference call with Judge Denlow the week before on June 21, 2017 and Plaintiffs submitted their mediation brief the same day the order was issued. Ankcorn Decl., ¶ 29.

Co-counsel for the Plaintiffs have been happy to take the benefit of the Firm's labors for the entire history of this litigation, including its investigation into ongoing robo-calls that formed the basis for the successful preliminary injunction motion and filing parallel individual litigation. Based on the slender reed of a single confused class member (out of more than 1,600,000), co-counsel now accuses the Firm of shirking its ethical obligations and undermining the settlement. It is nothing more than a naked grab for the whole fee award and an attempt to cut the Firm out of any recovery; co-counsel would obviously prefer to divide the fees by three instead of four.

But this is grossly inequitable and is without basis in law or fact. This Court should decline the invitation to do co-counsel's dirty work for them.

### III. Conclusion

The Firm has breached no ethical responsibilities in its brief representation of individual claimants in a different lawsuit prior to settlement negotiations in this action. The Firm has never and would never advocate against participation in the settlement and has dedicated significant hours and financial resources to reaching a settlement on a class-wide basis. As such, the Ankcorn Law Firm PLLC should remain as Class Counsel.

Respectfully submitted,

Dated: January 16, 2018

ANKCORN LAW FIRM PLLC

*/s/ Mark Ankcorn*
N.D. Illinois General Bar No. 1159690
California Bar No. 166871
Florida Bar No. 55334
mark@ankcornlaw.com

1060 Woodcock Road, Suite 128
Orlando, Florida 32803
(321) 422-2333 phone
(619) 684-3541 fax

Attorneys for Plaintiffs and
Settlement Class

**Certificate of Service**

      I hereby certify that on the date listed above, I electronically filed the above and foregoing notice and motion through the Court's CM/ECF System, which perfected service on all counsel of record.

*/s/ Mark Ankcorn*