- Exhibit A -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br>    v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>            Defendant.<br><br>TRACEE A. BEECROFT,<br><br>            Plaintiff,<br>    v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>            Defendant. | CONSOLIDATED NO. 1:14-cv-08461<br><br><br>Hon. Judge Matthew F. Kennelly<br><br><br><br>Case No.: 1:16-cv-08677 |

**DECLARATION OF ALEXANDER H. BURKE**

I, Alexander H. Burke, hereby declare as follows:

1. I am the manager and owner of Burke Law Offices, LLC. I represent the Plaintiffs in this matter, and I submit this declaration in support of Plaintiffs' Supplemental Brief in Support of Final Approval in this action. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2. I took the lead as to substantial matters in this case. I attended and spoke on behalf of Plaintiffs at most of the court appearances. I analyzed incoming discovery, developed Plaintiffs' theory for proving a lack of consent on a class-wide basis, negotiated and wrenched

production of NVLS and other consent data, conducted and led nearly all of the discovery meet and confer telephone calls, and wrote most of the discovery meet and confer communications for the plaintiffs. With some exceptions, I personally drafted most of the Plaintiffs' written submissions to the Court. My teammates at Terrell Marshall drafted some of the "major" briefs for this case, such as the Rule 23(b)(2) and (b)(3) certification, fee petition, preliminary approval and final approval motions, my firm and I provided substantive input for all of those submissions. I was a chief negotiator in the settlement of this matter, and was the primary point of contact for the Plaintiff team with Ocwen during settlement negotiations.

        3.        I was also chiefly responsible for soliciting bids for administration. I solicited bids from four well-known, experienced potential administrators, including Epiq, based on anticipated claims rates of 5%, 8%, and 13%. I actively pit the potential administrators against themselves, forcing them to reduce their bids to beat the others, to account for the potential of a low claims rate or a high claims rate. I analyzed the bids and dickered on the telephone about pricing and processes to try to get the best possible service to reach the most class members for the cheapest price. I forced the administrators to accept the risk of possibly taking a loss on the deal by insisting upon a "cap" for the cost, given certain assumptions such as claims rate. Administrator A offered a capped bid of $1,395,000 based on a 13% claims rate. Administrator B offered a capped bid of $1,350,000. Administrator C declined altogether to provide a capped bid because it did not think it could make money on the case. Epiq offered a capped bid of $1,404,119. We asked Epiq to match the price of the lowest competing bid, which it did. In the end, co-counsel and I decided that Epiq was the right choice in light of its competitive bid and the scope of services offered. The notice campaign was more successful than anticipated, and

beat our maximum 13% participation assumption for the cap during the claim period, and my co-counsel negotiated a new cap that Epiq agreed to honor regardless of how many claims came in.

4. My firm's records indicate that I spent 1,263 hours, and that the firm's associate, Daniel J. Marovitch, spent 124.7 hours, prosecuting this case, for a total lodestar of $804,562.50.

5. I request $600 per hour for my time in this case, which is the rate that I would seek in the Chicago market for my services for this type of case. The following is a list of some matters in which certain hourly rates were considered or adopted, which support this hourly rate for me today:

    a. In *Rose v. Bank of America*, No. 11-2390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014), I submitted my time records and requested an hourly rate of $575. The Court approved all rates requested by all counsel as generally reasonable, although the opinion does not specifically mention me. See *Id*. at *8.

    b. In *Smith v. State Farm Mutual Auto. Ins. Co.*, No. 13-2018 (N.D. Ill.), I submitted my lodestar at a rate of $550 an hour in support of class counsel's request for a fee award amounting to one-third of the fund less notice and administration costs. Judge St. Eve granted class counsel's full fee request without providing an analysis of hourly rates.

    c. In *O'Hagan v. Blue Ribbon Taxi Association, Inc.*, No. 1:11-cv-5269 (N.D. Ill. Sept. 20, 2013), final approval of a Fair Credit Reporting Act class action settlement was granted. Although fees were capped as part of the settlement, Magistrate Judge Rowland considered and approved all aspects of the settlement, although hourly rates were not specifically accepted or rejected. My fee petition in that case requested an hourly rate of $550 per hour.

3

    d. In *Ahmed v. Oxford Collection Services, Inc.*, No. 1:11-cv-1938 (N.D. Ill. April 19, 2011), Judge Rebecca Pallmeyer of the Northern District of Illinois entered a judgment against the defendant including attorney's fees for my work at a rate of $340 per hour in an individual TCPA case where the defendant reneged on a settlement agreement.

    e. In *Fike v. The Bureaus, Inc.*, No. 1:20-cv-2558 (N.D. Ill. Dec. 3, 2010), Judge Robert M. Dow, Jr. approved a common fund attorney's fee award based at least in part upon counsel's lodestar, which was calculated at $340 per hour. When I worked as an associate at another firm, in *Catalan v. RBC Mortg. Co.*, 2009 WL 2986122 (N.D. Ill. Sept. 16, 2009), Judge Robert M. Dow, Jr. approved my hourly rate at $285 per hour while I was an associate arising out of a contested fee petition. Although the total fee award was reduced, hourly rates were not reduced.

    f. I was also an associate at another firm when Magistrate Judge Jeffrey Cole approved my hourly rate at $288 in *Pacer v. Rockenbach Chevrolet*, 1:07-cv-5173 (N.D. Ill January 15, 2009).

  6. The firm seeks $375 per hour for Mr. Marovitch's work on the case. This $375 per hour is justified because of Mr. Marovitch's experience in litigating TCPA actions. Among other cases, he was appointed class counsel in the $6 million TCPA class settlement in *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. final approval Feb. 23, 2015), in which he submitted a fee request based on a rate of $310 an hour, though the Court ultimately approved fees on a percentage-of-the-fund basis. He was also appointed class counsel in the $2.75 million TCPA class settlement in *Jonsson v. USCB, Inc.*, No. 13-8166 (C.D. Cal. final approval May 28, 2015),

4

in which he again submitted a fee request based on a rate of $310 an hour, with the Court likewise ultimately approved fees on a percentage-of-the-fund basis. In the $7 million TCPA class settlement in *Smith v. State Farm Mutual Auto. Ins. Co.*, No. 13-2018 (N.D. Ill. final approval Dec. 8, 2016), Mr. Marovitch submitted a fee request based on a rate of $340 an hour, although, again, the Court ultimately approved fees on a percentage-of-the-fund basis. While these courts' orders approving settlement did not address these rates directly, they did not find it to be unreasonable. Likewise, Mr. Marovitch's billable rate is reasonably consistent with (and, indeed, below) the $429 average hourly rate for a 6-10 year practicing consumer law attorney in Chicago, according to Ronald L. Burdge, United States Consumer Law Attorney Fee Survey Report, at 224 (2015-2016).

7. Given the meaningful recovery for the class that results from the parties' settlement—which is well in line with other TCPA class action settlements—and considering the risks associated with continuing to litigate this matter, my co-counsel and I firmly believe that the settlement is fair, reasonable, and adequate, and that it far outweighs the delay and considerable risk attendant to proceeding with this matter in a contested fashion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 13, 2018, in Los Angeles, California.

                                                                            /s/ Alexander H. Burke