IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 14 C 8461 |
| OCWEN LOAN SERVICING, LLC, | ) ) | |
| Defendant. | ) ) | |
| ----------------------------------------------- | ) ) | consolidated with |
| TRACEE A. BEECROFT, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 16 C 8677 |
| OCWEN LOAN SERVICING, LLC, | ) ) | |
| Defendant. | ) | |

## ORDER ON MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The plaintiffs in these consolidated cases filed suit against Ocwen Loan Servicing, LLC in October 2014, alleging, among other things, violations of the Telephone Consumer Protection Act (TCPA) and the Fair Debt Collection Practices Act (FDCPA). Plaintiffs challenged Ocwen's alleged practice of making debt-collection calls using an automated telephone dialing system without the call recipients' prior consent. In late December 2016, the plaintiffs separately sued a number of banks that served as the trustees for loans to the putative class members, alleging that the debt-collection calls were made on the banks' behalf, making them also liable for the resulting

violations of law. *Snyder v. US Bank, N.A.*, Case No. 16 C 11675 (N.D. Ill).

The class size was at least potentially enormous. As of December 2016, Ocwen was servicing 1.4 million mortgage loans. To illustrate, plaintiffs represented that Ocwen's records showed that it had made, during the period covered by the limited class proposed for preliminary injunctive relief, over 146 million calls to 1.45 million unique telephone numbers.

In late June 2017, the Court provisionally granted, in the Ocwen suit, the plaintiffs' motion for certification of a limited class under Federal Rule of Civil Procedure 23(b)(2) and for a preliminary injunction to prevent Ocwen from continuing certain practices that allegedly violated the TCPA. *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893 (N.D. Ill. 2017).

Prior to Court's ruling on the motion for preliminary injunction, the parties conducted extensive discovery, including information regarding calls made by Ocwen and information regarding the basis for Ocwen's defense that it had acted with the consent of the call recipients. Plaintiffs encountered significant hurdles in obtaining information supporting Ocwen's consent defense, largely because of the way in which Ocwen kept its records regarding debt collection calls. This same problem, however, complicated Ocwen's ability to prove the defense.

In the interim, settlement negotiations also took place. A mediation in May 2016 with retired Judge James Holderman was unsuccessful. At a second mediation, held with mediator Rodney Max in October 2016, Ocwen disclosed that its insurer had denied coverage for the claims asserted by the plaintiffs on the basis of untimely notice. Ocwen also discussed its financial situation and indicated that it had a limited ability to

finance a settlement on its own. Ocwen later advised the Court that it "never had the ability to pay even a small fraction" of the amount of statutory damages that would be awarded to the putative class if it succeeded on its TCPA claims. *See* Def.'s Mem. in Opp'n to Pls.' Mot. to Amend Compl. to Add Trustee Defs. at 1. Ocwen's reporting of similar information during the second mediation resulted in the mediation's unsuccessful termination.

Largely due to this disclosure by Ocwen, plaintiffs moved in November 2016 to amend their complaint in the *Snyder* case to add as defendants the banks that were trustees of the loans on which Ocwen had attempted to collect, arguing that the banks were also liable for the TCPA and FDCPA violations. The Court overruled plaintiffs' motion on the ground that they had waited too long to add the banks as defendants in the long-pending case against Ocwen. As indicated earlier, plaintiffs then filed a separate lawsuit against the banks. The Court thereafter found the suit against the banks related to *Snyder* within the meaning of Local Rule 40.4 and, after that, conducted a number of the proceedings in the cases in tandem.

In early October 2016, shortly before the second mediation, plaintiffs filed the aforementioned motion for preliminary injunction. Briefing on the motion was completed in early February 2017. As indicated earlier, in late June 2017, the Court issued a decision in which it concluded that plaintiffs had established the basis for certification of a injunctive-relief class under Federal Rule of Civil Procedure 23(b)(2) and that they were entitled to at least some of the preliminary injunctive relief they sought. The Court requested further submissions regarding the proposed preliminary injunctive relief and deferred entry of a class certification order and a preliminary injunction pending receipt

3

and review of that information.

A third mediation, this one with retired U.S. Magistrate Judge Morton Denlow, was held in mid-July 2017. This mediation resulted in an agreement to settle the claims of the putative class. It is reasonable to conclude that the settlement was produced, at least in part, by the plaintiffs' successful prosecution of the motion for preliminary injunction and certification of a limited class and their filing of the lawsuit against the bank defendants—who, the Court later learned, had tendered the defense of the case to Ocwen based upon apparent contractual indemnification provisions.

The settlement agreement provides for establishment of a settlement fund of $17,500,000. This will be used to pay, first, costs of notice and administration—requested at $1,600,000; second, attorney's fees—requested at one-third of the total settlement net of administration costs, or $5,289,250; third, incentive awards for the three named plaintiffs, requested at a total of $75,000; and, finally, payment of the claims of class members who submitted claim forms. Given the number of class members who submitted claim forms (see below), if the Court approves costs, fees, and incentive awards in the amount requested, each class member who submitted a form will receive about $39. The proposed settlement also includes injunctive relief that requires Ocwen to change its practices for obtaining consent to call borrowers, including a requirement to pay enhanced damages to those who inappropriately receive automated calls in the future. *See* Settlement Agr. § 4.2. Finally, the settlement provides for dismissal of not only the *Snyder* and *Beecroft* suits against Ocwen, but also the putative class's suit against the banks. *See id.* § 3.5. As the Court understands it, the banks are making no contribution to the settlement fund and have offered no

consideration for the dismissal of the case against them.

The Court preliminarily approved the proposed settlement, including conditional certification of a settlement class, in October 2017. Notice of the proposed settlement was then sent to the members of the class, giving them the opportunity to make claims, object, or request exclusion. The settlement class consisted of persons who had been called on nearly 1,700,000 cellular telephone numbers. Over 267,000 claims were submitted, representing approximately 16% of the settlement class. Approximately 378 class members requested exclusion from the settlement, *see* Apr. 5, 2018 Tr. at 7, a joint request to opt out late was made by another 88, and one class member separately served a late opt-out request. The Court received objections to the proposed settlement or attorney's fee award from three class members.

Plaintiffs have now moved for final approval of the proposed settlement, as well as for incentive awards for Snyder, Mansanarez, and Beecroft and for payment of administrative fees and an award of attorney's fees from the settlement proceeds.

## Discussion

A district court may approve a proposed settlement of a class action only after it directs notice in a reasonable manner to all class members who would be bound and finds, after a hearing (which the Court has already held), that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). In making the latter determination, courts in this circuit typically consider the following factors:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed. . . . The most important factor relevant to the

5

fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014) (internal quotation marks and citations omitted). The Court notes that as of December 1, 2018, absent contrary Congressional action, an amendment to Rule 23(e)(2) setting forth a list of points a court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate. The Court will address these points as well. They include whether:

- the class representatives and class counsel have adequately represented the class;
- the proposal was negotiated at arm's length;
- it treats class members equitably relative to each other; and
- the relief provided by the settlement is adequate, taking into consideration the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any proposed award of attorney's fees; any agreements made in connection with the proposed settlement.

Proposed Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018).

1. **Adequacy of notice**

Notice was sent by mail and/or e-mail to over 1.4 million class members, using addresses in Ocwen's records. No better sources for physical or e-mail addresses were reasonably available. The settlement administrator determined that 95 percent of the proposed settlement class received mail or e-mail notice, and this determination appears to be reasonably supported. There was an initial coding error, made by the administrator, in the Internet-based claim submission process, but this was fixed, and

6

the deadline to file a claim was extended accordingly. The administrator also set up a toll-free number and a website for class members to obtain additional information, and these were used heavily. The claim rate in this case was about 16 percent, which is far higher than the usual TCPA settlement—a further indication of the success of the notice program. The Court finds that notice was sent in a reasonable manner to all class members and that, indeed, class members received the best notice practicable.

**2.     Fairness, reasonableness, and adequacy of the proposed settlement**

As indicated earlier, the Court assesses the fairness, reasonableness, and adequacy of the proposed settlement by applying the factors set forth in the *Wong* case and those in the likely new version of Rule 23(e)(2).

a.     <u>Adequacy of representation of the class</u>

The named plaintiffs participated in the case diligently, including being subjected to discovery. And class counsel fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative. The Court has concerns regarding certain aspects of the conduct of Mark Ankcorn, one of the attorneys for the class (which the Court will address at an appropriate time), but there is no basis to believe that Ankcorn's conduct impacted the representation of the class by counsel unaffiliated with his law firm.

b.     <u>Arm's length negotiation</u>

The record reflects that the settlement was negotiated entirely at arm's length. The parties conducted their negotiations via three separate and independent mediators. There is no indication of any side deals. And there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorney's fees, and none of the

7

other types of settlement terms that sometimes suggest something other than an arm's length negotiation.

  c. <u>Treatment of class members vis-à-vis each other</u>

The proposed settlement treats all class members the same; each is entitled to a single payment. There is an argument to be made that this is inequitable, as some class members received more unwanted calls than others—including some who received hundreds of unwanted calls. However, no class member has objected on this basis, and the ability to opt out (plus an explanation in the class notice of what a class member who opts out might expect) has provided a safety valve that permitted class members on the higher end of the call spectrum to, in effect, vote with their feet and pursue the possibility of a greater award. The Court finds that the proposal for equal treatment is reasonably equitable.

  d. <u>Adequacy of relief</u>.

The six factors identified by the Seventh Circuit in *Wong* and numerous other cases subsume most of the factors listed in the proposed new version of Rule 23(e)(2). The Court addresses each in turn.

*Complexity, length, and expense of further litigation.* Absent a settlement, a good deal of work remained to bring the case to a conclusion. Fact discovery on the suit against Ocwen was largely completed, though not entirely. And expert disclosure and discovery remained. Plaintiffs had moved to certify a class under Rule 23(b)(3), and the remaining briefing on that motion had to be finished. The losing party on that motion could request an interlocutory appeal. Before this Court, both sides likely would have moved for summary judgment following determination of the class certification

motion. It is fair to say that settlement obviated a good deal of work in the suit against Ocwen.

By contrast, the case against the banks (which was filed much later than the suit against Ocwen) was at a very early stage. Not much discovery had been done—at least, class counsel have not said so in their motion for approval of the settlement.

*Amount of opposition to the settlement.* There was little opposition to the settlement: only three objections, as compared to more than 267,000 claim forms. This is a factor favoring approval.

*Opinion of competent counsel.* Class counsel are experienced members of the plaintiff's consumer class action bar. They favor the settlement, and this is a factor supporting approval. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). On the other hand, they are hardly disinterested parties; they stand to gain handsomely if the Court approves the proposed fee award.

*Stage of proceedings and amount of discovery completed.* Though a lot of work remains to be done if the case is not settled, a lot of work was done. This included a significant amount of fact discovery as well as litigation of the motion for preliminary injunction. Plaintiffs had, in the Court's view, sufficient information via discovery and otherwise to enable them to evaluate the merits of the case against Ocwen. *See Isby*, 75 F.3d at 1200. It is less clear, however, whether they had sufficient information to evaluate Ocwen's contention that its ability to pay was limited. Certainly they had enough information to determine that Ocwen could not write a check in the billion-dollar range, but the Court has precious little information regarding what class counsel knew about Ocwen's financial status when they agreed to the proposed settlement at or after

9

the third mediation.

In addition, based on the record before the Court, the Court cannot say whether class counsel had sufficient information to evaluate the relative merits of the suit against the banks—the dismissal of which, as the Court has noted, is part of the proposed settlement.

*Strength of the case compared with the settlement offer.* As indicated earlier, the main consideration under *Wong* and other Seventh Circuit cases is "the strength of the plaintiff's case on the merits balanced against the amount offered in settlement." *Wong*, 773 F.3d at 864.

The primary claim of the plaintiff class arises under the TCPA. The TCPA makes it illegal to, among other things, use an automatic telephone dialing system to call a cellular phone number, unless the call is for emergency purposes or the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). The main issues in the plaintiffs' case against Ocwen involved whether it used an automatic dialing system to make the calls as required by the statute and, if so, whether it had the callers' prior express consent. Each of these issues posed a significant risk to the success of the claims of the class. First, Ocwen disputed whether it used an automatic telephone dialing system. Many of the calls were initiated manually, albeit using an system that had the capacity for automatic dialing and was used by Ocwen for automatic dialing. Ocwen contended that manually-initiated calls on this system could not appropriately be considered to have been made using an automatic dialing system. At the time the suit was filed, plaintiffs relied, at least in part, on an FCC ruling that in effect determined that such calls violated the TCPA. But not too long after the suit was filed, the U.S. Court of

10

Appeals for the District of Columbia Circuit began considering a challenge to the FCC ruling (along with other rulings the FCC made at the same time). Plaintiffs' case did not rise or fall on the D.C. Circuit's determination of that case—not all of the calls were initiated manually, and even without the FCC ruling plaintiffs could make an argument in support of their claims based on the statutory language—but an adverse ruling would have significantly impacted the strength of the plaintiffs' case. (The Court notes that, after preliminary approval of the settlement in this case, the D.C. Circuit vacated the FCC ruling upon which plaintiffs had relied. As indicated, this would not completely preclude plaintiffs' claim to the extent it involved manually-dialed calls, but it would impact their chance of success.)

On the issue of consent, plaintiffs had a strong position on the merits. Ocwen's method of keeping (or not keeping) records regarding consent made it difficult for the company to prove this defense, on which it bore the burden of proof. And plaintiffs' counterarguments were strong. In this regard, the Court references the discussion of this point in its ruling on the motion for preliminary injunction, in which the Court concluded that defendants would have a very difficult time establishing consent. But aside from the merits, the issue of consent had a potential bearing on the ability of plaintiffs to successfully obtain class certification. In the preliminary injunction ruling, the Court determined that plaintiffs had met the requirements for certification under Rule 23(b)(2) for preliminary injunctive relief. Certification of a class on the claims for damages, however, would have been based on Rule 23(b)(3). The potential for individual issues regarding consent loomed relatively large there, imposing a reasonably significant hurdle for plaintiffs, as well as a likely request to appeal—and further delay—

11

in the event the Court determined to certify a class.  If a class were not certified, of course, class members unwilling or unable to file their own lawsuits would be left out in the cold.

Finally, even if the plaintiffs were able to overcome these and other hurdles, they faced a potential risk of Ocwen's inability to pay were plaintiffs to prevail in full following contested litigation.  Given the number of calls made, the amount available on a per-call basis for violation of the TCPA, and the size of the class, a judgment in plaintiffs' favor could have been in the billions of dollars.  It is overwhelmingly unlikely that Ocwen would be able to pay a judgment of that magnitude.  Rather, such a judgment would force it into bankruptcy, likely leaving plaintiffs with a recovery of pennies on the dollar at best.  Ocwen had liability insurance, but it blew the deadline for giving its insurer notice of the claim.  Class counsel consulted with insurance coverage counsel and were reasonably satisfied that this barrier to insurance coverage was insurmountable.

The ability-to-pay issue, one would assume, made it important for the class representatives and counsel to be willing to consider a settlement within Ocwen's ability to pay.  But despite the fact that this issue was brought to the Court's attention during the litigation (at the time of the request to add claims against the banks to the Ocwen suit), class counsel made no mention of it in their motion seeking final approval.  *See* dkt. no. 316.  They addressed it at the hearing only after the Court brought it up, and they discussed it in a supplemental, post-hearing brief only at the Court's insistence.  Even then, the discussion of the issue was conclusory—a couple of bare references to "inability to pay"—and unsupported.  *See* dkt. no. 326 at 3-6.  And in any event, Ocwen's inability to pay a billion-dollar adverse judgment does not explain the particular

settlement figure the parties arrived at—$17,500,000, which is *far* less than a billion-dollar jury award. The fact that plaintiffs soft-pedaled the ability-to-pay factor in their motion suggests that it may not have been a driving or otherwise significant factor in arriving at the particular settlement amount that class counsel are advocating.

The other term of the proposed settlement that gives the Court concern involves the agreement to dismiss the suit against the banks without any payment from them. To be fair, plaintiffs' claims against the banks faced the same merits-based hurdles (involving the automatic dialer issue and the question of consent intertwined with the issue of class certification), plus the additional dispute over whether the banks' role is such that they could face liability under the TCPA or FDCPA. And if the banks had a viable indemnification claim against Ocwen—a point on which the Court has been given almost no information—one might think that because all roads lead to Ocwen, then it makes sense to simply drop the claim against the banks. But it is reasonable to believe that the banks faced litigation risk too, specifically, the risk of liability plus the same inability-to-pay risk just referenced regarding Ocwen, their indemnitor. For this reason, the absence of an explanation for why the banks are being let off scot-free is, at best, disconcerting.

Two of the objectors were critical of the amount of the settlement. At the time of preliminary approval, the parties estimated that each class member would receive $60. Given the higher-than-expected claim rate, the current expectation (in light of the amounts proposed for administrator fees, attorney's fees, and incentive awards) is $39. The criticism that this is a very low amount given the number of calls made to any given borrower—in some cases, hundreds of calls—is a valid one, at least on the surface.

Perhaps the amount is justified given the combination of risk of loss and risk of non-payment. But that case has not been made on the present record.

Class counsel strongly urge that the settlement represents a reasonable resolution of the claims when one balances the strengths and weaknesses of the claims of the class. And their opinion is worthy of consideration. But the Court cannot simply defer to them, particularly when they stand to gain millions of dollars from the proposed settlement.

As indicated, the Court's concerns involve two points: the extent to which Ocwen's claim of relative inability to pay is supported and justifies the particular settlement amount proposed, and the *gratis* dismissal of the suit against the banks. The combination of these factors, plus the amount requested by counsel, causes the Court to decline approval of the settlement in its present form. On the record before the Court, it is fair to say that there is a good chance that class counsel have sold the case short—at least, the Court cannot determine otherwise on the present record. Class counsel have given the Court virtually nothing to assess Ocwen's contention regarding inability to pay or even to assess whether they adequately vetted that contention. And they have barely touched upon the reasonableness of an outright dismissal of the suit against the banks without any apparent consideration in return.

It is conceivable that the Court could be persuaded to approve a settlement at the current overall dollar amount if the amounts for attorney's fees were reduced drastically, to take account of counsel's relative lack of success reflected from obtaining a settlement with a relatively low value given the size of the class and the number of

calls made.[1]  But no such proposal is on the table.  As things currently stand, the Court is unable to determine that the settlement that has been proposed is fair, reasonable, and adequate for the class.

## Conclusion

For the reasons stated above, the Court denies the current motion for final approval as well as the motion for attorney's fees.  The Court defers consideration of whether to accept the late claims and the late opt-out requests.  The case is set for a status hearing on October 9, 2018 at 9:30 a.m. to discuss whether matters stand and to set a schedule for further proceedings.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  September 28, 2018

---

[1] The Court is also inclined to reduce the amounts requested for administrative fees and incentive awards, but those are issues for another day.