IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated, | CONSOLIDATED NO. 1:14-cv-08461 |
| Plaintiffs, | Class Action |
| v. | Jury Trial Demand |
| OCWEN LOAN SERVICING, LLC, | Honorable Matthew F. Kennelly |
| Defendant. | |
| TRACEE A. BEECROFT, | |
| Plaintiff, | Case No.: 1:16−cv−08677 |
| v. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR APPROVAL OF FIRST AMENDMENT TO
SETTLEMENT AGREEMENT AND RELEASE**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .................................................................................................1

II.    RELEVANT BACKGROUND .............................................................................2

    A.    The prior settlement ................................................................................2

    B.    The Court's denial of final approval of the prior settlement .............................3

    C.    Mediation and the Amended Settlement Agreement ...........................................3

III.   AUTHORITY AND ARGUMENT .......................................................................6

    A.    The Amended Settlement should be give final approval ...................................6

        1.    The Amended Settlement provides adequate relief in light of the cost, risks and delay of continued litigation.....................................7

        2.    The Amended Settlement treats Settlement Class Members equitably...............................................................................9

        3.    Plaintiffs and Class Counsel have adequately represented the Settlement Class, had litigated sufficiently to understand the case, and support the Amended Settlement ...........................10

        4.    The Amended Settlement Agreement is the result of arm's-length negotiations.................................................................10

        5.    The reduced attorneys' fee request supports approval.........................11

        6.    Settlement Class Members' response supports approval.....................12

    B.    The Settlement Class should be finally certified ..............................................13

    C.    No additional notice is necessary.....................................................................13

IV.   CONCLUSION...................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ....................9

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012 .......................................12

*Estrada v. iYogi, Inc.*,
No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ..................9

*Freeman v. Berge*,
68 F. App'x 738 (7th Cir. 2003.......................................................................................12

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ..........................................................................................10

*Garret, et al. v. Sharps Compliance, Inc.*,
No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) ............................................9

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016).......................................................................................9

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ...................................8

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)...................................................................................13

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163, 175 n.10 (3d Cir. 2013).  .......................................................................13

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ..........................................................................9, 11

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ......................................................................8, 12

*In re Sw. Airlines Voucher Litig.*,
No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ......................................12

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001)  ........................................................................................11

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...........................................................................8, 10, 12

*Keepseagle v. Vilsack*,
    102 F. Supp. 3d 306 (D.D.C. 2015) ...........................................................................14

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ...................................................................................9

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................................................12

*Pearson v. Target Corp.*,
    893 F.3d 980 (7th Cir. 2018) ......................................................................................13

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ......................................................................................12

*Rose v. Bank of Am. Corp.*,
    Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .............9

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................................................8

*Smith v. Levine Leichtman*,
    No. 10-cv-00010-JSW, 2014 WL 12641575 (N.D. Cal. Mar. 26, 2014 .....................14

*Van Lith v. iHeartMedia + Entm't, Inc.*,
    No. 1:16-CV-00066-SKO, 2017 WL 4340337 (E.D. Cal. Sept. 29, 2017) ...................8

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................................................6

## FEDERAL RULES

Fed. R. Civ. P. 23(e)(2) ....................................................................................................7

## I. INTRODUCTION

Following the Court's September 28, 2018 order denying final approval of the parties' previous Settlement Agreement, the parties returned to mediation. A full-day mediation with the Honorable Morton Denlow (Ret.) resulted in an improved settlement for $21.5 million, updated injunctive relief, and an exclusion of the banks from the release. Declaration of Beth E. Terrell in Support of Approval of First Amendment to Settlement Agreement and Release ("Terrell Decl."), Exh. 1. Class Counsel have also reduced their fee request by $500,000 in order to increase the amount of money available to class members.

Plaintiffs respectfully request that the Court approve this Amended Settlement, which will provide per-claim awards ranging from $53.44 to $70.41. This range is conservative because it assumes the Court approves Plaintiffs' requested attorneys' fees, costs, incentive awards, and Epiq's administrative fees before calculating the Settlement Fund available to be distributed. The range is based on the final claims administration analysis that revealed several categories of claims that if deemed valid by the Court will affect the per claim settlement award amount. Each category and its impact if allowed is described in detail below, and in the O'Connor Declaration.

Under any scenario, the new resolution is better than the original, and is adequate given the risks of continued litigation the Court cited in its order denying final approval of the prior settlement, including new law governing automatic telephone dialing systems and potentially individualized issues relating to consent. The Amended Settlement will ensure that Settlement Class Members are compensated now for the intrusive calls they received rather than waiting for several additional years of litigation to potentially recover nothing at all.

The additional factors that courts consider also support approval of the Amended Settlement. The parties devoted sufficient time to motion practice and discovery before

negotiating the settlement to evaluate the strengths and weaknesses of their claims and defenses, and Class Counsel, who have successfully litigated many TCPA cases, fully support the settlement. Only three Settlement Class Members objected, while well over 200,000 filed claims. Plaintiffs and Class Counsel have vigorously represented the interests of Settlement Class Members throughout the litigation and the settlement process, and have ensured that Settlement Class Members will be treated equitably relative to each other. Plaintiffs request that the Court certify the settlement class for settlement purposes, overrule the objections, and approve the settlement as fair, reasonable and adequate.

## II.  RELEVANT BACKGROUND

### A.    The prior settlement.

The parties previously negotiated a settlement requiring Ocwen to pay $17,500,000 into a non-reversionary common fund for a class of persons called on 1,685,757 unique cellular telephone numbers. Dkt. No. 252-1 § 4.5.1. The Settlement also includes injunctive relief requiring Ocwen to alter its consent-gathering practices and to pay enhanced damages to people who receive automated calls because of gaps in such practices. *Id.* § 4.2. In exchange, Settlement Class Members would release their claims against Ocwen and the three banks Plaintiffs sued in a separate case, U.S. Bank, Wilmington Trust, and Deutsche Bank (the "Banks"). *Id.* §§ 2.3.1, 10.1. The Court preliminarily approved the Settlement, conditionally certified the Settlement Class, approved the notice plan, and scheduled a fairness hearing. Dkt. No. 266.

In November 2017, the Settlement Administrator, Epiq, disseminated the Court-approved notice by U.S. Mail and email and through a targeted internet banner ad campaign, reaching an estimated 95.1% of the Settlement Class Members. Dkt. No. 317 ¶¶ 3-12, 25. The notice documents estimated that Settlement Class Members who filed valid claims would receive

payments of $60, which assumed a 10% claim rate. Dkt. No. 317, Exs. A & B. In reality, the claim rate exceeded 10%. Dkt. No. 316 at 1, 15-17; Dkt. No. 317 ¶ 17. As a result, Settlement Class Members were projected to receive payments of approximately $39 from the settlement fund after deduction of the requested attorneys' fees, litigation costs, service awards, and settlement administration costs. Dkt. No. 334 at 4.

**B.    The Court's denial of final approval of the prior settlement.**

Following hearings on April 5 and 17, 2018, the Court denied final approval of the prior Settlement on September 28, 2018. Dkt. No. 334. The Court found that Settlement Class Members received the best notice practicable, that Plaintiffs and Class Counsel adequately represented the class, that the settlement was negotiated at arm's length, and that Settlement Class Members were treated equitably. Dkt. No. 344 at 7-8. The Court recognized the challenges presented by continued litigation, including new law governing automatic telephone dialing systems, potentially individualized issues relating to consent, and Ocwen's apparent inability to pay a significant judgment. *Id.* at 8, 10-12. Nonetheless, the Court concluded that it did not have adequate information about Ocwen's financial condition and whether it was appropriate for Settlement Class Members to release their claims against the Banks without any payment from them. *Id.* at 12-13. The Court also questioned whether the estimated $39 payments to claimants was appropriate in light of the risks of continued litigation. *Id.* at 13-14.

**C.    Mediation and the Amended Settlement Agreement.**

Following the September 28 Order, Ocwen and Plaintiffs advised the Court they intended to return to mediation. Dkt. No. 336. The Banks also agreed to participate. *Id.* On November 13, 2018, Class Counsel, Ocwen, and the Banks engaged in an in-person mediation with the Honorable Morton Denlow (Ret.) in Chicago. Terrell Decl., Exh. 1 at 1. By the end of the day,

Class Counsel and Ocwen negotiated the terms of the Amended Settlement. Ocwen will pay a total of $21,500,000, and is required to deposit $4,000,000 into escrow to supplement the $17,500,000 Ocwen previously deposited with the Settlement Administrator. Terrell Decl., Exh. 1 ¶¶ 1-3. Ocwen has already implemented the injunctive relief contemplated by the parties in Section 4.2 of the prior Settlement Agreement. Dkt. No. 252-1 § 4.2; Terrell Decl., Exh. 1 at 1, Exh. 2. However, because of a transaction involving another mortgage servicer called PHH, Ocwen is changing mortgage servicing database systems. The improved settlement ensures that the original injunctive relief will be honored as Ocwen migrates its servicing platform from its REALServicing to BlackKnight/MSP. Terrell Decl., Exh. 1 ¶ 4, Exh. 2.

Heeding the Court's comments with regard to their fee, Class Counsel have reduced their fee request by $500,000, from $5,289,250 to $4,789,250. If the Court approves the requested attorneys' fee award, reimbursement of litigation costs of $96,380,[1] $1,600,000 in notice and administration costs,[2] and the requested $75,000 in service awards, $14,939,370 will remain for distribution to Settlement Class Members. How this amount is distributed will depend largely on which categories of claims the Court determines are valid.

The administrator received 212,165 complete and valid claim forms, which means they were signed by the claimant and contained one cell phone number matching a cell phone number on the Class List. Declaration of Michael O'Connor ("O'Connor Decl.") ¶ 11. The administrator also received 5,401 claims from individuals who included a cell number that matches the Class

---

[1] The notice stated that Class Counsel would seek up to $100,000 in costs. Counsel for Burke Law Offices, LLC, Terrell Marshall Law Group PLLC, The Cabrera Firm, APC, and Heaney Law Firm, LLC filed a motion seeking reimbursement of $66,780 in out-of-pocket expenses, limited to expert costs. Dkt. No. 293 at 21. Mr. Ankcorn separately requested costs in the amount of $35,600. Dkt. No. 296 No. at 1. Mr. Ankcorn later reduced his firm's request to $29,600. Dkt. No. 325. Therefore, the total request for reimbursement by all firms is $96,380.

[2] Epiq capped the cost of notice and administration at $1,600,000 regardless of the claim rate. Dkt. No. 317 ¶ 26.

List but failed to sign the claim form, characterized as incomplete missing signature claims. *Id*. ¶ 13. These claimants have been offered the opportunity to cure their signature deficiencies. *Id*. If none of the incomplete forms are returned, the per claim award will be $70.41. *Id*. ¶ 12. If all 5,401 claimants respond and cure their signature deficiencies, the per claim award will be $68.66. *Id*. ¶ 13.

In addition, the notice instructed class members to submit one claim form per cell phone number—up to three claims—but several thousand claimants included two or three Class List cell phone numbers on a single paper claim form. O'Connor Decl. ¶ 14. In addition, a number of claimants included two cell phone numbers on their electronic Claim Forms that matched back to the Class List. *Id*. In total, 5,318 claimants included two numbers and 59 claimants included three numbers. *Id*. If the Court approves these multiple cell claims, the total number of valid and complete claims will increase by 5,436, and the per-claim award will be reduced to $66.99. *Id*. Next, the administrator denied 52,709 claims which included phone numbers that do not match phone numbers on the Class List. *Id*. ¶ 15. These denied claims could have been completed by individuals who did not receive calls from Ocwen, but received notice because of outdated information, or they may have been completed by individuals who received calls, but erroneously included the wrong numbers on the claim form. *Id*. In the latter scenario, if the Court provides claimants with the opportunity to cure the error, and all denied claims are later cured, the per claim award would be reduced to $54.18. *Id*. Finally, there were 3,801 late claims. If the Court also allows these late claims, the per claim payout will be $53.44. *Id*. ¶ 16.

Although the Banks attended the mediation, Plaintiffs and the Banks did not reach a resolution and are currently litigating. The Banks are not parties to the Amended Settlement

Agreement, and the release in the amended settlement does not include the Banks. Plaintiffs'
separate litigation against the Banks will continue.

The other terms of the Amended Settlement remain the same as the prior settlement.

### III.  AUTHORITY AND ARGUMENT

**A.      The Amended Settlement should be given final approval.**

All the factors courts in this circuit consider when evaluating a proposed class action
settlement support approval of the terms of the Amended Settlement Agreement. Those factors
are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of
settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of
opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the
opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery
completed." *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863-64 (7th Cir. 2014) (citation
omitted). The first factor is the most important. *Id*. at 864. In addition, the recently amended Rule
23(e)(2) requires courts to consider whether:

(A)     the class representatives and class counsel have adequately
        represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)      the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class,
    including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of
    payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2) See also, Rossman, Stuart, As of December 1, New Rules Alter Class

Action Notices, Settlement, and Objections, (Dec. 10, 2018, Nat.Cons.Law.Ctr.) available at:

https://library.nclc.org/december-1-new-rules-alter-class-action-notices-settlements-and-objections

      1.    <u>The Amended Settlement provides adequate relief in light of the cost, risks and delay of continued litigation.</u>

The Amended Settlement increases the settlement fund to $21.5 million. Settlement Class

Members filed 212,165 complete and valid claims, and 5,401 additional valid claims that will be

complete if they return their signatures. If all 5,401 claimants return their signatures, Settlement

Class Members will receive $68.66 per claim.  If the Court also permits multiple cell claims,

denied claims, and late claims, Settlement Class Members will receive between $66.99 and

$53.44. Under any scenario, the per claim amount is a significant increase from the $39

payments contemplated by the prior settlement and commensurate with the estimate payments

provided in the notice. The increased payments are due in part to Ocwen contributing an

additional $4,000,000, in part to Class Counsel's reduction of their fee request by $500,000, and

in part to the settlement administrator's finalization of claim processing. In addition, Ocwen has

implemented the injunctive relief contemplated by the prior settlement and expanded it to its

servicing of any mortgage loan migrated from its REALServicing system to BlackKnight/MSP

following Ocwen Financial Corporation's acquisition of PHH Corporation. And the settlement

has carved the Banks out of the release.

Plaintiffs submit that the enhanced relief provided by the Amended Settlement is

adequate in light of the cost, risks and delay of continued litigation, and that the settlement

should be finally approved, as amended. As the Court recognized in denying final approval of

the prior settlement, Plaintiffs faced some significant challenges in proving their claims and

reaching a judgment in their favor. As the Court noted, "[t]he main issues in the plaintiffs' case against Ocwen involved whether it used an automatic dialing system to make the calls as required by the statute and, if so, whether it had the callers' prior express consent. Each of these issues posed a significant risk to the success of the claims of the class." Dkt. No. 334 at 10. Procedural challenges remain as well. Plaintiffs would have to prevail on their motion for class certification—and a subsequent Rule 23(f) appeal—and defeat summary judgment before even getting to trial and the inevitable appeal. *Id.* at 8-9. As the Court noted, "a good deal of work remained to bring the case to a conclusion." *Id.* at 8. "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

Every settlement necessarily represents a discount on the plaintiff's potential recovery at trial. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (courts must recognize that the "essence of settlement is compromise" and will not represent a total win for either side (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996))); *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 4340337, at *12 (E.D. Cal. Sept. 29, 2017) ("It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." (citations omitted)). In this case, the risk of no recovery at all, combined with the cost and delay of continued litigation, supports approval of the settlement. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (approving settlement as adequate given the costs, risks, and delay of continued litigation under amended Rule 23(e)(2)).

The range of awards, between $53.44 and $70.41 per claim, also compares favorably to other TCPA settlements in the Seventh Circuit and elsewhere. *See, e.g., Gehrich,* 316 F.R.D. at 228 ($52.50); *Capital One*, 80 F. Supp. 3d at 789 ($39.66); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) ($30); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) ($40); *Rose v. Bank of Am. Corp*., Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10–11 (N.D. Cal. Aug. 29, 2014) (between $20 and $40); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ($40); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (between $27.42 and $28.51).

    2.    <u>The Amended Settlement treats Settlement Class Members equitably.</u>

The Amended Settlement, like the original Settlement, treats class members equitably. After payment of Court-approved administration costs, attorneys' fees and litigation costs, and service awards, the settlement fund will be divided equally among the Settlement Class Members who filed valid claims. Each Settlement Class Member was able to submit claims for calls made on up to three cell phone numbers, one claim per cell number. Dkt. No. 252-1 at § 4.5.4. This approach recognizes Settlement Class Members may have experienced invasive calls on more than one cell phone number. The Amended Settlement also does not change the terms of distribution. Settlement Class Members had to complete a relatively simple claim form with basic questions about class membership. The procedure was claimant-friendly, efficient, cost-effective, proportional and reasonable for this case. Moreover, no Settlement Class Member has objected to the plan for distributing the settlement fund and, as the Court already found, "the ability to opt out (plus an explanation in the class notice of what a class member who opts out might expect) has provided a safety valve that permitted class members on the higher end of the

call spectrum to, in effect, vote with their feet and pursue the possibility of a greater award." Dkt. No. 334 at 8.

3.  Plaintiffs and Class Counsel have adequately represented the Settlement Class, had litigated sufficiently to understand the case, and support the Amended Settlement.

The Court has already recognized that "[t]he named plaintiffs participated in the case diligently" and "class counsel fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative." Dkt. No. 334 at 7.[3] The Court also concluded that "Plaintiffs' had, in the Court's view, sufficient information via discovery and otherwise to enable them to evaluate the merits of the case against Ocwen." *Id.* at 9. Plaintiffs and Class Counsel have demonstrated their continuing commitment to the Settlement Class by returning to the negotiating table and obtaining an additional $4.5 million to distribute to Settlement Class Members who filed timely claims as well as expanded injunctive relief. Class Counsel, who have substantial experience in litigating and settling TCPA cases like this one, strongly support the Amended Settlement. Courts are "entitled to rely heavily on the opinion of competent counsel" when evaluating a class action settlement. *Gautreaux v. Pierce,* 690 F.2d 616, 634 (7th Cir. 1982) (citation omitted); *see also Isby*, 75 F.3d at 1200 ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate").

4.  The Amended Settlement is the result of arm's-length negotiations.

The Court found that the prior settlement "was negotiated entirely at arm's length." Dkt. No. 334 at 7. The Court noted the parties' mediations with "three separate and independent mediators" and the absence of red flags of collusion, such as reversionary provisions, "side

---

[3] The Court noted "concerns regarding certain aspects of the conduct of Mark Ankcorn" but concluded that "there is no basis to believe that Ankcorn's conduct impacted the representation of the class by counsel unaffiliated with his law firm." Dkt. No. 334 at 7.

deals," or a clear sailing clause regarding attorneys' fees. *Id.* at 7-8. The Amended Settlement resulted from the same arm's length process—a grueling mediation with the Honorable Morton Denlow (Ret.) that resulted in Ocwen paying $4,000,000 more, and Plaintiffs' counsel requesting less, all for the benefit of the class. Moreover, the settlement includes no "red flag" terms. Terrell Decl., Exh. 1. There are no additional agreements to disclose under Rule 23(e)(2)(C)(iv).

     5.    <u>The reduced attorneys' fee request supports approval.</u>

In common fund cases, the goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). Another district court in this circuit analyzed TCPA class action settlements and concluded, based on the Seventh Circuit's fee schedule in *In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003) ("*Synthroid II*"), that the market rate for a typical TCPA class action is based on a downward sliding scale. *Capital One*, 80 F. Supp. 3d at 795. Before accounting for risk factors, the *Capital One* scale is composed of four tiers, awarding 30% of the first $10 million recovered, 25% of the next $10 million, 20% of any recovery from $20 million to $45 million, and 15% of any recovery above $45 million. *Id.* at 804. Courts may adjust these percentages upward based on risk. *Id.* at 805-07.

Although the *Capital One* sliding scale supports a fee request of $5,800,000,[4] Class Counsel have heeded the Court's concern regarding their requested fees and seek $4,789,250— which is $1 million less than would be awarded using the *Capital One* formula, and $500,000 less than their initial request of $5,289,250. The requested award amounts to 22% of the $21.5 million settlement fund, and 24% of the net settlement fund after subtracting administrative costs

---

[4] $5,800,000 = $3,000,000 (30% of $10,000,000) + $2,500,000 (25% of $10,000,000) + $300,000 (20% of $1,500,000). This figure does not factor in the risk Class Counsel assumed or the injunctive relief obtained.

and incentive awards. The latter percentage reflects "the ratio of (1) the fee to (2) the fee plus what the class members received," which is well within the range the Seventh Circuit found to be acceptable. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (in consumer class actions, "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel").

6.    <u>Settlement Class Members' response supports approval.</u>

The Court recognized that "[t]here was little opposition to the [prior] settlement"—only three objections—which "is a factor favoring approval." Dkt. No. 334 at 9. The Amended Settlement improves on the terms of the prior settlement. Settlement Class Members' response provides "strong circumstantial evidence in favor of the settlement." *Mexico Money Transfer.*, 164 F. Supp. 2d at 1021 (noting that "99.9% of class members have neither opted out nor filed objections"); *see also Isby*, 75 F.3d at 1200 (affirming final approval where 13% of the class submitted written objections); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("low level of opposition" amounting to 0.01% of class "supports the reasonableness of the settlement"), *aff'd*, 799 F.3d 701 (7th Cir. 2015).

The Court should overrule the three objections, which contend that the settlement amount should have been higher and the request for attorneys' fees lower (*see* Dkt. Nos. 308, 309, 310), because they do not "cast doubt upon the settlement's fairness, reasonableness, or adequacy." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *11 (N.D. Ill. Feb. 28, 2012); *see also Freeman v. Berge*, 68 F. App'x 738, 743 (7th Cir. 2003) (affirming final approval of settlement and recognizing that objections must have merit to be considered). Indeed, the increased settlement fund and reduced fee request address the objectors' concerns.

- 12 -

**B.      The Settlement Class should be finally certified.**

In granting preliminary approval of the prior settlement, the Court conditionally granted class certification for settlement purposes only. Dkt. No. 266 at ¶¶ 5-6. The Settlement Class definition has not changed and final certification is appropriate for the reasons discussed in Plaintiffs' preliminary approval briefing and the Court's preliminary approval order. *See id.*; Dkt. No. 252 at 19-21. The Settlement Class should be finally certified.

**C.      No additional notice is necessary.**

The Court previously found that "notice was sent in a reasonable manner to all class members and that, indeed, class members received the best notice practicable." Dkt. No. 334 at 6-7. Ninety-five percent of the Settlement Class received notice by U.S. mail and email, and the claim rate was higher than usual in TCPA settlements. *Id.* Because the Amended Settlement provides additional, valuable benefits to the Settlement Class and does nothing to hinder claimants' legal rights, no additional notice is necessary. New notice is only required when there are "[m]aterial alterations" to a class settlement. *Pearson v. Target Corp.*, 893 F.3d 980, 986 (7th Cir. 2018); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 n.10 (3d Cir. 2013). Amendments that benefit the class do not require supplemental notice. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018) ("When the modification makes the settlement less desirable, notice may be required because courts cannot be sure whether more class members would have chosen to object to the settlement or exclude themselves from the class. … [W]hen the modification makes the settlement more valuable to the class, courts have routinely concluded that notice is unnecessary."). That is particularly true here, where the monetary improvements to the deal merely brought per claimant recovery closer to the amount stated in the notice. And "[w]here no legal right would be hindered," additional notice is not required because there is no risk that an absent class member will be legally harmed by approval

- 13 -

of the modification. *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 314 (D.D.C. 2015) (finding no additional notice required where an amendment provided "additional benefits").

For the same reasons, there is no need for new CAFA notice. *See Smith v. Levine Leichtman*, No. 10-cv-00010-JSW, 2014 WL 12641575, at *4 (N.D. Cal. Mar. 26, 2014). Not only does Rule 23 not expressly require CAFA notice for amendments to settlements, state and federal officials already received CAFA notice and did not object or otherwise comment on the settlement, class members were provided the opportunity to opt out or object, and the amendments, while significant, were more favorable to the class members. *Id.*

## IV. CONCLUSION

Plaintiffs request that the Court: (1) approve the Amended Settlement as fair, reasonable, and adequate; (2) determine payment to the claims administrator, not to exceed $1,600,000; (3) award Class Counsel $4,789,250 in attorneys' fees, which is equal to 24% of the net settlement fund; (4) order payment of Class Counsel's expenses in the amount of $96,380; (5) order payment of incentive awards in the amount of $25,000 to each of the three Plaintiffs; (6) overrule the three objections; and (7) finally certify the Settlement Class.

RESPECTFULLY SUBMITTED AND DATED this 14th day of January, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Alexander H. Burke, #6281095

- 14 -

Email:  aburke@burkelawllc.com
Daniel J. Marovitch, #6303897
Email:  dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

*Interim Lead Class Counsel*

Guillermo Cabrera
Email: gil@cabrerafirm.com
Jared Quient, *Admitted Pro Hac Vice*
Email: jared@cabrerafirm.com
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 500-4880
Facsimile: (619) 785-3380

Mark L. Heaney
Email:  mark@heaneylaw.com
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, Minnesota 55305
Telephone: (952) 933-9655

*Additional Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on January 14, 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

Chethan G. Shetty
Email: cshetty@lockelord.com
Simon A. Fleischmann
Email: sfleischmann@lockelord.com
Thomas J. Cunningham
Email: tcunningham@lockelord.com
David F. Standa
Email: dstanda@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Brian V. Otero, *Admitted Pro Hac Vice*
Email: botero@hunton.com
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
Email: sblacklocks@hunton.com
Ryan A. Becker, *Admitted Pro Hac Vice*
Email: rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, Suite 52
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant*

Frank A. Hirsch, Jr., *Admitted Pro Hac Vice*
Email: frank.hirsch@alston.com
Kelsey L. Kingsbery
Email: Kelsey.kingsbery@alston.com
ALSTON & BIRD LLP
4721 Emperor Boulevard, Suite 400
Durham, North Carolina 27703
Telephone: (919) 862-2200

Kenneth M. Kliebard
Email: Kenneth.kliebard@morganlewis.com
William J. Kraus
Email: William.kraus@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 324-1000

*Attorneys for Movants Wilmington Trust, N.A., Deutsche Bank National Trust Company and U.S. Bank, N.A.*

E. Lynette Stone
Email: els@thestonelawoffice.com
THE STONE LAW OFFICE
2101 Cedar Springs Road, #1050
Dallas, Texas 75201
Telephone: (972) 383-9499

*Attorney for Intervenor-Plaintiff Zachariah C. Manning*

Mark Ankcorn, #1159690
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM PLLC
200 West Madison Street, Suite 2143
Chicago, Illinois 60606
Telephone: (321) 422-2333
Facsimile: (619) 684-3541

Ann Marie Hansen
Email: annmarie@ankcornlaw.com
80 Halston Parkway
East Amherst, New York 14051
Telephone: (702) 755-5678

DATED this 14th day of January, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*

Beth E. Terrell, *Admitted Pro Hac Vice*
Email:  bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*