IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, <br><br> Defendant. <br><br> TRACEE A. BEECROFT, <br><br> Plaintiff, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, <br><br> Defendant. | CONSOLIDATED NO. 1:14-cv-08461 <br><br> Class Action <br><br> Jury Trial Demand <br><br> Honorable Matthew F. Kennelly <br><br><br> Case No.: 1:16−cv−08677 |

**DECLARATION OF BETH E. TERRELL IN SUPPORT OF MOTION FOR APPROVAL OF FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE**

I, Beth E. Terrell, declare as follows:

1.      I am a member of Terrell Marshall Law Group PLLC ("TMLG"), counsel of record for Plaintiffs in this matter. I am a member in good standing of the bars of the States of Washington and California. I respectfully submit this declaration in support of Plaintiffs' Motion for Approval of First Amendment to Settlement Agreement and Release.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the First Amendment to Settlement Agreement and Release.

3.      Attached hereto as Exhibit 2 is a true and correct copy of Ocwen Loan Servicing, LLC's Response and Objections to Plaintiffs' Confirmatory Interrogatory.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

     EXECUTED this 14th day of January, 2019 at Seattle, Washington.


      /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
     Beth E. Terrell, *Admitted Pro Hac Vice*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on January 14, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Chethan G. Shetty
Email: cshetty@lockelord.com
Simon A. Fleischmann
Email: sfleischmann@lockelord.com
Thomas J. Cunningham
Email: tcunningham@lockelord.com
David F. Standa
Email: dstanda@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Brian V. Otero, *Admitted Pro Hac Vice*
Email: botero@hunton.com
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
Email: sblacklocks@hunton.com
Ryan A. Becker, *Admitted Pro Hac Vice*
Email: rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, Suite 52
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant*

Frank A. Hirsch, Jr., *Admitted Pro Hac Vice*
Email: frank.hirsch@alston.com
Kelsey L. Kingsbery
Email: Kelsey.kingsbery@alston.com
ALSTON & BIRD LLP
4721 Emperor Boulevard, Suite 400
Durham, North Carolina 27703
Telephone: (919) 862-2200

Kenneth M. Kliebard
Email:  Kenneth.kliebard@morganlewis.com
William J. Kraus
Email:  William.kraus@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 324-1000

*Attorneys for Movants Wilmington Trust, N.A., Deutsche Bank National Trust
Company and U.S. Bank, N.A.*

E. Lynette Stone
Email:  els@thestonelawoffice.com
THE STONE LAW OFFICE
2101 Cedar Springs Road, #1050
Dallas, Texas 75201
Telephone: (972) 383-9499

*Attorney for Intervenor-Plaintiff Zachariah C. Manning*

Mark Ankcorn, #1159690
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM PLLC
200 West Madison Street, Suite 2143
Chicago, Illinois 60606
Telephone: (321) 422-2333
Facsimile: (619) 684-3541

Ann Marie Hansen
Email: annmarie@ankcornlaw.com
80 Halston Parkway
East Amherst, New York 14051
Telephone: (702) 755-5678

DATED this 14th day of January, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    *Attorneys for Plaintiffs*

- Exhibit 1 -

**FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE**

WHEREAS on September 14, 2017, Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee A. Beecroft, on behalf of themselves and all Settlement Class Members on the one hand, and Ocwen Loan Servicing, LLC, on the other hand, entered into a Settlement Agreement and Release to resolve the Consolidated Litigation;[1]

WHEREAS on October 5, 2017, the Court entered a Preliminary Approval Order conditionally certifying the Settlement Class, preliminarily approving the Settlement Agreement, approving the notice plan in the Settlement Agreement, and scheduling a final approval hearing;

WHEREAS on September 28, 2018, the Court found with respect to the Settlement Agreement that Class Notice distributed pursuant to the Preliminary Approval Order was adequate, that Class Counsel adequately represented the class, that the Settlement Agreement was negotiated at arm's length, and that the treatment of class members under the Settlement Agreement was reasonably equitable, but was unable to determine at that time that the Settlement was fair, reasonable, and adequate for the Settlement Class;

WHEREAS Ocwen maintains that it is in compliance with the injunctive relief originally contemplated in Section 4.2 of the Settlement Agreement, and Class Counsel intend to confirm that Ocwen is in compliance through discovery;

WHEREAS on November 13, 2018, the Parties engaged in a day-long, in-person mediation in Chicago with the Honorable Morton Denlow (ret.) and reached an agreement in principle for amending the Settlement Agreement to address the concerns described in the Court's September 28, 2018 order and to modify the agreed-to injunctive relief to account for the

---

[1]    Unless otherwise defined herein, all capitalized terms in this Amendment shall have the meanings ascribed to them in the Settlement Agreement and Release approved in the Court's October 5, 2017 Preliminary Approval Order (DE 266, Case No. 1:14-cv-08461).

October 4, 2018 acquisition of PHH Corporation by Ocwen Financial Corporation; and

WHEREAS Section 17.7 of the Settlement Agreement allows the Parties to amend the Settlement Agreement, subject to the approval of the Court with respect to any material changes:

NOW THEREFORE, the Parties hereby stipulate and agree as follows:

1.     Within thirty (30) Days of the Judgment becoming Final, Ocwen will deposit into the escrow account referred to in Section 4.5.2 of the Settlement Agreement (via wire instructions provided by the Settlement Administrator to Ocwen) $4,000,000 as a supplement to the $17,500,000 Ocwen previously deposited with the Settlement Administrator.

2.     "Settlement Fund" defined in Section 2.40 of the Settlement Agreement shall mean "the $21,500,000 described in Section 4.5 that Ocwen has agreed to pay pursuant to the terms of this Settlement Agreement, as amended."

3.     Section 4.5.1 of the Settlement Agreement shall state that "Ocwen will fund a non-reversionary common Settlement Fund of $21,500,000, from which all Settlement Relief, Attorneys' Fees and Costs, Notice and Administrative Costs, and Incentive Awards will be deducted. The Settlement Fund represents the limit and total extent of Ocwen's monetary obligations under this Agreement and the Settlement. In no event shall Ocwen's total financial liability with respect to this Agreement and the Settlement exceed $21,500,000."

4.     The injunctive relief in Section 4.2 of the Settlement Agreement shall apply to Ocwen's servicing of any mortgage loan migrated from Ocwen's REALServicing system to the BlackKnight/MSP system pursuant to Ocwen Financial Corporation's acquisition of PHH Corporation.

5.     "Released Persons" defined in Section 2.31 of the Settlement Agreement shall be narrowed to mean "(a) Ocwen and each of its respective divisions, parents, subsidiaries,

predecessors, investors, parent companies, and Affiliates, whether past or present, any direct or indirect subsidiary of Ocwen and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or present, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities; and (b) any person or entity making calls to Settlement Class Members on behalf of Ocwen, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities." For the avoidance of doubt, "Released Persons" specifically does not include Altisource Portfolio Solutions S.A., Altisource Solutions S.à r.l., Altisource Business Solutions Pvt. Ltd., or any other Affiliate or member of the Altisource family of companies. In addition, "Released Persons" does not include any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

6. The last sentence of Section 10.1 of the Settlement Agreement, which describes "Released Claims of Settlement Class," shall be replaced by the following language: "For the avoidance of doubt, no claims alleged in *Beecroft v. Altisource Business Solutions Pvt. Ltd.*, No. 0:15-cv-02184-SRN-BRT (D. Minn.), or *Snyder, et al. v. U.S. Bank, N.A., et al.*, No. 1:16-cv-11675 MFK (N.D. Ill.), are released."

7. Section 3.5 of the Settlement Agreement, "Condition Three: Dismissal of Related Actions," shall be narrowed to remove the reference to *Snyder, et al. v. U.S. Bank, N.A., et al.*, No. 1:16-cv-11675 MFK (N.D. Ill.). Section 3.5 shall now state "Released Claims will be dismissed with prejudice, and claims other than Released Claims, including those under the FDCPA, will be dismissed without prejudice."

3

8. The "Final Approval Order" and "Judgment" approved in the Preliminary Approval Order shall be entered in a form substantially similar to Exhibits H and H-1 attached hereto and reflect the amendments described in paragraphs 1-7.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this First Amendment to the Settlement Agreement on the dates set forth below.

**On Behalf of Defendant Ocwen Loan Servicing LLC:**

Dated: _____    By: _____

Name: _____

Title: _____

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: _1/3/2019_    By: _____
                          Keith Snyder

Dated: _____    By: _____
                                          Susan Mansanarez

Dated: _____    By: _____
                                          Tracee A. Beecroft

**Approved as to form and content:**

For Plaintiffs:                    For Ocwen Loan Servicing, LLC:

_____          _____

Alexander H. Burke                 Brian V. Otero
aburke@burkelawllc.com             botero@hunton.com
Daniel J. Marovitch                Stephen R. Blacklocks
dmarovitch@burkelawllc.com         sblacklocks@hunton.com
BURKE LAW OFFICES, LLC             Ryan A. Becker

4

8.     The "Final Approval Order" and "Judgment" approved in the Preliminary

Approval Order shall be entered in a form substantially similar to Exhibits H and H-1 attached

hereto and reflect the amendments described in paragraphs 1-7.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this First

Amendment to the Settlement Agreement on the dates set forth below.

**On Behalf of Defendant Ocwen Loan Servicing LLC:**

Dated: _____          By:     _____

                                         Name: _____

                                         Title:   _____

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: _____          By:     _____
                                                 Keith Snyder

Dated:  1/4/19                           By: _____
                                                 Susan Mansanarez

Dated: _____          By:     _____
                                                 Tracee A. Beecroft

**Approved as to form and content:**

For Plaintiffs:                          For Ocwen Loan Servicing, LLC:

_____          _____
Alexander H. Burke                       Brian V. Otero
aburke@burkelawllc.com                   botero@hunton.com
Daniel J. Marovitch                      Stephen R. Blacklocks
dmarovitch@burkelawllc.com               sblacklocks@hunton.com
BURKE LAW OFFICES, LLC                   Ryan A. Becker

4

8. The "Final Approval Order" and "Judgment" approved in the Preliminary Approval Order shall be entered in a form substantially similar to Exhibits H and H-1 attached hereto and reflect the amendments described in paragraphs 1-7.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this First Amendment to the Settlement Agreement on the dates set forth below.

**On Behalf of Defendant Ocwen Loan Servicing LLC:**

Dated: _____    By: _____

                                Name: _____

                                Title: _____

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: _____    By: _____
                                        Keith Snyder

Dated: _____    By: _____
                                        Susan Mansanarez

Dated: 1-3-2019                 By: _____
                                        Tracee A. Beecroft

**Approved as to form and content:**

For Plaintiffs:                 For Ocwen Loan Servicing, LLC:

_____           _____
Alexander H. Burke               Brian V. Otero
aburke@burkelawllc.com           botero@hunton.com
Daniel J. Marovitch              Stephen R. Blacklocks
dmarovitch@burkelawllc.com       sblacklocks@hunton.com
BURKE LAW OFFICES, LLC           Ryan A. Becker

4

8.    The "Final Approval Order" and "Judgment" approved in the Preliminary Approval Order shall be entered in a form substantially similar to Exhibits H and H-1 attached hereto and reflect the amendments described in paragraphs 1-7.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this First Amendment to the Settlement Agreement on the dates set forth below.

**On Behalf of Defendant Ocwen Loan Servicing LLC:**

Dated: __1 / 8 / 19__        By: _____

Name: _____
Annie T. Zaffuto
Associate General Counsel

Title: _____

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: _____        By: _____
Keith Snyder

Dated: _____        By: _____
Susan Mansanarez

Dated: _____        By: _____
Tracee A. Beecroft

**Approved as to form and content:**

For Plaintiffs:                                     For Ocwen Loan Servicing, LLC:

_____            _____

Alexander H. Burke                          Brian V. Otero
aburke@burkelawllc.com                botero@hunton.com
Daniel J. Marovitch                          Stephen R. Blacklocks
dmarovitch@burkelawllc.com        sblacklocks@hunton.com
BURKE LAW OFFICES, LLC           Ryan A. Becker

4

155 N. Michigan Ave., Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

Beth E. Terrell
Email: bterrell@terrellmarshall.com
Adrienne D. McEntee
Email: amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP
PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Mark Ankcorn
Email: mark@ankcornlaw.com
Ann Marie Hansen
Email: Annmarie@ankcornlaw.com
ANKCORN LAW FIRM PLLC
200 West Madison Street, Suite 2143
Chicago, Illinois 60606
Telephone: (321) 422-2333
Facsimile: (619) 684-3541

Guillermo Cabrera
Email: gil@cabrerafirm.com
Jared Quient
Email: jared@cabrerafirm.com
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 500-4880
Facsimile: (619) 785-3380

Mark L. Heaney
Email: mark@heaneylaw.com

HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
Telephone: (952) 933-9655

rbecker@hunton.com
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 309-1000

Simon Fleischmann (6274929)
sfleischmann@lockelord.com
Thomas J. Cunningham (6215928)
tcunningham@lockelord.com
Chethan Shetty (6300848)
cshetty@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Phone: 312-443-0700

**EXHIBITS H & H-1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) ) ) | Case No. 1:14-cv-08461 |
| | ) | Honorable Matthew F. Kennelly |
| Ocwen Loan Servicing, LLC, | ) ) | Consolidated |
| | ) ) ) ) ) | |
| | ) | |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) ) | Case No. 1:14-cv-08461 |
| | ) ) | Honorable Matthew F. Kennelly |
| Ocwen Loan Servicing, LLC, | ) ) ) | |
| | ) ) | Consolidated |
| | ) | |

**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND DISMISSING CLASS PLAINTIFFS' CLAIMS**

This Court, having held the Initial Final Approval Hearing on April 5, 2018, having

provided notice of that hearing in accordance with the Preliminary Approval Order, and having

considered all matters submitted to it in connection with the Initial Final Approval Hearing and

otherwise, and finding no just reason for delay in entry of this Order Granting Final Approval of

Class Action Settlement and Dismissing Class Plaintiffs' Claims (the "Final Approval Order" or this "Order") and good cause appearing therefore,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     Unless otherwise defined, all capitalized terms in this Final Approval Order shall have the same meaning as they do in the Amended Settlement Agreement.[1]

2.     The Court has jurisdiction over the subject matter of the Consolidated Litigation and over the Parties, including all Settlement Class Members with respect to the Settlement Class certified for settlement purposes, as follows:

> All persons who were called by Ocwen on the 1,685,757 unique cell phone numbers listed on Exhibit G to the Settlement Agreement (filed with the Court under seal) using its Aspect dialing system between October 27, 2010 and through and including October 5, 2017, the date of the Preliminary Approval Order ("Settlement Class Period"). Excluded from the Settlement Class are: (i) those persons who were called by Ocwen using its Aspect dialing system during the Settlement Class Period only on numbers not included on Exhibit G; (ii) individuals who are or were during the Settlement Class Period officers or directors of Ocwen or any of its Affiliates; (iii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iv) all individuals who file a timely and proper request to be excluded from the Settlement Class.

3.     The Court finds that the Settlement Agreement and the First Amendment to the Settlement Agreement and Release were negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of the Consolidated Litigation and of the strengths and weaknesses of their respective positions. Further, the settlement and the amendments to the settlement occurred only after the parties negotiated over a period of many weeks. Counsel for the Parties were therefore well positioned to evaluate the benefits of both the

---

[1] The "Amended Settlement Agreement" is defined as the Settlement Agreement approved in the Court's October 5, 2017 Preliminary Approval Order (DE 266), as amended by the First Amendment to the Settlement Agreement and Release, dated [DATE] (DE ___).

Settlement Agreement and the First Amendment to the Settlement Agreement and Release, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

      4.      Pursuant to the terms of the Amended Settlement Agreement, Ocwen has consented to the entry of an injunction and is hereby ordered to commence the following procedures within 60 days of the Final Settlement Date:

      a.      Ocwen will re-set to "P" in REALServicing a borrower's consent to receiving automated calls whenever a new phone number is added to a borrower's account.

      b.      Ocwen will conduct a search for all loans reflecting a NEWP and NVLS code entered in REALServicing on the same day between December 1, 2014 and October 6, 2017. Ocwen will reset the value in the consent field to "P" for all borrowers identified by that search.

      c.      Ocwen will add an additional prompt to its agent scripts for inputting new phone numbers to track the means by which any particular phone number for a borrower was obtained:

      i.      When an agent clicks on the "new phone number" button to add a new phone number to an account, the agent will be prompted to add the source of the new phone number.

      ii.      The phone number source will be selected from a dropdown menu prepopulated with potential sources of a new phone number.

      iii.      The agent will then be required to select the phone number's source before proceeding.

        iv.      If the phone number was not obtained directly from the owner or subscriber of the cell phone, the consent field for the borrower will then be set to "P," which will prevent any of the borrower's cell phone numbers from being called from Ocwen's Aspect system.

        v.       Ocwen shall not use Aspect to call any cell phone associated with any borrower where there is a P or N in the consent field, except in instances in which Ocwen is calling borrowers for the Home Retention Manager appointment scheduled by the borrower.

d.      Ocwen agrees to use the following language in its scripts when requesting consent to use its automatic dialing system to call cell phones: "May we please have your consent to use our automatic dialing system to call your cell phone of xxx-xxx-xxxx?" After the borrower provides a response, a script will instruct Ocwen's representative to state: "If you change your mind at any time, please let us know. We will honor such a request."

e.      If, when Ocwen solicits a borrower's consent to be called with an automatic dialing system, that borrower does not give separate consent for each of his or her cell phone numbers, the borrower's consent field will be set to "N," which will prevent any of the borrower's cell phone numbers from being called from Ocwen's Aspect system.

f.      In any individual case commenced between October 6, 2017 and a date that is two years from the date of this Order (but not in any case in which a plaintiff brings claims on behalf of an alleged class of persons similarly situated), if Ocwen is found liable for a TCPA violation, Ocwen agrees to

pay not less than the amounts set forth below for each automated call through its Aspect system to a cell phone, where the consent field in Ocwen's REALServicing system should have been "N" or "P" as of October 6, 2017:

    i.    For the first 10 calls placed to a cell phone as described in this Paragraph 4.f, Ocwen shall pay $1,000 for each such call.

    ii.    For 11-50 calls placed to a cell phone as described in this Paragraph 4.f, Ocwen shall pay $1,250 for each such call.

    iii.    For over 50 calls placed to a cell phone as described in this Paragraph 4.f, Ocwen shall pay $1,500 for each such call.

    g.    Ocwen shall provide Class Counsel with a declaration with regard to its compliance with the terms above within 75 Days of the Final Settlement Date.

5.    The Court is informed that, as part of a recently-completed merger, Ocwen contemplates migrating the loans it services from the RealServicing platform to a BlackKnight/MSP servicing platform. Accordingly, should Ocwen actually go through with the contemplated migration of loans from RealServicing to BlackKnight/MSP, the declaration required in Paragraph 4.g above shall include a description of how Ocwen will comply substantially with the injunctive provisions of this Order in light of the change in servicing platforms.

6.    The Court finally certifies the Settlement Class for settlement purposes and finds, for settlement purposes, that the Consolidated Litigation satisfies all the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically: (a) the number of Settlement Class

Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Amended Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action settlement is superior to the other available methods for the fair and efficient adjudication of the controversy.

7.     The Court appointed Burke Law Offices, LLC and Terrell Marshall Law Group PLLC as interim lead Class Counsel for Plaintiffs' proposed classes on November 28, 2018, and now finally appoints Burke Law Offices, LLC and Terrell Marshall Law Group PLLC as Class Counsel for the Settlement Class.

8.     The Court finally designates Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee A. Beecroft as the Class Representatives.

9.     The Court makes the following findings and conclusions regarding notice to the Settlement Class:

a.     The Class Notice was disseminated to persons in the Settlement Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;

b.     The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Settlement Class Members, (ii) constituted notice that was reasonable calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the

Consolidated Litigation, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law;

        c.      The Court finds that Defendant has complied with its notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), in connection with the proposed Settlement; and

        d.      The Amended Settlement Agreement provides additional, valuable benefits to the Settlement Class, and does nothing to hinder Claimants' legal rights. Moreover, no state or federal officials objected or commented on the Settlement after receiving CAFA notice, and any Settlement Class Members who chose to exclude themselves have already done so. As a result, neither supplemental notice to the Settlement Class nor additional CAFA notice is necessary.

     10.     The Court finally approves the Amended Settlement Agreement as fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e). The terms and provisions of the Amended Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

     11.     The Court overrules the three objections submitted by Brenda Stuart, Daniel Seltzer, and Paul Squicciarini.

     12.     The Court approves the plan of distribution for the Settlement Fund as set forth in the Amended Settlement Agreement. The Settlement Administrator is ordered to comply with the

terms of the Amended Settlement Agreement with respect to distribution of Settlement Relief, including a second payment, if feasible. Should any unclaimed funds be distributed, the Court hereby approves the National Consumer Law Center ("NCLC") and Public Justice Foundation as recipients who shall receive an equal distribution of those unclaimed funds, after accounting for the costs of administering that distribution. The funds to NCLC shall be earmarked for work associated with the FCC to protect consumer protections under the Telephone Consumer Protection Act ("TCPA"). This Court finds this organization closely aligned with the Settlement Class's interests.

13. By incorporating the Amended Settlement Agreement and its terms herein, this Court determines that this Final Approval Order complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

14. Class Counsel have moved pursuant to Fed. R. Civ. P. 23(h) and 52(a) for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rules 23(h)(3) and 52(a) this Court makes the following findings of fact and conclusions of law:

    a. that the Class Settlement confers substantial benefits on the Settlement Class Members;

    b. that the value conferred on the Settlement Class is immediate and readily quantifiable;

    c. that within 60 days after the Final Settlement Date, Settlement Class Members who have submitted valid Claim Forms will receive cash payments;

    d. that Class Counsel vigorously and effectively pursued the Settlement Class Members' claims before this Court in this complex case;

    e. that the Class Settlement was obtained as a direct result of Class Counsel's

8

advocacy;

    f. that the Class Settlement was reached following extensive negotiation between Class Counsel and Counsel for Ocwen, and was negotiated in good faith and in the absence of collusion; and

    g. that counsel who recover a common benefit for persons other than himself or his client is entitled to a reasonable attorneys' fee from the Settlement Fund as a whole. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1984).

   15. Accordingly, Class Counsel are hereby awarded $_____ for attorneys' fees and $_____ in litigation expenses from the Settlement Fund, which this Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Amended Settlement Agreement. Class Counsel shall be responsible for allocating and shall allocate this award of attorneys' fees, costs, and expenses that are awarded amongst and between Class Counsel.

   16. The Class Representatives, as identified in the Preliminary Approval Order, are hereby compensated in the amount of $_____ each for their efforts in this case.

   17. The terms of the Amended Settlement Agreement and of this Final Approval Order, including all exhibits thereto, shall be forever binding in all pending and future lawsuits maintained by the Plaintiffs and all other Settlement Class Members, and anyone claiming through them such as heirs, administrators, successors, and assigns.

   18. The Releases, which are set forth in Section 10 of the Amended Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Order; and the Released Persons are fully, conclusively,

irrevocably, forever, and finally released, relinquished, and discharged by the Releasing Persons from all Released Claims.

        a.      <u>Released Claims of Settlement Class</u>.  Upon Final Approval, each member of the Settlement Class shall, by operation of the Judgment to be entered pursuant to this Order, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of Final Approval, that relate to or arise out of Ocwen's use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone for servicing or debt collection purposes during the Settlement Class Period, including but not limited to claims that relate to or arise out of Ocwen's use of an "automatic telephone dialing system" or "artificial or prerecorded voice" as defined in the Telephone Consumer Protection Act.  For the avoidance of doubt, "Released Claims" include claims relating to or arising out of the equipment or method used to contact or attempt to contact Settlement Class Members by telephone, but do not include claims based on other aspects of calls, such as the substance of the calls, or the time/date of any such calls.  For the avoidance of doubt, no claims alleged in *Beecroft v. Altisource Business Solutions Pvt. Ltd.*, No. 0:15-cv-02184-SRN-BRT (D. Minn.), or *Snyder, et al. v. U.S. Bank, N.A., et al.*, No. 1:16-cv-11675 MFK (N.D. Ill.), are released.

b.      Without in any way limiting their scope, the Released Claims cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs, or any Settlement Class Members in connection with or related in any manner to this Settlement, the administration of this Settlement, and/or the Released Claims, except to the extent otherwise specified in the Amended Settlement Agreement.

c.      In connection with the Releases and without expanding their scope in any way, Plaintiffs and each Settlement Class Member shall be deemed, as of the date of Final Approval, to have waived any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

To the extent that anyone might argue that these principles of law are applicable, the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released.  Each Plaintiff and each Settlement Class Member is deemed to recognize that even if they may later discover facts in addition to or different from those which they now know or believe to be true, they fully, finally, and forever settle and release any and all claims covered by these Releases upon entry of the Judgment.  The Settling Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Amended Settlement Agreement.

d.      The Amended Settlement Agreement and the Releases therein do not affect the rights of Settlement Class Members who timely and properly submit a Request for

Exclusion from the Settlement in accordance with the requirements in Section 11 of the Amended Settlement Agreement.

       e.     The Releases do not include claims described in Paragraph 4.f of this Order.

       f.     The administration and consummation of the Settlement as embodied in the Amended Settlement Agreement shall remain under the authority of this Court. This Court retains jurisdiction to protect, preserve, and implement the Amended Settlement Agreement, including, but not limited to, enforcement of the Releases contained in the Amended Settlement Agreement. This Court retains jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Amended Settlement Agreement.

       g.     Upon entry of the Final Approval Order and the Judgment: (i) the Amended Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out) in accordance with the terms and provisions of the Amended Settlement Agreement; (ii) the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s) except as set forth in the Amended Settlement Agreement; and (iii) Settlement Class Members who have not opted out shall be permanently barred from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on the Released Claims.

       h.     Nothing in the Amended Settlement Agreement shall preclude any action to enforce the terms of the Amended Settlement Agreement, including participation in any of the processes detailed therein. The Releases set forth therein are not intended to include the release

12

of any rights or duties of the Settling Parties arising out of the Amended Settlement Agreement, including the express warranties and covenants contained therein.

19.     The Court dismisses without prejudice all of Plaintiffs' claims that are not Released Claims, including those brought under the Fair Debt Collection Practices Act. The Court dismisses all Released Claims, with prejudice, without costs to any Party, except as expressly provided for in the Amended Settlement Agreement.

20.     Neither the Amended Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Order, nor any of its terms and provisions nor the Judgment to be entered pursuant to this Order, nor any of its terms and provisions, shall be:

    a.     offered by any person or received against any Released Person as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Person of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Consolidated Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Consolidated Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of any Released Person; or

    b.     offered by any person or received against any Released Person as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Released Person or any other wrongdoing by any Released Person; or

    c.     offered by any person or received against any Released Person as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or

13

wrongdoing in any civil, criminal, or administrative action or proceeding.

21.     This Order, the Judgment to be entered pursuant to this Order, and the Amended Settlement Agreement (including the Exhibits thereto and Exhibits H and H-1 to the First Amendment to the Settlement Agreement and Release, but not Exhibit G, which may only be filed under seal) may be filed in any action against or by any Released Person to support a defense of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

22.     Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Amended Settlement Agreement.

23.     This Order and the Judgment to be entered pursuant to this Order shall be effective upon entry.  In the event that this Order and/or the Judgment to be entered pursuant to this Order are reversed or vacated pursuant to a direct appeal in the Consolidated Litigation or the Amended Settlement Agreement is terminated pursuant to its terms, all orders entered and releases delivered in connection herewith shall be null and void.

24.     A Judgment substantially in the form attached hereto as Exhibit H-1 will be entered forthwith.


        DONE and ORDERED in Chambers in Chicago, Illinois, this day of _____, 20_____.

                                        _____
                                        Matthew F. Kennelly
                                        UNITED STATES DISTRICT JUDGE

**EXHIBIT H-1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) Case No. 1:14-cv-08461 |
| | ) |
| | ) Honorable Matthew F. Kennelly |
| | ) |
| Ocwen Loan Servicing, LLC, | ) Consolidated |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| | ) |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, | ) ) |
| | ) Case No. 1:14-cv-08461 |
| | ) |
| | ) |
| | ) Honorable Matthew F. Kennelly |
| Ocwen Loan Servicing, LLC, | ) |
| | ) |
| | ) Consolidated |
| | ) |

**FINAL JUDGMENT**

This Consolidated Litigation having settled pursuant to the Amended Settlement

Agreement[1] and the Court having entered an Order Granting Final Approval of Class Action

Settlement and Dismissing Class Plaintiffs' Claims (the "Final Approval Order"), IT IS

---

[1] The "Amended Settlement Agreement" is defined as the Settlement Agreement approved in the Court's October 5, 2017 Preliminary Approval Order (DE 266), as amended by the First Amendment to the Settlement Agreement and Release, dated [DATE] (DE ___).

HEREBY ORDERED, ADJUDGED AND DECREED that:

1.     Unless otherwise defined, all capitalized terms in this Judgment shall have the same meaning as they do in the Amended Settlement Agreement.

2.     All of Plaintiffs' claims in this Consolidated Litigation that are not Released Claims, including those brought under the Fair Debt Collection Practices Act, are hereby dismissed without prejudice.  All of Plaintiffs' and Settlement Class Members' claims in this Consolidated Litigation that are Released Claims are hereby dismissed on the merits and with prejudice, without fees (including attorneys' fees) or costs to any Party except as otherwise provided in the Final Approval Order.

a.     "Plaintiffs" means Keith Snyder, Susan Mansanarez, and Tracee A. Beecroft.

b.     "Settlement Class Members" are members of the "Settlement Class," which consists of the following:

> All persons who were called by Ocwen on the 1,685,757 unique cell phone numbers listed on Exhibit G to the Settlement Agreement (filed with the Court under seal) using its Aspect dialing system between October 27, 2010 and through and including October 5, 2017, the date of the Preliminary Approval Order ("Settlement Class Period"). Excluded from the Settlement Class are: (i) those persons who were called by Ocwen using its Aspect dialing system during the Settlement Class Period only on numbers not included on Exhibit G; (ii) individuals who are or were during the Settlement Class Period officers or directors of Ocwen or any of its Affiliates; (iii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iv) all individuals who file a timely and proper request to be excluded from the Settlement Class.

c.     "Ocwen" means Ocwen Loan Servicing, LLC.

d.     "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control with such entity.

2

3.      All Releasing Persons have released the Released Claims as against the Released

Persons, and are, from this day forward, hereby permanently barred from filing, commencing,

prosecuting, intervening in, or participating in (as class members or otherwise) any action in any

jurisdiction based on any of the Released Claims.

a.      "Released Claims" means the claims released as provided for in Section

10 of the Amended Settlement Agreement.  "Released Claims" does not include claims described

in Section 4.2.6 of the Amended Settlement Agreement.

b.      "Released Persons" means: (a) Ocwen and each of its respective divisions,

parents, subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or

present, any direct or indirect subsidiary of Ocwen and each of their respective divisions, parents,

subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or present,

and all of the officers, directors, employees, agents, brokers, distributors, representatives, and

attorneys of all such entities; and (b) any person or entity making calls to Settlement Class

Members on behalf of Ocwen, and all of the officers, directors, employees, agents, brokers,

distributors, representatives, and attorneys of all such entities.  For the avoidance of doubt,

"Released Persons" specifically does not include Altisource Portfolio Solutions S.A., Altisource

Solutions S.à r.l., Altisource Business Solutions Pvt. Ltd., or any other Affiliate or member of the

Altisource family of companies.  In addition, "Released Persons" does not include any trustee of a

mortgage securitization trust which included loans made to any Settlement Class Member,

including, but not limited to, any direct or indirect subsidiary of any of them, and all of the

officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all

such entities.

c.      "Releasing Persons" means Plaintiffs, all Settlement Class Members, and

anyone claiming through them such as heirs, administrators, successors, and assigns.

4.      This Court shall retain jurisdiction over the construction, interpretation, consummation, implementation, and enforcement of the Amended Settlement Agreement and the Releases contained in therein, including jurisdiction to enter such further orders as may be necessary or appropriate to administer and implement the terms and provisions of the Amended Settlement Agreement, including but not limited to Section 4.2 regarding injunctive relief.

5.      Settlement Class Members shall promptly dismiss with prejudice all Released Claims brought by any Settlement Class Member in any jurisdiction.


DONE and ORDERED in Chambers in Chicago, Illinois, this day of _____, 20_____.

_____
Matthew F. Kennelly
UNITED STATES DISTRICT JUDGE

- Exhibit 2 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 14-cv-8461 |
| Plaintiffs, | ) ) | |
| | ) | Class Action |
| v. | ) ) | Jury Trial Demand |
| Ocwen Loan Servicing, LLC, | ) ) | |
| | ) | Hon. Matthew F. Kennelly |
| Defendant. | ) ) | |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, | ) ) ) | Case No. 16-cv-08677 |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Ocwen Loan Servicing, LLC, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

## OCWEN LOAN SERVICING, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' CONFIRMATORY INTERROGATORY

Defendant Ocwen Loan Servicing, LLC hereby responds and objects to Confirmatory Interrogatory Number 1.

### Objection

Ocwen objects to the definition of "Ocwen" insofar as the term is defined to include "affiliates…successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives" and therefore purports to include within its scope entities and individuals on whose behalf Ocwen Loan Servicing, LLC is not obligated to provide

responses under the Federal Rules of Civil Procedure. The responses herein are provided on

behalf of Ocwen Loan Servicing, LLC.

**Response**

CONFIRMATORY INTERROGATORY NO. 1: Ocwen previously agreed to be bound by the injunctive relief described in Exhibit A. As part of its merger with PHH, Ocwen will transfer all loans from the REALServicing servicing system to the MSP servicing system. Describe in detail how Ocwen will comply with the language in Exhibit A following the merger with PHH and the transfer to the MSP servicing system.

**RESPONSE:**

Even though the injunction proposed to the court in 2017 was not entered, Ocwen implemented the relief described in Section 4.2 of the Settlement Agreement, as though the injunction had been entered by the court:

- On April 22, 2018, Ocwen implemented a change in REALServicing which results in the consent field automatically being re-set to "P" any time a new phone number is added to that borrower's account. Settlement Agreement ("SA") ¶4.2.1.
- Ocwen conducted a search of REALServicing loan data to identify all loans reflecting a NEWP and NVLS code that was entered on the same day between December 1, 2014 and October 5, 2017. Between November 3 and November 17, 2017, Ocwen changed the consent code to "P" for all loans that were identified as a result of this search. SA ¶4.2.2.
- On January 3, 2018, Ocwen changed the scripting for its skip tracing agents to use when adding a new telephone number to a borrower's account. When a skip agent clicks on the "new phone number" button to add a new phone number to an account, the agent is prompted to select a source for the new phone number from the following dropdown menu:
  - ANI
  - Free website
  - Paid website
  - REALServicing
  - Vault
  - Written correspondence
  - Other

If the new phone number was not obtained directly from the owner or subscriber of the telephone, skip agents are instructed to set the consent status for the borrower/account to N. The "N" and "P" consent flags are excludable criteria, which prevents the phone numbers associated with those consent statuses from being loaded into the Aspect dialer for outbound dialing.

Customer care agents may only add a new phone number to an account if they are speaking to a borrower and have confirmed their identity. If the borrower provides a new phone number, the customer care agent hits the "Update contact" button. The agent can then update the phone number field, which automatically generates text that populates the REALServicing comments log. The comment log text includes the name of the person to whom the agent is speaking, and the old and new phone numbers. The borrower's consent status automatically is reset to P, which prompts the agent to inquire about the consent status of the new number using the script described below. The agent then records the consent information into the REALServicing consent field. SA ¶4.2.3.

- On December 13, 2017, Ocwen revised the script used by agents when requesting consent to read as follows: "May we please have your consent to use our automatic telephone dialing system to call your cell phone of xxx-xxx-xxxx?" After the borrower provides a response to that question, the script instructs the agent to state: "If you change your mind at any time, please let us know. We will honor such a request." SA ¶4.2.4.
- On June 12, 2018, Ocwen instituted a policy for instances in which an agent is soliciting a borrower's consent to be called on his or her cell phone with the Aspect system. The policy provides that if a borrower does not provide separate consent for Ocwen to dial each of his or her cell phone numbers using its automatic dialing system the consent field for the borrower's account will be set to "N." SA ¶4.2.5.

As part of its merger with PHH, Ocwen intends to board all loans currently serviced on its REALServicing system to a servicing system called MSP. Ocwen intends to board the loans to MSP on a rolling basis beginning in February, 2019. Though REALServicing and MSP serve similar functions and use similar codes in their systems, the systems are not identical. Ocwen intends to map phone numbers and consent-related data from REALServicing to MSP. All known phone numbers will be migrated to MSP. Present consent status will be migrated as well. It is important to note that, because MSP tracks consent by phone number rather than by account, consent dates will not be migrated to MSP, because doing so would lead to inaccuracies. Instead, consent dates will be recorded in MSP as consents and revocations occur, on a going forward basis. MSP will also track the source of a particular number (e.g., origination, skip trace, acquisition or customer call). After migration, MSP will track each individual phone number on an account by type of number, the source of the number, whether consent was given or revoked for the number, and the date of such consent or revocation. Phone numbers coded to indicate that Ocwen does not have consent, and numbers not associated with the borrower (e.g., attorney, relative, etc.), will be excluded from automated outbound dialing campaigns.

Once a loan is boarded to MSP, new phone numbers can only be added to the system in one of two ways: 1) by an agent; and 2) via an updated data extract from LexisNexis. With respect to adding numbers through an agent, the scripting that Ocwen will use requires agents to verify, on each call with a borrower, all telephone numbers on file, the type of each phone number, and the consent status for each number. The scripting will instruct an agent that a new number can only be added to the account if the agent selects a source code for the new number and verifies the consent status for all phone numbers, including the new number, on the account. When seeking consent, the script to be used by agents will ask "May we please have your consent to use an automatic dialing system to call your cell phone of xxx-xxx-xxxx?" After a

- 3 -

borrower provides a response, the script will instruct the representative to state "If you change your mind at any time, please let us know. We will honor any such request." Phone numbers for which consent is given will be coded as "yes" in MSP. Phone numbers for which consent is not given or revoked will be coded as "no."

When accounts are not associated with valid telephone numbers, Ocwen may send information concerning such accounts to LexisNexis, which uses proprietary systems and databases to identify potential new telephone numbers for those accounts. LexisNexis sends a data file with any potential new telephone numbers to MSP, where the number is identified as having been received from skip tracing. Numbers identified as being received from skip tracing are excluded then from any automated outbound dialing campaigns. An agent then will place a manual call through a Serenova telephone system (by manually entering the ten-digit telephone number on a keypad or virtual keypad on a screen) to the new numbers to attempt to verify that the new number is associated with the borrower. If an agent dials the phone number found by skip tracing and connects with a borrower that verifies the phone number, the source of the number is changed to "CUSTOMER CALL" and the consent field is changed to reflect the status provided by the borrower for that phone number. If the number identified by skip tracing is not associated with the borrower, the agent removes the telephone number from the account.

The processes that will be in place for loans transferred from REALServicing to MSP will result in substantial compliance with the terms of the injunction contemplated in the Settlement Agreement:

- New phone numbers identified by agents will not be added to an account unless an agent has verified the new telephone number and recorded its consent status in MSP. SA ¶4.2.1. New phone numbers identified through skip tracing will list skip tracing (SK) as the source of the number, which will make the number ineligible in automated outbound dialing campaigns, unless and until an agent verifies through a manual call via the Serenova system (or through the next contact with the borrower) that the number is associated with the borrower and records the consent status for that number as "yes." SA ¶4.2.1.
- MSP will track each phone number by type of number, the source of the number, whether consent was given or revoked for the number, and the date of such consent or revocation. Only numbers associated with a "yes" in the consent field will be eligible for inclusion in automated outbound dialing campaigns. SA ¶4.2.3.
- When seeking consent, the script to be used by agents will ask "May we please have your consent to use an automatic dialing system to call your cell phone of xxx-xxx-xxxx?" After a borrower provides a response, the script will instruct the representative to state "If you change your mind at any time, please let us know. We will honor any such request." SA ¶4.2.4.
- Consent will be tracked at the phone number level, rather than the borrower level, such that consent to be dialed on one phone number using an automatic dialing system will not be treated as consent to be called on any phone number using an automated dialing system. Only numbers associated with a "yes" in the consent field will be eligible for inclusion in automated outbound dialing campaigns. SA ¶4.2.6.

As to Objections:

By: _____

Simon Fleischmann (6274929)
*sfleischmann@lockelord.com*
David F. Standa (6300942)
*dstanda@lockelord.com*
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312.443.0700

Brian V. Otero, *Admitted Pro Hac Vice*
*botero@hunton.com*
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
*sblacklocks@hunton.com*
Ryan A. Becker, *Admitted Pro Hac Vice*
*rbecker@hunton.com*
HUNTON ANDREWS KURTH LLP
200 Park Avenue, Suite 52
New York, New York 10166
Phone: 212.309.1000

Counsel for Ocwen Loan Servicing, LLC

## VERIFICATION

I, Sheri Robinson, hereby certify that I am a Vice President of PHH Mortgage Corporation, an affiliate of Defendant Ocwen Loan Servicing, LLC, and that I am authorized by Ocwen Loan Servicing, LLC to make this verification on its behalf; that while I do not have personal knowledge of all of the facts recited in the foregoing Responses and Objections to Plaintiffs' Contention Interrogatory, the information contained in the response has been collected and made available to me by others, and the information is true to the best of my knowledge and belief based upon the information made available to me, and that therefore, the foregoing responses to Interrogatories are verified on behalf of Ocwen Loan Servicing, LLC, in this litigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 9, 2019.

Dated: January 9, 2019

_____

Sheri Robinson

**Certificate of Service**

     I, Ryan A. Becker, an attorney, certify that on January 10, 2019, true and correct copies of the foregoing Discovery Responses were served by email upon the following persons:

Alex Burke
Daniel J. Marovitch
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312)729-5288
(312)729-5289 (fax)
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

Beth Terrell
Adrienne D. McEntee
Terrell | Marshall Law Group PLLC
936 N 34th Street, Suite 300
Seattle, WA 98103
T 206.816.6603
F 206.350.3528
bterrell@terrellmarshall.com
amcentee@terrellmarshall.com

Mark Ankcorn
Ankcorn Law Firm, PC
11622 El Camino Real, Suite 100
San Diego, CA 92130
mark@ankcorn.com

Guillermo Cabrera
Jared Quient
The Cabrera Firm, APC
600 West Broadway, Suite 700
San Diego, CA 92101
gil@cabrerafirm.com
jared@cabrerafirm.com

Mark L. Heaney
Heaney Law Firm, LLC
13911 Ridgedale Drive
Suite 110
Minnetonka, Minnesota 55305
mark@heaneylaw.com

                                 /s/Ryan A. Becker