| | |
|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, | ) ) ) Case No. 1:14-cv-08461 ) |
| Plaintiffs, | ) Honorable Matthew F. Kennelly ) |
| v. | ) Consolidated ) |
| Ocwen Loan Servicing, LLC, | ) ) |
| Defendant. | ) ) ) |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, | ) ) Case No. 16-cv-08677 ) |
| Plaintiff, | ) Honorable Matthew F. Kennelly ) |
| v. | ) Consolidated ) |
| Ocwen Loan Servicing, LLC, | ) ) |
| Defendant. | ) ) |

**OCWEN'S MEMORANDUM IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPROVAL OF
FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE**

**Table of Contents**

Introduction ........................................................................................................................1

I.      After ACA, Ocwen has a strong argument that Plaintiffs' claims
        are valueless. ...........................................................................................................3

        A.      The issue: whether the Aspect dialer is an ATDS. .................................3

        B.      The FCC's interpretation and the D.C. Circuit's vacatur .......................4

        C.      The statutory definition of an ATDS requires that a dialer
                generate random or sequential numbers; the Aspect dialer
                does not do that. ......................................................................................7

II.     Courts continue to hold that a TCPA class should not be certified
        when the defendant shows that consent is an individualized issue...................11

III.    The amended settlement is not predicated on Ocwen's inability to
        pay a greater amount. ............................................................................................12

IV.     The amount of the amended settlement is in line with other TCPA
        class settlements....................................................................................................15

V.      Notice of the amended settlement to the class or to CAFA
        recipients is not required. .....................................................................................19

**Table of Authorities**

| Cases | Page(s) |
|---|---|

*ACA Int'l v. FCC,*
885 F.3d 687 (D.C. Cir. 2018) ............................................ 1, 3, 5, 6 & n.5, 8, 10, 11, 18 & n.8

*Alpha Tech Pet Inc. v. LaGasse, LLC,*
2017 WL 5069946 (N.D. Ill. Nov. 3, 2017) .................................................................12

*In re Anthem, Inc. Data Breach Litig.,*
327 F.R.D. 299 (N.D. Cal. 2018) ...............................................................................19

*Bailes v. Lineage Logistics, LLC,*
2017 WL 2439376 (D. Kan. June 6, 2017)...................................................................19

*Banks v. Nissan N. America, Inc.,*
2016 U.S. Dist. LEXIS 35499 (N.D. Cal. March 17, 2016)....................................20, 21

*Brodsky v. HumanaDental Ins. Co.,*
269 F. Supp. 3d 841 (N.D. Ill. 2017) ..........................................................................12

*Bruesewitz v. Wyeth LLC,*
562 U.S. 223 (2011)....................................................................................................10

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.,*
2017 WL 5724208 (S.D. Ill. April 26, 2017)................................................................13

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., et al.,*
511 U.S. 164 (1994).............................................................................................1, 9, 10

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974).........................................................................................14

*Craftwood Lumber Co. v. B.E. Atlas Co.,*
2018 WL 2077729 (N.D. Ill. Mar. 30, 2018)................................1, 7, 8, 14 n.7, 16, 17

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001)...........................................................................................14

*Demmings v. KKW Trucking, Inc.,*
2018 WL 4495461 (D. Or. Sept. 19, 2018) ..................................................................21

*Dominguez v. Yahoo, Inc.,*
894 F.3d 116 (3d Cir. 2018).........................................................................................8

*Douglas v. W. Union Co.,*
2018 WL 4181484 (N.D. Ill. Aug. 31, 2018) ..........................................................14 n.7

Franklin v. Wells Fargo Bank, N.A.,
 2016 WL 402249 (S.D. Cal. Jan. 29, 2016)............................................................15

Gary v. TrueBlue, Inc.,
 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) ....................................................6 n.5

Glasser v. Hilton Grand Vacations Co., LLC.,
 2018 WL 4565751 (M.D. Fla. Sept. 24, 2018) ........................................................8

Gonzalez v. Ocwen Loan Servicing, LLC,
 2018 WL 4217065 (M.D. Fla. Sept. 5, 2018) ..................................................6 n.5, 8

Grace v. Greenbriar Rest., Inc.,
 2018 WL 6012227 (N.D. Ill. Nov. 5, 2018) .....................................................14 n.7

Hendricks v. Starkist Co.,
 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016), aff'd sub nom. Hendricks v.
 Ference, 2018 WL 5115482 (9th Cir. Oct. 19, 2018) ...........................................19

Herrick v. GoDaddy.com LLC,
 312 F. Supp. 3d 792 (D. Ariz. 2018) ...........................................................6 n.5, 9

Johnson v. Yahoo!, Inc.,
 2018 WL 6426677 (N.D. Ill. Nov. 29, 2018) ........................................2, 6 n.5, 7, 9

Johnson v. Yahoo!, Inc.,
 2018 WL 835339 (N.D. Ill. Feb. 13, 2018) .........................................................12

Jones v. Dominion Transmission, Inc.,
 2009 WL 10705321 (S.D.W. Va. Jan. 30, 2009) ...................................................21

Keepseagle v. Vilsack,
 118 F. Supp. 3d 98 (D.D.C. 2015) ....................................................................18

Keyes v. Ocwen Loan Servicing, LLC,
 335 F. Supp. 3d 951 (E.D. Mich. 2018).......................................................6 n.5, 8, 11

King v. Time Warner Cable Inc.,
 894 F.3d 473 (2d Cir. 2018).............................................................................5, 9

Klee v. Nissan N. Am., Inc.,
 2015 WL 4538426 ..........................................................................................21

Knuckles v. Elliott,
 2016 WL 3912816 (E.D. Mich. July 20, 2016) ...............................................19, 20

Kusinski v. Macneil Auto. Prod. Ltd.,
 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018) ...................................................14 n.7

Legg v. PTZ Ins. Agency, Ltd.,
    321 F.R.D. 572 (N.D. Ill. 2017)............................................................................12

Leung v. XPO Logistics, Inc.,
    326 F.R.D. 185 (N.D. Ill. 2018).....................................................................14 n.7

Lord v. Kisling, Nestico & Redick, LLC,
    2018 WL 3391941 (N.D. Ohio July 12, 2018) ............................................................8

Marks v. Crunch San Diego, LLC,
    904 F.3d 1041 (9th Cir. 2018) ...............................................................6 n.5, 9, 11

Marshall v. CBE Grp., Inc.,
    2018 WL 1567852 (D. Nev. Mar. 30, 2018) ...................................................6 n.5

Pearson v. Target Corp.,
    893 F.3d 980 (7th Cir. 2018) .........................................................................18

Pinkus v. Sirius XM Radio, Inc.,
    319 F.Supp.3d 917 (N.D. Ill. 2018) ...............................................................6 n.5, 7

Remijas v. Neiman Marcus Grp., LLC,
    341 F. Supp. 3d 823 (N.D. Ill. 2018) ............................................................14 n.7

Reyes v. BCA Fin. Servs., Inc.,
    312 F. Supp. 3d 1308 (S.D. Fla. 2018) ...........................................................6 n.5

Richardson v. Verde Energy USA, Inc.,
    2018 WL 6622996 (E.D. Pa. Dec. 17, 2018) ...................................................6 n.5

Roark v. Credit One Bank, N.A.,
    2018 WL 5921652 (D. Minn. Nov. 13, 2018) .........................................................9

Schulte v. Fifth Third Bank,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................................2, 10, 15

Sessions v. Barclays Bank Delaware,
    317 F. Supp. 3d 1208 (N.D. Ga. 2018).............................................................6 n.5

Shaffer v. Cont'l Cas. Co.,
    362 F. Appx. 627 (9th Cir. 2010).......................................................................19

Smith v. Levine Leichtman,
    2014 WL 12641575 (N.D. Cal. Mar. 26, 2014).....................................................21

In re Sony SXRD Rear Projection Television Class Action Litig.,
    2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......................................................14

Soto v. Wings 'R Us Romeoville, Inc.,
  2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) ................................................14 n.7

Thompson-Harbach v. USAA Federal Savings Bank,
  2019 WL 148711 (N.D. Iowa Jan. 9, 2019)..........................................7, 10

Tomeo v. CitiGroup, Inc.,
  2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) .........................................12

Union Asset Mgmt. Holding A.G. v. Dell, Inc.,
  669 F.3d 632 (5th Cir. 2012) ...........................................................19, 20

Vought v. Bank of Am., N.A.,
  2013 WL 269139 (C.D. Ill. Jan. 23, 2013) ...............................................20

Washington v. Six Continents Hotels, Inc.,
  2018 WL 4092024 (C.D. Cal. Aug. 24, 2018).....................................6 n.5

Wert v. Cohn,
  2018 WL 6839856 (N.D. Ill. Dec. 31, 2018)......................................14 n.7

Wilson v. Quest Diagnostics Inc.,
  2018 WL 6600096 (D.N.J. Dec. 17, 2018)..........................................6 n.5

Wong v. Accretive Health, Inc.,
  773 F.3d 859 (7th Cir. 2014) ............................................................1, 11

**Statutes & Other Authorities**

28 U.S.C. § 1715(b) .......................................................................................3

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
  of 1991, 18 F.C.C. Rcd. 14014 (2003) .................................................4 n.2

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
  of 1991, 23 F.C.C. Rcd. 559 (2008)....................................................4 n.3

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
  of 1991, 27 F.C.C. Rcd. 15391 (2012) ................................................4 n.3

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
  of 1991, 30 F.C.C. Rcd. 7961 (2015)..................................................5 n.4

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
  of 1991, 7 F.C.C. Rcd. 8752 (1992).....................................................4 n.1

# Introduction

The proposed amended settlement provides significantly improved benefits to the class in comparison to the settlement the court declined to approve. The funds available to claimants will increase by over 40%. In addition, the amended settlement does not release class members' claims against the Trustees for the Trustees' own actions. And the amended settlement provides these improved benefits against the backdrop of developments in the law that substantially weaken class members' claims on the merits, chiefly the D.C. Circuit's vacatur of the FCC's interpretations of key provisions of the TCPA in ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018). The main consideration in determining whether a settlement is fair, reasonable and adequate is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." Wong v. Accretive Health, Inc., 773 F.3d 859, 863-64 (7th Cir. 2014). Ocwen respectfully submits that this balance comes out strongly in favor of approval of the amended settlement.

This memorandum addresses five specific matters.

First, the memorandum describes how TCPA law has undergone a fundamental change since the parties submitted the initial settlement for approval. In ACA, the D.C. Circuit vacated the FCC's rulings that the TCPA applies to dialers that call a set list of telephone numbers. Since that vacatur (binding on all courts throughout the country under the Hobbs Act), a significant number of decisions, including two from this district, have held that the TCPA applies only to dialers that can generate and dial random or sequential telephone numbers. Under this interpretation, the TCPA doesn't apply to the Aspect dialer used by Ocwen, hence Ocwen has no TCPA liability. Indeed, two decisions have specifically held that the Aspect dialer is not an automatic telephone dialing system and have dismissed TCPA claims on summary judgment. The Seventh Circuit has very recently been asked to address the correct interpretation of the

statute in an appeal from a decision by Judge Shah in <u>Johnson v. Yahoo!, Inc.</u>, where he held that "lists [of numbers to call] developed without random or sequential number generation capacity fall outside the statute's scope."  2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018).  If the Seventh Circuit agrees with Judge Shah, Plaintiffs should receive nothing from continued litigation of this case.  <u>See</u> Point I below.

<u>Second</u>, since the parties submitted the initial settlement for approval, further decisions have held that common issues do not predominate when a TCPA defendant shows that there are individualized issues of consent concerning a significant number of class members.  At least five cases from the Northern District of Illinois alone, in addition to those cited in our class certification papers, have denied TCPA class certification when the defendant made a showing that a significant number of class members consented.  We describe these cases in Point II below.

<u>Third</u>, this is not a settlement predicated on the defendant's inability to pay more to settle the matter than the agreed-on settlement amount.  In such settlements, courts sometimes require evidence of the defendant's inability to pay more in settlement in determining whether the settlement is fair, reasonable and adequate.  But when a settlement is not predicated on the defendant's inability to pay more than the settlement amount, courts do not inquire into the defendant's financial capacity.  Ocwen's financial capacity should therefore not be a factor in determining whether the amended settlement is fair, reasonable and adequate.  <u>See</u> Point III below.

<u>Fourth</u>, the memorandum compares the amount claimants will receive from the amended settlement with the amounts plaintiffs have received in all the other non-telemarketing TCPA class settlements for which we have been able to find data.  This comparison shows that the

monetary component of the amended settlement is in line with the "market" for TCPA cases.
<u>See</u> Point IV below.

Finally, the memorandum addresses whether the parties have to provide notice of the amended settlement to class members or to CAFA notice recipients under 28 U.S.C. § 1715(b). Re-notice of an amended settlement generally is not required when the amended settlement is more favorable to the class than the original settlement. Because the proposed amended settlement here will increase the funds available to claimants and will restrict the claims released under the settlement as compared to the original settlement, neither further notice to the class nor further CAFA notice is required. The relevant case-law is discussed in Point V below.

**I.      After <u>ACA</u>, Ocwen has a strong argument that Plaintiffs' claims are valueless.**

A.      <u>The issue: whether the Aspect dialer is an ATDS.</u>

The TCPA bars unconsented-to calls using an automatic telephone dialing system ("ATDS"). In 2003 the FCC interpreted the TCPA to hold that a dialer that called a set list of numbers is an ATDS even if the dialer could not generate and call random or sequential numbers; that ruling was binding law in all courts. But in <u>ACA</u>, the D.C. Circuit vacated the FCC's interpretation of the statute. Following that decision, courts now have to look to the statute itself to determine whether a dialer is an ATDS. The natural reading of the statutory definition of an ATDS requires that a dialer be able to generate random or sequential numbers to be an ATDS. The Aspect dialer used by Ocwen cannot generate random or sequential numbers -- its purpose is to call borrowers whose loans Ocwen services rather than to call people randomly or sequentially -- hence is not an ATDS.

Since <u>ACA</u>, there have been a large number of decisions from courts around the country interpreting that case and the statute, and (as we describe below) these decisions do not speak with a single voice. It's not to the present point to insist that some decisions are right and others

wrong: rather, what these decisions show is that <u>at the very least</u> Ocwen has a substantial

argument that its Aspect dialer is not an ATDS so that it has no TCPA liability for calls made

using that dialer.

B.    <u>The FCC's interpretation and the D.C. Circuit's vacatur</u>

The TCPA defines an ATDS as follows:

a)    Definitions -- As used in this section -

    1)    The term "automatic telephone dialing system" means equipment which
        has the capacity -

        A)    to store or produce telephone numbers to be called, using a random
            or sequential number generator; and
        B)    to dial such numbers.

In its first rulemaking on the TCPA in 1992, the FCC acknowledged that the statute did

not apply to dialers that called from a list "because such calls are not autodialer calls (i.e., dialed

using a random or sequential number generator)."[1]  But in 2003, after finding that telemarketers

had largely abandoned indiscriminate random or sequential dialing -- hence that the problem that

the statute was intended to address had largely abated -- the FCC held that the definition of an

ATDS in the TCPA included dialers even if they were <u>not</u> able to generate and dial random or

sequential numbers.[2]  That new interpretation was reaffirmed in the FCC's 2008 and 2012

Orders.[3]  And the FCC maintained that same interpretation in its 2015 Order, in which it denied a

---

    [1]    In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8773 (1992) ("1992 Order") (emphasis added); <u>see also</u> <u>id.</u> at 8776 (recognizing the TCPA's restrictions "clearly do not apply" to automated but targeted dialing functions such as "speed dialing" and "call forwarding" "because the numbers called are not generated in a random or sequential fashion").

    [2]    In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14092-93 (2003) ("2003 Order").

    [3]    In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 566 (2008) ("2008 Order") (citing 2003 Order at 14091-92); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15392 n.5 (2012) ("2012 Order") (definition of an ATDS included systems with the

petition for rulemaking directed at the interpretation of an ATDS it articulated in its 2003 and

2008 Orders, stating that:

> We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') . . . , including when the caller is calling a set list of consumers. We also reiterate that predictive dialers . . . satisfy the TCPA's definition of 'autodialer' for the same reason.[4]

In <u>ACA</u>, the D.C. Circuit vacated the FCC's 2003-2015 Orders.  First, it set aside the

FCC's interpretation that a dialing system can be an ATDS even if it doesn't have the

functionality of dialing numbers that it generates randomly or sequentially on the grounds that in

devising that interpretation the FCC "fail[ed] to satisfy the requirement of reasoned

decisionmaking."  885 F.3d at 703.  Second, <u>ACA</u> rejected the FCC's determination that a device

is an ATDS even though it is not able to generate and dial random or sequential numbers as long

as it can possibly be reconfigured to generate and dial such numbers.  The court pointed out that

the FCC's interpretation would have the effect of making any smartphone an ATDS, since such a

phone can be reprogrammed to generate and dial random or sequential numbers by downloading

an app or by adding a few lines of code.  <u>Id.</u> at 696.  The court held that such a definition was

"untenable," since it would "bring[] within the definition's fold the most ubiquitous type of

phone equipment known, used countless times each day for routine communications by the vast

majority of people in the country."  <u>Id.</u> at 698.

The D.C. Circuit's vacatur of the FCC's rulings that a dialer that calls a set list of

numbers is an ATDS is binding on all courts under the Hobbs Act.  <u>E.g.</u>, <u>King v. Time Warner</u>

<u>Cable Inc.</u>, 894 F.3d 473, 477 (2d Cir. 2018) (<u>ACA</u> "removed any deference" formerly owed to

---

"capacity to store or produce numbers and dial those numbers at random, in sequential order, <u>or</u> <u>from a database of numbers</u>") (citing 2003 Order at 14091-93; emphasis added).

[4]      In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7971-72 (2015) ("2015 Order") (citing 2003 Order at 14091-92 and 2008 Order at 566).

the FCC's interpretations).  After <u>ACA</u>, whether or not a dialer is an ATDS is to be resolved by looking at the statutory definition, not at the FCC's interpretation of the statute.  And most courts looking to the statutory definition have concluded that a dialer is <u>not</u> an ATDS if it does not have the present ability to generate random or sequential numbers to dial.[5]

---

[5]  In the immediate aftermath of <u>ACA</u>, a few decisions held that the D.C. Circuit did not vacate the FCC's pre-2015 rulings, so did not vacate the FCC's ruling that a dialer is an ATDS even though it cannot generate and dial random or sequential numbers.  The majority of subsequent decisions have held to the contrary however.  Judge Shah, in <u>Johnson v. Yahoo!, Inc.</u>, 2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018), recently explained why <u>ACA</u> must be read to vacate the FCC's pre-2015 orders expanding the definition of an ATDS to include dialers that call a set list of numbers.  <u>Accord</u> <u>Marks v. Crunch San Diego, LLC</u>, 904 F.3d 1041, 1049 (9th Cir. 2018) (the "D.C. Circuit vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains."); <u>Richardson v. Verde Energy USA, Inc.</u>, 2018 WL 6622996, at *5 (E.D. Pa. Dec. 17, 2018) ("A careful parsing of <u>ACA International</u> indicates that the invalidation of the 2015 Order necessarily invalidated the 2003 and 2008 Orders as well."); <u>Gonzalez v. Ocwen Loan Servicing, LLC</u>, 2018 WL 4217065, at *5 (M.D. Fla. Sept. 5, 2018) (agreeing with Ocwen that <u>ACA</u> overturned the prior FCC Orders); <u>Gary v. TrueBlue, Inc.</u>, 2018 WL 3647046, at *6 (E.D. Mich. Aug. 1, 2018) (holding that "the FCC's rulings – including the ATDS definition which covered equipment that can only dial numbers from a set list – are no longer valid"); <u>Pinkus v. Sirius XM Radio, Inc.</u>, 319 F. Supp. 3d 927, 935, at *6 (N.D. Ill. 2018) ("[I]t necessarily follows that <u>ACA International</u> invalidates not only the 2015 Declaratory Ruling's understanding that all predictive dialers qualify as ATDSs, but also the 2003 Order and 2008 Declaratory Ruling to the extent they express the same understanding."); <u>Sessions v. Barclays Bank Delaware</u>, 317 F. Supp. 3d 1208, 1212 (N.D. Ga. 2018) (holding that because the 2003 and 2008 FCC Orders "had said the same" as the 2015 FCC Order regarding the interpretation of an ATDS, by vacating the 2015 interpretation, the D.C. Circuit also vacated the 2003 and 2008 interpretations); <u>Herrick v. GoDaddy.com LLC</u>, 312 F. Supp. 3d 792, 799 (D. Ariz. 2018) ("[T]he [<u>ACA</u>] court 'set aside' the FCC's interpretations of 'using a random or sequential number generator.'"); <u>Marshall v. CBE Grp., Inc.</u>, 2018 WL 1567852, at *4-5 (D. Nev. Mar. 30, 2018) (holding that <u>ACA</u> set aside the FCC's interpretation of an ATDS).  But see <u>Reyes v. BCA Fin. Servs., Inc.</u>, 312 F. Supp. 3d 1308, 1321 (S.D. Fla. 2018) (holding that the 2003 and 2008 FCC interpretations could not have been vacated by <u>ACA</u> because "the time to appeal those orders had long passed").  A few courts have agreed with <u>Reyes</u>, including, most recently, <u>Wilson v. Quest Diagnostics Inc.</u>, 2018 WL 6600096 (D.N.J. Dec. 17, 2018).  The reasoning in <u>Reyes</u> has been considered and rejected in several cases.  <u>See</u>, <u>e.g.</u>, <u>Richardson</u>, 2018 WL 6622996, at *5-6; <u>Keyes v. Ocwen Loan Servicing, LLC</u>, 335 F. Supp. 3d 951, 962 n.5 (E.D. Mich. 2018); <u>Sessions</u>, 317 F. Supp. 3d at 1212; <u>Pinkus</u>, 319 F. Supp. 3d at 935; <u>Washington v. Six Continents Hotels, Inc.</u>, 2018 WL 4092024, at *3 (C.D. Cal. Aug. 24, 2018); <u>Gonzalez v. Ocwen Loan Servicing, LLC</u>, 2018 WL 4217065, at *5-6 (M.D. Fla. Sept. 5, 2018).

C.    The statutory definition of an ATDS requires that a dialer generate random or sequential numbers; the Aspect dialer does not do that.

At least nine post-ACA decisions have held that in order for a dialer to be an ATDS it must have the present ability to generate random or sequential numbers.  Two of these decisions were from this district.  In Pinkus v. Sirius XM Radio, Inc., 319 F.Supp.3d 917, 938 (N.D. Ill. 2018), Judge Feinerman held that "an ATDS must have the capacity to generate telephone numbers, either randomly or sequentially, and then to dial those numbers."  And Judge Shah in Johnson v. Yahoo!, Inc., 2018 WL 6426677, at *2 (N.D. Ill. Nov. 29, 2018), recently held that under the statutory definition, "[i]f the equipment pulls numbers from a stored list that was not generated by a random or sequential number generator (and does not have the capacity to generate random or sequential numbers), the equipment does not fit the statutory definition." The statutory definition of an ATDS is not ambiguous, Judge Shah held: "Curated lists developed without random or sequential number generation capacity fall outside the statute's scope."  Id.  Because the defendant's dialer did not have the capacity to generate random or sequential numbers, the court granted summary judgment dismissing the plaintiff's TCPA claim. The plaintiff noticed an appeal of Judge Shah's decision on December 28, 2018.

Two courts have held on summary judgment that the Aspect dialer, in particular,  is not an ATDS because it cannot generate and call random or sequential numbers.  Just last week, in Thompson-Harbach v. USAA Federal Savings Bank, 2019 WL 148711 (N.D. Iowa Jan. 9, 2019), the court granted summary judgment and dismissed the plaintiffs' TCPA claims, holding that the statutory definition of an ATDS unambiguously requires that a dialer have the capacity to generate and dial random or sequential numbers in order to qualify as an ATDS.  Id. at *10.  The court found that the defendant's Aspect dialer "can only call the specific stored telephone numbers on a Campaign, . . .  cannot independently generate any other telephone numbers to be

called," and "is incapable of using a random number generator to generate random telephone numbers for dialing," hence was not an ATDS.  Id. at *3.

And in Keyes v. Ocwen Loan Servicing, LLC, 335 F. Supp. 3d 951 (E.D. Mich. 2018), the Eastern District of Michigan reached the very same conclusion with respect to the Aspect dialer used by Ocwen.  The court held, first, that the Aspect dialer was not an ATDS because it could only call from a set list of numbers:  "the system does not produce or store numbers using a random or sequential number generator, and call those numbers."  Id. at 962.  And the court held that it was irrelevant whether the Aspect dialer might possibly be reconfigured to be a random or sequential number generator, following ACA in holding that a device does not have the "capacity" to generate and dial random or sequential numbers just because it can be reprogrammed or reconfigured to do so.  Id. at 961.  The Court thus granted summary judgment and dismissed the plaintiffs' TCPA claims.  The very same standard for determining whether the Aspect dialer used by Ocwen is an ATDS was stated in a recent decision from the Middle District of Florida, where the court held a device is an ATDS only if it has the "present ability" to generate and dial random or sequential numbers.  Gonzalez v. Ocwen Loan Servicing, LLC, 2018 WL 4217065, at *6 (M.D. Fla. Sept. 5, 2018).

A number of other decisions have reached the same conclusion.  E.g., Dominguez v. Yahoo, Inc., 894 F.3d 116, 121 (3d Cir. 2018) (affirming summary judgment because plaintiff provided no evidence that defendant's dialer "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"); Glasser v. Hilton Grand Vacations Co., LLC., 2018 WL 4565751, at *4 (M.D. Fla. Sept. 24, 2018) (device was not an ATDS because "[n]othing in the record demonstrates that Defendant's IMC System generated numbers and then called them"); Lord v. Kisling, Nestico & Redick,

LLC, 2018 WL 3391941, at *3 (N.D. Ohio July 12, 2018) (dismissing complaint because plaintiffs failed to allege dialer had the present ability to store or produce telephone numbers to be called using a random or sequential number generator); Herrick v. GoDaddy.com LLC, 312 F. Supp. 3d 792, 800 (D. Ariz. 2018) (statute requires "the numbers be stored or produced using a random or sequential number generator") (emphasis in original); Roark v. Credit One Bank, N.A., 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018) ("[T]he correct inquiry is whether a device can generate numbers to dial either randomly or sequentially.").

In addition, decisions which have addressed the "capacity" part of the statutory definition without addressing the "functionality" part of the definition have likewise held that it is not enough to meet the definition of an ATDS that there is some possible way in which a dialer might be rejigged to allow it to generate and dial random or sequential numbers. Rather, as the Second Circuit held in King, only a device that "currently has features that enable it to perform the functions of an autodialer" is an ATDS. 894 F.3d at 479 (emphasis added).

There are contrary authorities. In particular, in Marks v. Crunch San Diego, LLC, 904 F.3d 1041 (9th Cir. 2018), en banc review denied (Oct. 30, 2018), the court held that the TCPA's definition of an ATDS was satisfied by a device that can either (1) store numbers to be called or (2) randomly or sequentially generate numbers to be called. However, there are strong arguments that Marks was wrongly decided.

First, the court's conclusion is premised on its holding that the statutory definition of an ATDS is ambiguous. 904 F.3d at 1051. But it is not, for the reasons Judge Shah explained in Yahoo!: "The phrase 'using a random or sequential number generator' applies to the numbers to be called and an ATDS must either store or produce those numbers (and then dial them)." 2018 WL 6426677, at *2 & n.4.

- 9 -

Second, after having found the statute to be ambiguous, the Ninth Circuit interpreted the TCPA without regard to its legislative history, which shows that to be an ATDS a device must be able to generate random or sequential numbers.  As noted above, the FCC understood this to be the intent of the statute.  See 1992 Order at 8773 ("autodialer calls" are calls "dialed using a random or sequential number generator"), 8776 (stating "[t]he prohibitions of § 227(b)(1) clearly do not apply" to functions like "speed dialing" and "call forwarding," because numbers are "not generated in a random or sequential fashion") (emphasis added).  See also Thompson-Harbach, 2019 WL 148711 at *13 ("The FCC's pre-2003 understanding . . . thus reinforces what the statute's plain text shows -- that equipment qualifies as an ATDS only if it has the capacity 'to function . . . by generating random or sequential telephone numbers and dialing those numbers.'").

Third, the Ninth Circuit's interpretation of the TCPA relies heavily on the fact that Congress did not act to overturn the FCC's 2003 and later orders making dialers that call a set list of numbers into an ATDS.  But the Supreme Court has long held that "[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction." Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., et al., 511 U.S. 164, 187 (1994); Bruesewitz v. Wyeth LLC, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

Finally, the court's interpretation of the statute renders every smartphone an ATDS because all smartphones have the capacity to make calls automatically from a stored list -- users can call stored numbers by tapping on a party's name in the contacts list without having to manually dial or press a number, and can program phones to send scheduled messages or auto-

replies.  ACA rejected the FCC's interpretation of the TCPA because it would make every one of the 200 million plus smartphones in the United States into an ATDS.  885 F.3d at 697-98.  The Ninth Circuit did not acknowledge that its interpretation leads to the very result the D.C. Circuit held to be absurd.

In short, then, after the D.C. Circuit's vacatur of the FCC's holding that a dialer that calls a set list of numbers is an ATDS, courts have to look to the TCPA's definition of an ATDS, and the better-supported view is that that definition requires that to be an ATDS a device must have the present ability to generate and dial random or sequential numbers.  As the court found in Keyes, Ocwen's dialer does not have that ability.  We acknowledge that there are contrary authorities, and it is of course possible that the Court (or the Seventh Circuit) might be persuaded by the Ninth Circuit's reasoning in Marks.  But, at the very least, there is a substantial risk to Plaintiffs that the Aspect dialer used by Ocwen will be held not to be an ATDS -- i.e., a substantial risk that they will receive nothing from continued litigation.  The main consideration in determining whether a settlement is fair, reasonable and adequate is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement."  Wong v. Accretive Health, Inc., 773 F.3d 859, 863-64 (7th Cir. 2014).  Because of ACA, Plaintiffs' claims are substantially weaker than they were when the previous settlement was submitted to the Court; at the same time, the amount offered in the settlement has significantly increased.

## II.    Courts continue to hold that a TCPA class should not be certified when the defendant shows that consent is an individualized issue.

Since the parties submitted the initial settlement for approval, courts continue to hold that class certification should be denied when a TCPA defendant shows that there is an individualized issue of consent concerning a significant number of class members.  At least five cases from the Northern District alone, in addition to those cited in Ocwen's class certification opposition

papers, have denied TCPA class certification when the defendant made a showing that a significant number of class members consented.  Tomeo v. CitiGroup, Inc., 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018); Legg v. PTZ Ins. Agency, Ltd., 321 F.R.D. 572 (N.D. Ill. 2017); Johnson v. Yahoo!, Inc., 2018 WL 835339 (N.D. Ill. Feb. 13, 2018); Alpha Tech Pet Inc. v. LaGasse, LLC, 2017 WL 5069946 (N.D. Ill. Nov. 3, 2017); Brodsky v. HumanaDental Ins. Co., 269 F. Supp. 3d 841 (N.D. Ill. 2017).

Tomeo merits particular attention because of its factual similarity to the present case. Citi, the defendant in Tomeo, was a loan servicer, and evidence of borrowers' consent was, as here, to be found in the loan servicing system of record (which included comment fields), imaged loan and correspondence files, and call recordings.  Like Ocwen, Citi used flags to signal lack of consent, but, as the court noted, the fact that at any one time an accountholder had a 'no consent' flag did not show that calls to that accountholder were made without consent because borrowers "frequently went back and forth between giving consent and revoking it, [so] the only way to determine consent for each accountholder is to individually review Citi's files on each accountholder."  2018 WL 4627386, at *9.  The same is true for Ocwen: the fact that at any point in time a borrower's account is flagged as lacking consent does not show that any prior calls were made without the borrower's consent.  As in Tomeo, a review of each borrower's files is needed to determine whether for any particular call, the borrower had consented.

## III.    The amended settlement is not predicated on Ocwen's inability to pay a greater amount.

It is not disputed that Ocwen cannot pay the many billions of dollars in damages that Plaintiffs are seeking.  But the question of whether Ocwen might pay such a judgment is distinct from the question of whether Ocwen might be able to pay more than the agreed-on amount of the settlement.  The proposed amended settlement is not predicated on Ocwen's ability or inability to

pay more by way of settlement, and, as a result, Ocwen's financial capacity is not pertinent to whether the settlement is fair, reasonable and adequate.

A defendant's inability to pay more than the agreed-on settlement amount "bolsters the reasonableness of the proposed settlement." Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc., 2017 WL 5724208 (S.D. Ill. April 26, 2017) (granting final approval to TCPA settlement). When a settlement is predicated on the defendant's claimed inability to pay more than the agreed-on settlement amount, the court's approval of the settlement will rest on a showing of the defendant's financial capacity.

But a defendant's ability to pay more than the agreed-on settlement amount is not relevant to whether the settlement is fair, reasonable and adequate. If a defendant's ability to pay more were relevant to whether a settlement should be approved, courts would have to inquire into and make findings concerning the defendant's financial capacity in every proposed settlement, not just those settlements in which the defendant claimed it was unable to pay more. But courts do not inquire into a defendant's financial capacity when the proposed settlement is not predicted on the defendant's supposed inability to pay more. So, for example, in none of the TCPA settlements approved by district courts in the Seventh Circuit listed in the charts discussed in Part IV below did the court consider the defendant's financial capacity to pay more than the agreed-on settlement amount to be relevant to whether the settlement was fair, reasonable and adequate.[6] And a Westlaw review of all the decisions in 2018 from the Northern District of

---

[6] See the preliminary and final approval orders in Allen v. JPMorgan Chase, No. 1:13-cv-08285 (N.D. Ill.) (DE 58 & 93); Balbarin v. North Star Capital Acquisition, LLC, No. 10-01846 (N.D. Ill.) (DE 193 & 265 [2012 WL 13035056]), Cummings v. Sallie Mae, Inc., No. 1:12-cv-09984 (N.D. Ill.) (DE 73 & 91), Fike v. The Bureaus, Inc., No. 1:09-cv-02558 (N.D. Ill.) (DE 113 & 123), Gehrich v. Chase Bank USA NA, No. 12-cv-5510 (N.D. Ill.) (DE 117 & 240 [316 F.R.D. 215]), In re Capital One TCPA Litigation, No. 1:12-cv-10064 (N.D. Ill.) (DE 137 & 329 [80 F. Supp. 3d 781]), Tannlund v. Real Time Resolutions, Inc., No. 14-c-5149 (N.D. Ill.)

Illinois on motions for final approval shows that in none of those decisions did the court consider whether the defendant was able to pay more than the agreed-on amount.[7]  Moreover, research has disclosed no decisions within the Seventh Circuit that have denied approval to a settlement because the defendant was able to pay more than the agreed-on amount.

We acknowledge that there is law outside the Seventh Circuit which has on occasion been taken to suggest that a defendant's ability to pay more than the agreed-on settlement amount is relevant to whether the settlement should be approved.  Thus, the Second Circuit, in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), stated that the defendant's ability to pay a judgment greater than the settlement amount was a factor to be considered in deciding whether to approve a class settlement, and some district courts in the Second Circuit subsequently took Grinnell to mean that both inability and ability to pay more than the agreed-on settlement amount were relevant.  But the Second Circuit has subsequently tempered this conclusion, holding in D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001), that when the other factors weigh heavily in favor of approving a settlement, the fact that the defendant is able to pay more than the settlement amount does not undermine the fairness of the settlement.  See also In re Sony SXRD Rear Projection Television Class Action Litig., 2008 WL 1956267, at *8

---

(DE 72 & 101), Wilkins & Mills v. HSBC Bank Nevada, N.A., No. 14-cv-0190 (N.D. Ill.) (DE 59 & 117 [2015 WL 890566]), and Wright v. Nationstar Mortgage, LLC, No. 1:14-cv-10457 (N.D. Ill.) (DE 60 & 134 [2016 WL 4505169]).

[7]     Courts granted final approval without considering the defendant's ability to pay more than the settlement amount in Grace v. Greenbriar Rest., Inc., 2018 WL 6012227 (N.D. Ill. Nov. 5, 2018), Douglas v. W. Union Co., 2018 WL 4181484 (N.D. Ill. Aug. 31, 2018) (TCPA case), Kusinski v. Macneil Auto. Prod. Ltd., 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018) (FSLA and Illinois Minimum Wage Law claims; class certified under Rule 23), Leung v. XPO Logistics, Inc., 326 F.R.D. 185 (N.D. Ill. 2018) (TCPA), Soto v. Wings 'R Us Romeoville, Inc., 2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) (Rule 23 class and FLSA collective action), and Craftwood Lumber Co. v. B.E. Atlas Co., 2018 WL 2077729 (N.D. Ill. Mar. 30, 2018) (TCPA). In Remijas v. Neiman Marcus Grp., LLC, 341 F. Supp. 3d 823 (N.D. Ill. 2018), and Wert v. Cohn, 2018 WL 6839856 (N.D. Ill. Dec. 31, 2018), motions for final approval were denied, but for reasons not involving the defendant's ability to pay more than the settlement amount.

(S.D.N.Y. May 1, 2008) (a defendant is not required to "empty its coffers" in a settlement for the settlement to be approved).  And research has disclosed no decisions within the Second Circuit that have denied approval to a settlement on the ground that the defendant was able to pay more than the agreed-on amount.

The amount of the amended settlement is not predicated on Ocwen's inability to pay a greater amount.  (Nor was the amount of the settlement previously presented to the Court predicated on Ocwen's inability to pay a greater amount, although there are some statements in Plaintiffs' papers in support of that settlement that unfortunately suggest otherwise.)  We respectfully suggest, then, that Ocwen's financial condition is not relevant to whether the settlement is fair, adequate and reasonable.

## IV. The amount of the amended settlement is in line with other TCPA class settlements.

In determining whether a proposed settlement is fair, reasonable and adequate, it is relevant (although of course not dispositive) that the amount of the settlement is in line with settlements approved in similar cases.  E.g., Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011) (holding it "undoubtedly true" that "comparison of settlements in similar cases is relevant to whether a settlement is fair, adequate and reasonable"); Franklin v. Wells Fargo Bank, N.A., 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016) (holding the fact that recovery was "within the usual range for TCPA class action settlements" supported final approval).  We have compared the amended settlement with the settlements approved in other non-telemarketing TCPA cases for which we have been able to find details, with the following results:

Settlement amount per class member: The $21.5 million settlement amount represents $14.75 per class member.  The median settlement amount per class member in the 46 other non-telemarketing TCPA settlements we know of is $4.57.  The $14.75 per-class member amount

here is greater than the per-class member amount for 76% of the other settlements. The following chart illustrates these facts (the cases listed on the chart and data used to compile the charts below are given in Appendix A to this memorandum, and the sources of the information concerning the settlements in those cases are detailed in Appendix B).

Chart 1: Settlement Fund per Class Member for
Snyder and Other Non-Telemarketing TCPA Settlements



Mr. O'Connor's declaration specifies various per-claim recoveries given various scenarios concerning the number of valid claims. He states that there are 212,165 "current complete and valid claims." (O'Connor Decl. ¶ 11.) Given 212,165 claims, the recovery per claim will be $70.41. (Id. ¶ 12.) Mr. O'Connor then discusses various categories of incomplete, invalid and late claims (id. ¶¶ 13-16), and concludes that if all of these claims were included, there would be 279,512 claims, and the recovery per claim would be $53.44 (id. ¶ 19).

Chart 2 compares $70.41 and $53.44 recoveries with recoveries in other TCPA cases.

Chart 2: Average Per-Claim Recovery in
<u>Snyder and Other Non-Telemarketing TCPA Settlements</u>



Mr. O'Connor states that the claim rate assuming 212,165 claims is 12.6%; assuming 279,512 claims, the claim rate is 16.6%. The median claim rate in TCPA settlements is 3.8%, as Chart 3 shows. Had the claim rate here been 3.8%, the per claim recovery would have been $233.21.



Chart 3: Claim Rates in _Snyder_ and Other
Non-Telemarketing, Claims-Made TCPA Settlements

We note that all the TCPA settlement agreements reflected in these charts were made before ACA was decided, and it is reasonable to presume that ACA has significantly diminished the settlement value of TCPA claims. We submit that these metrics support the conclusion that the amended settlement is fair, reasonable and adequate.[8]

---

[8] We note that various commentators claimed that the amount of the settlement previously submitted to the Court was too high compared with similar TCPA settlements. For example:

 − "At $10.38/cell phone number called, this class settlement is one of the highest per-cell number figures paid in a mass-resolution TCPA class settlement." Dorsey & Whitney, Ocwen Predictably Reaches High-Dollar TCPA Settlement Following Class-Wide Preliminary Injunction, (Sept. 19, 2017), https://consumerfinancialserviceslaw.us/ocwen-predictably-reaches-high-dollar-tcpa-settlement-following-class-wide-preliminary-injunction/.

 − "At least as compared to other settlements in the TCPA class settlement 'market.' $17.5MM to resolve the claims of 1.7MM class members is big money. That's over $10.25 a class member–well above market value for these cases." Eric J. Troutman, Unprecedented Settlement Rejection: Court Refuses to Approve $17.5MM TCPA Settlement on Current Record-Says 'Good Chance' that Class Counsel 'Sold the Class Short', (Sept. 28, 2018), https://tcpaland.com/unprecedented-settlement-rejection-court-refuses-to-approve-17-5mm-tcpa-settlement-on-current-record-says-good-chance-that-class-counsel-sold-the-case-short/.

**V.      Notice of the amended settlement to the class or to CAFA recipients is not required.**

A court may require re-notice of an amended settlement when there is a "material alteration" to the settlement.  Pearson v. Target Corp., 893 F.3d 980, 986 (7th Cir. 2018).  But re-notice is required only when the material alteration is <u>adverse</u> to the interests of the class members.  <u>E.g.</u>, <u>Keepseagle v. Vilsack</u>, 118 F. Supp. 3d 98, 114 (D.D.C. 2015) ("Unless a proposed modification would hinder such a class member's legal right in some way -- whether by expanding the scope of the <u>res judicata</u> effect of the judgment or otherwise limiting the remedy available to a class member," re-notice is not required).  As the court put the matter in <u>In re Anthem, Inc. Data Breach Litig.</u>, 327 F.R.D. 299, 330 (N.D. Cal. 2018):

> The pertinent question here is whether the changes <u>adversely</u> affect class members. When the modification makes the settlement less desirable, notice may be required because courts cannot be sure whether more class members would have chosen to object to the settlement or exclude themselves from the class.  <u>In contrast, when the modification makes the settlement more valuable to the class, courts have routinely concluded that notice is unnecessary.</u>  [Emphasis added.]

<u>Accord</u> <u>Bailes v. Lineage Logistics, LLC</u>, 2017 WL 2439376, at *4 n.5 (D. Kan. June 6, 2017) ("Any such reduction of plaintiff's incentive award would not require new notice to the class or a new fairness hearing because it would, in effect, <u>increase</u> the class members' recovery."); <u>Union Asset Mgmt. Holding A.G. v. Dell, Inc.</u>, 669 F.3d 632, 637 (5th Cir. 2012) (approving modification of settlement agreement that removed <u>de minimis</u> provision that allowed additional class members to recover and not requiring additional notice to class members); <u>Knuckles v. Elliott</u>, 2016 WL 3912816, at *6 (E.D. Mich. July 20, 2016) ("The Court

---

−      "I think […] <u>Snyder</u>, for a class action, was a very good result.  I think it was… considering that […] <u>ACA</u> was, like, kind of pending when that… when that settlement happened.  I actually think Ocwen probably a little overpaid on that."  TCPA Plaintiff lawyer Abbas Kazerounian.  Eric J. Troutman, <u>The Godfather of TCPA Class Actions:  Abbas Kazerounian IN STUDIO with the Womble Bond Dickinson Ramble Podcast,</u> (June 13, 2018), https://tcpaland.com/the-godfather-of-tcpa-class-actions-abbas-kazerounian-in-studio-with-the-womble-bond-dickinson-ramble-podcast/.

concludes that due process does not require notice to all Class members of this modification to the Settlement. . . . [T]he modification involves changes to the agreed upon cy pres distribution and it improves the deal for Class members . . . .").

Similarly, courts have found that re-notice is not necessary when an amendment to a settlement results in an increased benefit to the class by narrowing the scope of the release. E.g., Shaffer v. Cont'l Cas. Co., 362 F. Appx. 627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential class members received the notice, the changes did not render the notice inadequate because they narrowed the scope of the release."); Hendricks v. Starkist Co., 2016 WL 5462423, at *4 (N.D. Cal. Sept. 29, 2016) ("[B]ecause the latest release narrows the scope of claims discharged, there is no longer a risk that Class Members have relinquished rights without knowledge of new claims. Thus, additional notice was not required."), aff'd sub nom. Hendricks v. Ference, 2018 WL 5115482 (9th Cir. Oct. 19, 2018).

The rule that re-notice is not required for revisions that increase the benefits of a settlement to class members has generally been followed in amendments to claims-made settlements. E.g., Union Asset Mgmt. Holding A.G., 669 F.3d at 641 (no second notice was required in claims-made settlement following elimination of de minimis provision); Vought v. Bank of Am., N.A., 2013 WL 269139, at *6 (C.D. Ill. Jan. 23, 2013) (claims-made settlement where second notice regarding amended settlement agreement was provided only to opt outs and objectors under terms of amended settlement agreement); Knuckles, 2016 WL 3912816, at *5 (claims-made settlement where second notice was only required for opt outs).

In one case involving a claims-made settlement, a court held that re-noticing the class was required, concluding that when an amended settlement significantly increased benefits for claimants, class members who originally didn't make a claim should be given another chance to

submit a claim. In <u>Banks v. Nissan N. America, Inc.</u>, 2016 U.S. Dist. LEXIS 35499 (N.D. Cal. March 17, 2016), the class notice had originally informed class members that the minimum recovery for a claimant would be $20. The parties later amended the settlement to make the minimum recovery $400. Following the amendment, the court ordered that notice of the amended settlement be given to everyone who failed to submit a claim for the original settlement, holding that it was likely that "a significant number of class members could have seen they were due $20 (or even $60) under the original proposed settlement and chosen not to submit a claim, but would have chosen differently if they were to receive $400." <u>Id.</u> at *6. The facts of <u>Banks</u> make it distinguishable from the present case. In <u>Banks</u>, it was reasonable to conclude that a class member who decided not to submit a claim worth $20 might have submitted a claim under the amended agreement worth $400. Here, however, the original notice preliminarily approved by the Court [DE 266] said claimants would likely receive between $50 and $90 if they submitted a claim.[9] The recovery per claim here will be between $53.44 and $70.41, depending on which categories of claim described in Mr. O'Connor's declaration are allowed, so, unlike in <u>Banks</u>, class members who chose not to submit a claim based on the preliminary estimate of recovery would not have chosen differently had they known what the actual recovery would be.

The rule that re-noticing is not required when amendments increase the benefits of a settlement to class members also applies to re-noticing a settlement to state and federal officials under CAFA. In <u>Smith v. Levine Leichtman</u>, 2014 WL 12641575 (N.D. Cal. Mar. 26, 2014), the court held that the purpose of § 1715(b) is to "safeguard plaintiff class members' rights" by allowing state and federal officials to "voice concerns if they believe that the class action

---

[9]     Docket 252-1 at 50 & 53.

settlement is not in the best interest of their citizens." Id. at *4.  The court concluded that there was no reason for an additional CAFA notice of the amendment because (i) no official objected after receiving the first CAFA notice and (ii) the amended settlement was more favorable to the class than the original.  Several other courts have reached the same conclusion.  E.g., Demmings v. KKW Trucking, Inc., 2018 WL 4495461, at *10 (D. Or. Sept. 19, 2018) (when amendments "benefited the class," "notice of the original stipulation was sufficient to comply with [CAFA] and no notice of the amendment was necessary"); Klee v. Nissan N. Am., Inc., 2015 WL 4538426, at *1 & 5 n.7 (C.D. Cal. July 7, 2015) (same), aff'd, Case No. 15-56201 (9th Cir. Dec. 9, 2015); Jones v. Dominion Transmission, Inc., 2009 WL 10705321, at *3 (S.D.W. Va. Jan. 30, 2009) (same).

Because no state or federal officials objected to or commented on the original settlement after receiving CAFA notice and because the proposed amended settlement favors the class more than the original settlement, no additional CAFA notice for the amended settlement is required.

Respectfully submitted,

/s/ Simon Fleischmann
Simon Fleischmann (6274929)
sfleischmann@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Phone: 312-443-0700

Brian V. Otero, Admitted Pro Hac Vice
botero@huntonAK.com
Stephen R. Blacklocks, Admitted Pro Hac Vice
sblacklocks@huntonAK.com
Ryan A. Becker, Admitted Pro Hac Vice
rbecker@huntonAK.com
HUNTON ANDREWS KURTH
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000

Attorneys for Defendant
Ocwen Loan Servicing, LLC

# Appendix A:

## Snyder v. Ocwen Loan Servicing LLC

**46 Non-telemarketing TCPA Class Action Settlements**

| Case Cite | Settlement Fund | Amount available to claimants | Settlement Fund/class member | Average per-claimant recovery | Claim rate[†] | Average per-claimant recovery (Snyder claim rate)[†] |
|---|---|---|---|---|---|---|
| Aboudi v. T-Mobile USA Inc., Case No. 12-cv-02169 (S.D. Cal) | $2,500,000.00 | $385,000.00 | $23.55 | $500.00* | 0.73% | $18.06 |
| Adams v. AllianceOne Receivables Management, Inc., Case No. 08-cv-0248 (S.D. Cal.) | $9,000,000.00 | $3,452,559.14 | $1.48 | $40.00* | 1.05% | $2.83 |
| Allen v. JPMorgan Chase, Case No. 1:13-cv-08285 (N.D. Ill.) | $10,200,000.00 | $5,953,000.00 | $4.91 | $70.26 | 4.08% | $14.26 |
| Arthur v. SLM Corp., Case No. 10-cv-00198 (W.D. Washington) | $24,150,000.00 | $12,578,385.39 | $3.02 | $114.51 | 1.37% | $7.82 |
| Ashack v. Caliber Home Loans, Inc., Case No. 15-01069 (S.D. Ind.) | $2,895,000.00 | $1,793,439.27 | $12.66 | $62.43 | 12.56% | $39.04 |
| Balbarin v. North Star Capital Acquisition, LLC, Case No. 10-01846 (N.D. Ill.) | $500,000.00 | $294,833.33 | $253.55 | $211.35 | N/A | N/A |
| Bayat v. Bank of the West, Case No. 13-cv-02376 (N.D. Cal.) | $3,354,745.98 | $2,481,914.48 | $3.85 | $150.79 | 1.89% | $14.17 |
| Connor v. JPMorgan Chase Bank, Case No. 10-cv-01284 (S.D. Cal.) | $11,848,556.00 | $8,052,439.03 | $3.83 | $71.75 | 3.63% | $12.95 |
| Couser v. Comenity Bank, Case No. 12-cv-02484 (S.D. Cal.) | $8,475,000.00 | $4,398,585.52 | $2.13 | $14.28 | 7.73% | $5.50 |
| Cross v. Wells Fargo Bank, N.A., Case No. 15-cv-01270 (N.D. Ga.) | $30,446,022.75 | $18,911,136.38 | $3.39 | $42.35 | 4.97% | $10.49 |
| Cummings v. Sallie Mae, Inc., Case No. 1:12-cv-09984 (N.D. Ill.) | $9,250,000.00 | $5,751,837.30 | $45.07 | $190.85 | 14.68% | $139.52 |
| Fike v. The Bureaus, Inc., Case No. 1:09-cv-02558 (N.D. Ill.) | $800,000.00 | $519,692.76 | $13.70 | $144.68 | 6.15% | $44.30 |
| Franklin v. Wells Fargo Bank, N.A., Case No. 3:14-cv-02349 (S.D. Cal.) | $13,859,103.80 | $7,624,100.29 | $3.40 | $71.16 | 2.63% | $9.31 |
| Gehrich v. Chase Bank USA NA, Case No. 12-cv-5510 (N.D. Ill.) | $34,000,000.00 | $21,581,656.39 | $1.05 | $63.18 | 1.06% | $3.33 |

\* Maximum per-claimant recovery under the relevant settlement agreement.

[†] "N/A" denotes a claims-paid settlement for which a claims rate is irrelevant.

| Case Cite | Settlement Fund | Amount available to claimants | Settlement Fund/class member | Average per-claimant recovery | Claim rate[†] | Average per-claimant recovery (Snyder claim rate)[†] |
|---|---|---|---|---|---|---|
| Grannan v. Alliant LawGroup, P.C., Case No. 5:10-cv-02803 (N.D. Cal.) | $1,000,000.00 | $607,515.44 | $7.25 | $305.90 | 1.44% | $21.92 |
| Gutierrez v. Barclays Group, Case No. 10-01012 (S.D. Cal.) | $8,184,875.00 | $6,517,875.00 | $125.00 | $99.54 | N/A | N/A |
| Gutierrez-Rodriguez v. R.M. Galicia, Inc., Case No. 16-cv-0182 (S.D. Cal.) | $1,500,000.00 | $918,500.00 | $24.22 | $624.83 | 2.37% | $73.83 |
| Hanley v. Fifth Third Bank, Case No. 1:12-cv-01612 (N.D. Ill.) | $4,500,000.00 | $2,556,840.00 | $20.79 | $157.43 | 7.50% | $58.80 |
| Hashw v. Dep't Stores Nat'l Bank, Case No. 13-727 (D. Minn.) | $12,500,000.00 | $8,285,000.00 | $2.51 | $32.87 | 5.07% | $8.30 |
| In re Capital One TCPA Litigation, Case No. 1:12-cv-10064 (N.D. Ill.) | $75,455,098.74 | $54,668,833.74 | $4.31 | $39.66 | 7.87% | $15.53 |
| In re Portfolio Recovery Assoc., LLC, Case No. 11-md-02295 (S.D. Cal.) | $18,000,000.00 | $9,421,938.56 | $2.43 | $30.11 | 4.23% | $6.34 |
| In Re: Midland Credit Management, Inc., TCPA Litigation, Case No. 11-md-02286 (S.D. Cal.) | $21,403,975.17 | $14,960,595.00 | $0.51 | $45.51 | 0.78% | $1.78 |
| James v. JPMorgan Chase Bank, N.A., Case No. 15-cv-02424 (M.D. Fla.) | $3,750,000.00 | $1,977,661.26 | $5.56 | $81.87 | 3.58% | $14.59 |
| Jones v. I.Q. Data International, Inc., Case No. 14-cv-00130 (D.N.M.) | $1,000,000.00 | $568,214.40 | $10.64 | $103.16 | 5.86% | $30.10 |
| Kwan v. Clearwire Corp., Case No. 09-cv-01392 (W.D. Wash.) | $6,300,000.00 | $2,942,870.60 | $3.46 | $100.00* | 0.47% | $8.05 |
| Lofton v. Verizon Wireless LLC, Case No. 4:13-cv-05665 (N.D. Cal.) | $4,000,000.00 | $2,285,658.00 | $16.67 | $474.30 | 2.01% | $47.42 |
| Luster v. Wells Fargo, Case No. 15-01058 (N.D. Ga.) | $14,834,058.00 | $7,963,840.60 | $4.65 | $25.12 | 9.94% | $12.43 |
| Malta v. The Federal Home Loan Mortgage Corp., Case No. 10-cv-01290 (S.D. Cal.) | $17,100,000.00 | $10,233,589.63 | $3.23 | $84.79 | 2.28% | $9.62 |

| Case Cite | Settlement Fund | Amount available to claimants | Settlement Fund/class member | Average per-claimant recovery | Claim rate[†] | Average per-claimant recovery (Snyder claim rate)[†] |
|---|---|---|---|---|---|---|
| Markos v. Wells Fargo Bank, N.A., Case No. 15-cv-01156 (N.D. Ga.) | $16,417,496.70 | $9,932,247.70 | $3.96 | $24.53 | 9.77% | $11.94 |
| Martinez v. Medicredit, Inc., Case No. 16-01138 (E.D. Mo.) | $5,000,000.00 | $2,592,775.54 | $10.03 | $91.28 | 5.70% | $25.90 |
| Meilleur v. AT&T, Case No. 11-cv-1025 (W.D. Wash.) | $1,080,980.00 | $249,480.00 | $70.26 | $270.00* | 6.01% | $80.73 |
| Munday v. Navy Federal Credit Union, Case No. 8:15-cv-01629 (C.D. Cal.) | $2,750,000.00 | $1,940,500.00 | $33.60 | $287.99 | 8.23% | $118.06 |
| Newman v. Americredit Financial Services, Inc., Case No. 11-cv-3041 (S.D. Cal.) | $6,574,977.19 | $2,854,350.00 | $2.85 | $32.47 | 3.81% | $6.16 |
| Picchi et al. v. World Financial Network National Bank, N.A., Case No. 11-cv-61797 (S.D. Fla.) | $7,900,000.00 | $4,728,281.17 | $9.22 | $145.56 | 3.79% | $27.48 |
| Prater v. Medicredit, Inc., Case No. 14-cv-159 (E.D. Mo.) | $6,750,000.00 | $3,675,687.44 | $9.52 | $95.57 | 5.42% | $25.80 |
| Reid v. I.C. System Inc., Case No. 12-2661 (D. Ariz.) | $3,350,000.00 | $2,496,373.00 | $1.80 | $1,380.74 | 0.10% | $6.67 |
| Ritchie v. Van Ru Credit Corp., Case No. 12-cv-1714 (D. Ariz.) | $2,300,000.00 | $1,533,152.48 | $254.48 | $1,597.03 | 10.62% | $844.56 |
| Rose v. Bank of America, Case No. 11-cv-2390 (N.D. Cal.) | $32,083,905.00 | $26,582,661.09 | $4.15 | $116.74 | 2.95% | $17.13 |
| Sanders v. RBS Citizens, N.A., Case No. 13-cv-03136 (S.D. Cal.) | $4,551,267.50 | $2,516,507.96 | $4.49 | $60.87 | 4.08% | $12.36 |
| Sarabi v. Weltman, Weinberg & Reis Co., Case No. 3:10-cv-01777 (S.D. Cal.) | $1,361,120.00 | $505,000.00 | $2.36 | $48.21 | 1.81% | $4.36 |
| Schwyhart v. AmSher Collection Services, Inc., Case No. 15-01175 (N.D. Ala.) | $970,000.00 | $483,091.63 | $8.37 | $142.04 | 2.94% | $20.76 |
| Steinfeld v. Discovery Financial Services et al., Case No. 12-cv-01118 (N.D. Cal) | $8,700,000.00 | $5,119,386.77 | $0.93 | $46.90 | 1.17% | $2.73 |

| Case Cite | Settlement Fund | Amount available to claimants | Settlement Fund/class member | Average per-claimant recovery | Claim rate[†] | Average per-claimant recovery (Snyder claim rate)[†] |
|---|---|---|---|---|---|---|
| Stemple v. QC Holdings, Inc., Case No. 12-cv-01997 (S.D. Cal.) | $1,500,000.00 | $779,000.00 | $48.03 | $1,207.75 | 2.07% | $124.19 |
| Tannlund v. Real Time Resolutions, Inc., Case No. 14-c-5149 (N.D. Ill.) | $1,300,000.00 | $754,694.45 | $3.46 | $46.33 | 4.33% | $9.99 |
| Wilkins & Mills v. HSBC Bank Nevada, N.A., Case No. 14-cv-0190 (N.D. Ill.) | $39,975,000.00 | $28,938,730.00 | $4.41 | $101.77 | 3.14% | $15.89 |
| Wright v. Nationstar Mortgage, LLC, Case No. 1:14-cv-10457 (N.D. Ill.) | $12,100,000.00 | $7,235,000.00 | $5.16 | $49.06 | 6.29% | $15.36 |

# Appendix B:

## Snyder v. Ocwen Loan Servicing LLC[*]

### 46 Non-telemarketing TCPA Class Action Settlements

| Case Cite | Settlement Agreement | Settlement Fund | Attorney's fees & incentive payment | Administrative costs | Class size | Number of claimants |
|---|---|---|---|---|---|---|
| Aboudi v. T-Mobile USA Inc., Case No. 12-cv-02169 (S.D. Cal) | DE 41-3 | DE 58 (final app. order) | DE 58 (final app. order) | DE 52-4 (admin. decl.) | DE 41-1 (mot. for prelim. app.) | DE 52-4 (admin. decl.) |
| Adams v. AllianceOne Receivables Management, Inc., Case No. 08-cv-0248 (S.D. Cal.) | DE 109-1 | DE 109-1 | DE 137 (final app. order) | DE 137 (final app. order) | DE 128 (supp. admin. decl.) | DE 137 (final app. order) |
| Allen v. JPMorgan Chase, Case No. 1:13-cv-08285 (N.D. Ill.) | DE 55-2 | DE 98 (order) | DE 93 (final app. order); DE 98 (order) | DE 83 (mot. for final app.)** | DE 98 (order) | DE 98 (order) |
| Arthur v. SLM Corp., Case No. 10-cv-00198 (W.D. Washington) | DE 184-1 & 207-1 (amend. exhibits) | DE 184-1 | DE 265 (fee app. order) | DE 249 (supp. admin. decl.) | DE 184-1 | DE 259 (supp. admin. decl.) |
| Ashack v. Caliber Home Loans, Inc., Case No. 15-01069 (S.D. Ind.) | DE 82-1 | DE 98 (final app. order) | DE 98 (final app. order) | DE 98 (final app. order) | DE 93-1 (admin. decl.) | DE 93-1 (admin. decl.) |
| Balbarin v. North Star Capital Acquisition, LLC, Case No. 10-01846 (N.D. Ill.) | DE 254-1 | DE 265 (final app. order) | DE 265 (final app. order) | DE 265 (final app. order)** | DE 265 (final app. order) | N/A |
| Bayat v. Bank of the West, Case No. 13-cv-02376 (N.D. Cal.) | DE 34-2 | DE 72 (final app. order) | DE 72 (final app. order) | DE 72 (final app. order) | DE 72 (final app. order) | DE 72 (final app. order) |
| Connor v. JPMorgan Chase Bank, Case No. 10-cv-01284 (S.D. Cal.) | DE 50-1 & 100-5 | DE 100-5 & DE 160 (final app. order) | DE 160 (final app. order) | DE 160 (final app. order) | DE 122-8 (admin. decl.) | DE 122-8 (admin. decl.) |
| Couser v. Comenity Bank, Case No. 12-cv-02484 (S.D. Cal.) | DE 52-3 | DE 52-3 | DE 91 (final app. order) | DE 91 (final app. order) | DE 83-2 (supp. admin. decl.) | DE 96-11 (admin. decl.) |
| Cross v. Wells Fargo Bank, N.A., Case No. 15-cv-01270 (N.D. Ga.) | DE 45-2 | DE 86-1 (mot. for final app.) | DE 103 (final app. order) | DE 86-1 (mot. for final app.) | DE 86-3 (admin. decl.) | DE 98-1 (supp. admin. decl.) |
| Cummings v. Sallie Mae, Inc., Case No. 1:12-cv-09984 (N.D. Ill.) | DE 87-1 | DE 87-1 | DE 91 (final app. order) | DE 91 (final app. order) & 92-1 (supp. admin. decl.)** | DE 87-2 (admin. decl.) | DE 92-1 (supp. admin. decl.) |

* Ocwen can provide the Court with copies of all the documents identified in this chart if the Court should so request.

** Administrative costs were estimated from the expected per-claimant recovery provided in the cited document.

| Case Cite | Settlement Agreement | Settlement Fund | Attorney's fees & incentive payment | Administrative costs | Class size | Number of claimants |
|---|---|---|---|---|---|---|
| Fike v. The Bureaus, Inc., Case No. 1:09-cv-02558 (N.D. Ill.) | DE 109-2 | DE 123 (final app. order) | DE 123 (final app. order) | DE 123 (final app. order) | DE 123 (final app. order) | DE 123 (final app. order) |
| Franklin v. Wells Fargo Bank, N.A., Case No. 3:14-cv-02349 (S.D. Cal.) | DE 17 | DE 47 (final app. order) | DE 47 (final app. order) | DE 47 (final app. order) | DE 37-6 (admin. decl.) | DE 37-6 (admin. decl.) |
| Gehrich v. Chase Bank USA N.A., Case No. 12-cv-5510 (N.D. Ill.) | DE 107-2 & 107-3 | DE 240 (final app. order) | DE 240 (final app. order) | DE 240 (final app. order) | DE 198-2 (supp. admin. decl.) | DE 198-2 (supp. admin. decl.) |
| Grannan v. Alliant LawGroup, P.C., Case No. 5:10-cv-02803 (N.D. Cal.) | DE 21-1 | DE 56 (final app. order) | DE 56 (final app. order) | DE 56 (final app. order) & 61 (correction of DE 56) | DE 46 (admin. decl.) | DE 56 (final app. order) |
| Gutierrez v. Barclays Group, Case No. 10-01012 (S.D. Cal.) | DE 49-2 | DE 54-1 (mot. for final app.) | DE 57 (fee app. order) | DE 54-2 (admin. decl.) | DE 58 (final app. order) | N/A |
| Gutierrez-Rodriguez v. R.M. Galicia, Inc., Case No. 16-cv-0182 (S.D. Cal.) | DE 55-3 | DE 55-3 | DE 67 (final app. order) | DE 67 (final app. order) | DE 64-1 (mot. for prelim. app.) | DE 64-3 (admin. decl.) |
| Hanley v. Fifth Third Bank, Case No. 1:12-cv-01612 (N.D. Ill.) | DE 69-1 | DE 69-1 | DE 81 (mot. for final app.) & 86 (final app. order) | DE 79 (mot. for final app.) & 86 (final app. order) | DE 79-3 (admin. decl.) | DE 85-1 (supp. admin. decl.) |
| Hashw v. Dep't Stores Nat'l Bank, Case No. 13-727 (D. Minn.) | DE 109 | DE 138 (final app. order) | DE 138 (final app. order) | DE 138 (final app. order) | DE 130 (admin. decl.) | DE 138 (final app. order) |
| In re Capital One TCPA Litigation, Case No. 1:12-cv-10064 (N.D. Ill.) | DE 123-1 | DE 123-1 | DE 329 (final app. order) | DE 329 (final app. order) | DE 329 (final app. order) | DE 329 (final app. order) |
| In re Portfolio Recovery Assoc., LLC, Case No. 11-md-02295 (S.D. Cal.) | DE 355-1 | DE 355-1 | DE 496 (fee app. order) | DE 461 (supp. decl.) | DE 425-1 (admin. decl.) | DE 743-1 (final rep. of admin.) |
| In re Midland Credit Management, Inc., TCPA Litigation, Case No. 11-md-02286 (S.D. Cal.) | DE 281-3 | DE 434 (final app. order) | DE 434 (final app. order) | DE 434 (final app. order) | DE 365-3 (admin. decl.) | DE 365-3 (admin. decl.) |
| James v. JPMorgan Chase Bank, N.A., Case No. 15-cv-02424 (M.D. Fla.) | DE 51-1 | DE 58 (final app. order) | DE 58 (final app. order) | DE 56 (mot. for final app.) | DE 56-1 (admin. decl.) | DE 58 (final app. order) |

| Case Cite | Settlement Agreement | Settlement Fund | Attorney's fees & incentive payment | Administrative costs | Class size | Number of claimants |
|---|---|---|---|---|---|---|
| Jones v. I.Q. Data International, Inc., Case No. 14-cv-00130 (D.N.M.) | DE 53-1 | DE 65 (final app. order) | DE 65 (final app. order) | DE 65 (final app. order) | DE 60-1 (admin. decl.) | DE 66-1 (admin. decl.) |
| Kwan v. Clearwire Corp., Case No. 09-cv-01392 (W.D. Wash.) | DE 184 (attached to mot. for prelim. app.) | DE 184 (attached to mot. for prelim. app.) | DE 200 (final app. order) | DE 190 (admin. decl.) | DE 190 (admin. decl.) | DE 190 (admin. decl.) |
| Lofton v. Verizon Wireless LLC, Case No. 4:13-cv-05665 (N.D. Cal.) | DE 193-3 | DE 193-3 | DE 218 (fee app. order) | DE 198 (prelim. app. order) | DE 207-2 (supp. admin. decl.) | DE 207-2 (supp. admin. decl.) |
| Luster v. Wells Fargo, Case No. 15-01058 (N.D. Ga.) | DE 57-2 | DE 66 (mot. for final app.) | DE 80 (final app. order) | DE 72-2 (admin. decl.) | DE 72-2 (admin. decl.) | DE 72-2 (admin. decl.) |
| Malta v. The Federal Home Loan Mortgage Corp., Case No. 10-cv-01290 (S.D. Cal.) | DE 38-3 | DE 38-3 | DE 92 (fee app. order) | DE 92 (fee app. order) | DE 60-5 (admin. decl.) | DE 96 (order modifying final approval) |
| Markos v. Wells Fargo Bank, N.A., Case No. 15-cv-01156 (N.D. Ga.) | DE 34-2 & 42-1 | DE 34-2 | DE 90 (final app. order) | DE 90 (final app. order)** | DE 59-5 (admin. decl.) | DE 84-1 (supp. admin. decl.) |
| Martinez v. Medicredit, Inc., Case No. 16-01138 (E.D. Mo.) | DE 93-1 | DE 105 (final app. order) | DE 105 (final app. order) | DE 99 (mot. for final app.) | DE 105 (final app. order) | DE 105 (final app. order) |
| Meilleur v. AT&T, Case No. 11-cv-1025 (W.D. Wash.) | DE 61 | DE 61 | DE 78 (amend. final app. order); DE 76 (final approval award) | DE 66 (admin. decl. [average of estimated range]) | DE 66 (admin. decl.) | DE 66 (admin. decl.) |
| Munday v. Navy Federal Credit Union, Case No. 8:15-cv-01629 (C.D. Cal.) | DE 39-1 | DE 60 (final app. order) | DE 60 (final app. order) | DE 60 (final app. order) | DE 52-2 (admin. decl.) | DE 59 (supp. decl.) |
| Newman v. Americredit Financial Services, Inc., Case No. 11-cv-3041 (S.D. Cal.) | DE 63-3 | DE 98 (final app. order) | DE 98 (final app. order) | DE 98 (final app. order) | DE 91-13 (admin. decl.) | DE 98 (final app. order) |
| Picchi et al. v. World Financial Network National Bank, N.A., Case No. 11-cv-61797 (S.D. Fla.) | DE 165 | DE 165 | DE 161 (final app. order) | DE 159-4 (admin. decl.) | DE 159-4 (admin. decl.) | DE 159-4 (admin. decl.) |

| Case Cite | Settlement Agreement | Settlement Fund | Attorney's fees & incentive payment | Administrative costs | Class size | Number of claimants |
|---|---|---|---|---|---|---|
| Prater v. Medicredit, Inc., Case No. 14-cv-159 (E.D. Mo.) | DE 89-1 | DE 89 (final app. order) | DE 89 (final app. order) | DE 79 (mot. for final app.) | DE 82-1 (admin. decl.) | DE 82-1 (admin. decl.) |
| Reid v. I.C. System Inc., Case No. 12-2661 (D. Ariz.) | DE 215-3 | DE 260 (final app. order) | DE 260 (final app. order); DE 215-3 | DE 260 (final app. order) | DE 239-2 (admin. decl.) | DE 260 (final app. order) |
| Ritchie v. Van Ru Credit Corp., Case No. 12-cv-1714 (D. Ariz.) | DE 100 (attached to final app. order) | DE 100 (final app. order) | DE 100 (final app. order) | DE 89 (prelim. app. order)** | DE 90-1 (admin. decl.) | DE 90-1 (admin. decl.) |
| Rose v. Bank of America, Case No. 11-cv-2390 (N.D. Cal.) | DE 59-1 | DE 59-1 | DE 108 (final app. order) | DE 74-11 (admin. decl.) | DE 74-11 (admin. decl.) | DE 108 (final app. order) |
| Sanders v. RBS Citizens, N.A., Case No. 13-cv-03136 (S.D. Cal.) | DE 104-3 | DE 117 (final app. order) | DE 116 (order granting fees) | DE 116 (order granting fees) | DE 112-4 (admin. decl.) | DE 117 (final app. order) |
| Sarabi v. Weltman, Weinberg & Reis Co., Case No. 3:10-cv-01777 (S.D. Cal.) | DE 27-1 | DE 42 (final app. order) | DE 42 (final app. order) | DE 42 (final app. order) | DE 36-2 (admin. decl.) | DE 36-2 (admin. decl.) |
| Schwyhart v. AmSher Collection Services, Inc., Case No. 15-01175 (N.D. Ala.) | DE 44-1 | DE 44-1 | DE 52 (final app. order) | DE 49 (mot. for final app.) | DE 49-1 (admin. decl.) | DE 49-1 (admin. decl.) |
| Steinfeld v. Discovery Financial Services et al., Case No. 12-cv-01118 (N.D. Cal) | DE 49 & 55-1 | DE 97 (final app. order) | DE 98 (order approving attorneys' fees) | DE 96 (supp. admin. decl.) | DE 65-1 (admin. decl.) | DE 96 (supp. admin. decl.) |
| Stemple v. QC Holdings, Inc., Case No. 12-cv-01997 (S.D. Cal.) | DE 102-3 | DE 102-3 | DE 112 (fee app. order) | DE 112 (fee app. order) | DE 110-1 (mot. for final app.) | DE 112 (fee app. order) |
| Tannlund v. Real Time Resolutions, Inc., Case No. 14-c-5149 (N.D. Ill.) | DE 81-1 | DE 81-1 | DE 101 (final app. order) | (not publicly available) | DE 98-1 (admin. decl.) | DE 101 (final app. order) |
| Wilkins & Mills v. HSBC Bank Nevada, N.A., Case No. 14-cv-0190 (N.D. Ill.) | DE 53 | DE 117 (final app. order) | DE 117 (final app. order) | DE 169-1 (admin. decl. re final dist.) | DE 117 (final app. order) | DE 122-1 (supp. admin. decl.) |
| Wright v. Nationstar Mortgage, LLC, Case No. 1:14-cv-10457 (N.D. Ill.) | DE 107-2 | DE 107-2 | DE 134 (final app. order) | DE 117 (mot. for final app.)** | DE 107-1 (admin. decl.) | DE 107-1 (admin. decl.) |

**CERTIFICATE OF SERVICE**

I, Simon Fleischmann, an attorney, certify that I caused the foregoing to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on January 14, 2019.

/s/ Simon Fleischmann
Simon Fleischmann

Dated: January 14, 2019