**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs )<br><br>v. )<br><br>Ocwen Loan Servicing, LLC, )<br><br>Defendant )<br><br>_____ ) | Case No. 1:14-cv-08461<br><br>Honorable Matthew F. Kennelly<br><br>Consolidated |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, )<br><br>Plaintiff )<br><br>v. )<br><br>Ocwen Loan Servicing, LLC, )<br><br>Defendant ) | Case No. 1:14-cv-08461<br><br>Honorable Matthew F. Kennelly<br><br>Consolidated |

**ORDER GRANTING FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND DISMISSING CLASS PLAINTIFFS' CLAIMS**

This Court, having held the Initial Final Approval Hearing on April 5, 2018, having

provided notice of that hearing in accordance with the Preliminary Approval Order, having

considered all matters submitted to it in connection with the initial Final Approval Hearings on

April 5 and April 17, 2018 and with the January 17, 2019 Final Approval Hearing, having issued

an Order on the Motion for Final Approval of the First Amendment to the Class Action Settlement (Dkt. 360), finding no just reason for delay in entry of this Order Granting Final Approval of Class Action Settlement and Dismissing Class Plaintiffs' Claims (the "Final Approval Order" or this "Order"), and good cause appearing therefor,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      Unless otherwise defined, all capitalized terms in this Final Approval Order shall have the same meaning as they do in the Amended Settlement Agreement.[1]

2.      The Court has jurisdiction over the subject matter of this consolidated action (the "Consolidated Litigation") and over the Parties, including all Settlement Class Members with respect to the Settlement Class certified for settlement purposes, as follows:

> All persons who were called by Ocwen on the 1,685,757 unique cell phone numbers listed on Exhibit G to the Settlement Agreement [DE 252-1] (filed with the Court under seal) using its Aspect dialing system between October 27, 2010 and through and including October 5, 2017, the date of the Preliminary Approval Order ("Settlement Class Period"). Excluded from the Settlement Class are: (i) those persons who were called by Ocwen using its Aspect dialing system during the Settlement Class Period only on numbers not included on Exhibit G; (ii) individuals who are or were during the Settlement Class Period officers or directors of Ocwen or any of its Affiliates; (iii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iv) all individuals who file a timely and proper request to be excluded from the Settlement Class.

3.      The Court finds that the Settlement Agreement and the First Amendment to the Settlement Agreement and Release were negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of the Consolidated Litigation and of the

---

[1]      The "Amended Settlement Agreement" is defined as the Settlement Agreement approved in the Court's October 5, 2017 Preliminary Approval Order (DE 266), as amended by the First Amendment to the Settlement Agreement and Release, dated Jan. 8, 2019 (DE 353, Exh. 1).

strengths and weaknesses of their respective positions. Further, the settlement and the amendments to the settlement occurred only after the Parties negotiated over a period of many weeks. Counsel for the Parties were therefore well positioned to evaluate the benefits of both the Settlement Agreement and the First Amendment to the Settlement Agreement and Release, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

4.      The Amended Settlement Agreement creates a $21,500,000 Settlement Fund, which is $4,000,000 more than under the original Settlement Agreement.

5.      Pursuant to the terms of the Amended Settlement Agreement, Ocwen has consented to the entry of an injunction and is hereby ordered to commence the following procedures within 60 days of the Final Settlement Date:

      a.      Ocwen will re-set to "P" in REALServicing a borrower's consent to receiving automated calls whenever a new phone number is added to a borrower's account.

      b.      Ocwen will conduct a search for all loans reflecting a NEWP and NVLS code entered in REALServicing on the same day between December 1, 2014 and October 5, 2017. Ocwen will reset the value in the consent field to "P" for all borrowers identified by that search.

      c.      Ocwen will add an additional prompt to its agent scripts for inputting new phone numbers to track the means by which any particular phone number for a borrower was obtained:

            i.      When an agent clicks on the "new phone number" button to add a new phone number to an account, the agent will be prompted to

3

add the source of the new phone number.

ii.    The phone number source will be selected from a dropdown menu prepopulated with potential sources of a new phone number.

iii.    The agent will then be required to select the phone number's source before proceeding.

iv.    If the phone number was not obtained directly from the owner or subscriber of the cell phone, the consent field for the borrower will then be set to "P," which will prevent any of the borrower's cell phone numbers from being called from Ocwen's Aspect system.

v.    Ocwen shall not use Aspect to call any cell phone associated with any borrower where there is a "P" or "N" in the consent field, except in instances in which Ocwen is calling borrowers for the Home Retention Manager appointment scheduled by the borrower.

d.    Ocwen agrees to use the following language in its scripts when requesting consent to use its automatic dialing system to call cell phones: "May we please have your consent to use our automatic dialing system to call your cell phone of xxx-xxx-xxxx?" After the borrower provides a response, a script will instruct Ocwen's representative to state: "If you change your mind at any time, please let us know. We will honor such a request."

e.    If, when Ocwen solicits a borrower's consent to be called with an automatic dialing system, that borrower does not give separate consent for each of his or her cell phone numbers, the borrower's consent field will be set to "N," which will prevent any of the borrower's cell phone numbers

from being called from Ocwen's Aspect system.

      f.     In any individual case commenced between October 5, 2017 and a date that is two years from the date of this Order (but not in any case in which a plaintiff brings claims on behalf of an alleged class of persons similarly situated), if Ocwen is found liable for a TCPA violation, Ocwen agrees to pay not less than the amounts set forth below for each automated call through its Aspect system to a cell phone, where the consent field in Ocwen's REALServicing system should have been "N" or "P" as of October 5, 2017:

          i.     For the first 10 calls placed to a cell phone as described above, Ocwen shall pay $1,000 for each such call.

          ii.     For 11-50 calls placed to a cell phone as described above, Ocwen shall pay $1,250 for each such call.

          iii.     For over 50 calls placed to a cell phone as described above, Ocwen shall pay $1,500 for each such call.

      g.     Ocwen shall provide Class Counsel with a declaration with regard to its compliance with the terms above within 75 Days of the Final Settlement Date.

6.     The Court is informed that, as part of a recently-completed merger, Ocwen contemplates migrating the loans it services from the REALServicing platform to a BlackKnight/MSP servicing platform. Accordingly, should Ocwen actually go through with the contemplated migration of loans from REALServicing to BlackKnight/MSP, the declaration required in Paragraph 5.g above shall include a description of how Ocwen will comply

substantially with the injunctive provisions of this Order in light of the change in servicing platforms.

7.     The Court finally certifies the Settlement Class for settlement purposes and finds, for settlement purposes, that the Consolidated Litigation satisfies all the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Amended Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action settlement is superior to the other available methods for the fair and efficient adjudication of the controversy.

8.     The Court previously appointed Burke Law Offices, LLC and Terrell Marshall Law Group PLLC as interim lead Class Counsel for Plaintiffs' proposed classes on November 28, 2018, and now finally appoints Burke Law Offices, LLC and Terrell Marshall Law Group PLLC as Class Counsel for the Settlement Class.

9.     The Court finally designates Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee A. Beecroft as the Class Representatives.

10.     The Court makes the following findings and conclusions regarding notice to the Settlement Class:

a. The Class Notice was disseminated to persons in the Settlement Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination complied with the Court's Preliminary Approval Order;

b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Consolidated Litigation, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law;

c. The Court finds that Defendant has complied with its notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), in connection with the proposed Settlement; and

d. No new notice is required where changes to a proposed settlement are objectively favorable for class members and do not prejudice any benefit previously promised. *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018) (collecting cases). The Amended Settlement Agreement provides additional, valuable benefits to the Settlement Class. It substantially increases the payout per claim to which Settlement Class Members are entitled and excludes the claims against the banks from settlement, meaning that litigation against the banks may yet be viable. These changes unequivocally enhance the value of the settlement to class members and come at no apparent cost in terms of benefits provided under the original Settlement. Because the changes embodied by the Amended Settlement are entirely

beneficial to the Settlement Class and have no apparent costs to them, the Court concludes that no further notice is required under Rule 23. Moreover, no state or federal officials objected or commented on the Settlement after receiving CAFA notice, and any Settlement Class Members who chose to exclude themselves have already done so. *See Smith v. Levine Leichtman*, No. 10-cv-00010-JSW, 2014 WL 12641575, at *4 (N.D. Cal. Mar. 26, 2014) (declining to require additional CAFA notice following settlement amendment). As a result, additional CAFA notice is unnecessary.

11. Subject to modifications discussed *infra* in paragraphs 19 and 23, the Court finally approves the Amended Settlement Agreement as fair, reasonable and adequate pursuant to *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014), and Fed. R. Civ. P. 23(e)(2).

a. The class representatives and Class Counsel have adequately represented the Settlement Class. The Plaintiffs participated in the case diligently, including being subjected to discovery. And Class Counsel fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative. The conduct of Mark Ankcorn, *see infra* paragraph 19, did not influence the representation of the Settlement Class by Class Counsel and was not on its own problematic enough to undermine the viability of the Amended Settlement.

b. The Amended Settlement was negotiated at arm's length. The Parties conducted their negotiations via three separate and independent mediators. There is no indication of any side deals material to this analysis. And there is no provision for reversion of unclaimed amounts, no clear-sailing clause regarding attorneys' fees, and no other settlement terms that could suggest something other than an arm's length negotiation.

8

c. The Amended Settlement treats all Settlement Class Members the same; each is entitled to a single payment for each claim submitted. While some Settlement Class Members received more unwanted calls than others, no Settlement Class Member has objected on this basis. Moreover, the ability to opt out, coupled with the explanation in the class notice of the options for a class member who opts out, provided a safety valve that permitted class members on the higher end of the call spectrum to, in effect, vote with their feet and pursue the possibility of a greater award. To ensure that class members who received more calls could pursue their claims individually, the Court has allowed modestly late opt-out requests, discussed *infra*. The Court finds that the proposal for equal treatment is reasonably equitable.

d. The relief provided by the Amended Settlement is adequate, taking into consideration the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any proposed award of attorneys' fees; any agreements made in connection with the proposed settlement. Specifically:

i. *Complexity, length, and expense of further litigation*. The amount of work left to be completed, including motions for class certification and summary judgment, a possible request for interlocutory appeal, and expert discovery, favor approval. Plaintiffs faced significant risks going forward on issues regarding whether Ocwen used an automatic dialing system to make the calls and, if so, whether it had the call recipients' prior express consent. The Amended Settlement avoids the risk, expense, complexity and duration of further litigation and provides prompt and certain relief for Settlement Class Members.

ii. *Amount of opposition to the settlement*. There were only three objections out of more than 270,000 responses submitted. This factor favors approval.

iii. *Opinion of competent counsel*. Class Counsel are experienced

9

members of the plaintiff's consumer class action bar. They favor the Amended Settlement, and although they are not disinterested parties because they have an interest in the Court's award of attorneys' fees, this is a factor supporting approval of the Amended Settlement. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996).

iv.     *Stage of proceedings and amount of discovery completed.* Though a lot of work remained had the case not settled, a lot of work was done, including a significant amount of fact discovery as well as litigation of the motion for preliminary injunction. Plaintiffs had sufficient information via discovery and otherwise to enable them to evaluate the merits of the case against Ocwen.

v.     *Strength of the case compared with the amount offered under the Amended Settlement*. In addressing this factor, which is the single most important consideration under *Wong,* the Court concludes that the following considerations favor approval of the Amended Settlement: (1) the relative strength of the Plaintiffs' claims and Class Counsel's assessment of the merits, together with the risk to the claims of a decision by the D.C. Circuit on a key legal issue; (2) the overall weakness of Ocwen's consent defense in light of its poor recordkeeping, but the potential for the defense to adversely affect class certification; (3) Class Counsel's decision to carve out from the scope of the settlement a separate lawsuit alleging that several banks are liable for Ocwen's behavior; (4) Class Counsel's request for a reduced attorneys' fee award in response to the Court's concern regarding the amount of Class Counsel's original request for attorneys' fees; and (5) the substantial $21,500,000 Settlement Fund.

12.     The Court approves payment to Settlement Class Members who submitted 212,165 timely, complete and valid Claims.

13.     The Court also approves payment to 3,213 of the 5,401 Claimants who previously

10

submitted unsigned, otherwise valid Claim Forms and who cured this deficiency on or before February 14, 2019.

14.     There are 5,318 Claimants who included two valid cell phone numbers on a single Claim Form, and 59 Claimants who included three valid cell phone numbers on a single Claim Form. Together, these Claimants included 5,436 additional valid cell phone numbers. The Court approves payment of the 5,436 additional cell phone numbers as separate, additional Claims.

15.     The Settlement Administrator reported that 52,709 Claimants submitted Claims that did not include a phone number listed on Exhibit G to the Settlement Agreement [DE 252-1]. The Court finds that these claimants fall outside of the Settlement Class and are entitled to no further opportunity to correct their submissions.

16.     The Court approves payment of 3,801 late Claims that were filed after the March 7, 2018 deadline for submitting Claims.

17.     The Court overrules the three objections submitted by Brenda Stuart, Daniel Seltzer, and Paul Squicciarini.

18.     The Court authorizes 379 timely requests for exclusion. The Court further authorizes 176 out of 178 late requests for exclusion because they were submitted either within two weeks of the March 5 deadline or in April 2018 by Reuben Metcalfe. As to the latter group, the untimely submissions were due to Metcalfe's error, and not the fault of any of the class members. Three opt-out requests were submitted significantly beyond the deadline without any explanation. These three requests were from James Sweeny (postmarked March 26), Charles Calia (postmarked April 18), and Brian Lametto (postmarked June 14). The Court concludes that Sweeny's March 26 opt-out—precisely three weeks after the deadline—represents the outer limit of excusable neglect. That is, it will be honored, but none beyond it will be. For that reason,

Calia's and Lametto's opt-outs— submitted forty-seven and 101 days after the deadline respectively—are deemed untimely and will not be authorized. Finally, the Court finds that 18 incomplete requests to opt out are forfeited and constitute inexcusable neglect in light of the prejudice allowing those requests would cause Defendant.

19.     Class Counsel have moved for an award of attorneys' fees and reimbursement of expenses. The award Class Counsel seek is $500,000 less than they originally requested. The Court makes the following findings of fact and conclusions of law pursuant to Rule 23(h):

a.      "[D]istrict courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc*., 897 F.3d 825, 832 (7th Cir. 2018). Applying this standard, the proposed attorneys' fees under the Amended Settlement are approximately 22% of the Settlement Fund, less administration costs, which is an acceptable request under either the percentage or lodestar methods of analysis. *See Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc*., 743 F.3d 243, 246-47 (7th Cir. 2014).

b.      The requested fee is well within the parameters of the declining marginal fee scale often employed in this district. *See*, *e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig*., 80 F. Supp. 3d 781, 805-07 (N.D. Ill. 2015).

c.      Applying a lodestar cross-check reveals that the risk multiplier sought by Plaintiffs' counsel is well within reason, *see*, *e.g.*, *In re Trans Union Corp. Privacy Litig*., No. 00 C 4729, 2009 WL 4799954, at *17-21 (N.D. Ill. Dec. 9, 2009), as to all Plaintiffs' counsel except for Mark Ankcorn, as described below.

d.      For the reasons described in the Court's order granting final approval of the amended class settlement (Dkt. 360), the Court limits the Ankcorn Law Firm to the

$601,697.50 that Mark Ankcorn represented the firm's services to be worth in the April 2018 statement of lodestar hours. The additional fee to which the Ankcorn Law Firm may otherwise have been entitled— $595,615.00—shall return to the fund from which Claims are to be paid and shall be distributed proportionally to Claimants. *See Pearson v. NBTY, Inc*., 772 F.3d 778, 786 (7th Cir. 2014) ("The simple and obvious way for the judge to correct an excessive attorney's fee for a class action lawyer is to increase the share of the settlement received by the class, at the expense of class counsel.").

        e.      The remaining $3,591,937.50 in awarded attorneys' fees shall be allocated and distributed as follows:

| | |
|---|---|
| Burke Law Offices, LLC/ Heaney Law Offices, LLC | $ 1,197,312.50 |
| Terrell Marshall Law Group PLLC | $ 1,197,312.50 |
| Cabrera Firm, APC | $ 1,197,312.50 |

        f.      The Ankcorn Law Firm is entitled to costs in the amount of $29,600.

        g.      The remaining law firms are entitled to share $66,780 in costs attributable to their expert.

      20.      The Settlement Administrator is ordered to comply with the terms of the Amended Settlement Agreement, subject to the Court's modifications, with respect to distribution of Settlement Relief, including a second payment, if feasible. Should any unclaimed funds be distributed, the Court hereby approves the National Consumer Law Center ("NCLC") and Public Justice Foundation as recipients who shall receive an equal distribution of those unclaimed funds, after accounting for the costs of administering that distribution. The funds to NCLC shall be earmarked for work associated with the FCC to protect consumer protections under the Telephone Consumer Protection Act ("TCPA"). The Court finds these organizations

closely aligned with the Settlement Class's interests.

21.     The Court approves payment of $1,600,000 to Settlement Administrator, Epiq, for the work it performed in connection with the Amended Settlement.

22.     By incorporating the Amended Settlement Agreement and its terms herein, this Court determines that this Final Approval Order complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

23.     The Class Representatives, as identified in the Preliminary Approval Order, are hereby compensated in the amount of $10,000 each for their efforts in this case.

24.     The terms of the Amended Settlement Agreement and of this Final Approval Order, including all exhibits thereto, shall be forever binding in all pending and future lawsuits maintained by the Plaintiffs and all other Settlement Class Members, and anyone claiming through them such as heirs, administrators, successors, and assigns.

25.     The Releases, which are set forth in Section 10 of the Amended Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Order; and the Released Persons are fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged by the Releasing Persons from all Released Claims.

        a.      Released Claims of Settlement Class.  Upon Final Approval, each member of the Settlement Class shall, by operation of the Judgment to be entered pursuant to this Order, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law,

14

common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of Final Approval, that relate to or arise out of Ocwen's use of equipment or methods to contact or attempt to contact Settlement Class Members by telephone for servicing or debt collection purposes during the Settlement Class Period, including but not limited to claims that relate to or arise out of Ocwen's use of an "automatic telephone dialing system" or "artificial or prerecorded voice" as defined in the Telephone Consumer Protection Act. For the avoidance of doubt, "Released Claims" include claims relating to or arising out of the equipment or method used to contact or attempt to contact Settlement Class Members by telephone, but do not include claims based on other aspects of calls, such as the substance of the calls, or the time/date of any such calls. For the avoidance of doubt, no claims alleged in *Beecroft v. Altisource Business Solutions Pvt. Ltd.*, No. 0:15-cv-02184-SRN-BRT (D. Minn.), or *Snyder, et al. v. U.S. Bank, N.A., et al*., No. 1:16-cv-11675 MFK (N.D. Ill.), are released.

b.      Without in any way limiting their scope, the Released Claims cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs, or any Settlement Class Members in connection with or related in any manner to this Settlement, the administration of this Settlement, and/or the Released Claims, except to the extent otherwise specified in the Amended Settlement Agreement.

c.      In connection with the Releases and without expanding their scope in any way, Plaintiffs and each Settlement Class Member shall be deemed, as of the date of Final

Approval, to have waived any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

To the extent that anyone might argue that these principles of law are applicable, the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released. Each Plaintiff and each Settlement Class Member is deemed to recognize that even if they may later discover facts in addition to or different from those which they now know or believe to be true, they fully, finally, and forever settle and release any and all claims covered by these Releases upon entry of the Judgment. The Settling Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Amended Settlement Agreement.

d.      The Amended Settlement Agreement and the Releases therein do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section 11 of the Amended Settlement Agreement.

e.      The Releases do not include claims described in Paragraph 4.f of this Order.

f.      The administration and consummation of the Settlement as embodied in the Amended Settlement Agreement, with modifications, shall remain under the authority of this Court. This Court retains jurisdiction to protect, preserve, and implement the Amended

Settlement Agreement, with modifications, including, but not limited to, enforcement of the Releases contained in the Amended Settlement Agreement. This Court retains jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Amended Settlement Agreement.

g. Upon entry of the Final Approval Order and the Judgment: (i) the Amended Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out) in accordance with the terms and provisions of the Amended Settlement Agreement; (ii) the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s) except as set forth in the Amended Settlement Agreement; and (iii) Settlement Class Members who have not opted out shall be permanently barred from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on the Released Claims.

h. Nothing in the Amended Settlement Agreement shall preclude any action to enforce the terms of the Amended Settlement Agreement, including participation in any of the processes detailed therein. The Releases set forth therein are not intended to include the release of any rights or duties of the Settling Parties arising out of the Amended Settlement Agreement, including the express warranties and covenants contained therein.

26. The Court dismisses without prejudice all of Plaintiffs' claims that are not Released Claims, including those brought under the Fair Debt Collection Practices Act. The Court dismisses all Released Claims, with prejudice, without costs to any Party, except as expressly provided for in the Amended Settlement Agreement.

27. Neither the Amended Settlement Agreement, nor any of its terms and provisions,

nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Order, nor any of its terms and provisions nor the Judgment to be entered pursuant to this Order, nor any of its terms and provisions, shall be:

a.      offered by any person or received against any Released Person as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Person of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Consolidated Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Consolidated Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of any Released Person; or

b.      offered by any person or received against any Released Person as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Released Person or any other wrongdoing by any Released Person; or

c.      offered by any person or received against any Released Person as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding.

28.     This Order, the Judgment to be entered pursuant to this Order, and the Amended Settlement Agreement (including the Exhibits thereto and Exhibits H and H-1 to the First Amendment to the Settlement Agreement and Release, but not Exhibit G to the Settlement Agreement [DE 252-1], which may only be filed under seal) may be filed in any action against or by any Released Person to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion

or similar defense or counterclaim.

29.     Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Amended Settlement Agreement.

30.     This Order and the Judgment to be entered pursuant to this Order shall be effective upon entry.  In the event that this Order and/or the Judgment to be entered pursuant to this Order are reversed or vacated pursuant to a direct appeal in the Consolidated Litigation or the Amended Settlement Agreement is terminated pursuant to its terms, all orders entered and releases delivered in connection herewith shall be null and void.

31.     A Judgment substantially in the form attached hereto as Exhibit H-1 will be entered forthwith.


DONE and ORDERED in Chambers in Chicago, Illinois, this 4th day of June, 2019.



_____
Matthew F. Kennelly
UNITED STATES DISTRICT JUDGE

**EXHIBIT H-1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| Keith Snyder and Susan Mansanarez, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) Case No. 1:14-cv-08461 |
| | ) |
| | ) Honorable Matthew F. Kennelly |
| | ) |
| Ocwen Loan Servicing, LLC, | ) Consolidated |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| | ) |
| Tracee A. Beecroft, on behalf of herself and all others similarly situated, | ) ) |
| | ) Case No. 1:14-cv-08461 |
| | ) |
| | ) |
| | ) Honorable Matthew F. Kennelly |
| Ocwen Loan Servicing, LLC, | ) |
| | ) |
| | ) Consolidated |
| | ) |

**FINAL JUDGMENT**

This Consolidated Litigation having settled pursuant to the Amended Settlement

Agreement[1] and the Court having entered an Order Granting Final Approval of Class Action

---

[1]     The "Amended Settlement Agreement" is defined as the Settlement Agreement approved in the Court's October 5, 2017 Preliminary Approval Order (DE 266), as amended by

Settlement and Dismissing Class Plaintiffs' Claims (the "Final Approval Order"), IT IS

HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      Unless otherwise defined, all capitalized terms in this Judgment shall have the same meaning as they do in the Amended Settlement Agreement.

2.      All of Plaintiffs' claims in this Consolidated Litigation that are not Released Claims, including those brought under the Fair Debt Collection Practices Act, are hereby dismissed without prejudice.  All of Plaintiffs' and Settlement Class Members' claims in this Consolidated Litigation that are Released Claims are hereby dismissed on the merits and with prejudice, without fees (including attorneys' fees) or costs to any Party except as otherwise provided in the Final Approval Order.

        a.      "Plaintiffs" means Keith Snyder, Susan Mansanarez, and Tracee A. Beecroft.

        b.      "Settlement Class Members" are members of the "Settlement Class," which consists of the following:

> All persons who were called by Ocwen on the 1,685,757 unique cell phone numbers listed on Exhibit G to the Settlement Agreement [DE 252-1] (filed with the Court under seal) using its Aspect dialing system between October 27, 2010 and through and including October 5, 2017, the date of the Preliminary Approval Order ("Settlement Class Period"). Excluded from the Settlement Class are: (i) those persons who were called by Ocwen using its Aspect dialing system during the Settlement Class Period only on numbers not included on Exhibit G; (ii) individuals who are or were during the Settlement Class Period officers or directors of Ocwen or any of its Affiliates; (iii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iv) all individuals who file a timely and proper request to be excluded from the Settlement Class.

---

the First Amendment to the Settlement Agreement and Release, dated Jan. 8, 2019 (DE 353, Exh. 1).

        c.      "Ocwen" means Ocwen Loan Servicing, LLC.

        d.      "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control with such entity.

        3.      All Releasing Persons have released the Released Claims as against the Released Persons, and are, from this day forward, hereby permanently barred from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on any of the Released Claims.

        a.      "Released Claims" means the claims released as provided for in Section 10 of the Amended Settlement Agreement. "Released Claims" does not include claims described in Section 4.2.6 of the Amended Settlement Agreement.

        b.      "Released Persons" means: (a) Ocwen and each of its respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or present, any direct or indirect subsidiary of Ocwen and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or present, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities; and (b) any person or entity making calls to Settlement Class Members on behalf of Ocwen, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities. For the avoidance of doubt, "Released Persons" specifically does not include Altisource Portfolio Solutions S.A., Altisource Solutions S.à r.l., Altisource Business Solutions Pvt. Ltd., or any other Affiliate or member of the Altisource family of companies. In addition, "Released Persons" does not include any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the

officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

    c.  "Releasing Persons" means Plaintiffs, all Settlement Class Members, and anyone claiming through them such as heirs, administrators, successors, and assigns.

  4.  This Court shall retain jurisdiction over the construction, interpretation, consummation, implementation, and enforcement of the Amended Settlement Agreement and the Releases contained in therein, including jurisdiction to enter such further orders as may be necessary or appropriate to administer and implement the terms and provisions of the Amended Settlement Agreement, including but not limited to Section 4.2 regarding injunctive relief.

  5.  Settlement Class Members shall promptly dismiss with prejudice all Released Claims brought by any Settlement Class Member in any jurisdiction.


  DONE and ORDERED in Chambers in Chicago, Illinois, this day of _____, 20_____.

           _____
           Matthew F. Kennelly
           UNITED STATES DISTRICT JUDGE