IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>    Defendant.<br><br>TRACEE A. BEECROFT,<br><br>    Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>    Defendant. | CONSOLIDATED NO. 1:14-cv-08461<br><br>Class Action<br><br>Jury Trial Demand<br><br>Honorable Matthew F. Kennelly<br><br><br>Case No.: 1:16−cv−08677 |

**PLAINTIFFS' RESPONSE TO OCWEN'S RULE 59(e) MOTION TO ALTER OR AMEND THE FINAL JUDGMENT AND FINAL APPROVAL ORDER OR, <u>ALTERNATIVELY, FOR RULE 60(b) RELIEF</u>**

Ocwen misled the Court regarding its interpretation of release language in the parties' amended settlement agreement. As a result, Ocwen now fears that it may someday be required to pay more than the settlement requires.

Ocwen—represented by a team of sophisticated lawyers—entered into the *Snyder* class settlement with "eyes wide open." Its fear that its gambit to avoid indemnification through a back-door automatic release for the bank defendants does not justify altering or amending the definition of "Final" in the final judgment. "Final" is based on the negotiated definition in the

parties' settlement, which Ocwen is bound to honor. And the Court does not have the authority to alter or modify the parties' private settlement agreement without Plaintiffs' consent. Because Plaintiffs do not consent to amending the definition of "Final," Ocwen's motion should be denied. Moreover, altering the settlement as Ocwen requests would certainly delay payment to the class, and might even require additional notice—at Ocwen's expense.[1]

Moreover, Ocwen has failed to establish manifest injustice under Rule 59(e) or unforeseen contingencies under Rule 60(b)(6) that would otherwise authorize the Court to alter or amend the final approval order and judgment. Indeed, the circumstances about which Ocwen complains are of Ocwen's own making, and the bank case affects approximately 17% (300,000 of the 1.7 million) of the *Ocwen* settlement class members, only. The Court should deny Ocwen's request to delay indefinitely its promise to pay the hundreds of thousands of class members who submitted claims, most of whom have no connection to Plaintiffs' separate lawsuit against the banks.

## I. RELEVANT FACTS

For years, Ocwen used the Aspect dialer to make illegal debt collection calls to hound hundreds of thousands of primarily low-income consumers whose homes were in distress. Plaintiffs sued Ocwen in 2014 to challenge these practices. Two years later, Plaintiffs brought a second suit against U.S. Bank N.A., Wilmington Trust, N.A., and Deutsche Bank National Trust Company, alleging the banks were also liable for the illegal debt-collection calls Plaintiffs received from Ocwen because they were made on the banks' behalf. In July 2017, Plaintiffs and Ocwen negotiated a settlement agreement that required Ocwen to establish a settlement fund of

---

[1] Plaintiffs position that, if this motion were to be granted, Ocwen should have to (1) pay for any additional notice to the class, and (2) Ocwen should have to immediately place the entire settlement fund into an interest-bearing account for the benefit of the class, to guarantee payment.

$17,500,000. In exchange, Plaintiffs would not only release their claims against Ocwen, but would also release class claims against the banks. In September 2018, the Court denied the motion for final approval, in part, because it would have released the claims against the bank defendants without any contribution from the banks. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2018 WL 4659274, at *5-6 (N.D. Ill. Sept. 28, 2018).

Ocwen and Plaintiffs went back to the drawing board and negotiated an amended settlement that required Ocwen to pay substantially more money—$21.5 million—to settle the claims of Plaintiffs and the settlement class. The amended settlement also included an amended release narrower than the first go around. Heeding the Court's admonitions, Plaintiffs released claims against Ocwen, but the parties expressly and unambiguously carved out any claims against the banks.

The effect of the amended settlement could not have been clearer. Or, so Plaintiffs thought. Plaintiffs learned much later—*after* the Court finally approved the amended settlement—that Ocwen never intended the amended release to be effective. Ocwen admitted in open court on June 19, 2019, that it knew when it negotiated the amended release that the banks would argue that the amended settlement extinguished the vicarious claims against the banks, but deliberately waited to raise the issue until after the Court granted final approval in Ocwen.

The Court's displeasure was palpable, and understandably so. Ocwen not only misled Plaintiffs, it misled the Court. The May 14, 2019 Memorandum Opinion and Order approving the amended settlement repeatedly identified the exclusion of the banks as a key factor in the decision to approve the amended settlement. ECF 360 at 6, 12, 14, 16, 19. Although Ocwen later admitted that it viewed the amended release to carve out only Plaintiffs' direct liability claims against the banks, nothing in the language of the amended release would have tipped off

Plaintiffs or the Court to Ocwen's creative interpretation. And Ocwen never took steps to disabuse the Court of its clear understanding that the amended release carved out each and every claim that Plaintiffs asserted against the banks.

On June 13, 2019, the banks moved for summary judgment dismissal of Plaintiffs' vicarious liability claims, arguing that the claims were barred by res judicata because they were released as part of the amended settlement. On July 14, 2019, the Court denied the banks' motion as to vicarious liability but dismissed Plaintiffs' direct liability claims. The next day, the Court reiterated that it had been misled regarding the effect of the amended release on the vicarious liability claims, and noted that should the Court's decision denying summary judgment on vicarious liability be overturned, the Court would expect to see a Rule 60(b) motion.

Ocwen's motion followed.

## II. ARGUMENT

**A.  Ocwen asks the Court to modify the terms of the settlement agreement, but Plaintiffs do <u>not</u> consent.**

Ocwen's request is baseless because both the final approval order and judgment expressly incorporate the definitions the parties negotiated in the Amended Settlement Agreement, including the use of the term "Final." *See* ECF 362 at 2 ("Unless otherwise defined, all capitalized terms in this Final Approval Order shall have the same meaning as they do in the Amended Settlement Agreement"); *see also* ECF 369 at 2 ("Unless otherwise defined, all capitalized terms in this Judgment shall have the same meaning as they do in the Amended Settlement Agreement"). And Section 2.16 defines "Final" as the expiration of the time for appeal or writ review with respect to this case alone.

In effect, Ocwen proposes a revised settlement definition of "Final" that would pull the banks back into this case, which is contrary to what Plaintiffs and Ocwen negotiated. Plaintiffs

refused to incorporate the banks into their amended settlement based on the Court's detailed concerns, and Ocwen agreed. Both in writing and in open court at the final approval hearing. Ocwen cannot now unilaterally force Plaintiffs to fold the banks back into the case. Section 17.7 of the Settlement Agreement requires Plaintiffs' consent for any amendment to the settlement. *See* ECF 252-1 at § 17.7. ("This Agreement may be amended or modified only by a written instrument signed by or on behalf of each Plaintiffs and Ocwen or their respective successors-in-interest."). Because Plaintiffs do not consent to amend the settlement agreement, Ocwen's "buyer's remorse" motion should be denied.

Black letter law is clear that the "judicial role in reviewing a proposed settlement is … limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement." 4 *Newberg on Class Actions* § 13:46 (5th ed.) (Presumptions governing approval process—Court cannot rewrite agreement) (citations omitted). Nor can the Court modify a settlement agreement post-judgment. "[W]hile the settlement agreement must gain the approval of a district judge, once approved its terms must be followed by the court and the parties alike." *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 119 (D.D.C. 2015) (citing *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011)). "Any party seeking to overrule, modify, or rescind the Agreement therefore bears the burden of demonstrating a legal basis for doing so." *Keepseagle*, 118 F. Supp. 3d at 115.

In *Keepseagle,* the court was asked—post-judgment—to revise *cy pres* provisions that the parties negotiated as part of a class action settlement agreement. The settlement contemplated that some of the $680 million settlement "might be leftover" and distributed to charities, but the parties did not anticipate that a failed claims process of monumental proportions would leave $380 million to the charities rather than to class members. 118 F. Supp. 3d at 102. Class

members asked the court to modify the settlement agreement to distribute those funds to the class instead. The court refused, despite "truly terrible facts" that "cry out for a resolution that does not result in $380,000,000 being distributed as *cy pres*," because modifying the settlement agreement would "undermin[e] the finality of a judgment without a clear legal basis to do so." *Id.* at 122.

If there were ever facts that justified a court's decision to rewrite a settlement, they arose in *Keepseagle*. Those facts don't exist here. Based on circumstances Ocwen alone created, Ocwen asks the Court to rewrite the definition of "Final" in the Final Approval Order and Judgment so that it can fold back in the banks case and extend the time (likely for years) that it will ever be required to pay out as part of the settlement it negotiated.

**B.     Ocwen is not entitled to relief under Rule 59(e) or Rule 60(b)(6) because Ocwen has not experienced "manifest injustice" or "exceptional circumstances."**

Rule 59(e) motions do not allow "a party to undo its own procedural failures ... introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996). To prevail under 59(e), the movant must demonstrate that "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A party who "has only itself to blame" cannot meet this burden. *Cardenas v. City of Chicago*, No. 08 C 3174, 2010 WL 3547961, at *2 (N.D. Ill. Sept. 1, 2010); *see also Harrington v. City of Chicago,* 433 F.3d 542, 546 (7th Cir. 2006) ("Boyd's motion is simply a plea for the district court to excuse his neglect in prosecuting this case; as such, the motion advances no grounds to support Rule 59(e) relief.")

Ocwen has failed to establish that the final approval order is based on any legitimate misunderstanding, that the Court made a decision that exceeded its authority to approve the

- 6 -

parties' amended settlement, or that the Court erred in any way. Instead, Ocwen claims "manifest injustice" because it feels uncertain about whether its gambit to automatically release the bank defendants as an unnegotiated, undisclosed, back-door benefit will work. Ocwen's fear stems from its unilateral decision to mislead the Court into believing what Plaintiffs believed—that it had negotiated a complete and total carve out that would preserve any and all claims against the banks—when in actuality, Ocwen secretly believed that its release would extinguish the banks' vicarious liability claims. The circumstances Ocwen created do not amount to "manifest injustice." If the final approval order and judgment are ultimately vacated, it will be because of Ocwen's actions, and Ocwen's actions alone.

Likewise, Ocwen has failed to establish "exceptional circumstances" necessitating an "extraordinary remedy" under Rule 60(b)(6)'s catch-all provision, which is even more limited than Rule 59(e). *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997); *see also Karraker v. Rent–A–Center, Inc.*, 411 F.3d 831, 837 (7th Cir.2005) (quotation omitted) (noting the similarities between Rule 59(e) and Rule 60(b), while acknowledging that Rule 60(b) is more stringent). While Ocwen worries that the Court's summary judgment decision may be overturned, such a change in law would not amount to exceptional circumstances that would justify amending or altering the final approval order and judgment. *Agostini v. Felton*, 521 U.S. 203, 237-39 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)"). In short, Ocwen created this mess. The Court should not alter the settlement or circumstance to protect Ocwen from itself and to the detriment of the class.

### III. CONCLUSION

Ocwen misled the Court about the scope of the amended release it negotiated with Plaintiffs. Once the truth was exposed, the Court noted its extreme displeasure, and warned that

it might void the judgment if the Court's decision about the vicarious liability claim against the banks is overturned. The possibility that Ocwen's extra-settlement obligations might change for the worse does not justify rewriting a settlement agreement between private parties and delaying Ocwen's responsibility to pay claimants their settlement awards. Ocwen has failed to establish manifest injustice or extraordinary circumstances that would provide the Court discretion to amend the final approval order and judgment. Ocwen's motion should be denied.

RESPECTFULLY SUBMITTED AND DATED this 2nd day of August, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
 Beth E. Terrell, *Admitted Pro Hac Vice*
 Email: bterrell@terrellmarshall.com
 Adrienne D. McEntee, *Admitted Pro Hac Vice*
 Email: amcentee@terrellmarshall.com
 936 North 34th Street, Suite 300
 Telephone: (206) 816-6603
 Facsimile: (206) 319-5450
 Alexander H. Burke, #6281095
 Email: aburke@burkelawllc.com
 Daniel J. Marovitch, #6303897
 Email: dmarovitch@burkelawllc.com
 BURKE LAW OFFICES, LLC
 155 North Michigan Avenue, Suite 9020
 Chicago, Illinois 60601
 Telephone: (312) 729-5288
 Facsimile: (312) 729-5289

*Interim Lead Class Counsel for Plaintiffs*

- 9 -

        Guillermo Cabrera
        Email: gil@cabrerafirm.com
        Jared Quient, *Admitted Pro Hac Vice*
        Email: jared@cabrerafirm.com
        THE CABRERA FIRM, APC
        600 West Broadway, Suite 700
        San Diego, California 92101
        Telephone: (619) 500-4880
        Facsimile: (619) 785-3380

        Mark L. Heaney
        Email:  mark@heaneylaw.com
        HEANEY LAW FIRM, LLC
        601 Carlson Parkway, Suite 1050
        Minnetonka, Minnesota 55305
        Telephone: (952) 933-9655

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

    I, Beth E. Terrell, hereby certify that on August 2, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Chethan G. Shetty
    Email: cshetty@lockelord.com
    Simon A. Fleischmann
    Email: sfleischmann@lockelord.com
    Thomas J. Cunningham
    Email: tcunningham@lockelord.com
    David F. Standa
    Email: dstanda@lockelord.com
    LOCKE LORD LLP
    111 South Wacker Drive
    Chicago, Illinois 60606
    Telephone: (312) 443-0700
    Facsimile: (312) 443-0336

    Brian V. Otero, *Admitted Pro Hac Vice*
    Email: botero@hunton.com
    Stephen R. Blacklocks, *Admitted Pro Hac Vice*
    Email: sblacklocks@hunton.com
    Ryan A. Becker, *Admitted Pro Hac Vice*
    Email: rbecker@hunton.com
    HUNTON & WILLIAMS LLP
    200 Park Avenue, Suite 52
    New York, New York 10166
    Telephone: (212) 309-1000
    Facsimile: (212) 309-1100

    *Attorneys for Defendant*

    Frank A. Hirsch, Jr., *Admitted Pro Hac Vice*
    Email: frank.hirsch@alston.com
    Kelsey L. Kingsbery
    Email: Kelsey.kingsbery@alston.com
    ALSTON & BIRD LLP
    4721 Emperor Boulevard, Suite 400
    Durham, North Carolina 27703
    Telephone: (919) 862-2200

Kenneth M. Kliebard
Email: Kenneth.kliebard@morganlewis.com
William J. Kraus
Email: William.kraus@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 324-1000

*Attorneys for Movants Wilmington Trust, N.A., Deutsche Bank National Trust Company and U.S. Bank, N.A.*

E. Lynette Stone
Email: els@thestonelawoffice.com
THE STONE LAW OFFICE
2101 Cedar Springs Road, #1050
Dallas, Texas 75201
Telephone: (972) 383-9499

*Attorney for Intervenor-Plaintiff Zachariah C. Manning*

Mark Ankcorn, #1159690
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM PLLC
200 West Madison Street, Suite 2143
Chicago, Illinois 60606
Telephone: (321) 422-2333
Facsimile: (619) 684-3541

Ann Marie Hansen
Email: annmarie@ankcornlaw.com
80 Halston Parkway
East Amherst, New York 14051
Telephone: (702) 755-5678

DATED this 2nd day of August, 2019.

                                TERRELL MARSHALL LAW GROUP PLLC

                                By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
                                      Beth E. Terrell, *Admitted Pro Hac Vice*
                                      Email: bterrell@terrellmarshall.com
                                      936 North 34th Street, Suite 300
                                      Seattle, Washington 98103-8869
                                      Telephone: (206) 816-6603
                                      Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*